**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-184-VAC-SRF |
| v. | ) ) | |
| SIRIUS XM RADIO INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT SIRIUS XM RADIO INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

OF COUNSEL:

Jonathan S. Caplan
Mark A. Baghdassarian
P. Bradley O'Neill
Shannon H. Hedvat
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
 (212) 715-9100

Dated: April 17, 2017
5089500

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant
Sirius XM Radio Inc.*

# TABLE OF CONTENTS

Page

I.       INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ........................................... 2

III.   SUMMARY OF THE ARGUMENT ................................................................. 2

IV.  STATEMENT OF UNDISPUTED FACTS ....................................................... 3

      A.     Fraunhofer Grants WorldSpace an Irrevocable License to the MCM
             Technologies and Asserted Patents.......................................................... 3

      B.     WorldSpace Grants Sirius XM an Irrevocable Sublicense to the MCM
             Technologies and Asserted Patents.......................................................... 4

      C.     The WorldSpace Bankruptcy and the WorldSpace-Sirius XM Settlement
             Agreement............................................................................................... 5

V.     LEGAL STANDARDS ...................................................................................... 6

VI.  ARGUMENT...................................................................................................... 8

      A.     Sirius XM is Licensed Under the Asserted Patents .................................. 8

      B.     Fraunhofer's Allegations Cannot Overcome the Sirius XM License ...................... 9

      C.     The WorldSpace Bankruptcy Did Not Undo or Terminate Sirius XM's
             License to the Asserted Patents............................................................... 11

VII. CONCLUSION................................................................................................. 16

**Federal Cases**

*Anderson v. Liberty Lobby Inc.*,
    477 U.S. 242 (1986)..................................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................6, 7

*In re Bacon*,
    212 B.R. 66 (Bankr. E.D. Pa. 1997) .....................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................6, 7

*Carborundum Co. v. Molten Metal Equip. Innovations*,
    72 F.3d 872 (Fed. Cir. 1995)...................................................................................7

*Cinicola v. Scharffenberger*,
    248 F.3d 110 (3d Cir. 2001)...................................................................................12

*Device Enhancement LLC v. Amazon.com, Inc.*,
    189 F. Supp. 3d 392 (D. Del. 2016)....................................................................3, 7

*In re Executive Tech. Data Sys.*,
    79 B.R. 276 (Bankr. E.D. Mich. 1987) .................................................................13

*In re Flagstaff Realty Assocs.*,
    60 F.3d 1031 (3d Cir. 1995)...................................................................................12

*In re Fleming Companies, Inc.*,
    No. 03-10945 MFW, 2007 WL 788921 (D. Del. Mar. 16, 2007)..........................12

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
    109 F.3d 1567 (Fed. Cir. 1997)...............................................................................7

*Maio v. Aema, Inc.*,
    221 F.3d 472 (3d Cir. 2000)....................................................................................6

*Matter of Exec. Tech. Data Sys.*,
    79 B.R. 276 (Bankr. E.D. Mich. 1987) .................................................................12

*McDowell v. U.S. ex rel. Holder*,
    No. CIV.A. 12-1302-SLR, 2013 WL 1953340 (D. Del. May 10, 2013) .................7

*In re Metro Transp. Co.*,
  87 B.R. 338 (Bankr. E.D. Pa. 1998) ...................................................................13

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997)...............................................................................7

*Nami v. Fauver*,
  82 F.3d 63 (3d Cir. 1996).....................................................................................7

*Nano-Proprietary, Inc. v. Canon, Inc.*,
  537 F.3d 394 (5th Cir. 2008)...............................................................................10

*Princeton Digital Image Corp. v. Office Depot Inc.*,
  No. CV 13-239, 2016 WL 1533697 (D. Del. Mar. 31, 2016).................................8

*In re Rudaw/Empirical Software Prod. Ltd.*,
  83 B.R. 241, 244 (Bankr. S.D.N.Y. 1988) ...........................................................13

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997).................................................................................7

*Sunbeam Prods. v. Chi. Am. Mfg., LLC*,
  686 F.3d 372 (7th Cir. 2012) ........................................................................14, 16

*In re Taylor-Wharton Int'l LLC*,
  No. 09-14089 BLS, 2010 WL 4862723 (Bankr. D. Del. 2010)............................12

*Technology Licensing Corp. v. JVC Americas Corp.*,
  No. 12 C 1444, 2013 WL 212928 (N.D. Ill. Jan. 18, 2013) .................................10

