

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6000
www.potteranderson.com

**Philip A. Rovner**
**Partner**
provner@potteranderson.com
(302) 984-6140 Direct Phone
(302) 658-1192   Fax

August 9, 2017

**BY CM/ECF AND HAND DELIVERY**

The Honorable Sherry R. Fallon
U.S. District Court for the District of Delaware
U.S. Courthouse
844 North King Street
Wilmington, DE 19801

      Re:   *Fraunhofer-Gesellschaft Zur Forderung der angewandten Forschung e.V. v. Sirius XM Radio, Inc.* (C.A. No. 17-184-JFB-SRF)

Dear Judge Fallon:

We represent Defendant Sirius XM Radio, Inc. ("SXM") in the above-captioned matter and submit this letter concerning the parties' disputes over the proposed protective order.  The parties agree that the protective order should include (1) specific provisions that protect the inspection and disclosure of source code; and (2) a prosecution bar that precludes any attorney who reviews confidential information from prosecuting patent applications or participating in post-grant review proceedings.  The parties, however, dispute certain details of these provisions.  *See* Ex. A (proposed protective order showing areas of agreement and disagreement).  As explained below, SXM's proposals provide the necessary clarity to properly protect the disclosure of source code and avoid the improper use of confidential information during post-grant proceedings.

    **I.   Reasonable Provisions Governing the Handling of Source Code Not Addressed in This Court's Default Standard Should Be Included in the Protective Order**

The dispute over the source code provisions centers on SXM's inclusion of provisions related to issues ***not addressed*** in this Court's Default Standard for Access to Source Code (the "Default Standard," Ex. B).  SXM's proposals provide clarity to ensure that SXM's highly confidential source code remains protected, as this District has previously permitted, and to prevent presenting this Court with piecemeal disputes over the handling of source code in this case.[1]  Notably, Plaintiff

---

[1]  *See, e.g., Inventor Holdings, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 13-96-GMS, 2014 WL 4370320, at * 4 (D. Del. Aug. 27, 2014) (order from the Special Master imposing protective order protections beyond the Default Standard and stating source code is "extremely confidential" and poses a "heightened risk of inadvertent disclosure").

The Honorable Sherry R. Fallon
August 9, 2017
Page 2

Fraunhofer had initially agreed to almost all the source code provisions SXM proposed. However, when disputes over certain provisions could not be resolved, it reversed course and withdrew its prior agreement, reverting to the Court's Default Standard. Ex. C at 1, 3 (e-mail exchanges between parties). In effect, Fraunhofer attempts to take advantage of the Default Standard's gaps in the handling of source code to avoid the reasonable and necessary provisions SXM proposed. Section A below explains why each of the provisions on which the parties previously agreed should be included in the protective order, while section B addresses why SXM's proposals should be adopted for the few provisions where the parties disagreed.

    **(A)    Previously Agreed Upon Source Code Provisions**

Paragraphs 37 and 38: These provisions define what constitutes source code and detail what information may be properly designated as source code, under what circumstances and how a party may designate source code, and to whom source code may be disclosed. These provisions are reasonable and necessary because the Default Standard does not identify what constitutes source code in any particular case, and including such provisions would avoid future disputes regarding what is protected source code.

Paragraph 39: This provision prohibits the use of recording devices, recordable media and other electronic devices inside the secure room where any source code review takes place. Such a provision is consistent with those this District has adopted in other cases. *Inventor Holdings* at * 4.

Paragraph 41: This provision provides that (i) a party must provide seven days written notice that it wishes to review source code and identify who will attend the source code review and (ii) anyone viewing source code will sign a log. Because such a provision is not addressed by the Default Standard, its inclusion in the Protective Order will allow for the efficient scheduling and secure review of source code, ensure that disclosure of such highly confidential code is closely monitored, and will assist with any investigation if an unauthorized disclosure of code occurs.

Paragraph 44: This provision provides guidance on when, where and how printouts and photocopies of source code may be maintained. Because the Default Standard is silent on this, such provisions are critical to lowering the risk of disclosure of source code by ensuring that the source code is securely maintained by Fraunhofer throughout this litigation.

Paragraph 45: This provision governs how a party may include excerpts of source code in pleadings, expert reports, and other litigation documents. Because the Default Standard does not address this issue, this provision provides a mechanism for the treatment of source code during depositions and in Court submissions for this litigation.

Paragraph 46: This provision provides that if portions of source code are quoted in a document, the entire document is treated as source code material. This provision is imperative to ensure that all forms of source code are protected, including when it is quoted in documents that may not otherwise be deemed source code (because the Default Standard is silent on the issue), and

The Honorable Sherry R. Fallon
August 9, 2017
Page 3

minimizes the chances of inadvertent disclosure of a document that has a limited amount of source code that may not be apparent on the first few pages of the document.

### (B) Disputed Provisions of the Parties' Proposed Protective Order

Paragraph 43: The parties previously agreed to the entirety of this provision except for the number of source code pages that may be printed. The Default Standard only provides that source code may not be printed or copied without the agreement of the producing party or further order of the Court. Ex. B, ¶ 5. SXM proposes that the total amount of source code printouts may not collectively exceed a total of 500 pages. This provision is reasonable and in line with page limits this District has previously imposed. *Inventor Holdings, LLC,* 2014 WL 4370320, at * 4 (adopting defendant's proposal of 250 pages of source code printouts). Source code poses a "heightened risk of inadvertent disclosure," and "because source code is extremely confidential . . . the burden should be on the party trying to convert source code to paper." *Id.* Fraunhofer provided no justification during the meet and confers for its excessive request to print 1,000 pages of source code. As such, SXM's proposal should be adopted.

