# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-184-JFB-SRF |
| SIRUS XM RADIO INC., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM ORDER

At Wilmington this 13th day of **October, 2017**, the court having considered the parties' discovery dispute submissions and the arguments presented during the September 26, 2017 discovery dispute hearing (D.I. 56; D.I. 57; D.I. 59; D.I. 61; 9/26/17 Tr.), IT IS HEREBY ORDERED THAT the parties' competing proposals regarding various disputed provisions of the proposed protective order are resolved in the manner set forth below.

**1.** **Background.** Plaintiff Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. ("Fraunhofer") brought this civil action for patent infringement on February 22, 2017, alleging causes of action for infringement of United States Patent Nos. 6,314,289 ("the '289 patent"), 6,931,084 ("the '1084 patent"), 6,993,084 ("the '3084 patent"), and 7,061,997 ("the '997 patent"), which are directed to apparatuses and methods used to receive and decode encoded satellite signals, identify "channel fading" effects, and correct for those offsets using a channel decoder. (D.I. 1 at ¶¶ 15-19)

**2.** On May 23, 2017, the court entered a scheduling order setting a document production deadline of January 31, 2018 and a fact discovery deadline of July 31, 2018. (D.I.

26) On August 15, 2017, the court conducted a discovery dispute hearing regarding various provisions of the proposed protective order. (D.I. 39) On September 26, 2017, the court held a discovery dispute teleconference to follow up on unresolved issues regarding the protective order which were raised during the August 15 hearing. (D.I. 54) This Memorandum Order addresses the remaining disputes regarding the definition of source code and additional restrictions on the production of source code beyond those set forth in the Default Standard For Access To Source Code (the "Default Standard").

3. **Analysis.** As a preliminary matter, the court adopts defendant Sirius XM Radio Inc.'s ("SXM") proposed definition of source code in paragraph 12 of the protective order:

> computer instructions and code, scripts, binaries, object code, data definitions, source code listings, and any of the foregoing expressed in a form suitable for input to an assembler or compiler, along with associated comments found within the source code files. For purposes of clarity, Source Code as defined in this Order shall include any code (such as RTL, HDL, VHDL, Verilog, netlists), hardware-based documents (such as RTL, HDL, VHDL, Verilog, netlists, physical synthesis, schematics, and similar documents) or technical software documents (such as flow charts and design and functional specifications) that disclose code, are required for code compilation, and/or are used for and/or in the generation or building of an ASIC (Application Specific Integrated Circuit) or software directly executed on a microprocessor, micro controller or digital signal processor.

(D.I. 56, Ex. B at ¶ 12)

4. SXM's proposed definition of source code is broad enough to include both software-based code and hardware-based code such as VHDL, which can be used to fabricate and replicate circuit chips. (8/15/17 Tr. at 57:25-58:5) ("[T]here is a code that we would want to look at. It has to do with how you make the chips. It's called VHDL. And it is code, but it's not a code that's running on the chip. A code that they used that ultimately creates the net list, the terms of the mass, how they make the chips themselves.") Code used to determine how chips are actually made warrants heightened source code protection.

5.  The evidence submitted in connection with this dispute establishes that the term "source code" encompasses both software-based and hardware-based code. (D.I. 57, Ex. B at ¶ 10) SXM's expert, Nigel Jones, states that "[h]ardware code, such as VHDL, is source code that employs a human-readable syntax that can be used to design, fabricate and/or enable the operation of integrated circuits or chips, such as customized circuits for specific or specialized purposes." (*Id.* at ¶ 11) Fraunhofer's expert does not expressly deny that VHDL is source code. (D.I. 60 at ¶¶ 9-11)

6.  Defining "source code" to include hardware-based code, including VHDL, is also consistent with this court's case authorities. *See Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 212 (D. Del. 2001) (ordering Intel "to provide to Broadcom VHDL source code," among other material). In *HSM Portfolio LLC v. Fujitsu Ltd.*, C.A. No. 11-770-RGA, the plaintiff observed that "there is no dispute among the parties as to the agreed treatment of either HDL Code or any physical layout file or other design file that can be used to actually fabricate a chip," and the resulting protective order afforded HDL Code heightened source code protection. (D.I. 57, Exs. E at 2, H at ¶ 1(f), (l), & (m)) Although Judge Andrews ultimately concluded that source code protection was not warranted for the disputed native circuit schematic files, that conclusion was based on the finding that native circuit schematics could not be used to directly fabricate integrated circuit chips. (D.I. 57, Exs. D at 2, F at ¶ 19) In contrast, Fraunhofer's counsel in the present case has expressly indicated that VHDL identifies how the chips themselves are made. (8/15/17 Tr. at 57:25-58:5)

7.  Several of SXM's additional proposals regarding restrictions on the production of source code should be adopted to provide clear guidance and avoid the need to revisit such issues in this case. As set forth in more detail below, the court adopts SXM's proposals at paragraphs

3

40, 41, 42, 43, 44, and 45. The court grants-in-part SXM's requested relief with respect to paragraph 39. With respect to paragraph 46, the court adopts Fraunhofer's proposed compromise position.

**8.** SXM's requested relief should be granted-in-part with respect to paragraph 39. Prohibiting the use of recording devices in the source code review room is a reasonable precaution to prevent the dissemination of highly confidential material. However, Fraunhofer should be required to provide a private space at the inspection site where SXM representatives may use electronic devices.

**9.** SXM's requested relief regarding paragraph 40 should be granted. The provision permits source code reviewers to take notes on the source code computer. As explained during the September 26, 2017 discovery dispute teleconference, the source code reviewers may then request printouts of their notes on relevant code passages to prepare their expert reports.

**10.** SXM's requested relief should be granted with respect to paragraph 41. Fraunhofer did not specifically address this topic in its letter submissions, and during the September 26, 2017 discovery dispute teleconference, the parties represented that the provision was no longer disputed. Requiring seven days' written notice of individuals planning to attend the source code review, and requiring source code reviewers to sign a log, are not unreasonable or burdensome requests.

**11.** SXM's proposal should be granted with respect to paragraphs 42 and 43. The number of source code pages that may be printed or copied without the agreement of the producing party should be limited to 500 pages. Fraunhofer has alleged that source code review is not critical to the facts of this case, so it is unlikely that additional pages would be necessary.

Moreover, the parties and are not prejudiced from seeking additional relief if the need presents itself.

**12.** SXM's requested relief on paragraphs 44 and 45 should be granted, as Fraunhofer represents that it no longer disputes the inclusion of these paragraphs. Placing limitations on when, where, and how printouts and photocopies of source code may be maintained is reasonable to ensure that the highly confidential source code is securely maintained. Likewise, placing limitations on how excerpts of source code may be included in pleadings and other litigation documents protects against the disclosure of highly confidential source code.

**13.** The court adopts Fraunhofer's compromise position on paragraph 46. Specifically, documents with fewer than 50 contiguous lines of source code may be produced under the "Highly Confidential – Attorneys' Eyes Only" designation, while documents with more than 50 contiguous lines of source code may be produced in redacted form under the "Highly Confidential – Attorneys' Eyes Only" designation, or in unredacted form under the "Highly Confidential – Attorneys' Eyes Only – Source Code" designation.

**14. Conclusion.** In view of the foregoing analysis, SXM's request for relief is granted with respect to paragraphs 40, 41, 42, 43, 44, and 45. The court grants-in-part SXM's requested relief with respect to paragraph 39. With respect to paragraph 46, the court adopts Fraunhofer's proposed compromise position.

**15.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

**16.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

_____
Sherry R. Fallon
United States Magistrate Judge