## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V.,<br><br>       Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>       Defendant. | C.A. No. 17-cv-00184-JFB-SRF |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Ben J. Yorks (admitted pro hac vice)
David McPhie (admitted pro hac vice)
Kamran Vakili (admitted pro hac vice)
Alexis Federico (admitted pro hac vice)

IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile:  (949) 760-5200
byorks@irell.com
dmcphie@irell.com
kvakili@irell.com
afederico@irell.com

Dated:  February 16, 2018

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)

FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys For Plaintiff*

**TABLE OF CONTENTS**

Page

I.     LEGAL BACKGROUND ....................................................................................2

II.    THE '289 PATENT .............................................................................................4

       A.     "channel" ...............................................................................................4

       B.     "means for transmitting …" / "step of transmitting …" ........................6

              1.     Section 112/6 does not apply to the "step of transmitting …" .................6

              2.     The "means for transmitting …" does not include a delay stage..............8

       C.     "receiving means …" ............................................................................9

III.   THE '1084 PATENT .........................................................................................10

       A.     "symbol" .............................................................................................10

       B.     "phase difference between simultaneous carriers …" ..........................11

       C.     "means for determining an echo phase offset …" ...............................12

       D.     "means for correcting each decoded phase shift …" ...........................14

IV.    THE '3084 PATENT .........................................................................................15

       A.     Preambles ...........................................................................................15

       B.     "generating said reference symbol …" / "means for generating …".................16

              1.     Section 112/6 does not apply to the "generating" terms........................17

              2.     SXM's proposed structure is improper .................................................18

V.     THE '997 PATENT ...........................................................................................19

       A.     Preambles ...........................................................................................19

       B.     "phase differences between simultaneous carriers …"........................20

       C.     "low path filter" ..................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adobe Sys. Inc. v. Macromedia, Inc.*,
    201 F. Supp. 2d 309 (D. Del. 2002)........................................................................17

*AK Steel Corp. v. Sollac*,
    344 F. 3d 1234 (Fed. Cir. 2003)................................................................................6

*B. Braun Med., v. Abbott Labs.*,
    124 F.3d 1419 (Fed. Cir. 1997).....................................................................3, 13, 14

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001)..................................................................................5

*Callicrate v. Wadsworth Mfg., Inc.*
    427 F.3d 1361 (Fed. Cir. 2005)................................................................................12

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    381 F.3d 1371 (Fed. Cir. 2004)..................................................................................7

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)....................................................................................4

*Cummins-Allison Corp. v. Glory, Ltd.*,
    2005 U.S. Dist. LEXIS 6150 (N.D. Ill. Mar. 28, 2005)..........................................17

*Dana Corp. v. Am. Axle & Mfg., Inc.*,
    279 F.3d 1372, 1376 (Fed. Cir. 2002)......................................................................12

*Eaton Corp. v. Rockwell Int'l Corp.*,
    323 F.3d 1332 (Fed. Cir. 2003)................................................................................15

*Envirco Corp. v. Clestra, Inc.*,
    209 F.3d 1360 (Fed. Cir. 2000)...........................................................................4, 17

*Group One, Ltd. v. Hallmark, Inc.*,
    407 F.3d 1297 (Fed. Cir. 2005)................................................................................20

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    2016 U.S. Dist. LEXIS 107273 (D. Del. 2016) .......................................................15

*JVW Enterp., Inc. v. Interact Access., Inc.*,
    424 F.3d 1324 (Fed. Cir. 2005).....................................................................13, 14, 18

*Kemco Sales, Inc. v. Control Papers Co., Inc.*,
    208 F.3d 1352 (Fed. Cir. 2000)............................................................................3, 6

*Kraft Foods Group Brands LLC v. TC Heartland, LLC,*
   2016 U.S. Dist. LEXIS 28318 (D. Del. 2016) .......................................................................19

*Masco Corp. v. U.S.,*
   303 F.3d 1316 (Fed. Cir. 2002)......................................................................................7, 17

*Mayne Pharma Ltd v. Merck & Co.,*
   2016 U.S. Dist. LEXIS 178517 (D. Del. 2016) ..........................................................15, 19

*Net MoneyIN, Inc. v. Verisign, Inc.,*
   545 F.3d 1359 (Fed. Cir. 2008)..................................................................................3, 4, 17

*O.I. Corp. v. Tekmar Co.,*
   115 F.3d 1576 (Fed. Cir. 1997).............................................................................................4

*Omega Eng'g, Inc. v. Raytek Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003).............................................................................................3

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005)................................................................................3, 11, 12

*Pitney Bowes, Inc. v. Hewlett–Packard Co.,*
   182 F.3d 1298 (Fed. Cir. 1999)...........................................................................................15

*Sage Prods., Inc. v. Devon, Inc.,*
   126 F.3d 1420 (Fed. Cir. 1997).......................................................................................4, 17

*SciMed Life Systems, Inc. v. Advanced Cardiovascular, Inc.,*
   242 F.3d 1337 (Fed. Cir. 2001).............................................................................................3

*Seal-Flex, Inc. v. Athletic Track and Court Construction,*
   172 F.3d 836 (Fed. Cir. 1999)...............................................................................................4

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.,*
   2004 U.S. Dist. LEXIS 17489 (D. Del. Aug. 31, 2004) .....................................................17

*TecSec, Inc. v. IBM Corp.,*
   731 F.3d 1336 (Fed. Cir. 2013)...........................................................................................18

*Wavetronix, LLC v. E.I.S. Elec. Integrated Sys.,*
   573 F.3d 1343 (Fed. Cir. 2009).............................................................................................2

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
   239 F.3d 1225 (Fed. Cir. 2001)................................................................................... passim

### STATUTES

35 U.S.C. § 112, ¶ 6........................................................................................................... passim

**RULES**

37 C.F.R. § 1.75(c)...................................................................................................12

**OTHER AUTHORITIES**

MCGRAW-HILL ELECTRONICS DICTIONARY.................................................................18

NEWTON'S TELECOM DICTIONARY ........................................................................5, 11

WEBSTER'S COLLEGE DICTIONARY ........................................................................9, 11

Plaintiff   Fraunhofer respectfully submits this opening claim construction brief in its infringement case against Defendant Sirius XM ("SXM").

