## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FRAUNHOFER-GESELLSCHAFT ZUR
FÖRDERUNG DER ANGEWANDTEN
FORSCHUNG E.V.,

       Plaintiff,

v.

SIRIUS XM RADIO INC.,

       Defendant.

)
)
)
)
)
)
)
)   C.A. No. 17-cv-184-JFB-SRF
)
)
)
)
)
)
)

## PLAINTIFF'S ANSWERING CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Ben J. Yorks (admitted pro hac vice)
David McPhie (admitted pro hac vice)
Kamran Vakili (admitted pro hac vice)
Alexis Federico (admitted pro hac vice)

IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile:  (949) 760-5200
byorks@irell.com
dmcphie@irell.com
kvakili@irell.com
afederico@irell.com

Dated:  March 16, 2018

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)

FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys For Plaintiff*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................1

II.    THE '289 PATENT ............................................................2

    A.     "channel"...........................................................2

    B.     "means for transmitting …" / "step of transmitting …"........................4

        1.     Section 112/6 does not apply to the "step of transmitting …" ................4

        2.     The "transmitting" terms do not include a delay stage ............................6

C.    "receiving means …"........................................................8

III.    THE '3084 PATENT ............................................................9

    A.     Preambles .............................................................9

    B.     "generating said reference symbol …" / "means for generating …"................10

        1.     Section 112/6 does not apply to the "generating" terms........................10

        2.     SXM's proposed structure is improper ...................................11

IV.    THE '1084 PATENT ............................................................14

    A.     "symbol" .............................................................14

    B.     "phase difference between simultaneous carriers …" ........................15

    C.     "means for determining an echo phase offset …" ............................16

    D.     "means for correcting each decoded phase shift …" ........................17

V.    THE '997 PATENT ............................................................18

    A.     Preambles .............................................................18

    B.     "phase differences between simultaneous carriers …"........................19

    C.     "low path filter" ........................................................19

VI.    CONCLUSION................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  659 F.3d 1121 (Fed. Cir. 2011)..................................................................7

*Acumed LLC V. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007).............................................................2, 3

*ARRIS Int'l PLC v. Sony Corp.*,
  2017 WL 4349410 (Pat. Tr. App. Bd. Sep. 28, 2017) ......................12, 13

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
  388 F.3d 858 (Fed. Cir. 2004)...................................................................2

*Fontem Ventures, B.V. v. NJOY, Inc.*,
  2015 WL 12766460 (C.D. Cal. Jan. 29, 2015) ........................................7

*Generation II Orthotics Inc. v. Medical Tech. Inc.*,
  263 F.3d 1356 (Fed. Cir. 2001)................................................................5

*Gerber Scientific Intern., Inc. v. Roland DGA Corp.*,
  2011 WL 6293125 (D. Conn. Jan. 14, 2011) .........................................13

*Impax Labs., Inc. v. Lannett Holdings, Inc.*,
  2015 WL 7737309 (D. Del. Dec. 1, 2015)..............................................10

*Industrial Eng'g, Inc. v. Static Control Components, Inc.*,
  2014 WL 4545857 (M.D. Fla Sep. 12, 2014) .........................................13

*Kraft Foods Group Brands LLC v. TC Heartland, LLC*,
  2016 U.S. Dist. LEXIS 28318 (D. Del. 2016) ........................................18

*Masco Corp. v. U.S.*,
  303 F.3d 1316 (Fed. Cir. 2002)..........................................................5, 10

*Mentor Graphics Corporation v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017)................................................................4

*Mobile Telecommunications Technologies, LLC v. LG Electronics Mobilecomm
USA, Inc.*,
  2015 WL 2250418 (E.D. Tex. May 13, 2015) ........................................13

*Net MoneyIN, Inc. v. Verisign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008)..............................................................11

*O.I. Corp. v. Tekmar Co.*,
 115 F.3d 1576 (Fed. Cir. 1997)..................................................................................5

*Omega Engineering, Inc. v. Raytek Corp.*,
 334 F.3d 1314 (Fed. Cir 2003)..........................................................................8, 9, 19

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................................... passim

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
 739 F.3d 1367 (Fed. Cir. 2014)..................................................................................9

*Rambus Inc. v. Infineon Technologies Ag*,
 318 F.3d 1081 (Fed. Cir. 2003)..................................................................................7

*Sanofi v. Lupin Atlantis Holdings S.A.*,
 2016 WL 5842327 (D. Del. Oct. 3, 2016) ................................................................9

*SciMed Life Systems, Inc. v. Advanced Cardiovascular, Inc.*,
 242 F.3d 1337 (Fed. Cir. 2001)..........................................................................7, 17

*Stanacard, LLC v. Rebtel Networks, AB*,
 680 F. Supp. 2d 483 (S.D.N.Y. Jan. 6, 2010) ......................................................13

*Thorner v. Sony Comp. Ent. Am. LLC*,
 669 F.3d 1362 ..............................................................................................................2

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996)..........................................................................7, 9, 19

*W.E. Hall Co., Inc. v. Atlanta Corrugating LLC*,
 370 F.3d 1343 (Fed. Cir. 2004)..................................................................................3

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
 239 F.3d 1225 (Fed. Cir. 2001)..........................................................................7, 8, 16

*WMS Gaming, Inc. v. Int'l Game Tech.*,
 184 F.3d 1339 (Fed.Cir.1999)..........................................................................11, 12, 13

## OTHER AUTHORITIES

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY.......................................................18

OXFORD DICTIONARY .......................................................................................................18

## I.      INTRODUCTION

Plaintiff Fraunhofer respectfully submits this answering claim construction brief in its infringement case against Defendant Sirius XM ("SXM").

