IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., </br></br>Plaintiff,</br></br>v.</br></br>SIRUS XM RADIO INC.,</br></br>Defendants. | )</br>)</br>)</br>)</br>)</br>)</br>)  Civil Action No. 17-184-JFB-SRF</br>)</br>)</br>)</br>) |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

Presently before the court in this patent infringement action is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 10), a motion to stay pending resolution of the motion to dismiss (D.I. 17), and a motion to stay pending *inter partes* review of the patents-in-suit (D.I. 131), filed by defendant Sirius XM Radio Inc. ("SXM"). For the following reasons, I recommend that the court grant the motion to dismiss, and deny the motions to stay as moot.

**II.    BACKGROUND**

Plaintiff Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. ("Fraunhofer") is an applied research organization in Europe, encompassing over sixty institutes and research units which develop real-world innovations in the fields of health, communications, security, transportation, and energy for both privately and publicly funded projects. (D.I. 1 at ¶ 1) In 1996, Fraunhofer developed patented technology related to multicarrier modulation (the "MCM technologies") for use in satellite radio broadcasting. (*Id.* at ¶¶ 4, 20) MCM is a method

of transmitting data by splitting it into several components and sending each of the components over separate carrier signals. (*Id.* at ¶ 4)

On March 4, 1998, Fraunhofer entered into an exclusive license agreement[1] with WorldSpace International Network Inc. ("WorldSpace") to license all patents for MCM technologies (the "MCM License"). (*Id.* at ¶ 21; D.I. 12, Ex. 1) Fraunhofer subsequently obtained U.S. Patent Nos. 6,314,289 ("the '289 patent"), 6,931,084 ("the '1084 patent"), 6,993,084 ("the '3084 patent"), and 7,061,997 ("the '997 patent") (collectively, the "patents-in-suit"), which relate to MCM technologies and are covered by the MCM License. (D.I. 1 at ¶ 21) Thereafter, on July 24, 1998, WorldSpace granted a sublicense under the MCM License to American Mobile Radio Corporation, which was renamed as XM Satellite Radio, Inc. ("XM Satellite"). (*Id.* at ¶ 22; D.I. 12, Ex. 3 at § 2) A June 7, 1999 amendment to the sublicense executed between WorldSpace and XM Satellite specified that the license granted to XM Satellite was "an irrevocable license." (D.I. 12, Ex. 4 at § 3) XM Satellite used the sublicensed technology to develop its Digital Audio Radio Services System (the "XM DARS System"). (D.I. 1 at ¶ 22) In 2008, XM Satellite merged with Sirius Satellite Radio to form SXM. (*Id.* at ¶ 26)

On October 17, 2008, WorldSpace filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (*Id.* at ¶ 27) On June 18, 2009, the debtors filed a motion for approval of a settlement agreement (the

---

[1] The exclusive nature of the MCM License is governed by § 3.2 of the agreement, which precludes Fraunhofer from using or licensing the MCM technology in a way that competes with WorldSpace's business. (D.I. 21, Ex. A at § 3.2) Section 2.1 of the MCM License provides that Fraunhofer continues to "own all right, title and interest in and to any and all MCM Intellectual Property Rights." (*Id.* at § 2.1)

2

"Settlement Agreement")[2] to terminate certain contracts between the parties and to pay the debtors a sum to fully satisfy the current and future payment obligations owed under the sublicense agreement. (D.I. 12, Ex. 5) The bankruptcy court approved the Settlement Agreement on July 13, 2009. (*Id.*, Ex. 6)

During a sale hearing on June 1, 2010, the bankruptcy court approved an agreement between WorldSpace, Fraunhofer, and Yazmi, a potential buyer of WorldSpace's assets, providing for the final disposition of WorldSpace's rights under three agreements and unambiguously rejecting the MCM License. (D.I. 1 at ¶ 27; 8/15/17 Tr. at 11:2-14) Because Fraunhofer and Yazmi never entered into a new agreement regarding the MCM License, the MCM License remained rejected. (D.I. 1 at ¶ 27 n.1; 8/15/17 Tr. at 11:15-12:2)

