# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 17-184-JFB-SRF<br>) |
| SIRIUS XM RADIO INC., | )<br>) |
| Defendant. | ) |

## PLAINTIFF FRAUNHOFER'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF IN RESPONSE TO DEFENDANT SIRIUS XM'S EXPERT TESTIMONY

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Ben J. Yorks (admitted pro hac vice)
David McPhie (admitted pro hac vice)
IRELL & MANELLA, LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
byorks@irell.com
dmcphie@irell.com

Date: April 3, 2018

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................................................. 1

II. LEGAL BACKGROUND ................................................................................................ 1

III. RESPONSE TO EXPERT TESTIMONY OF MR. JONES ............................................. 2

    A.  Overview ................................................................................................................ 2

    B.  "channel" ('289 patent) .......................................................................................... 5

    C.  "means for transmitting …" / "step of transmitting …" ('289 patent) ................. 6

    D.  "receiving means …" ('289 patent) ....................................................................... 8

    E.  Preambles ('3084 patent) ....................................................................................... 8

    F.  "generating said reference symbol …" / "means for generating …" ('3084 patent) ............................................................................................................ 8

    G.  "symbol" ('1084 patent) ......................................................................................... 9

    H.  "phase difference between simultaneous carriers …" ('1084 patent) ................. 10

    I.  "means for determining an echo phase offset …" ('1084 patent) ...................... 10

    J.  "means for correcting each decoded phase shift …" ('1084 patent) .................. 10

    K.  Preambles ('997 patent) ....................................................................................... 10

**I.    INTRODUCTION**

Plaintiff Fraunhofer hereby provides this supplemental claim construction brief in response to the testimony of Mr. Nigel Jones—a paid expert hired by Defendant Sirius XM—as provided in his deposition of March 26, 2018.  *See* Ex. A ("Jones Tr.").  As explained below, the unfounded testimony of SXM's expert is defective as wholly inconsistent with the intrinsic record of the patents-in-suit, in addition to a host of other deficiencies.  According to well-established law, this improper testimony should be given no weight in the claim construction analysis in this case.

**II.   LEGAL BACKGROUND**

The Federal Circuit has made clear that expert evidence is at the very bottom of the hierarchy of evidence to be considered when performing a claim construction analysis.  The canonical case *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) teaches the long-standing rule that "extrinsic evidence" such as expert testimony is generally "less reliable" than intrinsic evidence from the patent and prosecution history.  *Id.* at 1318.  This is because reliance on extrinsic evidence "poses the risk" that it may be "used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents."  *Id.* (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed.Cir.1995)).

*Phillips* furthers explains the unique risks presented by expert testimony as compared to other types of extrinsic evidence.  For example, expert testimony is particularly vulnerable to undesirable "bias" because it is "generated at the time of and for the purpose of litigation," unlike dictionaries, treatises, and other extrinsic sources that are contemporaneous with the patent.  *Id.*; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996) (extrinsic evidence "rarely" needed to construe claim terms, and when it is, "prior art documents

and dictionaries … are more objective and reliable guides [than] … [expert] opinion testimony," which "should be treated with the utmost caution"). For this reasons, courts are specifically instructed to disregard expert testimony that is "at odds" with the intrinsic evidence, as well as expert evidence that is "conclusory" or otherwise "unsupported." *Phillips*, 415 F.3 at 1318; *see also Vitronics*, 90 F.3d at 1582-85 ("expert testimony … should have been accorded no weight" where inconsistent with intrinsic record).

### III.  RESPONSE TO EXPERT TESTIMONY OF MR. JONES

#### A.  Overview

Under these legal principles, the testimony of Mr. Jones clearly fails to provide any support for SXM's proposed constructions in this case and thus should be given no weight. In fact, Mr. Jones's testimony displays many of the red flags of improper extrinsic evidence that the Federal Circuit has warned of in its precedents: it is improperly biased, conclusory, and ultimately contrary to the intrinsic record and other much more reliable evidence of record.

