## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | Civil Action No. 17-184-JFB-SRF |
| ) | |
| SIRUS XM RADIO INC., ) ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

## I.     INTRODUCTION

Presently before the court in this patent infringement action is a motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), filed by plaintiff Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. ("Fraunhofer"). (D.I. 156) Defendant Sirius XM Radio Inc. ("SXM") opposes the motion. (D.I. 160) For the following reasons, Fraunhofer's motion to amend is DENIED.

## II.     BACKGROUND

Fraunhofer is an applied research organization in Europe, encompassing over sixty institutes and research units which develop real-world innovations in the fields of health, communications, security, transportation, and energy for both privately and publicly funded projects. (D.I. 1 at ¶ 1) In 1996, Fraunhofer developed patented technology related to multicarrier modulation (the "MCM technologies") for use in satellite radio broadcasting. (*Id.* at ¶¶ 4, 20) MCM is a method of transmitting data by splitting it into several components and sending each of the components over separate carrier signals. (*Id.* at ¶ 4)

On March 4, 1998, Fraunhofer entered into an exclusive license agreement[1] with WorldSpace International Network Inc. ("WorldSpace") to license all patents for MCM technologies (the "MCM License"). (*Id.* at ¶ 21; D.I. 12, Ex. 1)  Fraunhofer subsequently obtained U.S. Patent Nos. 6,314,289 ("the '289 patent"), 6,931,084 ("the '1084 patent"), 6,993,084 ("the '3084 patent"), and 7,061,997 ("the '997 patent") (collectively, the "patents-in-suit"), which relate to MCM technologies and are covered by the MCM License.  (D.I. 1 at ¶ 21)  Thereafter, on July 24, 1998, WorldSpace granted a sublicense under the MCM License to American Mobile Radio Corporation, which was renamed as XM Satellite Radio, Inc. ("XM Satellite").  (*Id.* at ¶ 22; D.I. 12, Ex. 3 at § 2)  XM Satellite used the sublicensed technology to develop its Digital Audio Radio Services System (the "XM DARS System").  (D.I. 1 at ¶ 22)  In 2008, XM Satellite merged with Sirius Satellite Radio to form SXM.  (*Id.* at ¶ 26)

On October 17, 2008, WorldSpace filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  (*Id.* at ¶ 27)  On June 18, 2009, the debtors filed a motion for approval of a settlement agreement (the "Settlement Agreement") to terminate certain contracts between the parties and to pay the debtors a sum to fully satisfy the current and future payment obligations owed under the sublicense agreement.  (D.I. 12, Ex. 5)  The bankruptcy court approved the Settlement Agreement on July 13, 2009.  (*Id.*, Ex. 6)

During a sale hearing on June 1, 2010, the bankruptcy court approved an agreement between WorldSpace, Fraunhofer, and Yazmi, a potential buyer of WorldSpace's assets,

---

[1] The exclusive nature of the MCM License is governed by § 3.2 of the agreement, which precludes Fraunhofer from using or licensing the MCM technology in a way that competes with WorldSpace's business.  (D.I. 21, Ex. A at § 3.2)  Section 2.1 of the MCM License provides that Fraunhofer continues to "own all right, title and interest in and to any and all MCM Intellectual Property Rights."  (*Id.* at § 2.1)

providing for the final disposition of WorldSpace's rights under three agreements and unambiguously rejecting the MCM License. (D.I. 1 at ¶ 27; 8/15/17 Tr. at 11:2-14) Because Fraunhofer and Yazmi never entered into a new agreement regarding the MCM License, the MCM License remained rejected. (D.I. 1 at ¶ 27 n.1; 8/15/17 Tr. at 11:15-12:2)

On June 12, 2012, the chapter 11 bankruptcy proceeding was converted to a chapter 7 proceeding, following which the Trustee had sixty days to assume executory contracts and unexpired leases. (D.I. 1 at ¶ 28) The Trustee did not assume the MCM License. As a result, the MCM License was rejected as of August 12, 2012. (*Id.*)

Fraunhofer initiated the present litigation against SXM on February 22, 2017, asserting causes of action for infringement of the patents-in-suit. (D.I. 1) A Rule 16 scheduling conference was held on May 16, 2017, and a scheduling order was entered on May 23, 2017. (D.I. 26) Pursuant to the scheduling order, the deadline for amended pleadings was December 14, 2017. (*Id.* at ¶ 2) The deadline for substantial completion of document production was January 31, 2018, and the discovery deadline will expire on July 31, 2018. (*Id.* at ¶ 3(b))

