IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FORDERUNG DER ANGEWANDTEN FORSCHUNG E.V., <br><br> Plaintiff, <br><br> v. <br><br> SIRIUS XM RADIO INC., <br><br> Defendant. | **1:17CV184** <br><br> **MEMORANDUM AND ORDER** |

This matter is before the court on Siriuis XM Radio's motion to dismiss for failure to state a claim, D.I. 10; motion to stay pending resolution of the motion to dismiss, D.I. 17; motion to stay pending inter partes review of the patents-in-suit by the patent trial and appeals board, D.I. 131; the report and recommendation, D.I. 146; and objections to the report and recommendation, D.I. 154.  In the alternative, plaintiff asks this court to dismiss without prejudice or to allow it to amend its complaint.

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b).  The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C).  Similarly, Rule 72(b)(3) requires de novo review of any recommendation that is dispositive of a claim or defense of a party.

The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A) and dispositive matters are covered by § 636(b)(1)(B).  *Gomez*

*v. United States,* 490 U.S. 858, 873-74 (1989); see also Fed. R. Civ. P. 72(a). Under subparagraph (B), a district court may refer a dispositive motion to a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B); see *EEOC v. City of Long Branch,* 866 F.3d 93, 99–100 (3d Cir. 2017). The product of a magistrate judge, following a referral of a dispositive matter, is often called a "report and recommendation." *Id.* "Parties 'may serve and file specific written objections to the proposed findings and recommendations' within 14 days of being served with a copy of the magistrate judge's report and recommendation." *Id.* (quoting Fed. R. Civ. P. 72(b)(2)).

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC,* 866 F.3d at 99 (quoting 28 U.S.C. § 636(b)(1)).

**STANDARD OF REVIEW**

*a. 12(b)(6)*

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the

grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id*. (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id*. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability but asks for more than a sheer possibility that a defendant has acted unlawfully.).

*Twombly* is based on the principles that (1) the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 678-79. Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id*. at 679. Accordingly, under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. Although

legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

MCM is the method used to transmit data which splits components and sends them over separate carrier signals. Plaintiff developed patented technology related to multicarrier modulation for use in satellite radio broadcasting. On March 4, 1998, Fraunhofer entered into an exclusive license agreement with WorldSpace International Network Inc. ("WorldSpace") to license all patents for MCM technologies (the "MCM License"). Fraunhofer subsequently obtained U.S. Patent Nos. 6,314,289 ("the '289 patent"), 6,931,084 ("the '1084 patent"), 6,993,084 ("the '3084 patent"), and 7,061,997 ("the '997 patent") (collectively, the "patents-in-suit"), which relate to MCM technologies and are covered by the MCM License. Later, WorldSpace gave a sublicense to XM

Satellite, and XM used the license technology to assist in the development of the XM DARS system. XM then merged in 2008 with Sirius.

In 2008 WorldSpace filed a Chapter 11 bankruptcy. A settlement agreement was approved between WorldSpace, Fraunhofer, and Yamzi and it rejected the MCM license.

The magistrate judge recommended that this court grant the motion to dismiss and deny the motions to stay as moot. The magistrate judge determined that:

> Section 365(d)(1) [footnote omitted] of Title 11 provides that, "[i]n a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract ... within 60 days after the order for relief .. then such contract or lease is deemed rejected." 11 U.S.C. § 365(d)(1). Thus, the MCM License was deemed rejected as of August 12, 2012, following the conversion of the WorldSpace bankruptcy to chapter 7. The law is well-established that the rejection of an executory contract in bankruptcy constitutes a breach, relieving the debtor of both the burdens and the benefits of the agreement. *In re Teleglobe Commc'ns Corp.,* 304 B.R. 79, 83 (D. Del. 2004). Consequently, by not assuming the MCM License, WorldSpace forfeited its exclusive licensing rights to the patents-in-suit and suspended its obligations under the MCM License. *See In re Diomed Inc.,* 394 B.R. 260, 268 (Bankr. D. Mass. 2008) (holding that once rejection occurred, the debtor's right to the continued use of the exclusive patent license ended).
>
> Moreover, WorldSpace's prospective licensing rights under the MCM License were effectively nullified by the June 2, 2010 sale order entered in the bankruptcy proceeding, in which WorldSpace acknowledged its default. (D.I. 20, Ex. D at 183) ("WorldSpace is in default under the license from Fraunhofer for the patents listed and identified in Schedule 1.1 (i) as licensed from Fraunhofer.")

D.I. 146, at 6-7. The magistrate judge then concluded that there is no indication that XM Satellite failed to meet its obligations under the Settlement Agreement, or that other breaches occurred, and thus the sublicense continues. *See Rhone Poulenc Agro, S.A.*

5

*v. DeKalb Genetics Corp.,* 284 F.3d 1323, 1332 (Fed. Cir. 2002) (observing that a sublicense continues, even when the principal license is terminated for breach of contract).

The plaintiff objects to the recommendation to dismiss this case. It argues that the magistrate judge is incorrect, as a sublicensor cannot grant greater rights than those received in the original license with the property owner. *See, e.g., TransCore, LP v. Elec. Transaction Consultants Corp.,* 563 F.3d 1271, 1275 (Fed. Cir. 2009) ("the premise that one cannot convey what one does not own … is particularly important in patent licensing"). Plaintiff states that "[u]nder SXM's theory, even though the patent rights that WorldSpace received were expressly contingent on certain payments to Fraunhofer, WorldSpace was somehow able to grant sublicense rights to SXM that were free of any such contingency." D.I. 154, at 8. Further, plaintiff contends that the license and sublicense both expressly permit termination. Plaintiff states in this regard that "[b]ut because the patent rights in this case were indisputably executory in nature (R&R at 6 n.6), it is not appropriate to treat the granting of a sublicense to SXM as a thing that was permanently transferred to SXM at the time it entered into its agreement with WorldSpace." D.I. 154, at 14.

Sirius counters these arguments, contending that Judge Fallon's determination that as a matter of law, that SXM has a sublicense to the Asserted Patents based on the express and unambiguous language of the governing agreements should be affirmed. Sirius also argues that Fraunhofer cannot recast its claims in an amended complaint, as the same legal arguments will occur that have already been decided by Judge Fallon.

A valid license is generally a complete defense to infringement.  See *Intel Corp. v. Broadcom Corp.,* 173 F. Supp. 2d 201,228 (D. Del. 2001).  The court agrees with the magistrate judge.  As a matter of law, WorldSpace granted SXM's predecessor a sublicense in 1998, and any subsequent alleged loss of rights by WorldSpace does not change its irrevocable rights under this agreement and license.  The court agrees that any attempt to amend the complaint would be futile.  See, e.g., *Casella v. Home Depot USA, Inc.,* 2010 WL 3001919, at *4 (D.N.J. July 28, 2010) (finding that plaintiff's motion to file a first amended complaint "must be denied as futile").  Accordingly, the court will adopt the order of the magistrate judge in its entirety.

THEREFORE, IT IS ORDERED THAT:

1. Sirius XM's motion to dismiss, D.I. 10, is granted; and
2. Plaintiff's objections, D.I. 154, are overruled.
3. The report and recommendation of the magistrate judge, D.I. 146, is adopted in its entirety.
4. The motions to stay, D.I. 17 and 131, are denied as moot.

Dated this 22nd day of August, 2018.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge