

October 23, 2020

**VIA E-FILING**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Room 3124, Unit 14
Wilmington, DE 19801-3555

**FILED UNDER SEAL**

      Re:    *Fraunhofer Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, No. 17-184-JFB-SRF

Dear Judge Fallon:

Pursuant to the Court's Order of October 13, 2020, Fraunhofer submits this responsive letter brief in advance of the discovery teleconference scheduled for October 28, 2020. In its opening brief, SXM attempts to justify its dilatory discovery tactics by presenting a hodgepodge of issues grounded in misrepresentations of the record and the law. None of the issues raised by SXM justifies its blatant refusal to produce its own witnesses for deposition within the current discovery period. Fraunhofer respectfully requests that the Court deny SXM's requests for relief and order that the case proceed according to the current case schedule (including the current fact discovery deadline and expert report dates).[1] Fraunhofer also maintains the proposal in its opening brief that several SXM depositions take place before November 19, with the remainder to be completed prior to December 19. Fraunhofer is likewise open to proceeding out of time with the depositions of the eight German witnesses that Fraunhofer has offered, assuming that SXM immediately pursues the necessary steps with the Consulate in Germany to ensure that these deposition are all completed well before the deadline for opening expert reports (at the very latest).

    **I.**    **SXM's Demand For In-Person Depositions Is Unreasonable Given The Pandemic**

SXM first argues that this case must be delayed until SXM can conduct in-person depositions of Fraunhofer's German witnesses because (1) the parties allegedly "agreed" to in-person depositions, and (2) remote depositions of technical witnesses requiring translators would supposedly be prejudicial to SXM. D.I. 322 at 2-3. Neither argument is persuasive.

The argument that Fraunhofer previously "agreed" to in-person depositions is incorrect and finds no support in the record. Of course, the prior stipulated extensions in no way committed Fraunhofer to future extensions. Indeed, noticeably absent from SXM's description of the circumstances leading to the prior extensions of the case schedule is any mention of whether depositions would occur in person or remotely. At most, Fraunhofer previously agreed to certain discrete extensions to see if the virus would be quickly contained to allow travel and depositions as normal. That clearly did not happen. Accordingly, the parties must cooperate to go forward within the confines

---

[1] The parties have been working toward completing written and document discovery by the November 19 deadline, and recently exchanged final sets of discovery requests that will be due on November 19. *See* D.I. 319, 320. Thus, it appears to be undisputed that there is no need for the Court to extend the fact discovery deadline with respect to ***non-deposition*** discovery.

of current circumstances. To that end, Fraunhofer has gone to great lengths to make arrangements to have no fewer than eight Fraunhofer witnesses in Germany available for remote deposition.

SXM's argument that remote depositions would be prejudicial is not well taken. As noted in Fraunhofer's opening brief, remote depositions have become the norm, even in patent disputes and other complex cases. *See Grupo Petrotemex v. Polymetrix*, 2020 WL 4218804, at *3 (D. Minn. July 23, 2020) (ordering remote depositions in patent case "involv[ing] a great deal of complex document discovery," finding that lessened "risk of danger and hardship" outweighed any possible prejudice); *Chen v. K.O.O. Constr.,* 445 F. Supp. 3d 1055, 1057 (S.D. Cal. 2020) ("voluminous and highly detailed exhibits" not a bar to remote depositions); *Rouviere v. Depuy Ortho.*, 2020 U.S. Dist. LEXIS 122184 (S.D.N.Y. Jul. 11, 2020) (same); *Lopez v. CIT Bank*, 2015 WL 10374104 (N.D. Cal. Dec. 18, 2015) (same). Of course, if the parties proceed in this way, then Fraunhofer's depositions of SXM witnesses on technical topics will likely be conducted in the same manner.

The fact that some of Fraunhofer's German witnesses may require a translator does not change the calculus. For example, in *Impulsora de Marcas v. Dos Amigos, Inc*., 2020 WL 4577149 (W.D. Tex. June 26, 2020), the defendant objected to a remote deposition of a Spanish-speaking witness on the basis that it would "likely take longer, require the use of a translator, and increase the odds of unfair prejudice to Defendants given the potential for [the witness] to misunderstand deposition questions posed in English." *Id.* at *2. The court rejected this argument as it was "unconvinced" that any of these issues were "the direct result of a remote deposition format," noting that defendant failed to "explain why an in-person deposition would change Mr. Paoli's English comprehension skills." *Id*.; *see also Grano v. Sodexo Mgt.,* 335 F.R.D. 411, 415 (S.D. Cal. 2020) (rejecting argument that remote deposition with interpreter would be "unworkable" and "cumbersome," noting widespread use of remote deposition format in U.S. litigation today); *Valdivia v. Menard Inc*., 2020 WL 4336060, at *2 (N.D. Ill. July 28, 2020) (same). Nor does the time difference between Delaware and Germany cause any undue prejudice to SXM. *See Leeson v. Wright Trucking Co. Inc.*, 2020 WL 435367, at *3–*4 (D.N.M. Jan. 28, 2020) (ordering remote deposition of witness in Europe despite argument that "time difference" would make this "more difficult").

