# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., <br><br> Plaintiff, <br><br> vs. <br><br> SIRIUS XM RADIO INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 17-00184-JFB-SRF |

## JOINT STIPULATION FOR CASE NARROWING

Plaintiff Fraunhofer-Gesellschaft Zur Forderung der Angewandten Forschung E.v. ("Fraunhofer") and Defendant Sirius XM Radio Inc. ("SXM") (collectively, the "Parties") hereby submit this Joint Stipulation for Case Narrowing pursuant to the Court's March 4, 2021 Oral Order, and the Court's oral guidance during the March 4, 2021 hearing.  The Parties have provided herein their respective proposals for case narrowing and have identified where the Parties are in agreement.  The Parties further jointly request leave to submit no more than four-page letter briefing for their respective proposals where the parties have been unable to reach agreement.  *See* 3/4/21 Tr. at 77:3-78:17.

**I.      Proposals for Case Narrowing**

The Parties have exchanged various proposals and have provided herein the Parties' current proposals.

| Step | Description | Fraunhofer Current Proposal | SXM Current Proposal |
|---|---|---|---|
| 1 | Initial narrowing of asserted claims | 50 claims[1] | 30 claims |
| 2 | Initial narrowing of prior art references and prior art arguments | 29 prior art references<br><br>80 invalidity arguments | 50 prior art references<br><br>240 invalidity arguments |
| 3 | Further narrowing of asserted claims | 25 claims[2] | 14 claims, but no more than 4 claims per patent[1] |

[1] **Fraunhofer's Position:** During one of the parties' early meet-and-confers, SXM inquired whether the parties might compromise with a limit of 40 claims at Step 1, and Fraunhofer indicated it was open to this idea. Ex. O (email dated July 9, 2020). However, SXM subsequently refused to accept Fraunhoer's repeated proposals to compromise at 40 claims. *See, e.g., id.* (emails dated July 15, 27, 29 & Aug. 4, 28, 2020); Ex. O (email dated Sept. 3, 2020); Ex. P (email dated Dec. 23, 2020); Ex. H (letter dated March 5, 2021). Then when SXM demanded 35 claims (Ex. Q), Fraunhofer offered another compromise at 36 claims (Ex. J), which SXM also refused and reverted back to a demand for "30-35 claims" (Ex. K).

**SXM's Position:** For months, SXM has been trying to reach a compromise with Fraunhofer with respect to the asserted claims as well as prior art references and arguments as all those concepts are interrelated.  SXM was forced to reject Fraunhofer's proposals because the number of prior art references and arguments were not commensurate with the number of asserted claims.  On March 31, 2021, as a compromise, SXM proposed that Fraunhofer have 35 asserted claims in Step 1 with an appropriate number of prior art references and arguments, which Fraunhofer rejected.  *See, e.g.,* Ex. R (March 31, 2021 email correspondence).

[2] **Fraunhofer's Position:** During the parties' meet-and-confers, Fraunhofer repeatedly offered a compromise at 20 claims for Step 3, which SXM steadfastly refused. Ex. O (email dated Sept. 3, 2020); Ex. P (email dated Dec. 23, 2020); Ex. H (letter dated March 5, 2021).  Then when SXM demanded 16 claims (Ex. Q), Fraunhofer went further and proposed 18 claims on March 19 (Ex. J), which SXM refused a week later by sliding back to a demand for "14-16 claims" (Ex. K).

**SXM's Position:** In response to Fraunhofer offering 18 asserted claims for Step 3 on March 29, 2021, SXM, on March 31, 2021, offered 17 asserted claims for Step 3 with an appropriate number of corresponding prior art references and arguments for Step 4, which Fraunhofer rejected.  *See* Ex. R (March 31, 2021 email correspondence).

[3] **Fraunhofer's Position:** Fraunhofer objects to SXM's attempt to impose a per-patent limitation on asserted claims, which is inconsistent with practice in this District and was not even included in many of SXM's earlier proposals (*see, e.g.*, Ex. P (email dated Dec. 21, 2020); Ex. M (email dated Mar. 31, 2021)) but rather was something that SXM sought to insert just hours before the joint

| Step | Description | Fraunhofer Current Proposal | SXM Current Proposal |
|------|-------------|-----------------------------|-----------------------|
| 4 | Further narrowing of prior art references and prior art arguments | 14 prior art references<br><br>30 invalidity arguments | 30 prior art references<br><br>112 invalidity arguments |

## II.     Standard for Election of Prior Art Arguments

The Parties are in agreement that the standard for the election of "prior art arguments" shall be set forth as follows:

