# EXHIBIT 1

Case 1:17-cv-01434-JFB-SRF Document 482-1 Filed 11/04/21 Page 2 of 18 PageID #: 31617

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

C.R. BARD, INC., and )
BARD VASDULAR, INC., ) 30(b)(6) Deposition of
) C.R. Bard through:
Plaintiffs, )
) Kenneth Eliasen
vs. )
)
ANGIODYNAMICS, INC., ) C.A. No. 15-218-SLR
)
Defendant. )

August 15, 2017 * 9:00 a.m.
Location: Thorpe North & Western
175 South Main Street, Suite 900
Salt Lake City, Utah 84111

Reporter: Diana Kenneth, RPR, CRR
Notary Public in and for the State of Utah

Job No: 128704

Page 130

KENNETH ELIASEN

about here is the alphanumeric character, correct?

MR. RAIFE: Objection. Asked and answered. Misstates testimony. Outside the scope of the 30(b)(6).

A. Yeah. The additive feature would be to include something here. It doesn't say alphanumeric, but it says --

Q. In paragraph 56 there's a discussion of alphanumeric characters. You see that?

A. Yeah. We were talking about 58.

Q. Yeah. I think 56, 57, and 58 all relate to each other.

A. Yeah. That's just in Carter. This other one describes the alphanumeric from Beasley, which includes B. So yeah.

Q. So what do you mean by -- so the added information would be the alphanumeric character; is that correct?

MR. RAIFE: Objection. Asked and answered.

A. Not necessarily. It would just be something else. But I think what Beasley and Carter were teaching is that, you know, you could add something else. It doesn't necessarily have to be

Page 131

KENNETH ELIASEN

that. It could have been an arrow or, I don't know. Anything, really. But it would be additive to the original.

Q. So one of the obvious things to add to the marker could have been an alphanumeric character.

MR. RAIFE: Objection. Asked and answered.

A. Yeah.

MR. RAIFE: Outside the scope of the 30(b)(6).

Q. Okay. So paragraph 58 relates to the 2006 time frame. Do you have any reason to believe that it would not be relevant to the 2005 time frame?

MR. RAIFE: Objection to form. Calls for a legal conclusion, and outside the scope of the 30(b)(6).

MR. POWELL: I think you got all of them.

A. It depends. Here it is citing additional references, so it probably would depend on, you know, what's become available, what would be sort of common practice. So there could be some --

REPORTER: I'm sorry. "There could be some --"

A. I mean, every year we learn something new,

Page 132

KENNETH ELIASEN

right? So there always could be some difference.

Q. (By Mr. Powell) Let's look at the Carter reference. Could you turn back to the Carter reference?

A. Which one is that?

Q. Exhibit B.

A. Okay. Got it.

Q. You're there?

A. Yeah. I got lost in my --

Q. Do you see the date in the Carter reference?

A. Yeah. This one is '89.

Q. So there was a Carter reference in the prior art in 2005.

A. Yes.

Q. Is the Carter reference something that one of ordinary skill in the art could have relied upon in 2005?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

A. It's possible, yes.

Q. When you signed your declaration in 2009, did you believe that the statements in paragraphs 56, 57, and 58 were true and correct?

Page 133

KENNETH ELIASEN

A. Yes.

Q. Do you have any reason to believe that those statements are no longer accurate?

A. No.

Q. Okay. Let's go to the Jones reference again. Sorry I keep on jumping around.

A. Got it.

Q. Do you see the date of the Jones reference?

A. Yes.

Q. What is that date?

A. September 11, 2001.

Q. Is the Jones reference something that one of ordinary skill in the art could have relied upon in 2005?

MR. RAIFE: Objection. Calls for legal conclusion. Outside the scope of the 30(b)(6).

A. I would say yes.

Q. Okay. Can you turn to the Jordan patent, which is Exhibit D.

A. Got it.

Q. What's the date of the Jordan patent?

A. June 13, 1995.

Q. Is the Jordan patent something that one of ordinary skill in the art could have relied upon in

Case 1:20-cv-01544-CFC-SRF Document 261 Filed 06/11/21 Page 28 of 28 PageID #: 18670

KENNETH ELIASEN

that is printed or etched onto the bottom of a port that explicitly describes the port type and is visible under X-ray. Would those letters allow a practitioner to identify the model or design of the port from an X-ray image?

MR. RAIFE: Objection. Calls for speculation. Outside the scope of the 30(b)(6).

