

April 4, 2022

**VIA E-FILING**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building            **FILED UNDER SEAL**
844 N. King Street
Wilmington, DE 19801-3555

      Re:   *Fraunhofer Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, No. 17-184-JFB-SRF

Dear Judge Fallon:

Fraunhofer hereby submits this opposition to SXM's opening letter brief (D.I. 539). SXM's brief improperly presents five distinct issues for resolution, in direct violation of the Court's March 18 order limiting the hearing to "two disputes per side."[1] In any event, SXM's numerous requests should be denied in their entirety for the reasons detailed below.

**I.    Fraunhofer Has Already Searched For And Produced All Inventor Notebooks**

First, SXM claims that Fraunhofer "has refused to produce or even search for [inventor] notebooks" relating to the asserted patents. D.I. 539 at 1-2. This claim is demonstrably false.

SXM's RFP No. 71 requests documents relating to the named inventors, "including, without limitation, notebooks, research notebooks or notes." Ex. 15. In response to this RFP, Fraunhofer performed multiple, diligent searches for responsive documents—***including inventor's lab notebooks***—and produced **all** responsive, non-privileged documents that were located as a result. Fraunhofer has repeatedly confirmed these facts to SXM. Ex. F at 8-9; Ex. 16 at 3; Ex. H at 3-4.

For example, in March 2020, Fraunhofer produced a pair of inventor notebook documents with Bates Nos. F00370765 and F00370895. Exs. 17, 18 (excerpts). Fraunhofer further identified these documents in its supplemental responses to Interrogatory Nos. 1 and 10, which relate to conception of the inventions. Exs. 19, 20. Shortly thereafter, counsel for SXM affirmed to the Court that he had "reviewed" these documents, referring to them as "handwritten notes [in] German." Ex. 21 at 15:21-23. More recently, Fraunhofer pointed to these same documents as part of the meet-and-confer process. Ex. F at 8 (citing Bates numbers). There is no question SXM is aware of them.

SXM nevertheless asserts that Fraunhofer's representations regarding its search and production efforts were "proven to be incorrect" based on the deposition testimony of inventor Stephan Lipp. D.I. 539 at 2. This accusation is baseless. Mr. Lipp did confirm that he "probably" had "notes related to the patents" that were kept in a "lab notebook" or "notebooks." Ex. C at 145:24 – 146:10, 148:22 – 149:7. But as noted above, those are the very materials that were collected, produced,

---

[1] Despite Fraunhofer's repeated requests, SXM refused to properly narrow its issues or even disclose in advance which issues it intended to raise with the Court. Ex. 6 at 5. SXM's opening brief also improperly refers to two other pending disputes in footnotes 1 and 2. *See* D.I. 539 at 1, 3. Neither of these issues is ripe for resolution by the Court and Fraunhofer reserves its rights.

and identified to SXM years ago.[2] Mr. Lipp never asserted or suggested that he had other, unproduced notebooks. Indeed, counsel for SXM did not introduce either of the notebook documents as an exhibit during Mr. Lipp's deposition or ask any questions about them.

As for lab notebooks from other co-inventors, Mr. Lipp's testimony was expressly speculative. Ex. C at 151:5-6 ("I *think* that some of them had such lab notebooks"), 151:11-13 ("I would *assume* that some … had notebooks"), 152:2-4 ("I *assume* that some … had lab notebooks with notes in them"). Mr. Lipp never claimed to have personal knowledge that any such lab notebooks definitively existed at the time of invention, much less today. The fact is that Fraunhofer has diligently and repeatedly searched for all lab notebooks and cannot produce what does not exist.

## II. All IPXI-Related Documents Have Been Produced Or Logged

Second, SXM claims that Fraunhofer "has refused to search for and produce all responsive documents" relating to a (now defunct) non-party known as IPXI. This too is false. Fraunhofer already conducted multiple reasonable searches for documents responsive to the requests cited in SXM's brief (RFP Nos. 11 and 99) and produced all responsive, non-privileged documents that were located as a result. Ex. F at 9; Ex. 16 at 3.[3] These IPXI-related documents included correspondence, agreements, meeting agendas, and similar documentation. Ex. A at 2; Ex. F at 9. The remaining (privileged) documents were duly identified on Fraunhofer's log. *See, e.g.*, Ex. 22.