*Thompkins v. Lil' Joe Records, Inc.*,
  476 F.3d 1294 (11th Cir. 2007) ......................................................13, 14, 15, 16

**Federal Statutes**

11 U.S.C. § 365(a) .....................................................................................................11

11 U.S.C. § 365(d) .....................................................................................................11

11 U.S.C. § 365(g) .....................................................................................................12

11 U.S.C. § 365(n) .....................................................................................................16

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) .........................................................1, 2, 6

Federal Rule of Civil Procedure 56 .............................................................................7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Sirius XM Radio Inc. ("Sirius XM") moves to dismiss Plaintiff Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V.'s ("Fraunhofer") Complaint (D.I. 1,[1] the "Complaint") for failing to state a claim upon which relief may be granted (the "Motion").

## I.    INTRODUCTION

Fraunhofer has sued Sirius XM for patent infringement, yet Sirius XM has – and for nearly twenty years has had – a license to the patents alleged to be infringed. Fraunhofer is well aware of Sirius XM's license. The Complaint is nothing more than a carefully crafted selection of alleged facts – which deliberately omit the terms of the critical agreements – and a misapplication of the applicable law to try and terminate and undo Sirius XM's license rights. As a result, the instant action should be dismissed.

The essential facts in this case are simple and not subject to dispute. Fraunhofer granted an exclusive and irrevocable license to WorldSpace International Network Inc. ("WorldSpace") which included the asserted patents – U.S. Patent Nos. 6,314,289; 6,913,084; 6,993,084; and 7,061,997 (collectively, the "Asserted Patents") – and the right for WorldSpace to sublicense those patents to third parties, such as Sirius XM. Fraunhofer expressly agreed that the license grant to WorldSpace would survive even after termination or expiration of the Fraunhofer-WorldSpace agreement. And as contemplated and permitted by its license from Fraunhofer, WorldSpace granted an exclusive and irrevocable sublicense to Sirius XM for the Asserted Patents that continues today.

The Complaint clearly recognizes these license rights and alleges, based on a legally erroneous application of the law, that bankruptcy proceedings involving WorldSpace terminated

---

[1] Unless otherwise noted, all docket citations (D.I.) are to the instant action, Civil Action No. 1:17-cv-00184.

and/or undid both Sirius XM's and WorldSpace's rights under their respective license agreements. There is no such operation of bankruptcy law. To the contrary, bankruptcy law and prevailing jurisprudence expressly preserve such license rights. Notwithstanding this, the bankruptcy court, during the WorldSpace proceedings, left no mistake regarding Sirius XM's license under the Asserted Patents when it approved a Settlement Agreement recognizing and preserving Sirius XM's rights to the Asserted Patents.

For these reasons described more fully below, Fraunhofer fails to state a claim for relief and Sirius XM respectfully requests that the Court dismiss the instant action.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Fraunhofer filed the Complaint against Sirius XM on February 22, 2017, alleging direct, induced and contributory infringement of the Asserted Patents. D.I. 1. Sirius XM and Fraunhofer stipulated to extend the time for Sirius XM to respond to the Complaint to April 17, 2017. D.I. 6. Sirius XM now moves, pursuant Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim.

## III.    SUMMARY OF THE ARGUMENT

1.      Fraunhofer fails to state a claim for direct, induced and/or contributory infringement because, even if all of its allegations in the Complaint were taken as true, Sirius XM has a license to the Asserted Patents pursuant to pre-existing and irrevocable contractual license rights.

2.      Fraunhofer fails to state a claim for relief because it relies on an erroneous application of bankruptcy law that concludes, without any legal basis, that rejection of an agreement during bankruptcy proceedings terminates pre-existing and duly granted contractual rights. Fraunhofer's claim for direct, induced and/or contributory infringement thus fails because the agreements governing Sirius XM's license rights to the Asserted Patents were never

2

terminated and cannot be undone or rescinded as a result of WorldSpace's bankruptcy proceedings.

## IV.    STATEMENT OF UNDISPUTED FACTS

For the purpose of this Motion, Sirius XM provides below the facts as set forth in the Complaint and the documents cited and referenced therein.[2]

### A.    Fraunhofer Grants WorldSpace an Irrevocable License to the MCM Technologies and Asserted Patents

1.    In 1996, Fraunhofer developed patented technology related to multicarrier modulation (the "MCM Technologies").  Complaint at ¶ 20.  MCM Technologies relate to a "method of transmitting data by splitting it into several components and sending each of the components over separate carrier signals."  *Id.* at ¶ 4.