Paragraph 12: SXM proposes that "source code" shall include hardware-based documents (such as RTL, HDL, Verilog, netlists, physical synthesis, schematics and similar documents) and technical documents (such as flow charts and design and functional specifications) that disclose code and/or are required for code compilation. Such hard copy documents that include source code deserve the same level of protection as the actual source code itself and such protection is necessary because the Default Standard does not identify what constitutes source code in any particular case. Without this provision, ambiguity will exist as to whether hardware-based and technical documents containing source code are entitled to source code protection. Fraunhofer should not be permitted to use the Default Standard's silence on the issue to carve out hard copy documents that include source code from the specialized protections for source code.

Paragraph 40: The parties agreed to this provision except for the restriction that Fraunhofer's outside counsel and experts may not copy SXM's source code into notes taken during a source code review. Because the Default Standard does not address this issue, this provision is necessary to prevent Fraunhofer from simply copying verbatim into a "note" SXM's source code as a work-around to the prohibition against making unauthorized or additional copies of source code. Fraunhofer's approach will create a loophole that will necessarily decrease the protection afforded to source code and could increase the chances of disclosure when additional copies of the code are made.

### II. The Protective Order Should Include a Prosecution Bar that Applies to All Activities Relating to Post-Grant Review Proceedings

The parties agree that the protective order should include a prosecution bar provision that applies to post-grant review proceedings, including inter partes review ("IPR") proceedings. The dispute centers on whether the prosecution bar applies to all post-grant proceeding activities, including responding to challenges to the validity of patents and patent application, as SXM contends, or only to the portion of post-grant review proceedings when a party seeks to amend claims, as Fraunhofer contends. Ex. A, ¶ 47. SXM's proposal is reasonable and necessary because

The Honorable Sherry R. Fallon
August 9, 2017
Page 4

Fraunhofer could use claim construction and non-invalidity arguments during post-grant proceedings to effectively alter claim scope and avoid SXM's non-infringement and invalidity arguments. A limitation that applied to just an express post-grant amendment would, therefore, not prevent Fraunhofer from using SXM's confidential information to SXM's detriment.

In adjudicating disputes over what kind of prosecution bar should be entered, courts in this District apply a two-step analysis – that analysis dictates adopting SXM's proposal. As a first step, the Court considers whether there is "the risk of inadvertent disclosure of defendant's proprietary information if litigation counsel consults with prosecution counsel in connection with the latter's efforts on plaintiff's behalf" in the post-grant review proceedings." *Inventor Holdings*, 2014 WL 4370320 at * 2; *see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civ. A. No. 15-691-LPS-CJB, 2016 WL 447794, at * 1 (D. Del. Feb. 4, 2016). Here, there is an unacceptable risk of inadvertent disclosure of SXM's Confidential Information if Fraunhofer's litigation counsel is permitted to participate in post-grant review proceedings because they will necessarily learn of SXM's confidential information and potentially use it to affect claim scope through the positions it may take, and representations it may make, in an effort to overcome any invalidity arguments presented in a post-grant review proceeding.[2]

The second step in the analysis is to "balance that risk against the potential harm the party affected by the portion of the bar at issue would face were it to be denied its counsel of choice if that portion of the bar were adopted." *Toshiba*, 2016 WL 447794 at * 2. The key to this portion of the analysis is "the extent and duration of counsel's past history in representing the client before the [PTO], the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel or the pending litigation or engage other counsel to represent it before the PTO." *Id.* (citations omitted). Fraunhofer bears the burden of demonstrating that an exemption from the prosecution bar is appropriate because Fraunhofer is the party requesting to have its counsel participate in post-grant review proceedings. *Inventor Holdings*, 2014 WL 4370320 at * 2.

Here, Fraunhofer cannot meet its burden because (i) during the parties' meet and confers, it provided no explanation as to why its litigation counsel needed to also be counsel for post-grant proceedings; and (ii) Fraunhofer failed to demonstrate that it would be deprived of its choice of counsel if it was precluded from using its litigation counsel in post-grant review proceedings. *Inventor Holdings,* 2014 WL 4370320 at *2. As such, Fraunhofer failed to show any potential harm that would outweigh the significant risk to SXM of the prejudicial use of its confidential information during post-grant review proceedings.

---

[2] *See Boston Scientific*, C.A. No. 15-980-LPS-CJB, 2016 WL 1601238, at * 2 (D. Del. April 25, 2016), citing *M/A-COM Tech. Solutions Holdings, Inc. v. Laird Techs., Inc.*, Civil Action No. 14-181-LPS, D.I. 166 (D. Del. July 31, 2014) (finding good cause to adopt a prosecution bar that extended to post-grant proceedings "to deal with the risk of the patentee strategically narrowing the scope of its claims based on (even inadvertently) information it learns from [the defendant's] confidential information" where "[p]atentee has provided no evidence that it will be unduly prejudiced by [the defendant's] proposed bar, particularly as there is no evidence that current litigation counsel has ever participated in prosecuting patents for [p]laintiff").

The Honorable Sherry R. Fallon
August 9, 2017
Page 5

                                                Respectfully,

                                                */s/ Philip A. Rovner*

                                                Philip A. Rovner (#3215)

Attachments
cc:  Counsel of Record – by CM/ECF and E-mail