In the late 1990's, engineers at Fraunhofer began work on an ambitious project that would make commercial satellite radio a reality in the United States.  At the initial design stages of this project, Fraunhofer devised a number of ingenious solutions for this new system, and the U.S. Patent Office granted several patents to Fraunhofer for its inventions.  Fraunhofer has now brought this suit to protect its hard-earned intellectual property against SXM's ongoing willful infringement.

The four Fraunhofer patents asserted in this action cover a variety of important technologies relating to SXM's satellite radio system.  The **'289 patent** pertains to encoding of digital signals for reduced-power broadcasting over two communication channels, where the original data can be retrieved even if only one of the channels is available.  The **'1084 patent** pertains to detecting and compensating for interference errors, such as those caused by reflection of a data signal by obstacles.   The **'3084 patent** pertains to generation and detection of amplitude-modulated reference symbols that allow for robust identification of the data portion of a signal.  Finally, the **'997 patent** pertains to the detection and correction of desynchronization between transmitter and receiver oscillators.  Additional details regarding these inventions are provided in Fraunhofer's technical tutorial, submitted on DVD simultaneously with this brief.

This case is currently at the fact discovery and claim construction phase.  As part of the claim construction process, the parties have successfully reached agreement on the following issues: (1) the '289 patent claim preambles are limiting; (2) the term "terrestrial sender" from the '289 patent should be construed to mean "terrestrial repeater"; and (3) the term "multi-cattier" from the '1084 patent should be corrected to read "multi-carrier."  *See* D.I. 112 at 2, 9.

Of the remaining claim construction disputes, the parties have selected 14 issues to be presented at the *Markman* stage, pursuant to Court order. *Id.* at 2-9. Nearly all of these are directed to terms that SXM originally identified in its initial claim construction disclosure.

Fraunhofer respectfully requests that the Court reject SXM's claim construction proposals in their entirety. In many instances, SXM argues that Fraunhofer's inventions as claimed should be limited to particular aspects of a mere example or embodiment provided in the specification. In so doing, SXM contravenes the well-established rule that claims are not to be limited to a preferred embodiment. SXM similarly fails to perform a proper analysis for its proffered constructions under 35 U.S.C. § 112, ¶ 6, ignoring well-settled precedent regarding "step-plus-function" terms and proposing structures overladen with extraneous detail in a bid to narrow the claims. SXM further proposes a number of confusing and inaccurate technical constructions for simple terms like "transmitting," "channel," and "symbol." None of these approaches do anything to actually clarify claim meaning or aid comprehension by the jury.

By contrast, Fraunhofer has identified among the disputed terms those terms that could genuinely benefit from further explanation, and for these has offered straightforward constructions that hew faithfully to the description of the invention set forth in the claims and specification. For the reasons set forth below, the Court should adopt Fraunhofer's proposed constructions for terms requiring construction, and reject SXM's misguided alternatives.

## I.    LEGAL BACKGROUND

Claims are generally "construed according to [their] ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention." *Wavetronix, LLC v. E.I.S. Elec. Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009). The Federal Circuit has taught that the context provided by language in the surrounding claim, as well as other claims of the patent, provide "substantial guidance as to the meaning of particular claim terms." *Phillips v.*

*AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  Moreover, the meaning of claims is also to be considered "in view of the specification, of which [the claims] are a part." *Id.*at 1313.  In applying these principles, one must take care to avoid "one of the cardinal sins of patent law – reading a limitation from the written description into the claims." *SciMed Life Systems, Inc. v. Advanced Cardiovascular, Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001); *see also Phillips*, 415 F.3d at 1320.

The provisions of 35 U.S.C. § 112, ¶ 6 ("Section 112/6") provide a few specialized rules of construction that may be applied to certain claims commonly known as "means-plus-function" claims.  Under this approach, courts first identify the "function" recited by the claim and then identify the corresponding "structures" in the specification that are linked to that function. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003); *B. Braun Med., v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).  In identifying corresponding structure, one must take care to "not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001).

Determining whether or not Section 112/6 applies to a term at issue is a threshold step to be evaluated at the beginning of the claim construction exercise. *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1361 (Fed. Cir. 2000).  A claim term that contains the word "means" in connection with a function is subject to a presumption that any construction will be subject to Section 112/6. *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008).  That presumption is rebutted, however, "if the claim itself recites sufficient structure to perform the claimed function." *Id.*; *see also Envirco Corp. v. Clestra, Inc.*, 209 F.3d 1360, 1364 (Fed. Cir. 2000); *Sage Prods., Inc. v. Devon, Inc.*, 126 F.3d 1420, 1427–28 (Fed. Cir. 1997).