The claim construction proposals offered in SXM's opening brief suffer from a host of deficiencies and should not be adopted.  Among other problems, SXM's proposals:

- commit the "cardinal sin" of importing narrow features from the specification that were only intended to reflect illustrative aspects of exemplary embodiments;

- fail to observe Federal Circuit law in misapplying Section 112/6, including unfounded "step-plus-function" constructions for multiple terms;

- ignore the interpretive guidance of dependent claims under the well-established doctrine of "claim differentiation"; and

- improperly rely upon litigation-inspired expert testimony in support of constructions that are contrary to law and the intrinsic record.

Responses to SXM's misguided arguments and proposals are set forth in turn below.[1] Fraunhofer respectfully submits that the Court should decline to adopt SXM's constructions and instead apply the claim construction proposals propounded by Fraunhofer, which faithfully convey the meaning and scope of the patent claims as reflected in the intrinsic record.

---

[1] For ease of reference, Fraunhofer's answering brief adopts the order of patents set forth in SXM's opening claim construction brief ('289, '3084, '1084, '997).  Copies of all patents are attached as Exhibits A through D to the parties' Joint Claim Construction Chart (D.I. 112).

## II.      THE '289 PATENT

### A.      "channel"

The essence of SXM's cursory argument for the simple term "channel" is that the patentee acted as a "lexicographer" to provide its own specific definition for the term. SXM Opening Brief ("SXM Br.") (D.I. 115) at 10. But in fact, SXM fails to satisfy the legal standard required for this interpretive approach—even under its own cited case law.

A patentee will be found to have acted "as his own lexicographer" for purposes of claim construction only when the patent "***clearly*** set[s] forth a definition of the disputed term other than its plain and ordinary meaning." *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, at 1365 (cited by SXM) (emphasis added and internal quotes omitted). That is because the "lexicographer" doctrine is an "exception" to the usual rule that claims are to be given their "ordinary and customary meaning as understood by a person of ordinary skill in the art." *Id.* Thus, it is not enough to show that the patentee disclosed a single embodiment or used a word consistently in multiple embodiments; rather, the patentee must be shown to have "***clearly*** express[ed] an intent to redefine the term." *Id.* (emphasis added and internal quotes omitted); *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (definition in specification is controlling "insofar as it provides clear lexicography").

The Federal Circuit has explained that the mere use of some variation of the word "define" in a specification is insufficient on its own to satisfy the high burden required to show a clear intent to act as "lexicographer." For example, in *Acumed LLC V. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007), the court considered and rejected a "lexicographer" argument that relied on the patent's use of the phrases "defined on" and "each of which is defined." *Id.* at 808. The *Acumed* court held that it is not always proper to consider "the word 'define'" as a "signifier of limitation," and that erroneous constructions would result if a "restrictive definition" of a term

was to be found "anywhere the word 'define' might appear in [the] patent, regardless of context." *Id.* In *Acumed*, the court noted that variations of the word "define" in the patent helped articulate the relationship between physical structures and non-physical concepts described in the claims (e.g., between curved portions of a nail and an imaginary central axis). *Id.* Thus, the patentee was not found to have acted as lexicographer because "the use of the word 'defined' here does not imply a lexicographic definition." *Id.*; *see also W.E. Hall Co., Inc. v. Atlanta Corrugating LLC*, 370 F.3d 1343, 1351 (Fed. Cir. 2004) (construing the term "open channels" consistent with ordinary meaning, despite use of words "defined by" and "define" to describe term in prosecution history).

Under this standard, SXM has fallen far short of its burden to show that the patentee clearly intended to act as lexicographer to redefine the word "channel." SXM focuses on a single statement from the specification that uses the word "defined" (SXM Br. at 10), but when considered in context, the statement plainly does not purport to provide a definition. At most, the passage only identifies certain characteristics that an intangible channel can be "***defined by***"—such as the presence of particular physical transmitters and receivers—not that the term "channel" is ***defined as*** having any particular restrictive meaning.

Perhaps most importantly, SXM does not even attempt to explain how its proposed construction accounts for the express context of the claims themselves, which state that a channel can be "defined" as including both an uplink and a downlink. For example, dependent claim 3 of the '289 patent provides in relevant part:

> such that the ***first channel is defined by an uplink connection*** from earth to the first satellite ***and a downlink connection*** from the first satellite to a receiver on earth, and such that the ***second channel is defined by a uplink connection*** from earth to the second satellite ***and a downlink connection*** from the second satellite to the receiver on earth.