---

[2] In evaluating a motion to dismiss, a court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Generally, when materials outside the pleadings are presented on a motion to dismiss under Rule 12(b)(6), the motion is treated as one for summary judgment. Fed. R. Civ. P. 12(d); *see also Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006). However, some materials may be considered without converting the motion to dismiss into a motion for summary judgment. The court is not limited to the four corners of the complaint and may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2004)). The complaint in the present matter does not identify WorldSpace's June 18, 2009 motion for approval of the Settlement Agreement or the bankruptcy court's July 13, 2009 order approving the entry of the Settlement Agreement. However, both the motion and the order are publicly available on the bankruptcy court's docket, as is the Settlement Agreement itself. Consequently, the court may consider the Settlement Agreement in conjunction with the pending motion to dismiss.

3

On November 4, 2010, Fraunhofer filed a proof of claim[3] against WorldSpace in the amount of €16,024.57 for fees incurred under § 4.2 of the MCM License between May 31, 2009 and June 2, 2010. (D.I. 21, Ex. C)

On June 12, 2012, the chapter 11 bankruptcy proceeding was converted to a chapter 7 proceeding, following which the Trustee had sixty days to assume executory contracts and unexpired leases. (D.I. 1 at ¶ 28) The Trustee did not assume the MCM License.[4] As a result, the MCM License was rejected as of August 12, 2012. (*Id.*)

In October 2015, Fraunhofer informed SXM that it was infringing the patents-in-suit, and SXM claimed that it had the authority to continue using the MCM technologies. (*Id.* at ¶ 30)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

---

[3] The proof of claim is not identified in the complaint. However, it is a matter of public record and, thus, may be considered by the court at this stage of the proceedings without converting the motion to dismiss into a motion for summary judgment. *See* n.2, *supra*. The court further notes that both parties attached the proof of claim in support of their submissions. (D.I. 12, Ex. 1; D.I. 21, Ex. C)

[4] Fraunhofer directs the court to a letter transmitted to the chapter 7 trustee for WorldSpace on November 13, 2015, which confirms the termination of the MCM License. (D.I. 20, Ex. A) This letter is not available on the public bankruptcy docket and is therefore not appropriately considered at this stage of the proceedings without converting the pending motion to dismiss to one for summary judgment. Fed. R. Civ. P. 12(d); *see also Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006). The court will not consider the November 13, 2015 letter in conducting its analysis.

4

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[5] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[5] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV. DISCUSSION

The parties do not dispute that Fraunhofer granted WorldSpace an exclusive right to license all intellectual property rights for MCM technologies, including future patents relating to MCM, which encompasses the patents-in-suit. (D.I. 1 at ¶¶ 21-23; D.I. 11 at 8) The parties also agree that WorldSpace granted SXM's predecessors a sublicense to the patents-in-suit which extends to SXM. (D.I. 1 at ¶ 22; D.I. 11 at 8) The parties' disagreement centers on the effect of the rejection of the MCM License in the bankruptcy proceeding on SXM's sublicense. (D.I. 19 at 11-18)

According to SXM, the WorldSpace bankruptcy did not terminate SXM's sublicense to the patents-in-suit because contract rejection in the bankruptcy context is treated as a breach that allows the debtor's estate to avoid future performance of burdensome contractual obligations. (D.I. 11 at 11-12) In response, Fraunhofer contends that WorldSpace and SXM forfeited their future rights under the MCM License because the MCM License was rejected in the bankruptcy proceeding, and the sublicense was wholly dependent upon the preservation of rights under the MCM License. (D.I. 19 at 11-12)