In the first place, Mr. Jones frankly admitted in his deposition that he is "not an expert in claim construction." Jones Tr. at 130:5-6. Indeed, Mr. Jones has never before submitted claim construction opinions to the Court in any the four patent cases with which he was previously involved. *Id.* at 75:10-12, 78:11-18, 79:4-13. On the other hand, Mr. Jones does have plenty of litigation experience, having served as a paid consultant in many non-patent litigation matters. *See, e.g.*, *id.* at 28:1 – 29:13 (citing involvement with anti-piracy campaign encompassing "thousands" of non-patent cases). In the last year, Mr. Jones spent "about 80 percent" of his time on litigation work, and "probably 90 percent of [his] income was from litigation, maybe even more, 95 [percent]." *Id.* at 39:1-17. With a standard rate of $450 per hour, Mr. Jones has clocked "[s]ome 150 to 200 hours" of work for SXM so far, which comes out to up to $90,000 in compensation already earned from SXM in this case. *Id.* at 40:13-17, 41:8-10, 43:1. Mr. Jones

also has an ownership interest in a company called Astrapi, which is developing technology that Mr. Jones believes "could be used in a satellite radio system, like Sirius XM." Jones Tr. 83:13-19. Mr. Jones could not say whether or not this company is currently in business discussions with SXM. *Id.* at 82:3-17.

Mr. Jones conceded that he was not the one who came up with SXM's proposed constructions in this case, but rather received a set of constructions that he was asked to consider, which he assumed had been generated by "Sirius XM's lawyers." *Id.* at 103:2 – 104:6. Perhaps not surprisingly, the Jones Declaration fails to describe any particular process that Mr. Jones allegedly used to arrive at his claim construction opinions. *Id.* at 111:5-9 (admitting this point). The Jones Declaration does not even include the customary section setting forth any necessary legal principles that Mr. Jones used as a framework for his opinions, instead just providing a few legal statements scattered in a handful of paragraphs, while the rest of the declaration purports to apply "legal principles to particular issues in this particular case." *Id.* at 121:11 – 122:7. But even though Mr. Jones claims to have understood that claim construction is fundamentally an issue of law (*id.* at 113:15-18), he repeatedly conceded in his deposition that he was not familiar with even basic legal principles of claim construction. *See, e.g.*, *id.* at 128:16-20 (no formal training in "the legal principles governing how claim construction is to be performed"), 128:12-15 (no review of case law), 251:2-6 (not familiar with legal standard regarding when a patentee acts as lexicographer); 174:10-18 (no understanding of doctrine of claim differentiation); *see also id.* at 114:4-8 (not an attorney, no "legal training or background to speak of").[1]

---

[1] At other points of his deposition, Mr. Jones revealed that he had simply fabricated and applied his own legal standards, such as when he testified that a proper structure under Section 112/6 must "give you enough how to understand the particulars of the invention"—a requirement found nowhere in the case law. *See id.* at 162:15 – 163:3.

Moreover, although Mr. Jones initially claimed that his opinions were intended to provide insight into how one of ordinary skill in the art would interpret the claims, he ultimately admitted that the claim terms at issue here did ***not*** have a "commonly understood meaning within [his] field of expertise." *Id.* at 135:11 – 136:2, 137:8 – 139:6. Mr. Jones further acknowledged that the opinions as set forth in his declaration failed to provide any citations to any objective, external evidence that might support his opinions and conclusions (such as dictionaries, treatises, or interpretation of prior art). *Id.* at 220:1-6. He did not even provide any opinions on "what is the level of ordinary skill in the art … in the context of these patents." *Id.* at 141:1-5.

Mr. Jones admitted that even the technical tutorial portions of his declaration were not his own original work, but rather were originally provided by the SXM attorneys from an unknown source. *Id.* at 106:4-7, 108:6-19, 245:13 – 246:1, 249:11 – 250:18. At first, Mr. Jones claimed to have been "heavily" involved in editing the tutorial material he received from SXM's lawyers. *Id.* at 108:6-19. But Mr. Jones was then presented with a set of other expert declarations that SXM submitted in connection with its IPR petitions (which name a different expert, Dr. David Lyon), which contain lengthy passages that are nearly word-for-word identical to the technical tutorial passages that Mr. Jones submitted. *Compare, e.g.*, D.I. 117 ("Jones Decl.") at 26-35 with Ex. B ("Lyon Decl.") at 16-28.**[2]** Mr. Jones claimed to have never before seen Dr. Lyons's declarations, though he ultimately conceded that the tutorial material in the Jones Declaration had "very significant similarities" with Dr. Lyons's declaration, including "identical" graphics. *See* Jones Tr. at 245:13 – 246:1, 249:11 – 250:18.