On April 17, 2017, SXM filed a Rule 12(b)(6) motion to dismiss for failure to state a claim, alleging that SXM maintains a sublicense to the patents-in-suit and therefore cannot be found to infringe. (D.I. 10) The court held oral argument on the motion to dismiss on August 15, 2017. (8/15/17 Tr.) On March 29, 2018, the undersigned judicial officer issued a Report and Recommendation recommending dismissal of the action. (D.I. 146) Fraunhofer's objections to the Report and Recommendation are currently pending before the assigned District Judge. (D.I. 154)

3

On April 16, 2018, Fraunhofer filed the present motion to amend the complaint in an effort to cure the deficiencies highlighted in the March 29, 2018 Report and Recommendation. (D.I. 156)

## III.   LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

If a party seeks leave to amend after a deadline imposed by the scheduling order, the court must apply the more stringent "good cause" standard in accordance with Rule 16 of the Federal Rules of Civil Procedure. *Carrier Corp. v. Goodman Global, Inc.*, 49 F. Supp. 3d 430, 433 (D. Del. 2014). Pursuant to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010). "[T]he good cause standard under Rule 16(b) hinges on the diligence of the movant, and not on prejudice to the non-moving party." *Id.* "Whether or not the requirements of Rule 16(b) have

been met is a procedural issue not pertaining to the patent laws, and therefore regional circuit law applies to this question." *See Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002).

## IV.   ANALYSIS

### A.   Good Cause

Fraunhofer has established good cause for its failure to seek leave to amend the complaint prior to the expiration of the December 14, 2017 deadline set forth in the scheduling order. (D.I. 26 at ¶ 2) Fraunhofer justifies its delay by explaining that the proposed amendments are directed to specific rulings in the court's March 29, 2018 Report and Recommendation granting SXM's motion to dismiss. (D.I. 157 at 11) Although a number of courts have addressed the issue of whether this "wait-and-see" approach constitutes undue delay, there appears to be no clear consensus within the Third Circuit.

In *Jang v. Boston Scientific Scimed, Inc.*, the Third Circuit "declined to reward a wait-and-see approach to pleading," explaining that waiting for the district court to rule on a motion to dismiss is not a valid reason to postpone a request to amend the pleading. *See Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013). Consistent with the Third Circuit's ruling in *Jang*, courts within this district have also discouraged plaintiffs from using court rulings on Rule 12 motions to dismiss as a sounding board on the sufficiency of their pleadings:

[T]he court is troubled by the plaintiffs' decision to file this motion not only after the motion to dismiss had been filed, but *after* the court had decided this motion and dismissed their claims. When faced with the defendants' motion to dismiss, the plaintiffs would have been well within their rights to request leave to amend. Instead, they chose to oppose the motion, in its entirety, without seeking such relief. Such an approach is highly suspect as the plaintiffs were aware of the facts which they now seek to add at the time the original pleading was filed. Thus, there is no excuse for failure to plead them before the case was dismissed.

5

*In re Digital Island Sec. Litig.*, C.A. No. 02-57-GMS, 2002 WL 31667863, at *1 (D. Del. Nov. 25, 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004)).[2] A number of other district courts have taken a similar approach, concluding that the "wait-and-see" approach constitutes undue delay. *See In re Stone & Webster, Inc. Sec. Litig.*, 217 F.R.D. 96, 98 (D. Mass. 2003), *rev'd in part on other grounds by* 414 F.3d 187, 215 (1st Cir. 2005) ("A plaintiff shouldering the burden of pleading . . . cannot pull its punches in this way and then expect a district court to allow that plaintiff another chance once the matter has not only been fully briefed, but actually decided."); *In re Capstead Mortgage Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 568 (N.D. Tex. 2003); *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *25 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002); *In re Champion Enters., Inc. Sec. Litig.*, 145 F. Supp. 2d 871, 873 (E.D. Mich. 2001).[3]

The Third Circuit took a different approach in *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, observing that the filing of a motion to dismiss does not necessarily put a plaintiff on notice that the court will find the complaint to be deficient, and comments from the