Moreover, any prejudice that SXM might suffer as a result of taking the Fraunhofer witness depositions remotely is substantially outweighed by the prejudice to Fraunhofer if this case is stalled for an indefinite period of time until the pandemic has resolved. *Swenson v. GEICO Cas. Co*., 2020 WL 4815035, at *6 (D. Nev. Aug. 19, 2020) (rejecting request for indefinite case extension based on "pure speculation" as to when the pandemic will end, citing "mandate" to pursue the "just, speedy, and inexpensive determination of cases").

Finally, it makes no sense to propose (as SXM does) that ***domestic*** witness depositions should proceed ***remotely*** but that ***foreign*** witnesses should proceed ***in person***. As previously stated, Fraunhofer is willing to go forward remotely with SXM witnesses who prefer that format based on coronavirus-related concerns. But if the parties proceed in that way, the same accommodation must be provided for Fraunhofer's witnesses to opt for remote depositions at their discretion.

## II.     SXM Has Failed To Pursue Available Options For German Witness Depositions

Next, SXM argues that it cannot legally take depositions of witnesses in Germany under German law, and that Fraunhofer should therefore be compelled to bring its witnesses to the United States.

2

But SXM has it backwards. Current U.S. law clearly prohibits German nationals from travelling to this country. *See* Presidential Proclamation 9993, 85 F.R. 15045 (March 11, 2020) (indefinitely suspending "entry into the United States . . . of all aliens . . . within the Schengen Area [including Germany]") (attached as Ex. D). SXM has offered no evidence to the contrary.[2]

By contrast, depositions in Germany remain a viable option and certainly do not risk any "criminal penalties" (as SXM mistakenly argues). D.I. 322 at 3-4. While not obligated to do so, Fraunhofer investigated whether depositions may lawfully go forward in Germany and advised SXM as to the appropriate procedures. In particular, Fraunhofer's German counsel has been in touch with the Federal Ministry of Justice ("BMJV") in Germany, which provided a number of possibilities for conducting depositions of voluntary witnesses in Germany. Ex. E (Declaration of Katharina Pehle) ¶ 6-11. In particular, Fraunhofer is informed that the BMJV is likely to approve reasonable accommodations for such depositions to take place outside of the U.S. Consulate, as long as a member of the diplomatic staff appears to provide formal notice to the witness that the deposition is voluntary. *Id*. ¶ 8. For example, depositions could take place in a location such as the Amerika Haus Munchen. *Id*. ¶ 9. Fraunhofer has further been advised that such depositions could be conducted remotely. *Id*. To initiate this process, SXM simply needs to send a Letter of Request to the U.S. Consulate that identifies any deviations from the normal procedures and asks permission for those accommodations. *Id*. ¶ 10. Approval is typically provided in a matter of weeks. *Id*. ¶ 11.

Rather than following Fraunhofer's suggestion to submit a formal request to the U.S. Consulate, SXM has instead continued to sit on its hands and assert—without support—that it is not possible to proceed with depositions in Germany. But there is nothing on the U.S. Consulate's website or in the cases cited by SXM saying that it is impossible or illegal for SXM to go forward with depositions of witnesses in Germany with the necessary approvals and accommodations. The *Topsnik* case cited by SXM merely stands for the proposition that one must obtain authorization from the BMJV before taking a deposition in Germany, whether remotely or in person. And *MACOM* is inapposite as there remains ample time this year for SXM to pursue this authorization. Indeed, if SXM had done this when Fraunhofer first suggested, it might have been done by now.

### III. SXM Has Failed To Diligently Seek Third-Party Discovery Of Foreign Witnesses

SXM next tries to blame Fraunhofer for SXM's own failure to diligently seek discovery from third-party foreign witnesses, and requests that the Court either order Fraunhofer to force these third-parties to appear for deposition or allow SXM time to seek discovery through the Hague Convention. SXM's requested relief is inappropriate for myriad reasons.