> A "prior art argument" shall be understood to be an argument that: (1) a single reference anticipates a claim; or (2) a single reference renders a claim obvious (i.e., "single reference obviousness"); or (3) a combination of references renders a claim obvious. Thus, for example, if SXM relies on prior art reference A for anticipation and for single-reference obviousness as to claim 1 of a patent, that will count as two separate prior art arguments. If SXM also relies on prior art references A+B for obviousness and A+B+C for obviousness as to claim 1 of the patent, that will count as two more, separate, prior art arguments. Additionally, prior art arguments shall be counted on a per claim basis, meaning that if SXM asserts that prior art reference A anticipates claim 1 of a patent, and that prior art reference A also anticipates claim 2 of that patent, that will count as two prior art arguments. Further, a "prior art argument" shall consist of those reference(s) that SXM utilizes to show the existence of claim limitation(s) in the prior art.
>
> The prior art election requirements set forth herein do not require election of prior art references used solely for background purposes, to illustrate the state of the art, the knowledge possessed by a person of ordinary skill, or to address alleged secondary considerations. The prior art election requirements set forth herein apply only to references that SXM utilizes to show the existence of claim

---

stipulation was due to be filed.

**SXM's Position**: Contrary to Fraunhofer's contentions, several of SXM's proposals have included per-patent limitations on asserted claims as the correspondence demonstrates and as is consistent with practice in this District. *See e.g.*, Ex. I (letter dated March 16, 2021); Ex. P (February 12, 2021 email correspondence).

        limitations in furtherance of SXM's anticipation and/or obviousness analyses.

**III.  Invalidity Arguments under Section 112**

The Parties disagree as to whether there should be a limit on invalidity arguments put forth under 35 U.S.C. § 112.  The Parties agree that any arguments under § 112 shall not be counted toward any elections of "prior art arguments" as defined and set forth above.  However, the parties do not agree on how a "§ 112 argument" should be counted or defined.

**Fraunhofer's Position:** SXM's § 112 arguments in this case are defined by its invalidity contentions, which were served on November 17, 2017 (and were never amended). Specifically, Section VI of SXM's invalidity contentions is entitled "INVALIDITY UNDER 35 U.S.C. § 112" and provides a number of itemized lists setting forth approximately 137 alleged § 112 arguments, each identified with a separate bullet point. Thus, Fraunhofer believes that a "§ 112 argument" as defined below should consist of a single § 112 theory set forth in a single bullet point in SXM's invalidity contentions. This is the most straightforward and unambiguous way to address limiting of § 112 arguments, as it uses the itemization that SXM itself provided in its invalidity contentions.

**SXM's Position:** A § 112 argument shall mean an argument by Defendant that one or more claims fail to satisfy the one or more requirements of § 112.  By way of example, if Defendant argues that one or more claims are invalid under one or more of the requirements of § 112 based on a particular claim limitation, that shall count as a single argument.  If other claims have the same limitation that comprises the basis for the given invalidity argument under § 112, that shall not count as an additional § 112 argument.

The Parties' competing proposals are provided in the chart below:

| Step | Description | Fraunhofer Proposal | SXM Proposal |
|---|---|---|---|
| 2 | Initial narrowing of § 112 arguments | 40 § 112 arguments | 120 § 112 arguments |
| 4 | Further narrowing of § 112 arguments | 20 § 112 arguments | 68 § 112 arguments |

### IV. Timing of Case Narrowing Steps

The Parties are in agreement regarding the timing of Steps 3 and 4 but have a dispute when the Steps 1 and 2 should take place as set forth in the chart below.

| Step | Description | Fraunhofer Proposal | SXM Proposal |
|---|---|---|---|
| 1 | Initial narrowing of asserted claims | 2 weeks after Court's Case Narrowing Order | 2 weeks after the completion of fact depositions |
| 2 | Initial narrowing of prior art | 2 weeks after Step 1 | 2 weeks after Step 1, with additional claim construction, if necessary, taking place between Steps 2 and 3[2] |
| 3 | Further narrowing of asserted claims | 1 week after the close of expert discovery ||
| 4 | Further narrowing of prior art | 1 week after Step 3 ||

---

[2] **Fraunhofer's Position:** Fraunhofer objects to SXM's attempt to raise issues relating to "additional claim construction," which it raised for the first time yesterday in the inapposite context of this joint stipulation regarding case narrowing. Fraunhofer suggested that SXM should instead raise this issue separately with the Court, but SXM refused to do so. As previously indicated (*see, e.g.*, D.I. 214 at 2-3), Fraunhofer does not believe that "additional claim construction" is appropriate or necessary in this case.

**SXM's Position:** SXM disagrees with Fraunhofer's view of the Parties' correspondence on this issue as SXM has repeatedly explained to Fraunhofer and the Court that claim construction, to the extent necessary, should be addressed after an initial round of claim reduction. *See e.g.*, D.I. 214 at 2-3; 1/3/20 Hearing Tr. at 47:19-21; 2/6/18 Hearing Tr. at 22:7-10, 25:19-24.