A. Yeah. I guess. I mean, if you wrote the exact thing on there, sure.

Q. What do you mean "if you wrote the exact same thing on there"?

A. Your question was if they spelled out exactly what the model was and they could see it on X-ray, that they would know what it was. Yeah. They would still have to -- they would have to know what the model number was, but yeah.

Q. Okay. So we talked about, earlier, how this whole provisional is about identifying the power-injectable port, correct?

A. Yes.

Q. How would knowing the manufacturer's model or design of an implanted port allow you to identify the port as being a power-injectable port?

MR. RAIFE: Objection. Misstates

KENNETH ELIASEN

testimony. Outside the scope of the 30(b)(6).

A. I'm not sure I quite understood your question.

Q. Where's your difficulty?

A. So not necessarily knowing the model number might not. But knowing something about the port that was -- that had been previously identified as power-injectable might.

Q. So, for example, if you knew that a particular design like the PowerPort was a power-injectable design, would identifying a feature that correlates to that design tell you that the implanted port is power injectable?

MR. RAIFE: Object to the form. Outside the scope of the 30(b)(6).

A. It could help. It could be one of many things, maybe. Some probably work better than others.

Q. But it would work?

A. Perhaps.

MR. RAIFE: Objection. Asked and answered.

A. Perhaps.

Q. Okay. Isn't that kind of the whole purpose of the triangular shape of the PowerPort?

MR. RAIFE: Objection. Outside the scope

KENNETH ELIASEN

of the 30(b)(6).

A. It was one feature of it. One reason for it, yes.

Q. Yes. And the one reason is? Can you explain that?

A. For the --

Q. You said it's one reason for the triangular shape. I'd like you to explain what that one reason is.

MR. RAIFE: Objection. Outside the scope of the 30(b)(6). The PowerPort is not an issue in this. I don't know why you're asking --

MR. POWELL: Don't. Stop testifying. Stop testifying.

A. The one reason for the identification is the question. I think it would help if a triangular shape was associated with power injectability.

Q. Okay. So we discussed earlier that manufacturers typically mark their products with their company logos. Is that consistent with your recollection?

A. It's pretty typical, yeah.

Q. Okay. If the company only used power-injectable ports and it was known, would a

KENNETH ELIASEN

practitioner be able to identify an implanted port as being power injectable by viewing the company's logo?

MR. RAIFE: Objection. Calls for speculation. Outside the scope of the 30(b)(6) topic.

You can answer in your personal capacity if you have knowledge.

A. If a company only sold power-injectable ports? I mean, that wouldn't be a strong way, but potentially, yes.

Q. Okay. Are you aware of the AngioDynamics Vortex port?

MR. RAIFE: Object to the form. Outside the scope of the 30(b)(6) topics.

A. I was only made aware of the fact that it was the AngioDynamics Vortex port in our last meeting. But I am aware of the Vortex port.

Q. Okay. Go to paragraph 45, please.

A. Okay.

Q. So the first sentence of paragraph 45 says, "In another embodiment, in another aspect of the present invention, a template may be employed for perceiving at least one feature of an access port." Do you see that?

A. Yes.

Page 150

KENNETH ELIASEN

Q. How could a template be used to identify a port as being power-injectable?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

You can answer if you have personal knowledge.

A. If you use the pattern, the radiopaque pattern or something to that effect and there was a template that matched that pattern and you saw it, you could potentially use that. I would think it might not be the best way, but ...

Q. So paragraph 45 is describing a complementary shaped template that may be positioned over and abutted against an access port.

MR. RAIFE: Objection. Outside the scope of 30(b)(6).

MR. POWELL: I'm just pointing him to a portion of the specification, Dylan.

MR. RAIFE: Which isn't at issue in the Zinn Interference, but okay.

A. Yeah, I see that.

Q. Okay. So do you have an understanding of what a template is that is being referenced in paragraph 45?

Page 151

KENNETH ELIASEN

MR. RAIFE: Same objection.

A. I don't think it's a specific template but they are saying the template. So yeah.

Q. So in what -- what do you understand the template to be?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

A. A representation of whatever they are looking for, I guess.

Q. How could you use a template to identify a port as being interference?

MR. RAIFE: Objection. Calls for speculation. Outside the scope of the 30(b)(6).

A. Could see it, see the port on a radiograph and then maybe potentially match it up to a template or a similar picture that was hopefully taken on radiograph, as well.