SXM argues that IPXI-related documents are *relevant* based on the deposition testimony of Stefan Lipp and Michael Schlicht. D.I. 539 at 2. But regardless of whether SXM is right on relevance, the fact is that neither of these two witnesses testified or suggested that any documents exist beyond those that have already been produced by Fraunhofer or identified as privileged. Indeed, the only document referenced in the cited testimony relates to a so-called "essentiality analysis." *See, e.g.*, Ex. C at 129:13-25. Mr. Lipp testified that this analysis was conducted with assistance from attorneys (*id*. at 128:14-23; 142:14-20), and the corresponding documents were included in Fraunhofer's privilege log. *See, e.g.*, Ex. 22 (Nos. 350, 351). If anything, the substantial amount of testimony cited by SXM demonstrates that it has had ample opportunity to explore any IPXI-related issues on the present record through multiple available discovery channels. *See, e.g.*, Ex. C at 114:19 – 144:12; Ex. K at 241:21 – 242:3, 256:8 – 261:20.

SXM also makes a superficial argument about privilege, but without pointing to any particular entry in Fraunhofer's log (which was produced over a year ago), much less articulating any actual privilege challenge during the meet-and-confer process or in its brief. At most, SXM suggests a belief that disclosure to a third party necessarily destroys privilege—a view that is flatly incompatible with the law. For example, it is well-established that a patent owner and licensee can share a legal interest sufficient to invoke the common interest privilege. *See, e.g., MobileMedia Ideas LLC v. Apple Inc*., 890 F. Supp. 2d 508, 517 (D. Del. 2012) (documents exchanged with third-party licensing entity protected by common interest privilege).

---

[2] A few short passages from these documents were redacted as privileged. *See, e.g.*, Ex. 18 at F00370895; Ex. G at 1 ("legal advice related to patents"). SXM never challenged these redactions.

[3] SXM also mentions Interrogatory No. 24, but SXM never raised this issue during the parties' meet-and-confer. In any event, there is no deficiency in Fraunhofer's response. Ex. L at 10-11.

### III. SXM's Discovery Requests Do Not Cover Mr. Schubert's Agreements

Third, SXM contends that Fraunhofer must produce agreements with its former employee, Helmut Schubert. This issue traces back to a dispute that SXM raised a few months ago regarding production of Fraunhofer's agreements with individuals who are (or were formerly) affiliated with Fraunhofer. *See* Ex. A at 3. SXM argued that these agreements were "responsive to at least SXM RFP No. 69, 70, and 72." *Id.*; *see also* Ex. D at 3-4. After extensive meet-and-confer, the issue was resolved in a compromise with production of some additional agreements. Ex. 16 at 2; Ex. H at 3.

SXM has now raised a new variation on this dispute, arguing that Fraunhofer should also produce its agreements with Mr. Schubert. But Mr. Schubert was never mentioned as part of the parties' prior discussions, and for good reason: SXM's previously cited RFPs are all directed squarely at *inventors* (Ex. 15 at 2-3), and it is undisputed that Mr. Schubert is *not* an inventor on the asserted patents. It is axiomatic that parties are not obligated to produce documents not encompassed by a properly served request—and SXM has identified no such request here. *See* Ex. H at 4; Ex. 25.[4] And in any event, Mr. Schubert already fully answered SXM's questions on this topic. *See* Ex. O.

### IV. SXM's New Request For Documents Regarding ETSI-SDR And ONDAS Is Untimely

Fourth, although document discovery ended long ago, SXM demands that Fraunhofer undertake the burden of a broad new search for categories of documents that SXM never previously requested, namely all documents relating to or using the keywords "ETSI-SDR" or "ONDAS."

SXM cites RFP Nos. 9 and 88 in support of its new demand. D.I. 539 at 3. But neither of these requests mentions ETSI-SDR or ONDAS, nor has either party ever claimed that these later projects were necessarily covered by the asserted patents (RFP No. 9) or relevant to "the market for satellite radio … around the time of the MCM License" (RFP No. 88). *See* Ex. F at 3. Nevertheless, Fraunhofer completed diligent searches for both of these RFPs and timely produced all responsive, non-privileged documents that it was able to locate. Moreover, Fraunhofer's other discovery efforts in this case did, in fact, turn up a number of documents on the topics of ETSI-SDR and ONDAS, all of which were produced years ago. Ex. D at 3-4 (identifying documents). Notably, SXM did not raise any issues with those productions at the time.

Importantly, SXM concedes that it has long been aware of ETSI-SDR and ONDAS as its own document production includes numerous documents relating to these topics. *Id*. at 3. To the extent SXM believed these particular subjects were critical to its case, SXM cannot explain why it never pursued such targeted discovery during the regular fact discovery period.