2.    Almost twenty years ago, on March 4, 1998, Fraunhofer entered into a License Agreement with WorldSpace under which Fraunhofer granted WorldSpace a "***worldwide, exclusive, [and] irrevocable license***" to all patents under the MCM Technologies, including the Asserted Patents (the "MCM License").  Complaint at ¶ 21; Ex. 1[3] at § 3.1 (emphasis added).

3.    The MCM License also granted WorldSpace the "right to sublicense" the MCM Technologies and Asserted Patents in a very broad area − "in connection with the WorldSpace Business" – which the agreement defined as "any business related to satellite and/or terrestrial broadcast to consumers."  Ex. 1 at §§ 1.1, 3.1; *see also* Complaint at ¶¶ 21-22.

4.    In exchange for these exclusive and irrevocable rights, the MCM License required

---

[2] For purposes of this Motion only, Sirius XM assumes the truth of the facts alleged in the Complaint and the documents referenced therein.  *Device Enhancement LLC v. Amazon.com, Inc.*, 189 F. Supp. 3d 392, 394–95 (D. Del. 2016), *appeal dismissed* (June 28, 2016) (in assessing a motion to dismiss, the court may consider pleadings, public record, exhibits attached to the complaint, and documents incorporated into the complaint by reference).

[3] Unless otherwise noted, all "Ex." citations are to the Declaration of Shannon Hedvat in Support of Sirius XM's Motion, filed herewith.

WorldSpace to pay Fraunhofer "license fees" totaling $1,000,000. Ex. 1 at § 4.1. These fees were payable in installments, the last of which was due December 31, 2000, more than 16 years ago. *Id.* Fraunhofer has acknowledged that these "license fees" have been paid. *See* Ex. 2 at ¶ 5 ("Fraunhofer agrees that the cure amount with respect to the [MCM License] is 0 euros ($0).").

5.     The MCM License provides that WorldSpace's rights to the Asserted Patents and related technology continue until the expiration of the last patent contained within the MCM Intellectual Property Rights[4] for the MCM Technologies:

> This Agreement shall be effective as of the Effective Date subject to the governmental approval or consent according to Article 9.6. Unless earlier terminated as provided in this Article 7, this Agreement shall continue in full force and effect until the expiration of the last to expire of the MCM Intellectual Property Rights.

Ex. 1 at § 7.1.

6.     Section 7.4 of the MCM License provides that upon the payment of the license fees, even termination or expiration of the MCM License will not disturb WorldSpace's rights in the MCM Technologies, including its right to sublicense the Asserted Patents:

> ***No termination or expiration of this Agreement shall effect the rights and licenses granted to WORLDSPACE under Article 3 hereof***, provided that WORLDSPACE has paid (or has agreed in writing to pay) all of the amounts specified in Article 4 hereof as of the date of termination or expiration.

Ex. 1 at §7.4 (emphasis added).

**B.     WorldSpace Grants Sirius XM an Irrevocable Sublicense to the MCM Technologies and Asserted Patents**

7.     Just a few months after the execution of the MCM License, on July 24, 1998, WorldSpace exercised its express rights under that license and granted a sublicense to Sirius

---

[4] "MCM Intellectual Property Rights," as defined under the MCM License, means "all FRAUNHOFER patent applications, patents, digital formats, copyrights, mask works, utility models and industrial designs protecting MCM Technology." Ex. 1 at § 1.5.

XM's predecessor, American Mobile Radio Corporation ("AMRC") pursuant to a Technology License Agreement (as subsequently amended, the "WorldSpace-XM Sublicense"). Complaint at ¶ 22;[5] *see also* Exs. 3-4.

8.      Effective as of January 1, 1998, the WorldSpace-XM Sublicense granted AMRC a license to the "WorldSpace Licensed Technology," which included the MCM Technologies and the Asserted Patents. Complaint at ¶ 22; Ex. 3. Shortly thereafter, WorldSpace and AMRC amended the WorldSpace-XM Sublicense to specify that this sublicense was "irrevocable." Ex. 4 ("Amendment No. 1 to WorldSpace-XM Sublicense") at § 3.

### C.      The WorldSpace Bankruptcy and the WorldSpace-Sirius XM Settlement Agreement

9.      On October 17, 2008, more than a decade after the entry of the MCM License and the WorldSpace-XM Sublicense, WorldSpace filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") – *In re WorldSpace, Inc. et. al*, Case No. 08-12412 (Bankr. D. Del. 2008) (the "WorldSpace Bankruptcy"). Complaint at ¶ 27.