In theory, Section 112/6 can be applied not only to "means-plus-function" claims (which are generally apparatus or system claims) but also to method claims that recite a "step for" accomplishing some purpose without identifying a specific act.  *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997).   However, in practice, "step-plus-function" terms are exceedingly rare.  *See Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 848 (Fed. Cir. 1999) (Rader, J., concurring).   Indeed, it is not clear that the Federal Circuit has ever actually construed a method claim as including a "step-plus-function" term.

Terms appearing in the preamble of a claim also may be subject to special claim construction treatment, as a determination must be made whether the preamble constitutes an affirmative limitation on the scope of the claim.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (preamble is limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim.").

## II.    THE '289 PATENT

### A.    "channel"

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| channel (claims 1-3, 5, 6, 9-11, 13, 14, 17-20, 22, 23, 26-28, 30-32, 35) | No construction required<br>Alternatively: communication link or connection between two or more points, such as an uplink and/or downlink | a line of sight connection between a transmitter and receiver |

The simple term "channel" does not require construction.   It is hardly an obscure technical term, but rather one that is easily understood by anyone who has ever changed the channel on a television or tuned in to a particular radio station.   Given that the meaning of "channel" is clear on its face in the context of the '289 patent, no elaborate construction is required to further clarify its meaning.  *See, e.g.*, *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (no construction required where there is

no departure from ordinary meaning).

Alternatively, to the extent the Court finds it appropriate to provide a further clarifying construction, the Court should adopt Fraunhofer's proposal as it most accurately reflects the use of the term in the claims and specification.  For example, the specification describes "[s]atellite-based broadcasting systems provid[ing] … [a] communication link … involv[ing] … a channel." '289 patent, 1:13-20.  Moreover, the claims themselves demonstrate that this connection is "between two or more points," as shown (for example) in claims 3 and 20, which recite a "first channel … defined by an uplink connection from earth to the first satellite and a downlink connection from the first satellite to a receiver on earth."  *Id.*, 1:12-20, 14:3-6, 17:43-46.  Fraunhofer's construction is also consistent with the plain and ordinary meaning of "channel" for a person of ordinary skill at the time of the invention, as reflected in contemporaneous dictionary definitions.  *See*, *e.g.*, Ex. A (NEWTON'S TELECOM DICTIONARY) at 180 ("channel … a path of communication, either electrical or electromagnetic, between two or more points").

SXM's proposed construction, by contrast, appears designed to introduce ambiguity that could alter the scope of the claims in a manner contrary to the intrinsic record.  For example, it is not clear whether SXM considers its proposed construction broad enough to encompass embodiments such as those described in claims 3 and 20, where a single channel is described as extending from an uplink connection on earth to a satellite and continuing on to a receiver on earth through a downlink connection.  If SXM's proposed version of "channel" excludes this configuration, then it would mean that independent claims 1 and 19 are actually ***narrower*** than dependent claims 3 and 20 that depend on claims 1 and 19, contrary to the principle of claim differentiation.  *See AK Steel Corp. v. Sollac*, 344 F. 3d 1234, 1242 (Fed. Cir. 2003).  Thus, SXM's problematic construction should be rejected in favor of the one proposed by Fraunhofer,

which clearly covers the claimed embodiments.

**B.**     **"means for transmitting …" / "step of transmitting …"**

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| means for transmitting the output bits of the first portion via a first channel and the output bits of the second portion via a second channel, the second channel being spatially different from the first channel (claim 2) | Definite<br><br>Function:  transmitting the output bits of the first portion via a first channel and the output bits of the second portion via a second channel<br><br>Structure: two transmitters | 35 U.S.C. § 112, ¶ 6<br><br>Indefinite<br><br>Alternative proposed construction:<br><br>Function: sending one signal comprising a first portion of output bits via a first channel and a second signal comprising the second portion of output bits via a second channel, the second channel being spatially different from the first channel |
| the step of transmitting being carried out by a first transmitter and a second transmitter spaced apart from the first transmitter (claim 19) | Not subject to 35 U.S.C. § 112 ¶ 6<br><br>Definite<br><br>No construction required | Structure: two transmitters consisting of (1) two satellites, (2) two terrestrial repeaters, or (3) a satellite and a terrestrial repeater, with one of the transmitter having a delay stage |

Two of the '289 patent claim terms at issue are lengthy phrases relating to "transmitting." One of these describes a component of a system ("means for transmitting …"), while the other is a step in a method ("step of transmitting …").   SXM proposes that, despite significant differences in language and context, these terms should be given an identical construction under Section 112/6 that improperly imports the concept of a "delay stage."  Fraunhofer disagrees.

*1.     Section 112/6 does not apply to the "step of transmitting …"*

A threshold question is whether Section 112/6 applies to the "transmitting" terms. *Kemco*, 208 F. 3d at 1361.  In this case, Fraunhofer does not object to the construction of "means for transmitting …" pursuant to Section 112/6.  However, the "step of transmitting …" phrase is not a "step-plus-function" term and should not be construed in accordance with Section 112/6.