'289 patent, claim 3 (emphasis added); *see also id.* at claim 20.[2]   Thus, to the extent that the

patentee "defined" anything regarding the term "channel," this express language appearing in the

claims themselves must be accounted for.   Fraunhofer's proposed construction does just that.

*See* Revised Joint Claim Construction Chart ("JCCC") (D.I. 112) at 3 ("communication link or

connection between two or more points, such as an uplink and/or downlink").

    Finally, the extrinsic evidence that SXM cites provides no support for SXM's proposed

construction.   The testimony from Mr. Jones actually undermines SXM's proposal, as he appears

to propose a distinct definition of "channel" ("the medium through which the signal travels from

a transmit antenna to a receive antenna") and then cites a portion of the specification that

provides yet another, different proposal (omitting the word "connection").   The differences

between these supposed definitions demonstrates that the '289 patent simply never intended to

define the term "channel" as suggested by SXM.   The Court should thus reject SXM's proposal.

 **B.**  **"means for transmitting …" / "step of transmitting …"**

  *1.*  *Section 112/6 does not apply to the "step of transmitting …"*

    SXM likewise errs in arguing as a threshold matter that the "step of transmitting …" term

should be construed pursuant to Section 112/6 as a "step-plus-function" term.   SXM's primary

argument is that, for purposes of this threshold inquiry regarding whether or not to apply Section

112/6 at all, the method and system claims of the '289 patent should be treated the same.   *See*

SXM Br. at 7-8.   Specifically, SXM contends that method claim 19 "corresponds directly to the

means for transmitting in [system] claim 2," and both parties agree the latter is indeed a "means-

plus-function" claim.   *Id.*

---

  **2** *See Mentor Graphics Corporation v. EVE-USA, Inc.*, 851 F.3d 1275, 1297 (Fed. Cir. 2017) (original claims constitute part of patent's written description as filed).

However, SXM's argument fails because the Federal Circuit has clearly held that the presence of "means-plus-function" apparatus or system claims in a patent is not itself an adequate reason to apply Section 112/6 to the method claims of the same patent.  For example, in *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997), the Federal Circuit considered a patent with an apparatus claim that used the signal words "means for," and a method claim that included steps using "essentially … the same language as the limitations in the apparatus claim." *Id.* at 1583.  The defendant argued that "because the method claims 'parallel' the apparatus claims, they must be construed consistently with the apparatus claims"—including by applying Section 112/6.  *Id.*  But the Federal Circuit rejected this argument, finding Section 112/6 inapplicable to the method claim and holding that "[e]ach claim must be independently reviewed in order to determine if it is subject to the requirements of section 112, ¶ 6."  *Id.*; *see also Generation II Orthotics Inc. v. Medical Tech. Inc.*, 263 F.3d 1356, 1368 (Fed. Cir. 2001).  Thus, the fact that the '289 patent contains some other "means-plus-function" claims in no way requires that the method claims should be construed as containing "step-plus-function" terms under Section 112/6.

SXM also ignores the presumption that Section 112/6 does not apply—because claim 19 does not use the phrase "step for" (*see Masco Corp. v. U.S.*, 303 F.3d 1316, 1327 (Fed. Cir. 2002))—and does not otherwise identify any aspect of the claim that could suggest this is one of the very few cases where Section 112/6 can be properly applied to a method claim.  In fact, "transmitting" is a well-understood "act," and claim 19 explains exactly how it is to be performed.  *See* Fraunhofer Opening Brief ("Fr. Br.") (D.I. 116) at 7.  SXM does not even identify any alleged "function" in claim 19, but inexplicably quotes language from claim 2 instead.  JCCC at 2 (SXM proposing identical "function" for claims 2 and 19).

Notably, SXM does not cite even a single Federal Circuit case in which Section 112/6 was found to apply to a method claim, and the handful of district court cases it cites (*see* SXM Br. at 5) are outliers that are easily distinguishable as involving extraordinarily vague method claim language directed to results without specifying the acts by which those results are to be achieved.  That is not the case for the "step of transmitting …."  The Court should therefore find that Section 112/6 does not apply.

### 2.     The "transmitting" terms do not include a delay stage

The rest of SXM's argument on the "transmitting" terms is focused entirely on attempting to import a "delay stage" limitation into SXM's proposed construction.  Yet the intrinsic evidence that SXM relies upon provides no support for this rewriting of the claims.  For example, SXM claims that a delay stage is necessary to achieve "time diversity," which SXM argues is "one of the primary goals of the claimed invention" according to the specification. SXM Br. at 6 (citing passage using the phrase "present invention").  Yet the cited passage actually makes clear that "time diversity" is *optional* in the inventive system of the '289 patent: "the inventive system, in fact, provides two different channels to allow for time ***and/or*** space diversity."  '289 patent, 5:59-67.  In other words, the specification's use of the term "and/or" plainly contemplates that the claimed invention can use *either* "time diversity" *or* "space diversity" *or* both.  This express teaching of the '289 patent completely undercuts SXM's argument that a "delay stage" is a mandatory element of the claimed invention.  It is not.