Section 365(d)(1)[6] of Title 11 provides that, "[i]n a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract . . . within 60 days after the order for relief . . then such contract or lease is deemed rejected." 11 U.S.C. § 365(d)(1). Thus, the MCM License was deemed rejected as of August 12, 2012, following the conversion of the WorldSpace bankruptcy to chapter 7. The law is well-established that the rejection of an executory contract in bankruptcy constitutes a breach, relieving the debtor of both the burdens and the benefits of

---

[6] For purposes limited to the pending motion to dismiss, the parties agree to treat the MCM License and the sublicense as executory contracts subject to 11 U.S.C. § 365. (D.I. 11 at 11 n.10)

the agreement. *In re Teleglobe Commc'ns Corp.*, 304 B.R. 79, 83 (D. Del. 2004). Consequently, by not assuming the MCM License, WorldSpace forfeited its exclusive licensing rights to the patents-in-suit and suspended its obligations under the MCM License. *See In re Diomed Inc.*, 394 B.R. 260, 268 (Bankr. D. Mass. 2008) (holding that once rejection occurred, the debtor's right to the continued use of the exclusive patent license ended).

Moreover, WorldSpace's prospective licensing rights under the MCM License were effectively nullified by the June 2, 2010 sale order entered in the bankruptcy proceeding, in which WorldSpace acknowledged its default. (D.I. 20, Ex. D at 183) ("WorldSpace is in default under the license from Fraunhofer for the patents listed and identified in Schedule 1.1(i) as licensed from Fraunhofer.") In accordance with § 3.1 of the MCM License, Fraunhofer granted to WorldSpace "a worldwide, exclusive, irrevocable license, with the right to sublicense, under the MCM Intellectual Property Rights to make, have made, use, have used, sell or have sold MCM Technology . . . in connection with WorldSpace Business. (D.I. 12, Ex. 1 at § 3.1) However, § 7.4 of the MCM License places a condition on the rights granted under the agreement, stating that "[n]o termination or expiration of this Agreement shall effect the rights and licenses granted to WORLDSPACE under Article 3 hereof, provided that WORLDSPACE has paid (or has agreed in writing to pay) all of the amounts specified in Article 4 hereof as of the date of termination or expiration." (D.I. 12, Ex. 1 at § 7.4)

There is no dispute that WorldSpace satisfied its obligations to pay the $1 million license fee required under § 4.1 of the MCM License. (D.I. 19 at 17; D.I. 21 at ¶ 13) (identifying as unpaid only the €16,024.57 in reimbursable charges pursuant to § 4.2 of the MCM License) However, viewing the current record in the light most favorable to Fraunhofer, WorldSpace failed to pay fees and costs in the amount of approximately $22,000, as delineated in the proof of

claim filed by Fraunhofer on November 4, 2010 and in WorldSpace's admission that it was in default under the MCM License from Fraunhofer in the sale order entered by the bankruptcy court on June 2, 2010. (D.I. 21, Ex. C; D.I. 20, Ex. D at 183) Like the rejection of the MCM License in the bankruptcy proceeding, WorldSpace's default constitutes a material breach, but does not result in the termination of the irrevocable MCM License. *See Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 400 (5th Cir. 2008) (concluding that the license agreement could not be terminated, notwithstanding a material breach of the agreement, due to its irrevocable nature).

WorldSpace's default under the MCM License and its rejection of the MCM License in bankruptcy do not impact the continuation of SXM's irrevocable sublicense. WorldSpace's failure to pay all amounts specified in Article 4 of the MCM License preclude WorldSpace from granting future sublicenses under § 3.1. (D.I. 12, Ex. 1 at §§ 3.1, 7.4) However, SXM's sublicense was effective as of January 1, 1998, long before the rejection of WorldSpace's MCM License. (D.I. 12, Ex. 3) The parties to the sublicense agreement executed an amendment providing that the sublicense rights were irrevocable on June 7, 1999, further solidifying SXM's rights to its sublicense. (D.I. 12, Ex. 4 at § 3) Neither the allegations in Fraunhofer's complaint, nor the language of the MCM License or sublicense, establishes that the continuation of the sublicense is dependent upon non-termination of the MCM License. To the contrary, "[w]here a sub-licensee has lived up to the terms of the license it is inequitable that his license should be revoked because the main licensee has failed to do the same, especially where the sub-licensee has made extensive investments on the strengths of his license." *Rhone Poulenc Agro, S.A. v.*