In addition to these general deficiencies, Mr. Jones's testimony pertaining to specific claim terms also suffers from a number of particular defects, as addressed in turn below.

---

**[2]** The referenced page numbers from the Lyon Declaration are from the bottom ***center*** of the page (not the numbers from the bottom right).

B.       **"channel" ('289 patent)**

Mr. Jones admitted that claim 3 of the '289 patent defines the "channel" term as "the ***uplink and the downlink combined***." *Id.* at 300:15-18 (emphasis added). This is consistent with Fraunhofer's proposed construction (*see* D.I. 112 ("JCCC") at 3) but not with SXM's proposed construction. Indeed, Mr. Jones confirmed that "Sirius XM's construction of channel" would "exclude" the very embodiment set forth in dependent claim 3, where the "channel is defined by an uplink connection from Earth to satellite and a downlink connection from the satellite to a receiver on Earth." Jones Tr. at 259:10-18. Because claim 3 is part of the intrinsic record, the Court must disregard any expert testimony that is inconsistent with that intrinsic evidence. *Phillips*, 415 F.3 at 1318; *Vitronics*, 90 F.3d at 1584. *See also* Jones Tr. at 262:10-14 (admitting intrinsic record is "so clear that you didn't need to turn to any other external sources to understand the meaning of the term"), 228:11-15 (no opinion on whether term needs to be construed at all), 174:10-18 (did not consider claim differentiation).

The deposition testimony of Mr. Jones also demonstrated that extrinsic evidence actually supports Fraunhofer's proposed construction and not SXM's. The Jones Declaration does not set forth a separate section with opinions on the "channel" term (*see* Jones Decl. at Table of Contents)[3] and the reason for this omission became clear when Mr. Jones admitted that he understood the term "channel" to be defined in the literature to simply mean a medium that is "used to transmit the signal from the transmitting to the receiving point." *Id.* at 262:15 – 263:9 (citing Claude Shannon, "Communication in the Presence of Noise"; "I completely agree with Shannon's definition"). Mr. Jones acknowledged that, unlike his view of SXM's definition,

---

[3] Mr. Jones pointed out that he did mention channel in passing in his technical tutorial, which he admitted is "different from claim construction evidence." *Id.* at 77:5-8, 90:16-21. *See also* D.I. 26 at 6 (tutorial not to be used to argue claim construction contentions).

Shannon's definition "absolutely allows a signal to take multiple paths between a transmitter and a receiver." *Id.* at 263:16-21.[4] Thus, the testimony of Mr. Jones actually provides further support for Fraunhofer's proposed construction for the "channel" term.

### C. "means for transmitting …" / "step of transmitting …" ('289 patent)

The deposition testimony of Mr. Jones revealed a number of shortcomings in his opinions with respect to "means-plus-function" issues and Section 112/6, including with respect to the "transmitting" terms. For example, Mr. Jones confirmed that he is not offering opinions on "whether [S]ection 112/6 should apply" to a particular term, but rather took this as an assumption as part of his analysis. *Id.* at 184:21 – 185:7. He testified he has no understanding of legal presumptions involving Section 112/6 and has no opinions regarding whether those presumptions were overcome here. *Id.* at 171:3-9, 172:14-19; see also *id.* at 174:4-9 (confirming this point with respect to method claims in particular). Mr. Jones also testified that he had no opinions on whether or not it was "appropriate to incorporate an algorithm as structure" in connection with any of the terms in this case. *Id.* at 190:7-15. And although he stated that the patents are silent on whether they require claims to be performed on a general purpose computer or processor, he specifically affirmed that he did not think the claims in this case were "***required*** to be performed on a general purpose computer or processor." *Id.* at 224:10 – 225:2, 226:2-11 (emphasis added). This is consistent with Fraunhofer's position. *See* D.I. 138 at 11.

As applied to the "transmitting" terms, this testimony essentially leaves only Mr. Jones's opinions regarding whether a delay stage is required. As an initial matter, Mr. Jones testified that the intrinsic record is clear regarding the meaning of these terms, suggesting no extrinsic

---

[4] Mr. Jones later tried to distinguish this extrinsic evidence with some conclusory statements that he admitted were "not found anywhere in [his] declaration." *Id.* at 264:18 – 265:3.

evidence is necessary to decide this issue. *Id.* at 145:15 – 21, 146:16-3; *see also Phillips*, 415 F.3 at 1318; *Vitronics*, 90 F.3d at 1584. Moreover, Mr. Jones went on to admit that the problem of "signal fading" discussed in the '289 patent is not addressed by time diversity alone, but rather that "space diversity" can also help "address the problem of signal fading." *Id.* at 223:3-14. This testimony undermines Mr. Jones's opinion that the invention necessarily requires both spatial diversity *and* time diversity (with a delay stage) to address the issue of signal fading.

Mr. Jones also testified regarding the portion of the specification stating that "the inventive system … provides two different channels to allow for time ***and/or*** space diversity." *See* '289 patent, 5:59-67. Mr. Jones conceded that the term "and/or" did not generally have "any special meaning in [his] technical field," and that the "common every day" meaning of the term was to include the option of including either or both options (i.e., "A and/or B" encompasses three options: (1) "A," (2) "B," (3) "A and B"). *Id.* at 206:14-20, 207:8 – 209:2. He further testified that the patents in this case use the term "and/or" simply "in accordance with the common every day English usage of the term." *Id.* at 213:4-9. This admission weighs heavily against SXM's construction requiring the use of a delay stage, even though Mr. Jones later provided contradictory testimony on the "and/or" term in response to questions from SXM's lawyer (after a break). *See id.* at 284:12 – 288:14. In any event, the testimony of Mr. Jones cannot be used to change or contradict the clear teachings of the intrinsic record in this case. Indeed, Mr. Jones admitted that "one of ordinary skill would understand that a transmitter transmits" and that there is "nothing in controversy about that." *Id.* at 164:21 – 165:4

Finally, Mr. Jones's opinions regarding the corresponding structure were significantly undermined by his admission that those opinions conflict with the position that SXM has taken in its IPR petitions filed with the PTO. When asked about SXM's identification of "two

transmitters" as the corresponding structure in the IPR petition for the '289 patent, Mr. Jones simply stated that he disagreed. *Id.* at 234:6-20; Ex. C at 12; *see also* Jones Tr. at 144:20 – 145:1 (opining that identification of "two transmitters" as structure is an "unreasonable" construction). The fact that even SXM agrees that "two transmitters" can be the corresponding structure for the "transmitting" terms—contrary to Mr. Jones's opinions—thus further weakens SXM's attempt to rely on expert testimony in support of SXM's proposed construction in this case.

### D. "receiving means …" ('289 patent)

Mr. Jones conceded that the question of whether the "receiving means" term necessarily includes a delay stage is essentially the same as that presented in the context of the "transmitting" terms. *Id.* at 240:5-11 (agreeing the two terms "rise or fall together"). As in the case of those terms, SXM actually adopted Fraunhofer's proposed structure ("a receiver") in its IPR petitions, yet Mr. Jones still testified that he disagreed with this structure and believed it was not reasonable. *Id.* at 145:2-9, 236:2-4; Ex. C at 13. These internal contradictions in SXM's proposals further undermine Mr. Jones's opinions. *See also* Jones Tr. at 146:16 – 147:8 (opining that the intrinsic record is "clear" regarding construction of "receiving means" term).

### E. Preambles ('3084 patent)

The Jones Declaration does not contain any opinions regarding the preambles of the '3084 patent, and Mr. Jones confirmed in deposition that he is "not offering an opinion on whether the preamble as a whole should be limiting or not." *Id.* at 157:5-13, 158:5-8.

### F. "generating said reference symbol …" / "means for generating …" ('3084 patent)

A discussion of Mr. Jones's opinions regarding Section 112/6 is provided in Section C above. In the case of the "generating" terms, Mr. Jones also confirmed (contrary to SXM's proposed construction) that the claimed invention is ***not*** limited to a particular bit sequence. *Id.*

at 196:12 – 197:3, 203:8-12, 204:10-11 ("I agree that other bit sequences could satisfy the claims"); *see also id.* at 195:7-11 (admitting "binary array" and "bit sequence" are not algorithms in and of themselves).

Mr. Jones also conceded (again) that the intrinsic record is already clear on how "generating" terms should be construed, *see id.* at 230:11-15, thus confirming that no expert testimony is needed to provide further guidance regarding claim construction in this case.

### G.     "symbol" ('1084 patent)

Mr. Jones's testimony with respect to the "symbol" term was utterly confused and internally contradictory. He first testified that a symbol may have a phase "***or***" an amplitude, *id.* at 179:20 – 180:1, then testified that a symbol could include a phase "***and/or***" an amplitude, *id.* at 180:20 – 181:11, then finally testified he was "changing [his] answer" and that the correct understanding was to require both a phase "***and***" an amplitude, *id.* at 181:19 – 182:4 (emphases added). Mr. Jones later went on to explain that the patents used the term "and/or" in accordance with the "common every day English usage of the term," that is, to include both the conjunctive and the disjunctive. *See id.* at 206:14-20, 207:8 – 209:2, 213:4-9. Still later, in response to questions from SXM's attorney (and after a break in the deposition), Mr. Jones changed his position once again, opining in conclusory fashion that the term "and/or" in this case allegedly meant "and" when considered from the perspective of one of ordinary skill. *Id.* at 287:16 – 288:14. Of course, none of this wandering expert testimony should be given any weight to the extent it contradicts the clear disclosure of the specification.

Mr. Jones's testimony also exposed the incompatibility of SXM's proposed construction for "symbol" with the patentee's other uses of the word "symbol" in its patent disclosures. For example, Mr. Jones admitted that an "MCM symbol" as used in the patent would not qualify as a "symbol" under SXM's definition of that term. *Id.* at 182:5-7. He testified the same was true of

- 9 -

the term "reference symbol." *Id.* at 183:13-18. This interpretive conflict with the intrinsic record further demonstrates that SXM's proposed construction cannot be correct.

### H.     "phase difference between simultaneous carriers …" ('1084 patent)

Mr. Jones admitted that consideration of a phase difference between simultaneous carriers does not necessarily require that the carriers be adjacent, as it is "possible to create a differential encoding/decoding scheme that does ***not*** operate using adjacent subcarriers." *Id.* at 252:9-16, 253:3-4 (emphasis added). This testimony further demonstrates that there is no reason to rewrite the claim so as to be limited to "adjacent" carriers, as in SXM's proposed construction.

### I.     "means for determining an echo phase offset …" ('1084 patent)

A discussion of Mr. Jones's opinions regarding Section 112/6 is provided in Section C above. Mr. Jones further admitted that an echo phase offset could be determined in ways other than those included in SXM's proposed construction. *Id.* at 221:19 – 222:13. *See also id.* at 149:16 – 150:1 (admitting intrinsic record clearly discloses proper construction of this term).

### J.     "means for correcting each decoded phase shift …" ('1084 patent)

A discussion of Mr. Jones's opinions regarding Section 112/6 is provided in Section C above. Mr. Jones also testified that the additional matter included in SXM's proposed construction was not even properly considered an algorithm or formula. *Id.* at 296:3-10. *See also id.* at 149:16 – 150:6 (admitting intrinsic record clearly discloses proper function and structure for this term).

### K.     Preambles ('997 patent)

Finally, Mr. Jones confirmed that he is "not offering an opinion on whether the preamble as a whole should be limiting or not." *Id.* at 157:5-13, 158:5-8. The opinions on this point in the Jones Declaration are entirely conclusory. Notably, Mr. Jones admitted that he failed to fully analyze the intrinsic record, as he never even looked at the prosecution history. *Id.* at 131:9-14.

Dated:  April 3, 2018

Respectfully submitted,

By: __/s/ Brian E. Farnan_____
    Brian E. Farnan (Bar No. 4089)
    Michael J. Farnan (Bar No. 5165)
    FARNAN LLP
    919 N. Market Street, 12th Floor
    Wilmington, Delaware 19801
    Telephone:  (302) 777-0300
    Facsimile:   (302) 777-0301
    bfarnan@farnanlaw.com
    mfarnan@farnanlaw.com

    Ben J. Yorks (admitted pro hac vice)
    David McPhie (admitted pro hac vice)
    IRELL & MANELLA, LLP
    840 Newport Center Drive, Suite 400
    Newport Beach, CA 92660
    Telephone:  (949) 760-0991
    Facsimile:   (949) 760-5200
    byorks@irell.com
    dmcphie@irell.com