---

[2] The Third Circuit's decision in *Jang v. Boston Scientific* and the district court's decision in *In re Digital Island Securities Litigation* addressed motions to amend under Rule 15(a), with a particular focus on the undue delay standard in the portions cited herein. *See also U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 250-52 (3d Cir. 2016) (addressing the undue delay factor under Rule 15(a)). To satisfy the Rule 16(b) good cause requirement, "the movant must demonstrate that, despite diligence, the amendment could not have been reasonably sought in a timely manner." *Pfizer Inc. v. Sandoz Inc.*, C.A. No. 12-654-GMS-MPT, 2013 WL 5934635, at *2 (D. Del. Nov. 4, 2013). The focus on the diligence of the movant under Rule 16(b) overlaps with the undue delay standard under Rule 15(a), as both examine the timeliness of the motion to amend. (D.I. 161 at 1) ("SXM advances essentially three arguments . . . based on allegations of untimeliness, futility, and prejudice."); *Cf. Slip Track Sys.*, 304 F.3d at 1270 (distinguishing the focus on bad faith and prejudice under Rule 15(a) from the diligence inquiry under Rule 16(b)).

[3] The court notes that this line of cases from other district courts mostly pertains to causes of action brought under the Private Securities Litigation Reform Act ("PSLRA"). In *In re NAHC*, the Eastern District of Pennsylvania observed that "the PSLRA 'restricts' application of Rule 15 in federal securities cases, such that complaints that fail to meet the heightened pleading requirements should be dismissed with prejudice." 2001 WL 1241007, at *26. Thus, these cases are distinguishable from the case at bar, which does not involve a heightened pleading standard that would impose additional constraints on the application of Rule 15.

bench during oral argument did not provide a clear indication of the district court's leaning sufficient to notify the plaintiff to seek leave to amend. 839 F.3d 242, 250 (3d Cir. 2016). The Third Circuit stressed that it has "rarely upheld dismissal with prejudice of a complaint when the plaintiff has been given no opportunity to amend." *Id.* Accordingly, the Third Circuit determined that the plaintiff's motion for leave to amend did not constitute undue delay, distinguishing the circumstances from *Jang v. Boston Scientific*[4] and other cases. *Id.* at 251-52 (citing *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280-81 (3d Cir. 2004); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp. (CPERS)*, 394 F.3d 126, 163 (3d Cir. 2004)).

In this instance, the court is inclined to adopt the more recent approach taken by the Third Circuit, and, therefore, concludes that Fraunhofer has satisfied the diligence standard under Rule 16(b)(4) by timely pursuing leave to amend following the issuance of the March 29, 2018 Report and Recommendation. *See Victaulic Co.*, 839 F.3d at 250. However, for the reasons set forth at § IV.B, *infra*, Fraunhofer's diligence does not resolve issues surrounding the futility of the proposed amended complaint. Moreover, the court's ruling on the diligence factor in the present case is not intended to discourage future plaintiffs from requesting leave to amend as an alternative argument in briefing on a pending motion to dismiss, or seeking leave to extend scheduling order deadlines prior to the passage of critical dates.

---

[4] Specifically, the Third Circuit in *Victaulic* dismissed its previous statements in *Jang* as dicta having "no practical import, since in *Jang* we reversed the District Court's entry of judgment on the pleadings and remanded for further proceedings, explicitly noting that the plaintiff remained 'free to file a new motion for leave to amend.'" *Victaulic*, 839 F.3d at 252; *see also Mullin v. Balicki*, 875 F.3d 140, 152 (3d Cir. 2017) (observing that Third Circuit cases "disdain[ing] a wait-and-see approach to amendment . . . fall in the post-judgment posture" and occur in " 'standard' civil disputes."). In the present case, the March 29, 2018 Report and Recommendation remains pending before the District Judge, and no final judgment has been entered, further buttressing the court's finding of diligence under Rule 16(b)(4) and no undue delay under Rule 15(a) under the specific facts of this case.

**B.     Futility**

Although Fraunhofer has established good cause under Rule 16(b)(4), the court concludes that Fraunhofer's proposed amended complaint would be futile under Rule 15(a).[5] "An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or 'advances a claim or defense that is legally insufficient on its face.'" *Intellectual Ventures*, 2015 WL 4916789, at \*2 (quoting *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006)). The standard for analyzing futility of an amendment under Rule 15(a) is the same standard of legal sufficiency applicable under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the district court "take[s] all pleaded allegations as true and view[s] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

In the Report and Recommendation, the court highlighted a dispositive deficiency in the original complaint: "Fraunhofer's complaint does not plead that SXM's predecessors failed to fulfill their obligations under the sublicense agreement." (D.I. 146 at 9) Fraunhofer's proposed amendments do not remedy this deficiency. Therefore, Fraunhofer's proposed amendment is futile, and the motion for leave to amend the complaint is denied on this basis.

---

[5] Although the good cause standard under Rule 16(b)(4) is often characterized as being "more stringent" than the standard for amended pleadings under Rule 15(a), as previously discussed at footnote 2, *supra*, the standards under Rules 16(b)(4) and 15(a) primarily overlap with respect to the timeliness factor. Therefore, an adverse finding on futility under Rule 15(a) does not necessarily conflict with a favorable finding of good cause under Rule 16(b)(4). The Third Circuit's ruling in *Victaulic* addressed only the district court's finding of undue delay, and therefore has no bearing on the futility analysis in this case. 839 F.3d at 249-52.

Fraunhofer attaches to its proposed amended complaint a November 13, 2015 letter from Fraunhofer to WorldSpace purporting to terminate the MCM License (the "Termination Letter"), alleging that because the MCM License was terminated by the Termination Letter, SXM's sublicense was also terminated. (D.I. 157 at 5) However, the Report and Recommendation concluded that the termination of the MCM License has no bearing on the continuation of the sublicense. (D.I. 146 at 8-9) Consequently, the inclusion of the Termination Letter does not alter the court's conclusions regarding the sublicense, and Fraunhofer's proposed amendment is futile in this regard.

Fraunhofer also includes in its proposed amended complaint, a full version of the XM Radio Contract with exhibits to show that SXM and Fraunhofer did not enter into a direct licensing agreement, and SXM's only rights to the patents were through the sublicense with WorldSpace. (D.I. 157 at 5) The court's Report and Recommendation specifically observed that "[t]he parties' disagreement centers on the effect of the rejection of the MCM License in the bankruptcy proceeding on SXM's sublicense." (D.I. 146 at 6) At no point did the Report and Recommendation suggest that SXM and Fraunhofer had entered into a direct licensing agreement. Consequently, the XM Radio Contract and corresponding exhibits, which purportedly establish that SXM had no direct licensing agreement with Fraunhofer, adds nothing that would alter the court's previous analysis.

In addition, Fraunhofer's proposed amended complaint removes its request for injunctive relief in an effort to eliminate equitable considerations as a factor regarding whether the sublicense should be honored. (D.I. 157 at 6) Again, Fraunhofer's proposed amendment does not alter the prior outcome because "[t]he law is well-settled that a valid license is a complete defense to infringement." (D.I. 146 at 10) Modifying the type of damages sought does not

9

overcome the court's conclusion that the sublicense survived the rejection of the MCM License, thereby providing a complete defense to infringement.

Fraunhofer directs the court to allegations added to its proposed amended complaint regarding the proper interpretation of the contractual agreements addressed in the Report and Recommendation. However, these amendments highlight portions of the MCM License and the sublicense agreement that were already considered by the court in the Report and Recommendation. For example, paragraph 23 of the proposed amended complaint outlines the conditions governing termination of the MCM License under Article 7. (D.I. 157, Ex. 2 at ¶ 23) The Report and Recommendation addressed the payment of obligations in accordance with Article 7 under the MCM License, but determined that "WorldSpace's default under the MCM License and its rejection of the MCM License in bankruptcy do not impact the continuation of SXM's irrevocable sublicense." (D.I. 146 at 7-8)

Paragraph 25 of the proposed amended complaint emphasizes the termination provisions of the sublicense to suggest the irrevocable nature of the sublicense must be found ambiguous given that the sublicense is terminable under certain conditions. (D.I. 157, Ex. 2 at ¶ 25) Fraunhofer argues that consideration of the extrinsic evidence cited in paragraphs 30 to 33 is necessary to resolve the equivocacy. However, Fraunhofer's assertion of ambiguity in the sublicense is a legal conclusion which need not be accepted as true at the pleadings stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729, 734-35 (D. Del. 2013) (citing *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)) (interpretation of contracts is a matter of law reserved for the court under Delaware law). The Report and Recommendation did not identify an ambiguity in the language

10

of the sublicense, and inserting legal contentions into the proposed amended complaint does not
alter the result.[6]

Fraunhofer's proposed amended complaint attempts to support its allegation that "all
WorldSpace sublicensees, including Sirius XM, also lost any patent rights to the MCM
technologies that had been conferred or sublicensed based on WorldSpace's License," by
attaching a copy of the transcript of the June 2, 2010 hearing and the rejection order. (D.I. 157,
Ex. 1 at ¶ 38, Exs. K & L) The allegation in the proposed amended complaint itself is not new
and was previously considered by the court. (D.I. 146 at 8-9) Moreover, the contention that the
sublicense was rejected by default when the chapter 7 trustee failed to assume the MCM License
amounts to a legal argument regarding the effect of the rejection of the MCM License in the
bankruptcy proceeding. (D.I. 157, Ex. 1 at ¶ 40) "[T]he tenet that a court must accept as true all
of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009); *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.
2009). Fraunhofer's references to the June 2, 2010 transcript of the hearing before the
bankruptcy court and the Rejection Order do not alter the findings and conclusions in the Report
and Recommendation because neither exhibit expressly discusses the impact of the MCM
License's rejection on the status of the sublicense agreement.

---

[6] Fraunhofer's objections to the Report and Recommendation (D.I. 154) are the proper
mechanism to pursue its disagreement with the legal conclusions contained therein. While
Fraunhofer accuses SXM of basing its futility arguments on "flawed assumptions" regarding
whether the Report and Recommendation will be fully adopted at the district court and/or
appellate levels (D.I. 161 at 8-9), the procedural posture of this case is such that the undersigned
judicial officer recommended granting SXM's motion to dismiss as a matter of law, and is also
now charged with deciding Fraunhofer's motion for leave to amend the complaint. The present
analysis focuses on the sufficiency of the proposed amended pleading under the Federal Rules of
Civil Procedure, and not speculation regarding what may occur upon *de novo* review of the
Report and Recommendation.

11

Finally, Fraunhofer's proposed amended complaint asserts that the MCM License and sublicense were executory contracts, and pleads that both the MCM License and the sublicense were rejected after the conversion of the bankruptcy case to chapter 7. (D.I. 157 at 7; Ex. 2 at ¶ 40) However, the Report and Recommendation took into account the executory nature of the license agreements. (D.I. 146 at 6 n.6) Pursuant to 11 U.S.C. § 365(n)(1)(B), when a trustee rejects an executory contract for a license to intellectual property rights, the licensee "may elect . . . to retain its rights . . . under such contract . . . to such intellectual property . . . as such rights existed immediately before the case commenced." 11 U.S.C. § 365(n)(1)(B). Even assuming the truth of Fraunhofer's contention that the sublicense was rejected by the chapter 7 trustee by virtue of the trustee's rejection of the MCM License, the Report and Recommendation establishes that the rejection of a contract in bankruptcy is a breach, not a termination. (D.I. 146 at 8) The Bankruptcy Code provides that a licensee may retain its rights under a rejected intellectual property license. 11 U.S.C. § 365(n)(1)(B). The allegations in the proposed amended complaint do not contain sufficient factual allegations to establish that the sublicense was both rejected and terminated, rendering the proposed amendment futile. Accordingly, Fraunhofer's motion for leave to amend is denied.

## C. Prejudice

In view of the determination of futility of the proposed amended complaint, it is not necessary to consider the issue of prejudice to SXM. Nonetheless, the court does not find that Fraunhofer's proposed first amended complaint would potentially cause substantial prejudice to SXM. SXM cites a series of cases concluding that a motion for leave to amend should be denied where a defendant has been forced to defend against repeated iterations of a complaint. (D.I. 160 at 19-20) None of these cases denied a motion for leave to file a first amended complaint. *See*

*Payne v. DeLuca*, 2006 WL 3590014, at \*14 (W.D. Pa. Dec. 11, 2006) (denying leave to file a

third amended complaint); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 166

(3d Cir. 2004) (same); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 655 (3d Cir.

1998) (denying leave to amend where plaintiffs filed an amended complaint and the district court

accepted certain allegations in their response to defendants' motion to dismiss as a second

amended complaint). The Third Circuit has repeatedly articulated its reluctance to deny leave to

file a first amended complaint. *See Victaulic*, 839 F.3d at 252; *Dole v. Arco Chem. Co.*, 921 F.2d

484, 488 (3d Cir. 1990). However, the lack of prejudice to SXM is insufficient to overcome the

court's conclusion that amendment would be futile. Consequently, Fraunhofer's motion for

leave to amend is denied.

## V.    CONCLUSION

For the foregoing reasons, Fraunhofer's motion for leave to amend is denied. (D.I. 156)

An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P.

72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R.

Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P.

72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Dated: July 16, 2018

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

13