First, SXM's suggestion that the Court has authority to compel these witnesses to appear for deposition in the U.S. is contrary to both the current travel ban (cited above) and federal law. For example, one district court was reversed after ordering foreign inventors to appear for depositions in the U.S. based on the well-established rule that "foreigners who are not in the United States are beyond the subpoena power of our courts even if their testimony can't be obtained in admissible

---

[2] SXM falsely accuses Fraunhofer of "refus[ing] to say whether its witnesses are willing or able to come to the U.S," ignoring the specific "German nationals are not currently permitted to travel to the U.S. in view of the travel ban imposed by presidential order." D.I. 321-2, Ex. B at 6.

3

form otherwise." *In re Petition of Boehringer Pharm., Inc.*, 745 F.3d 216, 218 (7th Cir. 2014) (Posner, J.). Thus, although a foreign corporation might be required to produce its own officers or others who "consent to testify on its behalf," a U.S. court cannot compel the testimony of other foreign nationals (including employees). *Id.* In sum, this Court does not have power to compel the depositions of the third-party inventors who will not agree to voluntarily sit for a deposition.

Second, SXM should not be rewarded for its lack of diligence with an indefinite extension to the case schedule simply so it can seek discovery through the Hague Convention. SXM tries to excuse its failure to timely seek this third-party discovery by implying that Fraunhofer misled SXM into believing that Fraunhofer was planning to bring these third-party witnesses to trial. But the Rule 26(a)(1)(A) disclosures that SXM cites are merely intended to identify individuals "who potentially have discoverable information," and do not purport to set forth a definitive list of trial witnesses. D.I. 322-1 (Ex. H). Moreover, discovery provided by Fraunhofer and the public record clearly demonstrate that not all inventors are employed by Fraunhofer. *See, e.g.,* Ex. F-I. And the fact that Fraunhofer instructed SXM to contact these third parties through Fraunhofer's counsel is unremarkable as this is common practice for third-party witnesses who possess privileged and confidential information, such as inventors. Such basic steps to preserve privilege cannot reasonably be understood as a representation that these individuals are within Fraunhofer's control. *See Polyvision v. Smart Techs.*, 2006 WL 839090, at *2 (W.D. Mich. Mar. 27, 2006) (denying motion to compel production of foreign third-party witness represented by defendant's counsel).

Third, SXM's requested extension is particularly inappropriate here, where the discovery at issue is clearly cumulative and of marginal relevance. Indeed, Fraunhofer has agreed to produce at least three of the inventors for deposition (covering all of the Asserted Patents), and SXM has also already noticed a number of related Rule 30(b)(6) topics including inventorship. Ex. C at 5-6.

Finally, even if the Court were to allow SXM to belatedly pursue discovery from these third parties, it should not impact the existing case schedule. In the unlikely event that SXM obtains any unique, relevant information through the Hague Convention, the parties can simply meet and confer about any appropriate expert supplements at that point, rather than holding up the rest of the case.

### IV. SXM's Request For Double Time To Account For Translation Is Excessive

Fraunhofer has informed SXM that it is willing to agree to a reasonable amount of additional time for any witness who may opt for translation. Ex. K. However, SXM's request for *double* time is not reasonable. Other courts have recognized that allowing roughly two or three additional hours better balances the need for additional time with the burden placed on the witness. *See, e.g. Beach Mart v. L&L Wings,* No. 2:11-CV-00044, D.I. 50 (E.D. N.C. July 2, 2012) (two additional hours); *Dyniewski v. AG Lines,* 2016 WL 4435621 (N.D. Ind. Aug. 23, 2016) (three additional hours); *see also Chugai Pharm. Co. v. Alexion Pharms.,* No. 18-1802 (D. Del. June 29, 2020), D.I. 114 at 14 (attached as Ex. J) (contemplating additional but not double time for translated depositions).[3]

---

[3] In a footnote, SXM also requests (without citing any authority) that any witnesses who uses a translator at their depositions be required to also use a translator at trial. This issue is not properly before the Court as SXM failed to raise the issue through a proper meet-and-confer. In any event, the issue is premature as the matter can and should be dealt with at the time of trial (if needed).

4

                                        Respectfully submitted,

                                        /s/ Michael J. Farnan

                                        Michael J. Farnan

cc: Counsel of Record (Via E-Mail)