V.     **Modification of Limits**

The Parties may seek to modify the limits set forth above in the future upon a showing of good cause. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312 (Fed. Cir. 2011).

**Fraunhofer's Position:** Fraunhofer further reserves the right to seek to have some claims (including non-elected claims) tried separately in a bifurcated proceeding. This issue was expressly discussed in the parties' correspondence dated March 5, 16, 19, and 26 (for example). *See* Exs. H, I, J, K.

**SXM's Position:** SXM opposes bifurcation of elected or non-elected claims. Fraunhofer raised the issue of bifurcation of non-elected claims for the first time just three hours before the deadline for this stipulation. Fraunhofer stated previously that "One additional thought that we wanted to raise in terms of addressing the number of asserted patents in this case is the possibility of bifurcating patents into different trials" with no mention of bifurcating non-elected claims. *See e.g.*, Ex. H (letter dated March 5, 2021).

VI.    **Other Case Narrowing Orders**

During the March 4, 2021 hearing, the Court encouraged the parties to "take a look at" various "case narrowing orders out there in other cases," while noting that "this case has its own uniqueness and is not the garden variety patent case." 3/4/21 Tr. at 78:2-9. The Parties have complied with this instruction and have met and conferred regarding a number of case narrowing orders from this District. For the Court's convenience, the Parites have attached these orders hereto as Exs. A-G.

**Fraunhofer's Position:** The Parties disagree about which case narrowing orders may or may not have relevance here, as well as the extent to which such orders may or may not be

applicable to the parties' current disputes. Fraunhofer believes that the following cases may be relevant in certain respects: *NexStep* (Ex. A), *VLSI* (Ex. B), *Align* (Ex. C), *Integra* (Ex. D), *Ethicon* (Ex. E). These cases were all cited and discussed in the parties correspondence, and Fraunhofer believes that some of the authority that SXM has insisted on attaching is inapposite. *See, e.g.*, Ex. J (letter dated Mar. 19, 2021); Ex. L (letter dated Mar. 29, 2021); Ex. O (email dated July 9, 2020); Ex. N (emails dated July 1, June 29, June 25).

**SXM's Position:** SXM sought to identify, for the Court, all case narrowing orders that had been exchanged and discussed during the Parties' correspondence and meet and confers by presenting Your Honor's prior case narrowing orders first followed by other case narrowing orders from this District. Fraunhofer disagreed with such approach, sought to make its own statement and proceeded to attach, as the first exhibits, the case narrowing orders that only purportedly support its position. SXM believes that all cases exchanged between the Parties (as attached hereto as Exs. A-G) are of relevance for either all or part of the proposals as SXM has repeatedly explained in correspondence; that correspondence demonstrates that these prior case narrowing orders support the reasonability of SXM's proposals and that Fraunhofer's proposals are inconsistent with this District's practice. *See e.g.*, Ex. Q (email correspondence dated February 3, 2021); Ex. I (letter dated March 16, 2021); Ex. K (letter dated March 26, 2021).

**VII.  Impact of IPR Proceedings**

The parties dispute what should be the impact on this case (if any) of the IPR proceedings for the Asserted Patents that SXM filed with the Patent Office.

**Fraunhofer's Position:** SXM refused to file this joint stipulation unless the Parties addressed the topic of the IPR proceedings. Fraunhofer therefore presents the following statement.

In 2018, SXM filed petitions for *inter partes* review (IPR) with the Patent Trial and

Appeals Board (PTAB) challenging the validity of all four of the patents that Fraunhofer has asserted in this case. The PTAB has now rejected *all* of SXM's validity challenges to the Asserted Patents. The current status of the IPR proceedings is as follows:

- '997 Patent (Case No. IPR2018-00681): Institution denied on the basis that SXM "has not set forth a reasonable likelihood of succeeding on any of the three asserted grounds of unpatentability." Paper 25 at 14 (Mar. 9, 2021). Not appealable.

- '1084 Patent (Case No. IPR2018-00682): Institution denied on the basis that SXM "has not set forth a reasonable likelihood of succeeding on either of the two asserted grounds of unpatentability." Paper 25 at 11 (Mar. 11, 2021). Not appealable.

- '3084 Patent (Case No. IPR2018-00689): Institution denied on the basis that SXM "has not demonstrated on the record before us a reasonable likelihood that it would prevail in showing the unpatentability of any challenged claim of the '3084 patent." Paper 25 at 26 (Oct. 21, 2019). Not appealable.

- '289 Patent (Case No. IPR2018-00690): Final written decision finding that SXM "fail[ed] to show by a preponderance of the evidence that the challenged claims are unpatentable." Paper 63 at 17 (July 23, 2020). Currently on appeal to the Federal Circuit (Appeal No. 20-2319).

Fraunhofer believes that the fact that SXM has already unsuccessfully attempted to challenge validity of the Asserted Patents weighs in favor of a relatively smaller number of prior art references and prior art arguments to be allowed than would otherwise be the case.

Moreover, under 35 U.S.C. § 315(e)(2), SXM is now legally estopped from arguing in this litigation that any claim of the '289 Patent is invalid based on "any ground that it raised or reasonably could have raised" during the IPR proceedings. Because over one-third of the asserted

claims are from the '289 Patent, Fraunhofer believes that the number of references and prior art arguments allowed to SXM should be reduced by at least a third from what they would have been absent the IPR proceedings.[3]

**SXM's Position:** SXM had sought to include a simple footnote identifying the dispute over whether SXM would be subject to estoppel resulting from the IPRs it had filed and requesting that the Court permit separate briefing on the dispute due to the complexity of the issue. Fraunhofer refused and inserted the argument above for the first time just three hours before this submission. Notwithstanding this, SXM requests separate briefing on this dispute over estoppel, but briefly addresses Fraunhofer's argument below.

There is no estoppel for three of the four patents that were denied institution as it is black letter law that no such estoppel applies when institution is denied (notably, Fraunhofer does not make a contention to the contrary). *See, e.g., Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.,* 817 F.3d 1293 (Fed. Cir. 2016); *see also* Ex. K (letter dated March 26, 2021). Fraunhofer is also incorrect that SXM is estopped from presenting invalidity arguments for the '289 Patent. Where there was a final written decision (as in the '289 Patent IPR), there is no estoppel of arguments based on public use and in view of the Board not ruling on the substance of SXM's invalidity grounds. *See e.g.*, *Intellectual Ventures I LLC v. Toshiba Corp.,* 2017 WL 107980, *1-2 (D. Del. Jan. 11, 2017).

---

[3] **Fraunhofer's Position:** SXM cited one of the cases below (*Intellectual Ventures*) for the first time today at 5:20 p.m., despite extensive prior meet-and-confer on this subject including the statutory authority cited above. *See, e.g.*, Ex. O (email dated Aug. 28, 2020); Ex. J. If deemed helpful, Fraunhofer is willing to provide a supplemental filing responding to this case. However, Fraunhofer does not believe that it supports a finding that no estoppel should apply in this case.

**SXM's Position:** SXM previously identified case law in letter correspondence (*see e.g.*, letter dated March 26, 2021) to Fraunhofer and only included the cited case law herein after Fraunhofer cited statutory authority and provided its argumentative positions above. SXM explained to Fraunhofer, and continues to prefer and believe it is most efficient, to have this issue addressed in separate briefing before the Court.

Because there is no estoppel for the '289 Patent, there should be no reduction on the number of prior art references or arguments to be presented. Nevertheless, even if estoppel applied (which it does not) Fraunhofer's contention that one-third of the asserted claims are necessarily from the '289 Patent may not be true. When the reduction in asserted claims occur, it very well may be the case that less than one-third of the asserted claims come from the '289 Patent. Accordingly, to arbitrarily make that representation now to try to reduce SXM's prior art references and invalidity arguments is improper.

### VIII. Meet-and-Confer Efforts

For the Court's reference, the parties' most recent meet-and-confer correspondence regarding narrowing is attached hereto as Exs. H-M, R. Earlier email correspondence on this subject is attached hereto as Exs. N-Q.

Dated: April 1, 2021

Respectfully submitted,

By: _/s/ Brian E. Farnan_____
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Ben J. Yorks (admitted pro hac vice)
David McPhie (admitted pro hac vice)
IRELL & MANELLA, LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone: (949) 760-0991

Facsimile: (949) 760-5200
byorks@irell.com
dmcphie@irell.com

*Attorneys for Plaintiff Fraunhofer*

Respectfully submitted,

By: \_/s/ Philip A. Rovner_____
    Philip A. Rovner (Bar No. 3215)
    Jonathan A. Choa (Bar No. 5319)
    POTTER ANDERSON & CORROON LLP
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

    Jonathan S. Caplan (admitted pro hac vice)
    Mark A. Baghdassarian (admitted pro hac vice)
    Shannon H. Hedvat (admitted pro hac vice)
    KRAMER LEVIN NAFTALIS & FRANKEL, LLP
    1177 Avenue of the Americas
    New York, NY 10036
    Telephone: (212) 715-9100
    jcaplan@kramerlevin.com
    mbaghdassarian@kramerlevin.com
    shedvat@kramerlevin.com

*Attorneys for Defendant Sirius XM Radio Inc.*