Q. Okay. And you are referring to templates generally, not the template described in paragraph 45; is that right?

A. Yes.

Q. Do you have any idea how the template described in paragraph 45 could be used to identify a port as power injectable?

Page 152

KENNETH ELIASEN

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

A. I think it was the same answer. If it was comparable, somehow they could compare the two.

Q. Would that process involve identifying the model or manufacturer of the implanted port?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

A. Not necessarily, but it could. I mean, just by virtue of being able to compare the template.

Q. Okay.

A. Perhaps.

Q. Can you turn to paragraph 52. Paragraph 52 states that, "The present invention contemplates that an access port may have an exterior which is generally cylindrical, generally conical, generally elliptical, generally oval, or an exterior that is otherwise arcuate in nature." Do you see that?

A. Yeah.

Q. Do you have an understanding of what shapes would not be within the scope of the invention described in the '518 Provisional?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

Page 153

KENNETH ELIASEN

A. It seems like it is speaking specifically to square.

Q. Are triangular shapes within the scope of the '518 Provisional?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6). Vague.

A. I couldn't say. But it seems like they are talking about a quadrilateral.

Q. Okay. Turn to paragraph 60, please.

A. I'm there.

Q. Okay. The second-to-the-last sentence says, "It may also be noted that such an access port 10 might include three suture apertures 66, which may, in itself comprise one identifiable feature of the access port of the present invention." Do you see that?

A. Yes.

Q. How could the suture apertures of a port comprise an identifiable feature?

A. If they created contrast somehow with the rest of the port or a pattern.

Q. Okay. How would a pattern be known to one of ordinary skill in the art to indicate any particular sort of information as opposed to any other?

MR. RAIFE: Objection. Form. Outside the

Case 1:20-cv-01544-CFC Document 261 Filed 06/17/21 Page 84 of 127 PageID #: 832
18672

KENNETH ELIASEN

scope of the 30(b)(6).

A. If it was known or associated with power injectability. Personal experience.

Q. Would the pattern need to be uniquely identifiable?

MR. RAIFE: Objection. Form. Calls for speculation. Outside the scope of the 30(b)(6).

A. I don't know about uniquely, but it would definitely have to be identifiable as power injectable.

Q. How would someone know, when looking at a radiograph of suture holes, that those suture holes indicated that the implanted port was power-injectable?

MR. RAIFE: Objection. Asked and answered. Form. Outside the scope of the 30(b)(6).

A. Could be training. Could be experience. Could be any number of things.

Q. Experience in what way?

MR. RAIFE: Same objections.

A. Maybe they previously placed the port.

Q. Okay. So someone could learn that you could identify a port via the suture apertures based upon experience; is that correct?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6).

KENNETH ELIASEN

A. They could, yeah.

Q. Okay. And another way they could do that is through training; is that right?

MR. RAIFE: Same objection.

A. That's correct.

Q. What sort of training?

MR. RAIFE: Objection. Outside the scope of the 30(b)(6). Calls for speculation.

A. Could be in-servicing, could be their fellowship. It could just be -- could be any number of training.

Q. Could someone learn that a shape is associated with power injection via their experience in placing ports?

MR. RAIFE: Objection. Calls for speculation. Outside the scope of 30(b)(6).

A. They could. Most of the stuff is a little bit more dangerous, just because you want to be absolutely certain what you are accessing.

Q. Okay. And let's say a particular port had a unique alphanumeric character that was on every single port of that type. Could someone learn from experience that the presence of the unique alphanumeric character was associated with power injection?

KENNETH ELIASEN

MR. RAIFE: Object to the form. Calls for speculation. Outside the scope of the 30(b)(6).

A. It would take more. It would take more than just learning. You'd have to actually be able to see it. You'd have to, you know, I mean there's more than just the knowledge of whatever the sequence of characters is.

Q. So let's say a particular design of port was known to be power-injectable and also known to include radiographic characters of the same type on each one of the ports of that design. Could someone learn from experience that the presence of those radiographic characters indicated that an implant port was power injectable?

MR. RAIFE: Objection. Incomplete hypothetical. Calls for speculation. Outside the scope of the 30(b)(6).

A. Yeah, I suppose they could. At some point in time there would have to be -- someone would have to have explained to them what it was, probably.

Q. You said you suppose they could. What do you mean by you suppose they could?

MR. RAIFE: Objection. Asked and answered.

KENNETH ELIASEN

A. You know, with enough experience or if they attempted to power inject it and it worked, they might think that. Of course, they might do that with other stuff, too. And it might work or it might not. So they might be false, you know. I think the real answer is it's got -- there's probably multiple things that they have to do to make sure.

Q. So you are describing kind of a trial and error approach; is that correct?

MR. RAIFE: Objection. Form.

A. That was the question through training, which may be a trial and error approach. But yeah, through an approach like that, which is pretty dangerous in this situation. Yeah.

Q. Okay. Turn to paragraph 70.

A. Okay.

Q. So paragraph 70, within paragraph 70 there's a statement that says, "For example, assuming that a metal feature comprises a metal plate, a size, shape, or both may be selectively tailored for identification of an access port." Do you see that?

A. Yeah.

Q. How can a metal plate be selectively tailored for identification of an access port?

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V.,
Plaintiff,

No. 17-184-JFB-SRF

v.

SIRIUS XM RADIO, INC.,
Defendant.
_______________________________/

Remote Proceedings
Fort Lauderdale, Florida
Thursday, January 7, 2021
10:03 a.m. - 7:25 p.m.

VIDEO DEPOSITION OF CRAIG P. WADIN
(Via Teleconference)
(Highly Confidential)

Taken before SUZANNE VITALE, R.P.R., F.P.R. and Notary Public for the State of Florida at Large, pursuant to Notice of Taking Deposition filed in the above cause.

Job no. 4336910
Pages 1 - 345

HIGHLY CONFIDENTIAL

Page 198

51 (Pages 198 - 201)

Veritext Legal Solutions
866 299-5127

[redacted]

AFFIDAVIT

STATE OF FLORIDA )
COUNTY OF _____________ )

I, ___________________________, being first duly sworn, do hereby acknowledge that I did read a true and certified copy of my deposition which was taken in the case of FRAUNHOFER V SIRIUS , taken on the 7th day of January, 2021, and the corrections I desire to make are as indicated on the attached Errata Sheet

________________________
(Deponent)

+++++++++++++++++

CERTIFICATE

STATE OF FLORIDA )
COUNTY OF _____________ )

Before me personally appeared ____________________________________, to me well known / known to me to be the person described in and who executed the foregoing instrument and acknowledged to and before me that he executed the said instrument in the capacity and for the purpose therein expressed

Witness my hand and official seal, this ____ day of _______________, _____

________________________
(Notary Public)

My Commission Expires:

CERTIFICATE OF OATH

STATE OF FLORIDA )
COUNTY OF BROWARD )

I, the undersigned authority, certify that CRAIG P. WADIN personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 18th day of January, 2021.

Suzanne Vitale

SUZANNE VITALE, R.P.R., F.P.R.
Notary Public, State of Florida
My Commission No. DD179981
Expires: 5/24/2024

CERTIFICATE

STATE OF FLORIDA )
COUNTY OF BROWARD )

I, SUZANNE VITALE, R.P.R., F.P.R. do hereby certify that I was authorized to and did stenographically report the foregoing deposition of CRAIG P. WADIN; that a review of the transcript was requested; and that the transcript is a true record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 18th day of January, 2021.

Suzanne Vitale

SUZANNE VITALE, R.P.R., F.P.R.
My Commission No. DD179981
Expires: 5/24/2024

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FRAUNHOFER-GESELLSCHAFT ZUR FORDERUNG DER ANGEW ANDTEN FORSCHUNG E.V., CASE NO.: 17-00184-JFB-SRF

Plaintiff(s),

-vs-

SIRIUS XM RADIO, INC.,

Defendant(s).

_______________________________________/

Videoconference

DATE: Monday, November 16, 2020

TIME: 10:14 a.m. - 5:16 p.m.

VIDEO DEPOSITION OF 30(b)(6) WITNESS

PAUL DAVID KRAYESKI

Taken on behalf of the PLAINTIFF before Jennifer L. Bush, RPR, FPR, Notary Public in and for the State of Florida at Large, pursuant to Notice of Taking Deposition in the above cause.



Page 174

45 (Pages 174 - 177)

Veritext Legal Solutions
866 299-5127

Page 182

CERTIFICATE OF NOTARY PUBLIC

STATE OF FLORIDA
COUNTY OF ___________

I, PAUL DAVID KRAYESKI, certify that I have read the foregoing transcript of my deposition and that the statements contained therein, together with any additions or corrections made on the attached Errata Sheet are true and correct.

Dated this _____ day of ___________, 20__.

_________________________
PAUL DAVID KRAYESKI

The foregoing certificate was subscribed to before me this _____ day of _______________, 20__, by the witness who has produced a _________________ as identification and who did not take an additional oath.

______________________________
NOTARY PUBLIC

Page 240

CERTIFICATE OF REPORTER

STATE OF FLORIDA )
COUNTY OF ST. LUCIE )

I, Jennifer L. Bush, Registered Registered Registered Professional Reporter, do hereby certify that I was authorized to and did stenographically report the deposition of PAUL DAVID KRAYESKI; and that a review of the transcript was requested; and that pages 1 through 241, inclusive, are a true record of my stenographic notes.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties, attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this December 5, 2020.

Jennifer Bush, RPR, FPR

The foregoing certification of the transcript does not apply to any reproduction of the same by and means unless under the direct control and/or direction of the certifying reporter.

Page 239

Page 241

VOLUME: I
PAGES: 1-164
EXHIBITS: 1-19

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

C.A. No. 17-184-JFB-SRF

______________________________________

FRAUNHOFER-GESELLSCHAFT ZUR FORDERUNG )
DER ANGEWANDTEN FORSCHUNG E.V., )
Plaintiff, )
vs. )
SIRIUS XM RADIO INC., )
Defendants. )
________________________________________)

VIDEOTAPED AND VIDEOCONFERENCED DEPOSITION OF SIRIUS XM RADIO INC. BY DENISE KARKOS, called as a witness by and on behalf of the Plaintiff, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, Rule 30(b)(6), before P. Jodi Ohnemus (remotely), RPR, RMR, CRR, CA-CSR #13192, NH-LSR #91, MA-CSR #123193, and Notary Public, within and for the Commonwealth of Massachusetts, at Cumberland Foreside, Maine, on Monday, January 11, 2021, commencing at 10:20 a.m.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Page 86

23 (Pages 86 - 89)

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY

Page 90

24 (Pages 90 - 93)

Veritext Legal Solutions
866 299-5127

DEPONENT'S ERRATA SHEET
AND SIGNATURE INSTRUCTIONS

The original of the Errata Sheet has been delivered to Mark Baghdassarian, Esq

When the Errata Sheet has been completed by the deponent and signed, a copy thereof should be delivered to each party of record and the ORIGINAL delivered to Rebecca Carson, Esq , to whom the original deposition transcript was delivered

INSTRUCTIONS TO DEPONENT

After reading this volume of your deposition, indicate any corrections or changes to your testimony and the reasons therefor on the Errata Sheet supplied to you and sign it DO NOT make marks or notations on the transcript volume itself

REPLACE THIS PAGE OF THE TRANSCRIPT WITH THE COMPLETED AND SIGNED ERRATA SHEET WHEN RECEIVED

Page 162

STATE OF NEW HAMPSHIRE

I, P Jodi Ohnemus, New Hampshire LCR #91, CA CSR #13192, MA CSR #123193 and Notary Public within and for the Commonwealth of Massachusetts, do hereby certify that there came before me (remotely) on the 11th day of January, 2021, the deponent herein, who was duly sworn by me; that the ensuing examination upon oath of the said deponent was reported stenographically by me and transcribed into typewriting under my direction and control; and that the within transcript is a true record of the questions asked and answers given at said deposition

I FURTHER CERTIFY that I am neither attorney nor counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken; and, further, that I am not a relative or employee of any attorney or financially interested in the outcome of the action

IN WITNESS WHEREOF I have hereunto set my hand this 22nd day of January, 2021, at New Hampshire

Patricia Jodi Ohnemus
P Jodi Ohnemus,
RPR, RMR, CRR,
NH LCR #91, CA CSR #13192,
MA CSR 123193

Page 163

ATTACH TO DEPOSITION OF: DENISE KARKOS
CASE: FRAUNHAUFER VS SIRIUS

ERRATA SHEET

INSTRUCTIONS: After reading the transcript of your deposition, note any change or correction to your testimony and the reason therefor on this sheet DO NOT make any marks or notations on the transcript volume itself Sign and date this errata sheet (before a Notary Public, if required) Refer to page 162 of the transcript for errata sheet distribution instructions

PAGE LINE

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

____ ____ CHANGE: ______________________
REASON: ______________________

I have read the foregoing transcript of my deposition and except for any corrections or changes noted above, I hereby subscribe to the transcript as an accurate record of the statements made by me

______________________

Subscribed and sworn to before me this __________ day of __________, 2021

______________________
Notary Public
My Commission Expires:

Page 164