SXM also makes the groundless claim that Fraunhofer's witnesses "confirm[ed]" the existence of "missing documents." D.I. 539 at 3-4. But the actual cited testimony shows no such thing. At most, the witnesses confirmed some knowledge within Fraunhofer regarding these terms, which is consistent with the fact that they appear in a number of documents produced by Fraunhofer. Yet tellingly, SXM chose not to ask Fraunhofer's witnesses about any of these documents, much less ask about the existence of additional documents at Fraunhofer. *See, e.g*., Ex. C at 92:19-93:7.

---

[4] As a possible compromise, Fraunhofer offered that the parties could make a mutual production of employment agreements (Ex. M at 7, 14), but SXM declined.

Finally, SXM argues that Fraunhofer's production must be deficient based on documents in SXM's production and documents regarding meetings between Fraunhofer and SXM. D.I. 539 at 4. But of course, the mere fact that Fraunhofer and SXM did not retain an identical set of documents from dealings that are a decade old (or more) hardly proves that either side is withholding anything. It also begs the question of why SXM is demanding that Fraunhofer undertake another burdensome round of search efforts *for documents that SXM already has*.

## V.   There Is No Basis To Force Fraunhofer To Supplement Its Rule 30(b)(6) Testimony

Fifth, SXM complains that during a recent Rule 30(b)(6) deposition, Fraunhofer's witness (Claudia Eckert) was unable to identify by name or Bates number a particular document that had already been produced to SXM.[5] Essentially, SXM is now demanding that Fraunhofer supplement Ms. Eckert's testimony after the fact with this additional information. But SXM's unusual demand has no legal basis. Indeed, it is well-established that a Rule 30(b)(6) deposition is not a memory test, as authority previously cited by SXM confirms. *See* D.I. 425 at 2-5 (citing *Lebron*, *Google*, *Costa*). This principle applies especially where (as here) the topic is broad and the necessary preparation is extensive. Ex. 23 (Topic No. 14: "Fraunhofer's business from its inception to present …").

At several points during her deposition, Ms. Eckert was asked about documents she had reviewed to prepare for her testimony. Ex. X at 75-77. She listed a number of examples, but was later unable to provide the "exact title" for one of them: "[I]t is something along the lines of general guidelines or rules for the cooperation with customers, but I can't recall exactly." *Id.* at 88:6-16. This unremarkable answer is hardly a basis for relief. SXM suggests that Fraunhofer's counsel should have intervened here, but it would not have been proper for counsel to discuss the matter with the witness or attempt to jog her memory further during the deposition itself. *See* D. Del. L.R. 30.6.

During the meet-and-confer process, Fraunhofer asked SXM to identify any supposed authority to support its claim for relief, but SXM failed to do so. *See, e.g.,* Ex. N at 3; Ex. H at 5. SXM's brief now relies for the first time on a non-controlling case from the District of Maryland: *Nutramax Labs, Inc. v. Twin Labs. Inc.*, 183 F.R.D. 458 (1998) (*see* D.I. 539 at 4). But this untimely cited case is inapposite in any event. *Nutramax* involved a situation where counsel instructed a witness not to answer a question seeking identification of a document, even though the witness admitted the document had "refresh[ed] his recollection." *Id.* at 472. By contrast, there was no such instruction here; the witness was permitted to answer to the best of her ability. Moreover, Ms. Eckert did not testify that the document had refreshed her recollection, nor could it have given that she had "not seen [this] document before" her deposition preparation. Ex. X at 78:1-5.

In short, it is improper for SXM to demand that Fraunhofer assist SXM in its review of Fraunhofer's document production or provide other tactical information no matter how "narrow" SXM claims the issue may be.[6] There is no legal basis for SXM's request, and it should be denied.

---

[5] SXM also makes irrelevant comments about Fraunhofer's good-faith production of 302 emails (with courtesy English translations) that were timely provided *at SXM's request*. Ex. 26 at 5-6, 8.

[6] Again, Fraunhofer offered to make a mutual exchange by way of compromise, but SXM refused. Ex. M at 6-7; *see* Ex. 24 at 20-21 (SXM counsel objecting to SXM witness providing Bates numbers of documents reviewed for deposition prep, claiming this was "highly inappropriate").

5

                                                                       Respectfully submitted,

                                                                       /s/ *Michael J. Farnan*

                                                                       Michael J. Farnan

cc: Counsel of Record (Via E-Mail)