10.      Less than a year after the filing of the WorldSpace Bankruptcy, WorldSpace and Sirius XM entered into a settlement agreement, entitled "Payment, Termination and Release Agreement" (the "Settlement Agreement"), addressing both the WorldSpace-XM Sublicense and certain other agreements between WorldSpace and Sirius XM. Ex. 5 at Exhibit A. Section 1 of the Settlement Agreement expressly terminated all agreements between the parties – *except* the WorldSpace-XM Sublicense and the Settlement Agreement. Ex. 5 at Exhibit A, § 1.

---

[5] As Fraunhofer alleges in the Complaint, AMRC "was later renamed as XM Satellite Radio Inc. ('XM Satellite') [which] . . . [i]n 2008 . . . merged with [] Sirius Satellite Radio . . . to form Sirius XM." Complaint at ¶¶ 22, 26. References to "Sirius XM" in this Motion, particularly with respect to the WorldSpace-XM Sublicense, shall include its predecessors AMRC and XM Satellite.

11.     Specifically, the Settlement Agreement "amend[ed]" and otherwise reaffirmed the WorldSpace-XM Sublicense, unequivocally establishing that the sublicense would ***not*** be terminated:

> Except as provided herein, all terms of the [WorldSpace-XM Sublicense] shall remain in full force and effect.

Ex. 5 at Exhibit A, § 5; *see also id.* at Recitals.

12.     The Settlement Agreement further provided for the payment in full of all remaining amounts due under the WorldSpace-XM Sublicense.  In particular, Section 2 of the Settlement Agreement required Sirius XM to pay WorldSpace $298,517 "in satisfaction of all amounts owed under the [WorldSpace-XM Sublicense]."  Ex. 5 at Exhibit A, § 2.  Consistent with Sirius XM's payment of all outstanding amounts, Section 3 of the Settlement Agreement also contained a broad mutual release of all claims under the WorldSpace-XM Sublicense.  *Id.* at § 3.

13.     On July 13, 2009, the Bankruptcy Court approved the Settlement Agreement.  Ex. 6.

14.     The instant action was filed almost eight years later in February 2017.  D.I. 1.

## V.     LEGAL STANDARDS

A motion to dismiss should be granted where the court concludes, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [that] plaintiff is not entitled to relief."  *Maio v. Aema, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000) (internal quotation marks omitted); *see also generally* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation" and is not obligated to accept as true any "bald assertions," "unsupported

conclusions and unwarranted inferences," or any "self-evidently false" allegations. *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113

F.3d 405, 417 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

In evaluating a motion to dismiss, the court may consider the pleadings, matters of public

record or items subject to judicial notice, exhibits attached to the Complaint and documents

incorporated by reference or integral to the claims in the complaint. *Device Enhancement LLC*,

189 F. Supp. 3d at 394–95 (citations omitted); *McDowell v. U.S. ex rel. Holder*, No. CIV.A. 12-

1302-SLR, 2013 WL 1953340, at *1 (D. Del. May 10, 2013), *report and recommendation*

*adopted sub nom. McDowell v. U.S.*, No. CIV. 12-1302-SLR/SRF, 2013 WL 2456742 (D. Del.

June 5, 2013) (citations omitted).[6]

Where, as here, a party accused of patent infringement has a license to the asserted

patents, resolution of the issue at the pleadings stage is particularly appropriate because a license

is a defense to patent infringement. *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567,

1577 (Fed. Cir. 1997) ("license issue [should] be resolved first, for if the license issue is resolved

in the defendant's favor the infringement issue is mooted"); *see also generally Carborundum Co.*

*v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995) (a license "is a defense to

patent infringement"); *Princeton Digital Image Corp. v. Office Depot Inc.*, No. CV 13-239, 2016

WL 1533697, at *12 (D. Del. Mar. 31, 2016) (collecting cases) (recognizing the "significant

impact meritorious license defenses can have on patent litigation").

---

[6] To the extent the Court determines that the instant Motion is appropriate for consideration
under Federal Rule of Civil Procedure 56, Sirius XM requests that the Court convert the Motion
to one for summary judgment and grant judgment as a matter of law in Sirius XM's favor. *See*
*generally*, Fed. R. Civ. P. 56 (summary judgment is permitted where "there is no genuine dispute
as to any material fact" and one of the parties is "entitled to judgment as a matter of law");
*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-257 (1986).

## VI. ARGUMENT

Sirius XM has had an irrevocable license to the Asserted Patents for almost twenty years. Fraunhofer attempts to terminate and undo that license by intentionally disregarding the unequivocal, irrevocable and exclusive rights to the Asserted Patents that it granted to WorldSpace who, in turn, sublicensed those rights to Sirius XM.

Although Fraunhofer has been aware of Sirius XM's irrevocable license to the MCM Technologies since 1998, Fraunhofer now focuses on WorldSpace's bankruptcy proceedings and makes the legally erroneous allegations that the WorldSpace Bankruptcy terminated or retroactively undid Sirius XM's duly granted and subsisting license to the Asserted Patents. Fraunhofer is simply wrong.

For the reasons more fully set forth below, Fraunhofer has failed to state a plausible claim for relief, necessitating dismissal of the Complaint.

### A. Sirius XM is Licensed Under the Asserted Patents

A simple three-step analysis based on the allegations of the Complaint illustrates that Sirius XM is licensed under the Asserted Patents and the Complaint should be dismissed.

First, Fraunhofer admits that it granted WorldSpace an irrevocable and "exclusive right [] to license all Fraunhofer intellectual property rights for MCM technologies . . . including patents to be sought relating to MCM" along with the right to sublicense. Complaint at ¶ 21; *see also supra* Section IV ("Statement of Facts") at ¶ 2.

Second, Fraunhofer admits that WorldSpace, in turn, granted Sirius XM's predecessors, AMRC and XM Satellite, a sublicense to the Asserted Patents which extends to Sirius XM. Complaint at ¶ 22. This sublicense was also irrevocable. Statement of Facts at ¶ 8.

Third, Fraunhofer admits that both its license to WorldSpace, and WorldSpace's sublicense to Sirius XM, encompass the Asserted Patents. Complaint at ¶¶ 21-23.

These undisputed facts resolve this case – the license grant to Sirius XM is still in force, as explained more fully below, and, therefore, there can be no infringement as Fraunhofer alleges.

### B.    Fraunhofer's Allegations Cannot Overcome the Sirius XM License

Realizing that a license is a complete defense to patent infringement, Fraunhofer tries to escape its own admitted facts by alleging that both the MCM License and the WorldSpace-XM Sublicense were terminated as a result of WorldSpace's bankruptcy proceedings, and thus Sirius XM no longer has a license to the Asserted Patents.  Complaint at ¶¶ 27-28.  Even accepting as true Fraunhofer's legally erroneous allegations that the MCM License and WorldSpace-XM Sublicense were terminated in bankruptcy (which is not the case),[7] Fraunhofer's allegations are simply wrong as a matter of contract law.

Fraunhofer's Complaint strategically omits that *both* WorldSpace's exclusive license from Fraunhofer under the MCM License, and WorldSpace's sublicense grant to Sirius XM, were *irrevocable*.  Statement of Facts at ¶¶ 2, 8.  Fraunhofer further disregards that WorldSpace's sublicensing rights survive any subsequent termination or expiration of the MCM License as long as WorldSpace paid the amounts due to Fraunhofer:

> 7.4.    ***No termination or expiration of this Agreement shall effect the rights and licenses granted to WORLDSPACE under Article 3 hereof***, provided that WORLDSPACE has paid (or has agreed in writing to pay) all of the amounts specified in Article 4 hereof as of the date of termination or expiration.

Ex. 1 at §7.4 (emphasis added); *see also* Complaint at ¶¶ 21-22; Statement of Facts at ¶ 6.[8]

---

[7] Sirius XM addresses Fraunhofer's legally erroneous contentions that any agreements were terminated as a result of the WorldSpace bankruptcy proceedings in Section VI.C below.

[8] There is no dispute that WorldSpace has paid "all of the amounts" under the MCM License. Statement of Facts at ¶ 4.

Therefore, under the plain language of the MCM License, WorldSpace's sublicense to Sirius XM in 1998 to the Asserted Patents could not be affected by the WorldSpace Bankruptcy because Section 7.4 of the MCM License is completely clear that WorldSpace's right to sublicense could not be affected by the alleged termination of the MCM License that Fraunhofer relies upon in the Complaint.

Consistent with the MCM License, WorldSpace's sublicense to Sirius XM was "irrevocable," rendering the sublicense *not* subject to termination as Fraunhofer alleges in the Complaint. *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 400 (5th Cir. 2008) (finding that because the "PLA [Patent License Agreement] granted an 'irrevocable,' 'fully-paid up,' and 'perpetual' license . . . the PLA could not be terminated, notwithstanding a material breach of the agreement. Otherwise, the terms 'irrevocable' and 'perpetual' would be rendered superfluous . . . ."); *Technology Licensing Corp. v. JVC Americas Corp.*, No. 12 C 1444, 2013 WL 212928, at *2 (N.D. Ill. Jan. 18, 2013) (holding that because "the Agreement says that the license is 'irrevocable' and that the non-assertion covenant is made 'irrevocably and perpetually' . . . [i]t follows that JVC Americas retained its rights and protections under the Agreement even after it ceased being majority owned by Matsushita" about two years after the Agreement was executed and would no longer be covered under the license).[9]

The WorldSpace Bankruptcy reaffirmed the irrevocable nature of Sirius XM's license from WorldSpace when the Bankruptcy Court approved the Settlement Agreement between WorldSpace and Sirius XM. Specifically, the court approved the Settlement Agreement which provided that upon Sirius XM's payment of "all amounts owed under the [WorldSpace-XM

---

[9] The contractual provisions in *Nano-Proprietary* and *Technology Licensing Corp.* were both governed by New York law, the same governing law under the WorldSpace-XM Sublicense. *Nano-Proprietary, Inc.*, 537 F.3d at 397; *Technology Licensing Corp.*, 2013 WL 212928, at *1.

Sublicense]," Sirius XM's rights under the sublicense would continue and ***not*** be "affected" or terminated going forward. Ex. 5 at Exhibit A, § 2; Statement of Facts at ¶¶ 10-13.

Therefore, by operation of the clear and unequivocal terms of the MCM License, the WorldSpace-XM Sublicense, and the Settlement Agreement approved by the Bankruptcy Court in 2009, Sirius XM has had and continues to have an irrevocable license to the Asserted Patents. That license could not be terminated as alleged in the Complaint, thus requiring dismissal of the instant action.

## C. The WorldSpace Bankruptcy Did Not Undo or Terminate Sirius XM's License to the Asserted Patents

Fraunhofer alleges that during the WorldSpace Bankruptcy, WorldSpace "rejected" the MCM License. Complaint at ¶ 27. On this basis, Fraunhofer claims that "WorldSpace lost all rights relating to Fraunhofer's MCM technologies" and that "all WorldSpace sub-licensees, including Sirius XM, also lost any rights to the MCM technologies" including the Asserted Patents. *Id.* Fraunhofer further asserts that the WorldSpace-XM Sublicense "terminated" as a result of WorldSpace's Chapter 7 trustee's alleged "rejection" of the WorldSpace-XM Sublicense. *Id.* at ¶ 28.[10] These allegations fundamentally misunderstand the purpose and effect of contract rejection in bankruptcy.

---

[10] Fraunhofer's allegation that "[p]ursuant to 11 U.S.C. § 365(d), the MCM License was confirmed rejected as of August 12, 2012, when the bankruptcy trustee failed to assume either the MCM License or the sub-license to Sirius XM within sixty days after conversion" assumes that both the MCM License and WorldSpace-XM Sublicense were executory contracts because the trustee in bankruptcy "may assume or reject any ***executory*** contract or unexpired lease of the debtor." Complaint at ¶ 28; 11 U.S.C. § 365(a) (emphasis added); *see also* 11 U.S.C. § 365(d) ("In a case under chapter 7 of this title, if the trustee does not ***assume or reject an executory contract*** or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected" (emphasis added)). For purposes of this Motion only, Sirius XM treats both agreements as executory in light of Fraunhofer's allegations in the Complaint. Complaint at ¶¶ 27-28.

Contract rejection serves a well-defined, forward looking purpose under the Bankruptcy Code. Specifically, it allows the debtor's estate (here, WorldSpace) to avoid *future* performance of burdensome contractual obligations. *See In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1034 (3d Cir. 1995) ("primary function" of rejection is to avoid debtor's burden of future performance); *In re Taylor-Wharton Int'l LLC*, No. 09-14089 BLS, 2010 WL 4862723, at *3 (Bankr. D. Del. 2010) ("[T]he effect of rejection is to relieve a debtor from future performance under the contract."); *Matter of Exec. Tech. Data Sys.*, 79 B.R. 276, 282 (Bankr. E.D. Mich. 1987) ("[t]he aim of Section 365 'was to solve the problem of assumption of liabilities, i.e., excusing or requiring future specific performance by the bankrupt....'" (quoting 2 Collier on Bankruptcy, ¶ 365.01[2])).

The effect of contract rejection is expressly defined by statute. In particular, under Section 365(g) of the Bankruptcy Code, rejection is treated as a breach of the contract occurring immediately before the filing of the bankruptcy case. *See* 11 U.S.C. § 365(g)(1). As such, rejection "***has absolutely no effect upon the contract's continued existence; the contract is not canceled, repudiated, rescinded or in any fashion terminated***." *In re Bacon*, 212 B.R. 66, 69 (Bankr. E.D. Pa. 1997) (emphasis added) (quoting Michael T. Andrew, *Executory Contracts Revisited. A Reply to Professor Westbrook*, 62 U. Colo. L.Rev. 1, 15 (1991)).

Indeed, the Third Circuit has underscored that "rejection does not affect the parties' substantive rights under the contract." *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 n.8 (3d Cir. 2001) (citing 3 *Collier on Bankruptcy* ¶¶ 365.09, 365.09[1]); *accord In re Fleming Companies, Inc.*, No. 03-10945, 2007 WL 788921, at *3 (D. Del. Mar. 16, 2007) ("[T]he Third Circuit has explained that rejection of an executory contract does not alter the substantive rights of the parties."). Furthermore, where a contract has been partially performed, rejection "does not

undo performances by the parties to the contract, either pre-petition or post-petition, which have preceded [sic] the assumption or rejection." *In re Metro Transp. Co.,* 87 B.R. 338, 343 (Bankr. E.D. Pa. 1998); *accord In re Rudaw/Empirical Software Prod. Ltd.*, 83 B.R. 241, 246 (Bankr. S.D.N.Y 1988) ("Section 365 addresses only future performance obligations of the parties. It does not have any impact upon the executed portions of the contract"). Thus, rejection of a prepetition (i.e., prior to bankruptcy) contract under which the debtor acquired property rights does not obligate the debtor to return the property. *See In re Executive Tech. Data Sys.*, 79 B.R. 276, 282 (Bankr. E.D. Mich. 1987).

The Eleventh Circuit in *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294 (11th Cir. 2007) applied these principles to uphold the dismissal of infringement claims that closely parallel those that Fraunhofer is asserting here. Specifically, in *Lil' Joe Records*, a rap artist contracted with a recording company and granted the recording company "exclusive, unlimited and perpetual rights throughout the world" to copyrights in certain of the artist's recordings. *Id.* at 1298. When the recording company subsequently entered bankruptcy, the trustee sold all of the recording company's rights to the recordings, including those which the artist had previously granted to the recording company. After the recording company's plan of reorganization was confirmed, the contract between the artist and the recording company was rejected. The artist then sued the recording company for infringing the copyrights. In support of these claims, the artist argued that rejection of the recording contract during bankruptcy had vitiated the recording company's rights to the copyrights and caused those rights to revert back to the artist. *Id.* at 1304-05.

The Eleventh Circuit squarely rejected the artist's position. In particular, the Court declined the artist's request that the "court [] deem an executory contract rejection under § 365 to

be the functional equivalent of a rescission, rendering void the contract and requiring the parties to be put back in the positions they occupied before the contract was formed." *Lil' Joe Records*, 476 F.3d at 1306. The Eleventh Circuit explained that rejection "'does not embody the contract vaporizing properties so commonly ascribed to it. . . . Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear.'" *Id*. (quoting *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992)). Importantly, the Court noted that rejection "differently affects the unperformed portions of an executory agreement and those provisions of the agreement that, by their nature, are fully executed." *Id*. at 1307. This means that while rejection eliminated the recording company's obligation to pay royalties, it "did not effectively rescind the . . . Agreement and reverse the executed transfer of the . . . copyrights." *Id*. Accordingly, "[t]he rejection had no effect on the [debtor – recording company's] ownership of the copyrights," and therefore no impact on the rights of debtor's transferee, Lil' Joe Records. *Id.*

The Seventh Circuit has since applied *Lil' Joe Records* to confirm that a bankrupt licensor's rejection of a license agreement entered before bankruptcy does not "vaporize" or terminate the license. *Sunbeam Prods. v. Chi. Am. Mfg.*, LLC, 686 F.2d 372 (7th Cir. 2012). In *Sunbeam Products*, the debtor-licensor had licensed certain of its patents and trademarks to a manufacturer-licensee to build household fans for it. The debtor-licensor subsequently filed for bankruptcy during which its business was sold to a third party purchaser. As part of this sale, the bankruptcy trustee rejected the debtor-licensor's license agreement with the manufacturer-licensee. When the manufacturer-licensee continued to sell the fans after the sale and rejection, the third party purchaser of the debtor-licensor (which did not want the competition) sued the manufacturer-licensee for infringement. In affirming the lower court's determination that

rejection "did not abrogate [the manufacturer-licensee's] contractual rights," the Seventh Circuit

held that the rejection of the license agreement did not limit the manufacturer-licensee's right to

continue to sell fans under the trademarks: "What § 365(a) does by classifying rejection as

breach is establish that in bankruptcy, as outside of it, the other party's rights remain in place."

*Id.* at 377. Rejection "'merely frees the estate from the obligation to perform' and 'has

***absolutely no effect on the contract's continued existence***.'" *Id.* (emphasis added) (quoting *Lil'*

*Joe Records*, 476 F.3d at 1306).

These cases demonstrate that Fraunhofer is flatly wrong when it contends that the alleged

rejection of the MCM License and WorldSpace-XM Sublicense somehow terminated or

vaporized WorldSpace's or Sirius XM's rights to the Asserted Patents. Rather, Fraunhofer's

grant of rights in the MCM Technologies to WorldSpace was fully executed long before the

WorldSpace Bankruptcy and unconditionally granted WorldSpace a "worldwide, exclusive and

irrevocable license, with the right to sublicense" all of Fraunhofer's intellectual property rights in

the MCM Technologies. The MCM License even further established that, upon the payment of

the license fee, Fraunhofer's license to WorldSpace would survive even the termination of the

MCM License itself, which Fraunhofer erroneously alleges to have occurred. Ex. 1 at § 7.4.

Thus, rejection of the MCM License could not disturb the "irrevocable" license that Fraunhofer

had granted to WorldSpace years before, let alone return the licensed rights to Fraunhofer. *Lil'*

*Joe Records, Inc.*, 476 F.3d at 1306 ("Rejection merely frees the estate from the obligation to

perform; it does not make the contract disappear." (citations omitted)).

Similarly, the claimed rejection does not make Sirius XM's irrevocable "license to use

the [MCM technologies] . . . . in and over the geographic area of the United States and its

territories" disappear as Fraunhofer alleges. WorldSpace-XM Sublicense at § 2(a); Statement of

Facts at ¶¶ 7-8; Complaint at ¶¶ 27-28.  First, the sublicense became fully executed and "irrevocable" no later than 1999, when Amendment No. 1 to the WorldSpace-XM Sublicense was signed.  Amendment No. 1 to WorldSpace-XM Sublicense at § 3; Statement of Facts at ¶¶ 7-8.  Second, ten years later, during the WorldSpace Bankruptcy, WorldSpace and Sirius XM settled all outstanding claims under the WorldSpace-XM Sublicense and expressly preserved, with the Bankruptcy Court's approval, the continued existence of all rights under the WorldSpace-XM Sublicense.  Statement of Facts at ¶¶ 10-13; *see generally* Settlement Agreement.  Even assuming, as Fraunhofer alleges, that the WorldSpace-XM Sublicense were rejected as a result of the conversion of the WorldSpace Bankruptcy to Chapter 7, that rejection would not have invalidated WorldSpace's prior "irrevocable" grant of the sublicense to Sirius XM.  *See generally*, *Sunbeam Prods.*, 686 F.2d at 376-77; *Lil' Joe Records*, 476 F.3d at 1306.[11]

Accordingly, Fraunhofer's reliance on the WorldSpace Bankruptcy cannot save its Complaint from dismissal.

## VII.    CONCLUSION

For the foregoing reasons, Sirius XM respectfully requests that the Court dismiss Fraunhofer's Complaint in its entirety with prejudice.

---

[11] Moreover, where the contract at issue is an intellectual property license, and the licensor is the party subject to bankruptcy proceedings, Section 365(n)(1) of the Bankruptcy Code provides that the non-debtor licensee may elect to treat the license as terminated or to retain its licensed rights in the intellectual property as they existed before the commencement of the licensor's bankruptcy proceedings.  *See* 11 U.S.C. § 365(n)(1).  Here, the Settlement Agreement executed during the WorldSpace Bankruptcy demonstrates Sirius XM's election to have its license rights continue.

POTTER ANDERSON CORROON LLP

OF COUNSEL:

Jonathan S. Caplan
Mark A. Baghdassarian
P. Bradley O'Neill
Shannon H. Hedvat
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
 (212) 715-9100

Dated: April 17, 2017
5089500

By:     */s/ Philip A. Rovner*
        Philip A. Rovner (# 3215)
        Jonathan A. Choa (#5319)
        1313 North Market Street 6th Floor
        Wilmington, Delaware 19801
        Telephone: (302) 984-6000
        Facsimile: (302) 658-1192
        provner@potteranderson.com
        jchoa@potteranderson.com

*Attorneys for Defendant*
*Sirius XM Radio Inc.*