The most significant test for evaluating whether Section 112/6 applies to a method claim is whether it uses the signal words "step for."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,

381 F.3d 1371, 1382 (Fed. Cir. 2004).  If a claim term omits the words "step for," a presumption arises that it is *not* to be construed as step-plus-function term.  *Id.*  Significantly, the Federal Circuit has made clear that use of the words "step *of*" instead of "step *for*" is not sufficient to invoke Section 112/6.  *Masco Corp. v. U.S.*, 303 F.3d 1316, 1327 (Fed. Cir. 2002).  That is because method claims are often drafted "by reciting the phrase 'steps of' followed by a list of actions comprising the method claimed," and thus it makes little sense to interpret that mundane formulation as reflecting an intent to invoke the special provisions of Section 112/6.  *Id.*

In this case, the "step *of* transmitting …" term from the '289 patent plainly uses the phrase "step *of*" and not "step *for*."  This means that Section 112/6 is presumed *not* to apply to the term, and it is presumed *not* to be a "step-plus-function" term.  Nor is there any other indicia in the claim that might overcome this presumption.  For example, a method step could qualify as a "step-plus-function" term in the rare case that it entirely fails to disclose a concrete "act." *Masco*, 303 F.3d at 1327.  In *Masco*, the claim at issue included the step of "transmitting a force … to drive the lever to a position where the protrusion can contact the surface."  *Id.*  The court pointed to the word "transmitting" as the requisite "act" that rendered Section 112/6 inapplicable. *Id.* at 1326-27.   In this case, the term at issue likewise recites the affirmative act of "transmitting," further reinforcing that Section 112/6 does not apply.

Finally, SXM fails to even provide a proper "step-plus-function" analysis in its proposal. Its proposed construction does not identify any "step" or any acts in the specification that allegedly correspond to the term.  Instead, SXM simply points to the same structure that it identified in connection with "means-plus-function" claim 2.  Of course, it makes little sense to construe the method steps of claim 18 in a manner that would transform them into a structure.

The "step of transmitting …" term thus fails to present the type of unusual circumstances

that could merit application of Section 112/6 to a method claim.  The term is clear on its face, and no further construction is required.

### 2.     The "means for transmitting …" does not include a delay stage

Although Fraunhofer does not object to construing the "means for transmitting …" term pursuant to Section 112/6, Fraunhofer has offered an alternate "means-plus-function" construction in place of SXM's elaborate and unduly complicated proposal.  Fraunhofer's proposed function tracks the language exactly as it is recited in the term: "transmitting the output bits of the first portion via a first channel and the output bits of the second portion via a second channel."   SXM's proposal, by contrast, rephrases and augments the recited function, unnecessarily reframing "transmitting" as "sending" and introducing a "first signal" and a "second signal"—terms that appear nowhere in the original claim.  *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (construction of means-plus-function terms should "not import functional limitations that are not recited in the claim").

SXM likewise errs in its attempt to identify a corresponding structure.  Although both parties agree that the structure includes at least two transmitters, SXM goes further by requiring particular types of transmitters (without support) and insisting that at least one of the transmitters must include "a delay stage."   Yet the '289 patent consistently treats the delay stage as a structure that is distinct from the transmitting means.  For example, independent claim 2 recites a "means for transmitting" even though claim 5, which depends on claim 2, further adds a "delay means" for "delaying the second portion of output bits."  '289 patent, 13:56, 14:15-18.  If SXM were correct that the delay stage were already part of the "means for transmitting," then claim 5 would be rendered a nullity—again violating the principle of claim differentiation.

Other portions of the specification likewise show that the delay stage is distinct from the transmitting means.  Even the basic system illustrated in Figure 7 demonstrates this point:



Figure 7 includes "two transmitters" shown at 66a ("Tr.#1") and 66b ("Tr.#2"), which are linked to the recited "transmitting" function in the specification. '289 patent, 7:63-67, 8:12-14, 8:42-45; *see also* Ex. B (WEBSTER'S COLLEGE DICTIONARY) at 1390 ("transmitter … 2. a device for sending radio waves"). By contrast, the delay elements 68 and 78 ("D") are distinct and not linked to the transmitting function. Thus, SXM's attempt to include these elements as part of the corresponding structure for this term is an improper importation of superfluous structural limitations from the specification. *See Wenger*, 239 F.3d at 1233 (rejecting "structural limitations from the written description that are unnecessary to perform the claimed function").

C.      "receiving means …"

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| receiving means for receiving the first portion of bits via a first channel and the second portion of bits via a second channel (claims 10, 13) | Function:  receiving the first portion of bits via a first channel and the second portion of bits via a second channel<br><br>Structure: a receiver | 35 U.S.C. § 112, ¶ 6<br><br>Function: receiving a first signal comprising a first portion of bits via a first channel and a second signal comprising a second portion of bits via a second channel<br><br>Structure: a terrestrial receiver with a delay stage that may be configured to buffer the portion of bits received via one channel relative to the portion of bits received from the second channel to compensate for the delay imposed by the delay stage in the transmitter on the portion of bits received via the second channel |

SXM's proposed construction for the "receiving means …" term is flawed for reasons similar to those discussed above for "means for transmitting …."  Rather than using the function

actually recited in the claim, SXM inexplicably drafts its own by introducing "a first signal" and "a second signal"—concepts that appear nowhere in the claim.  The parties also again agree on a baseline corresponding structure—in this case, a "receiver"—which is clearly linked with the claimed function in the specification.  *See, e.g.*, '289 patent, 8:16-20 ("[T]he receiving means, *i.e.*, **the receiver**, comprising a first receiver 240a for **receiving the first portion of output bits transmitted via the first channel** 300 and a second receiver 240b for **receiving the second portion of output bits via the second channel** 400.").  Yet SXM's construction goes on to needlessly introduce additional limitations from the specification, requiring that the receiver be "terrestrial," have a "delay stage," and "be configured to buffer" received bits "to compensate for the delay imposed by the delay stage in the transmitter."  The intrinsic record never suggests that any of this is necessary to perform the claimed "receiving" function.  Thus, SXM's additional verbiage should be rejected.  *Wenger*, 239 F.3d at 1233.

## III.   THE '1084 PATENT

### A.   "symbol"

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| symbol (claims 1, 9) | encoded representation of binary information | a component of a received signal that has an absolute value, i.e. magnitude, and a phase; the symbol may be represented by a complex vector that has a real part and an imaginary part |

Fraunhofer's construction of "symbol" faithfully tracks the characterization of the term in the intrinsic evidence.  For example, the specification states that "**binary information** is **represented** in the form of a complex spectrum, *i.e.*, a distinct number of complex subcarrier **symbols**."  '1084 patent, 1:30-32, 7:27-32.  This construction also comports with the plain and ordinary meaning of "symbol," as evidenced by the definition of the term in both technical and standard dictionaries.  *See*, *e.g.*, Ex. A (NEWTON'S TELECOM DICTIONARY) at 853 ("symbol … 2. In digital transmission, a recognizable electrical state which is associated with a signal

element"); Ex. B (WEBSTER'S COLLEGE DICTIONARY) at 1326 ("symbol … 1. something used for or regarded as representing something else").

SXM's construction improperly imports aspects of complex numbers into the definition of "symbol," in a manner inconsistent with the use of the term in the intrinsic record.  For example, the specification describes "complex subcarrier symbols" and "complex symbols," indicating that "symbol" by itself does not implicitly require being a "complex vector" having "an absolute value, i.e., a magnitude, and a phase," as suggested by SXM.  '1084 patent, 1:32, 7:55-56.  *See, e.g.*, *Phillips*, 415 F.3d at 1314 ("this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").  SXM thus fails to justify its complicated proposal to read additional limitations into this basic term.

**B.    "phase difference between simultaneous carriers …"**

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| a phase difference between simultaneous carriers having different frequencies (claims 1, 4, 9, 12) | No construction required<br>Alternatively: a phase difference between subcarriers with different frequencies in the same MCM symbol | the difference in the phase of two symbols on adjacent carriers on different frequencies |

SXM's proposed construction for "phase difference between simultaneous carriers …" is improper as it again attempts to narrowly redraft the actual claim language.  The specification teaches an approach by which information is encoded in the phase differences between subcarriers having different frequencies.  '1084 patent, Fig. 1, 5:47-48.  There is nothing in this disclosure that requires that this information be encoded between sub-carriers that are "adjacent" in frequency.  The independent claims thus merely require that the carriers have "different frequencies," with no mention of adjacency.  It is only the dependent claims that go further and recite "a phase difference between simultaneous carriers which are ***adjacent*** in the frequency axis direction."  *See, e.g.*, '1084 patent, 15:36-40, 16:55-58 (claims 2 and 10).  The presence of

this limitation in a dependent claim strongly suggests that it is not already included in the broader independent claim.  *See Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002); 37 C.F.R. § 1.75(c).  SXM's construction thus presents a clear violation of the principle of claim differentiation.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Because the claim term is clear on its face, it requires no construction.  Alternatively, if the Court determines that some further construction is warranted, Fraunhofer's proposal simply clarifies that "simultaneous carriers" are "subcarriers … in the **same MCM symbol**," consistent with the intrinsic evidence.  *See, e.g.*, '1084 patent, 2:63-3:7, Fig. 1.  By contrast, SXM's construction confusingly invokes "two symbols," which seems to read out the "simultaneous" limitation from the term altogether.  *Callicrate v. Wadsworth Mfg., Inc.* 427 F.3d 1361, 1369 (Fed. Cir. 2005) (error to read out limitation required by the claim language and specification).

### C.    "means for determining an echo phase offset …"

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| means for determining an echo phase offset for each decoded phase shift comprising means for eliminating phase shift uncertainties related to the transmitted information from said decoded phase shift (claim 9) | Definite<br><br>**(determining an echo phase offset)**<br><br>Function:  determining an echo phase offset for each decoded phase shift<br><br>Structure: a discarding unit and a computing unit in an MCM receiver<br><br>**(eliminating phase shift uncertainties)**<br><br>Function:  eliminating phase shift uncertainties related to the transmitted information from said decoded phase shift<br><br>Structure: a discarding unit in an MCM receiver | Indefinite<br><br>Alternative proposed construction:<br><br>Function: eliminating phase shift uncertainties related to the transmitted information from said decoded phase shift<br><br>Structure: a discarding unit that performs a (1) "(.)$^4$" operation, or (2) modulo-4 operation |

The "means for determining an echo phase offset …" term actually includes two different "means" clauses, clarifying that the "means for determining" further includes a "means for

eliminating ...."  Only Fraunhofer's construction accounts for both of these "means" clauses, while SXM appears to entirely and improperly ignore the first ("means for determining").  The parties agree that the "discarding unit" (shown as element 500 in Fig. 5) is what accomplishes the function of "eliminating phase shift uncertainties."  Yet the intrinsic evidence also shows a clear link between the "computing unit" (element 514) and the function of "determining an echo phase offset" (*see* '1084 patent, 10:15-31).  SXM's construction fails to mention this structure.

SXM's construction also misses the mark by importing superfluous limitations regarding functions that may be performed by the discarding unit.  The specification characterizes these with permissive language as part of exemplary embodiments, as opposed to requiring them to perform the claimed function.  *Id.* at 10:7-14 ("[T]he discarding unit **can** perform a "(.)[4]" operation. . . . The same effect **could** be reached with a modulo-4 operation.") (emphases added).  Such optional operational features of the discarding unit structure are clearly "unnecessary to perform the claimed function," and should therefore not be imported by construction.  *B. Braun*, 124 F.3d at 1424; *Wenger*, 239 F.3d at 1233.  In effect, SXM seeks to further limit the recited *function* of the term by importing additional functional limitations ("performs a (1) (.)[4] operation, or (2) modulo-4 operation") via a proposed *structure*—an approach that the Federal Circuit has disapproved.  *See, e.g.*, *JVW Enterp., Inc. v. Interact Access., Inc.*, 424 F.3d 1324, 1330-31 (Fed. Cir. 2005) (rejecting construction that "confuses function with structure," improperly "adopting a function different from that explicitly recited in the claim").

### D.  "means for correcting each decoded phase shift …"

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| means for correcting each decoded phase shift based on said averaged offset (claim 9) | Function:  correcting each decoded phase shift based on said averaged phase offset<br><br>Structure: a phase rotation unit in an MCM receiver | Function: correcting each decoded phase shift based on the mean offset<br><br>Structure: a phase rotation unit connected to a hold unit that corrects each decoded phase shift using the mean offset by performing the calculation<br><br>$$v'_k = v_k \cdot e^{-j\hat{\theta}}$$<br><br>where v'k designates the K phase corrected differently decoded symbols for the input into the soft-metric calculations, and vk designates the input symbols |

The parties' dispute regarding the "means for correcting …" term again pits Fraunhofer's straightforward articulation of function and structure with an improperly narrow construction elaborated by SXM.  Fraunhofer's proposed function comes from the claim language itself, while SXM seeks to fundamentally rewrite that function.  *See Wenger*, 239 F.3d at 1233. Similarly, the corresponding structure identified by Fraunhofer is unambiguously linked to the recited function in the specification.  *See*, *e.g.*, '1084 patent, 10:60-61 ("The phase rotation unit 524 performs the correction of the phase offsets …."); *B. Braun*, 124 F.3d at 1424.  By contrast, SXM's identified structure imposes a variety of superfluous limitations from the written description that are neither clearly linked to the recited function nor necessary to perform it, including "a hold unit" and "soft-metric calculations."   SXM's proposal is contrary to legal principles of construction and should be rejected.  *JVW Enterprises,* 424 F.3d at 1330-31.

## IV.  THE '3084 PATENT

### A.  Preambles

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| [preambles] (claims 1, 6, 9, 18, 24, 28, 32, 41) | Preambles of independent claims are limiting | Preambles are limiting except for the portions reciting multi-carrier modulated signal. |

The parties agree that the preambles in the '3084 patent are at least partially limiting, yet SXM inexplicably seeks to carve out a single phrase ("multi-carrier modulated signal") from this agreement.  (This phrase only appears in claims 6, 18, 28, and 41, suggesting the parties actually have no dispute regarding the preambles of claims 1, 9, 24, and 32.)

The Court should adopt Fraunhofer's construction and hold that the preambles of the independent claims are limiting in their entirety.  Preambles are deemed limiting as a necessary part of the claim where limitations in the body of the claim "rely upon and derive antecedent basis from the preamble." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).  For example, in this case, the preambles of claims 18 and 41 recite "a multi-carrier modulated signal" having a particular frame structure, and the claim body goes on to refer to "**said** multi-carrier modulated signal."  This strongly suggests that the preamble language is limiting.  *See, e.g., Mayne Pharma Ltd v. Merck & Co.*, 2016 U.S. Dist. LEXIS 178517, *18-*19 (D. Del. 2016) (preamble limiting where it provides "antecedent basis" for term in claim body).

A preamble will also limit claim scope when it recites essential structure or is otherwise essential to understand limitations or terms in the claim body.  *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999).  In the case of the '3084 patent, both the title and "Summary of the Invention" reflect that a "multi-carrier modulated signal" is a key aspect of the invention.  *See, e.g.,*'3084 patent, 4:38-43, 5:11-16; *see also Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2016 U.S. Dist. LEXIS 107273, *15 (D. Del. 2016) (preamble term limiting as essential where it "appears in the patent's title and throughout the specification") (citing *Catalina*, 289 F.3d at 808).  Thus, these claim preambles should be found fully limiting.

**B.** **"generating said reference symbol ..." / "means for generating ..."**

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| generating said reference symbol by performing an amplitude modulation of a bit sequence, an envelope of the amplitude modulated bit sequence defining a reference pattern of said reference symbol" (claim 6) | Definite<br><br>Not subject to 35 U.S.C. § 112 ¶ 6<br><br>No construction required | 35 U.S.C. § 112, ¶ 6<br><br>Indefinite<br><br>Alternative proposed construction:<br><br>Function: generating a reference symbol<br><br>Structure: a binary array of length 92 stored in memory with the sequence |
| means for generating said reference symbol comprising an amplitude modulator for performing an amplitude modulation of a bit sequence (claim 28) | Definite<br><br>Not subject to 35 U.S.C. § 112 ¶ 6<br><br>Alternatively:<br><br>Function: generating said reference symbol<br><br>Structure: an amplitude modulator in an MCM transmitter | bin = [0 1 1 0 1 1 0 1 0 1 1 0 1 0 1 0<br>0 0 1 1 1 0 0 0 0 0 0 0 0 1 1 0<br>1 1 1 1 1 0 0 0 1 1 1 0 0 0 0 0<br>0 0 1 1 1 0 1 1 1 0 0 1 1 0 1 1<br>1 0 1 1 0 1 0 1 0 1 1 0 1 1 0 1<br>1 0 1 0 0 0 0 1 0 1 1 0]<br><br>with a modulator to convert this array into a second array of length 92 stored in memory with values<br><br>i_q = [0.5 1.5 1.5 0.5 1.5 0.5 1.5 0.5 1.5 1.5 0.5 1.5<br>0.5 1.5 0.5 0.5 0.5 1.5 1.5 1.5 0.5 0.5 0.5 0.5<br>0.5 0.5 0.5 1.5 1.5 0.5 1.5 1.5 1.5 1.5 0.5 0.5<br>0.5 1.5 1.5 1.5 0.5 0.5 0.5 0.5 0.5 0.5 1.5 1.5<br>1.5 0.5 1.5 1.5 1.5 0.5 0.5 1.5 1.5 0.5 1.5 1.5<br>0.5 1.5 1.5 0.5 1.5 0.5 1.5 0.5 1.5 1.5 0.5<br>0.5 1.5 0.5 1.5 0.5 0.5 0.5 1.5 0.5 1.5 1.5 0.5]<br><br>an interpolator to convert the second array into a third array i_q_int of length 184 stored in memory with values<br><br>i_q_int = [0.5000 1.0635 1.5000 1.7195 1.5000 0.8706 0.5000<br>0.8571 1.5000 1.7917 1.5000 0.8108 0.5000 1.0392<br>1.5000 1.0392 0.5000 0.8108 1.5000 1.7984 1.5000<br>0.8108 0.5000 1.0460 1.5000 0.9997 0.5000 0.9603<br>1.5000 1.1424 0.5000 0.8831 0.5000 0.4293 0.5000<br>0.9997 1.5000 1.5769 1.5000 1.5769 1.5000 1.0065<br>0.5000 0.3899 0.5000 0.5325 0.5000 0.4931 0.5000<br>0.4999 0.5000 0.4931 0.5000 0.5325 0.5000 0.3967<br>0.5000 0.9603 1.5000 1.7522 1.5000 0.8571 0.5000<br>0.8965 1.5000 1.6422 1.5000 1.4669 1.5000 1.4737<br>1.5000 1.6096 1.5000 0.9929 0.5000 0.4226 0.5000<br>0.4226 0.5000 0.9997 1.5000 1.5769 1.5000 1.5769<br>1.5000 1.0065 0.5000 0.3899 0.5000 0.5325 0.5000<br>0.4931 0.5000 0.4931 0.5000 0.5325 0.5000 0.3899<br>0.5000 1.0065 1.5000 1.5701 1.5000 1.6096 1.5000<br>0.8965 0.5000 0.8965 1.5000 1.6096 1.5000 1.2633<br>1.5000 1.0392 0.5000 0.2867 0.5000 0.9929 1.5000<br>1.7454 1.5000 0.8571 0.5000 0.9033 1.5000 1.6028<br>1.5000 1.6028 1.5000 0.9033 0.5000 0.8503 1.5000<br>1.7917 1.5000 0.8108 0.5000 1.0460 1.5000 0.9929<br>0.5000 0.9929 1.5000 1.0460 0.5000 0.8108 1.5000<br>1.7917 1.5000 0.8571 0.5000 0.8571 1.5000 1.7849<br>1.5000 0.8571 0.5000 0.8571 1.5000 1.7917 1.5000<br>0.8176 0.5000 1.0065 1.5000 1.1424 0.5000 0.3436<br>0.5000 0.5788 0.5000 0.3436 0.5000 1.1424 1.5000<br>1.0065 0.8312 1.5000 1.7263 1.5000 1.0635 0.5000<br>0.0637]<br><br>and a computing device for computing the amplitude of the reference symbol by performing the calculation<br><br>$amp\_int = i\_q\_int + j * i\_q\_int$ with amp_int being the reference symbol inserted periodically into the signal after the guard interval insertion |

SXM again proposes identical (and extraordinarily lengthy) constructions for two distinct claim terms.  One of these recites a step of a method ("generating said reference symbol …") and the other is a component of a system ("means for generating said reference symbol …").  As shown below, neither of these terms is properly subject to Section 112/6, and in any event neither should be limited to the incredibly particularized structure identified by SXM.

### 1.     *Section 112/6 does not apply to the "generating" terms*

The "generating …" term from method claim 6 is not a "step-plus-function" term subject to Section 112/6 for essentially the same reasons set forth above for the "step of transmitting …" term.  For example, this term does not use the signal words "step for," and it explicitly recites acts, including "generating said reference symbol."  *Masco*, 303 F.3d at 1327; *see also Cummins-Allison Corp. v. Glory, Ltd.*, 2005 U.S. Dist. LEXIS 6150, at *18 (N.D. Ill. Mar. 28, 2005) ("generating image signals" is an act precluding step-plus-function interpretation); *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, 2004 U.S. Dist. LEXIS 17489, at *79 (D. Del. Aug. 31, 2004) ("generating" phrase constituted a "definite act" under *Masco*); *Adobe Sys. Inc. v. Macromedia, Inc.*, 201 F. Supp. 2d 309, 317 (D. Del. 2002).

Section 112/6 is also inapplicable to the "means for generating …" term.  Although use of the word "means" may raise a presumption that a means-plus-function format was intended, that presumption is rebutted "if the claim itself recites sufficient structure to perform the claimed function."  *Net MoneyIN*, 545 F.3d at 1366; *see also Envirco*, 209 F.3d at 1364; *Sage Prods.,* 126 F.3d at 1427–28.  In this case, the term recites "means for generating said reference symbol," but then proceeds to identify the very structure that performs that function, namely "an amplitude modulator."  *See also* '3084 patent, 5:43-44, 7:6-8 (confirming this structure in specification). Moreover, a "modulator" is recognized in the art as designating a specific structure.  *See* Ex. C (McGraw-Hill Electronics Dictionary) at 296 ("modulator: A transmitter circuit or device

- 17 -

that varies the amplitude, frequency, phase, or other characteristic of a carrier signal"); *see also*

*TecSec, Inc. v. IBM Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013) (term recites sufficient structure

where it is used as such "in common parlance or by persons of skill").  Accordingly, the "means"

presumption is clearly rebutted here such that Section 112/6 is inapplicable.

### 2.     SXM's proposed structure is improper

Alternatively, even if the Court decides that Section 112/6 applies to "means for

generating …," the structure corresponding to the recited function is still just "an amplitude

modulator."   As noted above, the specification specifically ties this structure to the recited

function.   Moreover, the extensive details that SXM seeks to add are merely aspects of

embodiments that are not required to perform the claimed function.  *Wenger*, 239 F.3d at 1233.

For example, SXM proposes that performing the claimed function requires a specific

"underlying bit sequence of length 92" disclosed in "an **example** of a reference symbol of 184

samples."  '3084 patent, 14:11-24 (emphasis added); *see also id.* at 7:12-17 ("preferred

embodiments").   Again, there is no justification for SXM's attempt to smuggle in additional

unclaimed functions as part of a purported structure.  *JVW Enterprises,* 424 F.3d at 1330-31.

## V.     THE '997 PATENT

### A.     Preambles

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| [preambles] (claims 1, 4) | Preambles of independent claims are limiting | Preambles of independent claims not limiting. |

As with the '3084 patent, the Court should find that the preambles of the independent

claims in the '997 patent are fully limiting.  The preambles provide antecedent basis for at least

the following terms that appear in the claim body: "carrier," "frequency deviation," and

"symbols."  '997 patent at 21:40-57, 22:1-7, 22:15-39.  Because the preambles provide necessary

antecedent basis for these terms, they should be considered limiting. *Mayne Pharma*, 2016 U.S. Dist. LEXIS 178517 at \*18-\*19. Moreover, the preambles recite essential structure and steps that the applicant relied upon during prosecution to distinguish the prior art. For example, the preamble of claim 1 recites symbols being "differentially coded in the direction of the frequency axis." During prosecution, the applicant responded to a rejection based on the prior art "Ahn" patent by arguing that "[t]he Ahn patent is silent regarding a differential coding in the direction of the frequency axis." D.I. 112, Ex. E (2/19/2003 OA Response) at 11; D.I. 112, Ex. F (9/23/2003 OA Response) at 8; *see also id.* at 7-8 (distinguishing "Gledhill" patent on same grounds). The fact that the applicant relied upon the preamble during prosecution to distinguish prior art further indicates that the preamble should be considered limiting. *See, e.g., Kraft Foods Group Brands LLC v. TC Heartland, LLC*, 2016 U.S. Dist. LEXIS 28318, \*32 (D. Del. 2016) (preamble limiting where it was relied upon during prosecution to "overcome" a rejection).

**B.** **"phase differences between simultaneous carriers …"**

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| phase differences between simultaneous carriers having different frequencies (claim 4) | No construction required<br><br>Alternatively: phase differences between subcarriers with different frequencies in the same MCM symbol | the difference in the phase of two symbols on adjacent carriers having different frequencies |

The "phase differences …" term of the '997 patent presents issues similar to the "phase difference …" term of the '1084 patent, and thus Fraunhofer incorporates by reference that earlier discussion. *See also* '997 patent, Abstract, Fig. 2B, 2:40-42; D.I. 112, Ex. E (2/19/2003 OA Response) at 11 ("differential coding in the direction of the frequency axis").

C.     **"low path filter"**

| Claim Term | Fraunhofer Proposal | SXM Proposal |
|---|---|---|
| low path filter (claim 7) | Definite (should be corrected to "low pass filter") | Indefinite (should not be corrected) |

Finally, the Court should correct a typographical error in claim 7, fixing "low path filter" to read "low pass filter."  District courts are empowered to correct errors like this where "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims."  *Group One, Ltd. v. Hallmark, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005).  In this case, the intrinsic record makes clear that "low ***path***" is an inadvertent error.  The "low path filter" recited in claim 7 is described as "preceding said numerical controlled oscillator."  Figure 6 of the patent shows the numerical controlled oscillator ("NCO" 322) preceded by a loop filter (324), and the specification states, "[t]he loop filter 324 is a low **pass** filter":



'997 patent, Fig. 6, 10:4 (emphasis added).  Nothing in the prosecution history suggests a contrary interpretation.  Correction of the claimed "low path filter" to "low pass filter" is thus not subject to reasonable debate, and the Court should therefore make this correction.

- 20 -

   /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

OF COUNSEL:

Ben J. Yorks (admitted pro hac vice)
David McPhie (admitted pro hac vice)
Kamran Vakili (admitted pro hac vice)
Alexis Federico (admitted pro hac vice)

IRELL & MANELLA, LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
byorks@irell.com
dmcphie@irell.com
kvakili@irell.com
afederico@irell.com

Dated:  February 16, 2018