SXM also points to examples in the specification where a delay stage is included, but these are clearly exemplary embodiments that do not limit the scope of the claims.  For example, one cited portion of the patent states that a transmitting means "***may*** comprise one transmitter, e.g., one satellite and a delay stage."  '289 patent at 8:1-2 (emphasis added).  But SXM ignores the very next paragraph, which explains that the transmitting means can "[a]lternatively"

comprise "two transmitters positioned in different locations, to obtain space diversity." *Id.* at 8:12-14.   This reinforces the point made above that different versions of the invention can be built to include *either* time diversity *or* space diversity *or* both.   SXM's insistence on limiting the claims to require time diversity (and a delay stage) therefore commits one of the "cardinal sins" of claim construction: "reading a limitation from the written description into the claims." *SciMed Life Systems, Inc. v. Advanced Cardiovascular, Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc).

SXM also misapplies its cited case law.   For example, the *Verizon* and *Honeywell* cases in no way suggest that the mere use of the phrase "present invention" in the specification automatically effects a disclaimer of scope that limits the claims to a particular embodiment.   To the contrary, courts have repeatedly warned against such an approach, particularly where "other portions of the intrinsic evidence do not support applying the limitation to the entire patent." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011); *see also Rambus Inc. v. Infineon Technologies Ag*, 318 F.3d 1081, 1094-95 (Fed. Cir. 2003); *Fontem Ventures, B.V. v. NJOY, Inc.*, 2015 WL 12766460, at *18 (C.D. Cal. Jan. 29, 2015).   As shown above, the intrinsic record of the '289 patent clearly provides that time diversity with a delay stage is just one possible aspect of the invention rather than an absolute requirement.   *See also* '289 patent, claim 5 (dependent claim adding delay stage); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (applying claim differentiation to reject proposed incorporation of dependent claim limitations into independent means-plus-function claim).   And the litigation-inspired opinions of SXM's paid expert certainly cannot override these unmistakable teachings of the intrinsic record.   *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584-85 (Fed. Cir. 1996) (reversing claim construction as improperly based

on expert testimony that "was inconsistent with the specification and file history" and therefore "should have been accorded no weight"); *Phillips*, 415 F.3d at 1318 ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court"); *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332 (Fed. Cir 2003) (rejecting expert declaration used to identify corresponding structure for means-plus-function claim as improper attempt to "rewrite the patent's specification").

Accordingly, the Court should reject SXM's proposal to incorporate a "delay stage" into the "transmitting" terms.  And because SXM offers essentially no argument in favor of the other aspects of its proposed constructions, they can and should be rejected in their entirety.[3]

### C.      "receiving means …"

SXM's argument for the "receiving means …" term again mistakenly focuses on importing a "delay stage" requirement into the claims, which effort fails for the same reasons set forth above for the "transmitting" terms.  For example, SXM makes a similar attempt to rely on a few portions of the '289 patent specification, which it admittedly describes as just a "preferred embodiment."  *See* SXM Br. at 9 (citing '289 patent, Fig. 5 & 8:33-36).  As explained above, there is no reason to limit the scope of the claims to this one embodiment, particularly as the intrinsic record clearly contemplates that time diversity and a delay stage are ***optional*** properties of the inventive system.  *See, e.g.*, '289 patent, 5:59-67 ("the inventive system, in fact, provides two different channels to allow for time ***and/or*** space diversity"); *see also id.* at claim 11 (introducing "delay means" in dependent claim); *Wenger Mfg.*, 239 F.3d at 1233.  And again, it would be improper to allow the opinions of SXM's expert to limit the scope or construction of

---

[3] Notably, SXM makes no attempt to justify the function it proposed in the parties Joint Claim Construction Chart (*cf.* JCCC at 2), but instead now represents that the parties "agree on the function."  SXM Br. at 6.

the claims to something narrower than what is reflected in the intrinsic record.  *See, e.g.*, *Vitronics*, 90 F.3d at 1584-85; *Phillips*, 415 F.3d at 1318; *Omega*, 334 F.3d at 1332.

## III.    THE '3084 PATENT

### A.    Preambles

Based on SXM's opening brief, it appears the parties now agree that the preambles of claims 1, 9, 18, 24, and 32 are limiting in their entirety.  *See* D.I. 115 at 13.  For the remaining three claims (6, 28, and 41), SXM argues that the preamble is limiting except for the specific phrase "a multi-carrier modulated signal," on the theory that the phrase "only appears in the preamble of the asserted claim."  *Id.* at 13.  This is simply not true.  For example, the body of claim 41 expressly includes the term "said multi-carrier modulated signal."  *See* '3084 patent at 20:13-14.  In this instance, the word "said" is an explicit signal that this usage is intended to refer to the earlier usage of "multi-carrier modulated signal" found in the preamble.  *See Sanofi v. Lupin Atlantis Holdings S.A.*, 2016 WL 5842327, *3 (D. Del. Oct. 3, 2016) (preamble term "reducing a risk" deemed limiting where it provided antecedent basis for "reduction of **said** risk" in claim body); *see also Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1372-73 (Fed. Cir. 2014).  Claims 6 and 28 likewise use the related term "multi-carrier modulated symbols" in the claim body, consistent with the usage in their claim preambles.

Moreover, the intrinsic record clearly demonstrates that the use of multi-carrier modulated signals was integral to the invention as claimed. The entire specification is replete with references to "multi-carrier modulated signal," including in the "Summary of the Invention" itself.  *See, e.g.*, 4:39-40 ("the present invention provides a method for generating a multi-carrier modulated signal"); *see also id.* at 2:35, 5:12-13, 5:17, 5:31-33, 6:26-27, 6:31-33, 6:34, 6:37-38, 6:41-42, 6:47.  The concept is also reflected in the title of the patent ("MULTICARRIER").  These repeated references demonstrate that the disputed phrase represents a key feature of the

patent, thus imparting "life, meaning, and vitality" to the claims at issue.  *See Impax Labs., Inc. v. Lannett Holdings, Inc.*, 2015 WL 7737309, at *2-*3 (D. Del. Dec. 1, 2015) (preamble term limiting where highlighted as important to invention in patent's written description).

Accordingly, because the preambles at issue provide antecedent support for the claims, and because the intrinsic record uniformly demonstrates the importance of the "multi-carrier modulated signal" to the invention, the preamble should be recognized as limiting in its entirety.

### B.    "generating said reference symbol …" / "means for generating …"

#### 1.    Section 112/6 does not apply to the "generating" terms

SXM fails to demonstrate that either of the "generating" terms falls within the scope of Section 112/6.  With respect to the "generating said reference symbol …" term from method claim 6, SXM ignores the absence of the key words "step for," which gives rise to a presumption that Section 112/6 does **not** apply.  *Masco Corp. v. U.S.*, 303 F.3d 1316, 1327 (Fed. Cir. 2002).  None of SXM's arguments come close to overcoming that presumption.  For example, although SXM claims that this term merely recites an unexplained "goal" rather than an act (SXM Br. at 12), the term on its face describes in detail how the reference symbol is generated, e.g., via "amplitude modulation of a bit sequence, an envelope of the amplitude modulated bit sequence defining a reference pattern of said reference symbol."  *See* '3084 patent, claim 6.  Thus, it is plainly not true that Fraunhofer's construction would "capture **any** scenario for generating a reference symbol" (*cf.* SXM Br. at 12).  At the same time, the intrinsic record makes clear that the lengthy sequences that SXM seeks to import into the claim are only associated with "an **example** of a reference symbol," and that the invention is in no way limited to those particular sequences.  '3084 patent at 14:11 (emphasis added).  Once again, there is no basis to find that this is one of the very rare cases where Section 112/6 might be properly applied to a method claim.

The parties also dispute whether the "means for generating …" term of system claim 28 is subject to Section 112/6.  SXM presumes that it does based on the use of the word "means," but ignores that this presumption is overcome where the claim itself articulates the structure to be used for the claimed function.  *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008).  Even SXM concedes that a "modulator" constitutes structure, *see* JCCC at 6 (SXM citing "modulator" as part of the claimed "structure" for this term), and it is undisputed that the "amplitude modulator" structure is in fact recited directly in the claim itself.  *See* '3084 patent, claim 28.  Thus, Section 112/6 is inapplicable to both of the "generating" terms.

### 2.    *SXM's proposed structure is improper*

Alternatively, even if the Court were to apply Section 112/6 in this instance, SXM fails to justify its proposed structure, which improperly includes an elaborate articulation of algorithm with specific, detailed sequences.

In arguing that incorporation of an algorithm is required here, SXM relies on a flawed analogy to a line of Federal Circuit cases such as *Aristocrat* and *WMS Gaming*.  *See, e.g.*, SXM Br. at 2-3, 11-12.  As SXM puts it (quoting this case law): "In a means-plus-function claim ***in which the disclosed structure is a computer, or microprocessor***, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."  *Id.* (quoting *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed.Cir.1999)) (emphasis added).

The problem with SXM's argument as applied here is that the disclosed structure in the '3084 patent is ***not*** merely a general-purpose computer or microprocessor.  Nor does SXM even suggest that it is.  To the contrary, Fraunhofer identifies a specific physical component as the corresponding structure—"an amplitude modulator in an MCM transmitter"—which is much

more specific than the types of generic structures involved in *Aristocrat* and similar cases.  Thus, the term at issue here does not satisfy a basic threshold predicate in the case law cited by SXM.

Other cases have repeatedly rejected attempts to apply the *Aristocrat* rule to terms that do not disclose a general-purpose computer or microprocessor as the corresponding structure.  For example, in the recent case of *ARRIS Int'l PLC v. Sony Corp.*, 2017 WL 4349410 (Pat. Tr. App. Bd. Sep. 28, 2017), the parties agreed that the corresponding structure for a "means" term included a "controller," but disagreed over whether that controller should further "be linked to an algorithm."  *Id.* at *4.  After carefully considering applicable Federal Circuit precedent (including cases cited by SXM like *WMS Gaming*), the panel concluded that "importation of an algorithm into the corresponding structure" was not appropriate for a "non-computer implemented means-plus-function limitation."  *Id.* at *5.  In that case, the limitation at issue had "adequate corresponding structure that is neither a general-purpose computer nor a microprocessor."  *Id.*  Moreover, the panel noted that, although the patent did include some disclosure that was arguably algorithmic, that fact was not dispositive and did not require the conclusion that the identified structure was necessarily intended to be implemented by a computer.  *Id.* at *6 ("algorithms are not the sole province of computers").  Thus, "[a]bsent persuasive evidence that would support a threshold finding that the [claim terms] are computer-implemented," the panel was "not persuaded that it would be proper to read any algorithm from the specification into the claims."  *Id.*

Fraunhofer's identification of the amplitude modulator in an MCM transmitter fully qualifies as structure for the same reasons articulated in *ARRIS*.  SXM presents no argument or evidence suggesting that this amplitude modulator could be considered a general-purpose computer or microprocessor, and in fact the intrinsic record describes the "modulator" as a

specific component of an "MCM (OFDM) transmission system." *See, e.g.*, '3084 patent at 1:20-26, 18:10-23, 18:35-61.  On this record, it is not appropriate to apply the *Aristocrat* approach by importing the entirety of SXM's proposed algorithm into the corresponding structure for the term.  *ARRIS*, 2017 WL 4349410 at *4-*6; *see also Gerber Scientific Intern., Inc. v. Roland DGA Corp.*, 2011 WL 6293125 at *6 (D. Conn. Jan. 14, 2011) ("Since neither an algorithm or general use computer is claimed in the '135 Patent, neither [is] *Aristocrat* … applicable in this case."); *Industrial Eng'g, Inc. v. Static Control Components, Inc.*, 2014 WL 4545857 at *12 (M.D. Fla Sep. 12, 2014) ("*Aristocrat* does not apply" to claim term that "does not require a special purpose computer specifically programmed to carry out the recited functions").

Courts have noted in particular that the specific varieties of modules used in telecommunications systems can provide meaningful structure beyond the types of general-purpose computers involved in cases like *Aristocrat*.  *See, e.g.*, *Mobile Telecommunications Technologies, LLC v. LG Electronics Mobilecomm USA, Inc.*, 2015 WL 2250418 (E.D. Tex. May 13, 2015) (relying on "receiver" structure; "[b]ecause the specification links the claimed function to such structures rather than to a general-purpose computer, no algorithm is required"); *Stanacard, LLC v. Rebtel Networks, AB*, 680 F. Supp. 2d 483, 500-501 (S.D.N.Y. Jan. 6, 2010) (distinguishing *WMS Gaming* because claimed telecommunications "module" is not a general purpose computer).

SXM finally contends that its lengthy proposed structure must be added or else the claim would allegedly cover "any type of amplitude modulator in an MCM transmitter."  SXM Br. at 12.  But this ignores the fact that an amplitude modulator consistent with the invention is also expected to perform the claimed function of "generating said reference symbol."  *See, e.g.*, *ARRIS*, 2017 WL 4349410 at *12 (claims required "more than simply a 'generic' controller," but

rather a "controller that performs the claimed function"). If anything, it is SXM's proposed construction that leads to undesirable results, as it suggests that an infringer might try (as an improper attempt to avoid the patent) to change just one bit of the exemplary sequence disclosed in the written description, even though there is nothing about the invention that turns on that particular sequence. In any event, it is inappropriate to incorporate the lengthy tables of numbers in SXM's patents as these represent (at most) exemplary data rather than actual elements of an algorithm.[4] Accordingly, the Court should reject SXM's proposal.

## IV.   THE '1084 PATENT

### A.   "symbol"

For the term "symbol," SXM again proposes to "clarify" a simple term by replacing it with a lengthy and convoluted construction. The Court should reject SXM's proposal. Unlike Fraunhofer's straightforward proposed construction, which cleanly aligns with the claim language and the description in the patent itself (*see, e.g.*, '1084 patent at Fig. 2, 1:30-32, 7:27-32, claims 1 & 9), SXM's construction makes no sense in the context of the claim and is unnecessarily cumbered with elements that are either redundant or contradictory to other aspects of the claim and the intrinsic record.

For example, SXM's construction incorporates the concept of an "absolute value," even though that concept is already included in the express language of the claim. *See, e.g.*, '1084 patent at claim 1 ("absolute value of a symbol"). In opposing this redundancy, Fraunhofer is not trying to "read out" the concept of "absolute value" from the claim (as SXM claims, *see* SXM

---

[4] The *Intel* case cited by SXM (SXM Br. at 11) is irrelevant as it simply established that a generic bit string was appropriately included in the claims as construed in that case—not that patentees are to be limited to particular bit strings disclosed in their patent embodiments as a general matter.

Br. at 15), but rather believes there is no need to repeat a concept that already exists elsewhere in the claims.

SXM also tries to introduce the concept of a "phase" into its construction, relying on a portion of the specification describing a "complex number which represents the amplitude ***and/or*** phase modulation of a subcarrier in the equivalent baseband."  SXM Br. at 14 (emphasis added) (citing '1084 patent at 2:38-39).  Again, the plain meaning of this use of "and/or" is that the "phase modulation" is (at most) an ***optional*** component of a symbol.  That teaching of the patent is thus contrary to SXM's proposed construction, which includes "phase" as a ***required*** component of a symbol.

Finally, SXM's construction includes additional extraneous material, redefining the term "absolute value" to refer to a "magnitude," and providing superfluous commentary on how a symbol "may be represented" ("by a complex vector that has a real part and an imaginary part").  SXM offers no explanation for these additions, other than the litigation testimony of its expert.

The intrinsic record thus provides no reason to introduce any of these improper concepts into the definition of the simple term "symbol."  Although SXM again attempts to justify its approach by claiming that the patentee has acted as lexicographer (*see* SXM Br. at 14, citing *Thorner*), the cited portions of the specification simply do not provide the sort of clear definitional intent that is required to find that the patentee meant to invoke a special definition different from the ordinary meaning to those of ordinary skill in the art.

B.       **"phase difference between simultaneous carriers …"**

SXM's cursory argument for the "phase difference between simultaneous carriers …" term fails to provide any explanation or support for the most significant defect in SXM's proposal, i.e., its improper attempt to rewrite "carriers having different frequencies" to instead read "***adjacent*** carriers on different frequencies."   As is clear from the intrinsic record (including

the claim term itself), each of the multiple subcarriers in the inventive system of the '1084 patent has a "different frequenc[y]." *See* '1084 patent at Fig. 1, 5:47-48, claims 1, 4, 9, 12. A phase difference can be calculated between any two subcarriers with different frequencies, and there is no requirement in the patent that this can *only* be done between subcarriers on *adjacent* frequencies. On this point, SXM relies only on its expert, who in turn quotes a passage from the patent regarding "a phase offset between two neighboring symbols." SXM Br. at 16; Jones Decl ¶ 190 (quoting '1084 patent, 6:31-35). But this passage merely shows that the patentee knew how to describe the concept of adjacency when that was intended, and opted instead to use the broader term "different" in the claim. This intent is further confirmed by dependent claims that include an "adjacency" limitation, showing that it was not already included in the independent claims. *See* '1084 patent at claims 2, 10; *Wenger Mfg.*, 239 F.3d at 1233.

SXM also inexplicably tries to inject the word "symbols" into its construction, claiming that "the phase difference at issue involves the difference in phases of two symbols." SXM Br. at 16. This is just a rehash of SXM's argument that symbols necessarily include a phase, which (as shown above) is contradicted by the intrinsic record of the patent. Thus, SXM's proposal for this term should likewise be rejected.

C.     **"means for determining an echo phase offset …"**

The parties agree that the "means for determining an echo phase offset …" term is subject to Section 112/6 but otherwise disagree on proper construction for this term. SXM's position has been something of a moving target, as it originally claimed the term was indefinite (now an abandoned argument except possibly a single generic footnote of its brief, *see* SXM Br. at 3 n.3) and alternatively proposed a function that ignored almost the first half of the claim term (SXM has now added the phrase "determining an echo phase offset for each decoded phase shift" to its proposed function). *Compare* JCCC at 4 *with* SXM Br. at 17.

Assuming SXM is permitted to argue the new construction proposed in its opening brief, it now appears that the principal dispute is whether the structure covered by this term should or should not be required to perform a particular algorithm urged by SXM (in this case, a "(.)4" operation or modulo-4 operation).  SXM's attempted invocation of the *Aristocrat* rule fails for the same reasons set forth for the "generating" terms.  *See* Section III.B.2 above.  In this case, Fraunhofer's proposed construction includes the specific structure of a "discarding unit" (the box labeled 500 in Figure 5), which is part of the "echo phase offset correction device in a MCM receiver."  *See, e.g.*, '1084 patent at Figs. 4, 5, 7, 6:65-67, 9:32-33.  Neither SXM nor its expert presents any evidence or argument that this structure is a general-purpose computer or processor.  Accordingly, SXM's *Aristocrat* argument fails as a matter of law.

**D.      "means for correcting each decoded phase shift …"**

For the "means for correcting each decoded phase shift …" term, SXM also attempts to improperly import a specific algorithm into its construction, as in *Aristocrat* and its progeny.  This attempt fares no better than any of the others described above.  Simply put, SXM provides no evidence or other support for the notion that a "phase rotation unit in an MCM receiver" is merely a general-purpose computer or processor.  Without meeting this threshold requirement, it is not proper to require a particular exemplary algorithm as part of the corresponding structure.  *See* Section III.B.2 above.  Indeed, the equation that SXM cites is part of a portion of the specification that is described as a "first embodiment"—not the invention itself.  *See* '1084 patent at 10:1-2.

SXM also relies upon this same embodiment to argue that the word "averaged" should be limited to a "mean."  SXM Br. at 18.  This is just another example of SXM committing the "cardinal sin" of importing characteristics of the embodiments into the broader invention as claimed.  *SciMed*, 242 F.3d at 1340; *Phillips*, 415 F.3d at 1320.  Moreover, SXM presents no

proof that the concepts of "average" and "mean" are universally equivalent, and if anything there is evidence that "average" is a broader concept. *See, e.g.*, Ex. D (MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY) at 85 ("average … a single value (as a mean, mode, or median) that summarizes or represents the general significance of a set of unequal values"); Ex. E (OXFORD DICTIONARY) ("number expressing the central or typical value in a set of data …").  The Court should thus reject SXM's proposal on this point as well.

## V.     THE '997 PATENT

### A.     Preambles

With respect to the preambles of the '997 patent, SXM again takes a different position in its brief compared to what it articulated in the JCCC.  SXM now apparently agrees that the preambles of claims 1 and 4 are limiting in part.  *See* SXM Br. at 19; *cf.* JCCC at 8 (previously arguing entire preamble was "not limiting").   However, SXM still contends that certain portions of the preamble are not limiting: "each symbol being differentially coded in the direction of the frequency axis" (claim 1) and "each symbol being defined by phase differences between simultaneous carriers having different frequencies."  SXM Br. at 19.

SXM is clearly mistaken in characterizing these portions of the preamble as "inconsequential" and suggesting that they could be removed impacting the scope of the claim. Indeed, SXM entirely ignores critical portions of the intrinsic record in which the patent applicant relied upon these preamble concepts to help distinguish the prior art.  *See, e.g.*, D.I. 112, Ex. E (2/19/2003 OA Response) at 11 (distinguishing "Ahn" patent as lacking "differential coding in the direction of the frequency axis"); D.I. 112, Ex. F (9/23/2003 OA Response) at 8 (same); *id.* at 7-8 (distinguishing "Gledhill" patent on same grounds); *Kraft Foods Group Brands LLC v. TC Heartland, LLC*, 2016 U.S. Dist. LEXIS 28318, *32 (D. Del. 2016) (preamble limiting where it was relied upon during prosecution to "overcome" a rejection).  Although SXM

relies upon the conclusory testimony of its expert in asserting that these limitations are inconsequential, such extrinsic evidence cannot be given any weight where it clearly contradicts the intrinsic record. *Vitronics*, 90 F.3d at 1584-85; *Phillips*, 415 F.3d at 1318; *Omega*, 334 F.3d at 1332.

### B.    "phase differences between simultaneous carriers …"

SXM fails to address the "phase differences between simultaneous carriers …" term in its brief. *Cf.* SXM Br. at 19-20 (addressing disputes from '997 patent without discussing this term). Accordingly, Fraunhofer's proposal should be adopted and the Court should decline to construe this term. *See also* Section IV.B above.

### C.    "low path filter"

Finally, SXM does not raise any reasonable or meaningful debate on whether or not the "low path filter" was a simple error for the intended term "low pass filter." In arguing that no correction should be made, SXM relies on the testimony of its expert to the effect that a "low pass filter" is different from a "low path filter." SXM Br. at 20; Jones Decl. ¶¶ 224-228. But the relevant issue is not whether these two concepts are different; indeed, if they were synonyms, then there would be no need to correct. The relevant point is that the teachings of the intrinsic record unequivocally demonstrate that the particular component referred to in claim 7 is what would normally be referred to as a "low pass filter," not a "low path filter." SXM offers no reason to dispute this point, and accordingly the Court should grant Fraunhofer's request to correct this claim.

## VI.    CONCLUSION

For the foregoing reasons, Fraunhofer respectfully requests that the Court (1) adopt the parties' agreed claim construction proposals (*see* D.I. 116 at 1); and (2) adopt Fraunhofer's claim construction proposals as set forth above and in its opening brief.

Dated: March 16, 2018

Respectfully submitted,

FARNAN LLP

  /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

OF COUNSEL:

Ben J. Yorks (admitted pro hac vice)
David McPhie (admitted pro hac vice)
Kamran Vakili (admitted pro hac vice)
Alexis Federico (admitted pro hac vice)
IRELL & MANELLA, LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
byorks@irell.com
dmcphie@irell.com
kvakili@irell.com
afederico@irell.com