*DeKalb Genetics Corp.*, 284 F.3d 1323, 1332 n.7 (Fed. Cir. 2002) (quoting Ridsdale Ellis, *Patent Licenses* §§ 62-63 (3d ed. 1958)).[7]

Fraunhofer's complaint does not plead that SXM's predecessors failed to fulfill their obligations under the sublicense agreement. On July 13, 2009, the bankruptcy court approved the Settlement Agreement between WorldSpace and XM Satellite, which provided that XM Satellite would pay WorldSpace $298,517 in satisfaction of all of its obligations under the sublicense, and emphasized that the sublicense would remain in effect. (D.I. 12, Ex. 5 at Ex. A, §§ 1, 3) There is no indication that XM Satellite failed to meet its obligations under the terms of the Settlement Agreement, or that any other breach occurred pertaining to the sublicense. Under these circumstances, the only applicable precedent cited to the court supports the proposition that the sublicense continues following the rejection of the MCM License in the bankruptcy proceeding. *See Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1332 (Fed. Cir. 2002) (observing that a sublicense continues, even when the principal license is terminated for breach of contract). Fraunhofer's arguments to the contrary are based on a series of cases addressing § 365(d)(4), which applies only to leases of nonresidential real property, and not to executory contracts. *See, e.g., Chatlos Sys., Inc. v. Kaplan*, 147 B.R. 96, 100 (D. Del.

---

[7] As noted in footnote 7 of *Rhone Poulenc*, "[a]n authorized sublicense is in effect an agreement with the [original] licensor. Unless the agreement with the licensee provides otherwise, the sublicense will continue despite the early termination of the license agreement." *Rhone Poulenc*, 284 F.3d at 1332 n.7 (quoting Brian G. Brunsvold & Dennis P. O'Reilley, *Drafting Patent License Agreements* 37 (BNA 4th ed. 1998)). Therefore, it is not necessary to reach the issue of whether there was an effective termination of WorldSpace's exclusive license in the bankruptcy case because it would not alter the recommendation in the instant case. Moreover, Fraunhofer's reliance on *Rhone Poulenc* to extinguish the sublicense is misplaced. The facts in *Rhone Poulenc* involved a rescission of the original license based on fraud. *Rhone Poulenc*, 284 F.3d at 1333-34. Thus, there were no patent rights to convey through a non-exclusive sublicense, only a "mere contract right." In the instant case, Fraunhofer offers no argument or authority that the original exclusive license to WorldSpace should be rescinded, resulting in rescission of the sublicense to XM Satellite. Therefore, the *bona fide* purchaser rule is not applicable.

9

1992); *In re TIE Commc'ns, Inc.*, 998 F.2d 1005 (3d Cir. 1993). Consequently, SXM's sublicense is independent of the MCM License, and is not extinguished by the rejection and alleged termination of that license.

The law is well-settled that a valid license is a complete defense to infringement. *See Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997); *Unidisco, Inc. v. Schattner*, 824 F.2d 965, 968 (Fed. Cir. 1987); *see also Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 228 (D. Del. 2001). Having concluded that SXM's sublicense rights to the patents-in-suit continue following the rejection of the MCM License in bankruptcy, I recommend that the court grant SXM's motion to dismiss.

## V.     CONCLUSION

For the foregoing reasons, I recommend that the court grant SXM's motion to dismiss pursuant to Rule 12(b)(6) (D.I. 10), and deny as moot SXM's motions to stay (D.I. 17; D.I. 131).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 29, 2018

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE