# Exhibit A

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 1 | 7/30/2015 | M. Schlicht | A. Friedman, Esq. T. Fischer, Esq. A. Heuberger B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding dispute over Sirius XM's lack of license rights. | AC, WP | |
| 2 | 10/7/2015 | T. Fischer, Esq. A. Friedman, Esq. M. Schlicht | M. Schlicht B. Niemann F. Nachtrab A. Friedman, Esq. T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice regarding dispute over Sirius XM's lack of license rights. | AC, WP | |
| 3 | 10/13/2015 10/8/2015 | T. Fischer, Esq. A. Friedman, Esq. | M. Schlicht A. Friedman, Esq. F. Nachtrab T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice regarding dispute over Sirius XM's lack of license rights. | AC, WP | |
| 4 | 9/1/1999 | R. Hanson, Esq. | S. Meltzer | Attorney-client communication regarding XM/Fraunhofer contract including attachments of exhibits to XM/Fraunhofer contract. | AC | |
| 5 | 3/3/2016 | R. Schloetter, Esq. | E. LeDonne, Esq. T. Fischer, Esq. M. Schlicht A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding patent infringement and dispute over Sirius XM's lack of license rights. | AC, WP | |
| 6 | 4/14/2016 4/12/2016 | R. Schloetter, Esq. E. LeDonne, Esq. C. Gosselin, Esq. | A. Friedman, Esq. M. Schlicht T. Fischer, Esq. S. Lipp F. Nachtrab B. Niemann F. Wunderlin, Esq. F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding WorldSpace bankruptcy and dispute over Sirius XM's lack of license rights, including attached legal memoranda and licenses. | AC, WP | |
| 7 | 3/22/1999 | S. Buchholz | F. Schoppe, Esq. H. Schubert, Esq. | Attorney-client communication regarding legal advice and analysis directed to XM practicing Fraunhofer patents (includes attachments). | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|-----|------|-----------|--------------|-------------|----------------|----------------------|
| 8 | N/A | E. Eberlein | F. Schoppe, Esq. F. Zinkler, Esq. | Attorney-client communication regarding legal advice directed to patents. | AC | |
| 9 | 4/7/2014 | | | WorldSpace and Fraunhofer Technology Licensing Agreement with handwritten notes made in anticipation of litigation. | AC, WP | F00004663-F00004666 |
| 10 | 1997/98 | Stefann Lipp | | Excerpts of inventor lab notebook, reflecting legal advice from Fraunhofer counsel. | AC | F00005075-F00005083 |
| 11 | 9/23/2009 | | | Draft of Multilateral Nondisclosure Agreement between Marvell Semiconductor, Taiwan Semiconductor Manufacturing, TSMC North America, Sirius Satellite, XM Satellite, Fraunhofer reflecting legal advice from Fraunhofer counsel. | AC | |
| 12 | 3/17/1998 | E. Eberlein S. Badri S. Lipp S. Buchholz | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34087). | AC | F00005392-F00005403 |
| 13 | 3/17/1998 | E. Eberlein S. Badri S. Lipp S. Buchholz | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34087). | AC | F00005404-F00005418 |
| 14 | 3/17/1998 | E. Eberlein S. Badri S. Buchholz | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34089). | AC | F00005419-F00005434 |
| 15 | 12/2/1998 | E. Eberlein M. Breiling J. Stoessel | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34833). | AC | F00005435-F00005444 |
| 16 | 07/28/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 17 | 07/31/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 18 | 03/22/2006 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #5 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 19 | 12/05/2006 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #7 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 20 | 08/23/2005 | T. Fischer, Esq. | M. Schlicht | Draft Change Request #1 to Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 21 | 08/23/2005 | T. Fischer, Esq. | M. Schlicht | Draft Change Request #1 to Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 22 | 03/15/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 23 | 03/03/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 10) with attorney comments incorporated. | AC | |
| 24 | 02/25/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 25 | 02/27/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 26 | 03/03/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 27 | 03/08/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 28 | 02/25/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 10) with attorney comments incorporated. | AC | |
| 29 | 02/25/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 10) with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 30 | 11/16/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 31 | 11/16/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 32 | 07/05/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 33 | 07/05/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 34 | 06/25/2007 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #1 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated and diagrams attached | AC | |
| 35 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 36 | 10/15/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 37 | 10/16/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 38 | 06/03/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 39 | 03/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 40 | 04/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 41 | 04/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 42 | 05/05/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 43 | 05/05/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 44 | 01/21/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 45 | 02/10/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 46 | 02/10/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 47 | 02/17/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 48 | 02/16/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 49 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 50 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 51 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 52 | 10/13/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment 1 to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 53 | 10/01/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment 1 to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 54 | 06/04/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement. | AC | |
| 55 | 06/04/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement. | AC | |
| 56 | 06/05/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement. | AC | |
| 57 | 01/27/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 58 | 01/27/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 59 | 01/29/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 60 | 01/29/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer - 11/21/2017 Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 61 | 01/29/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 62 | 02/01/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 63 | 02/01/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 64 | 02/02/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 65 | N/A | E. Eberlein | H. Schubert, Esq. | Attorney-client communication regarding legal advice directed to patent applications. | AC | |
| 66 | 08/04/1999 | D. Lessman, Esq. | N/A | Draft proposed language for IZT contract drafted by attorney. | AC | |
| 67 | 08/04/1999 | D. Lessman, Esq. | N/A | Draft proposed language for IZT contract drafted by attorney. | AC | |
| 68 | 08/09/1999 | T. Fischer, Esq. | M. Schlicht | Attorney-client communication reflecting legal advice re: "Interim Service Contract" provisions. | AC | |
| 69 | 03/11/2008 | M. Gross, Esq. | M. Schlicht | Letter from attorney noting comments on software license with XM Radio. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection

# Exhibit B

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 1 | 7/30/2015 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq.; A. Heuberger; B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding dispute over Sirius XM's lack of license rights. | AC, WP | |
| 2 | 10/7/2015 | T. Fischer, Esq.; A. Friedman, Esq.; M. Schlicht | M. Schlicht; B. Niemann; F. Nachtrab; A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice regarding dispute over Sirius XM's lack of license rights. | AC, WP | |
| 3 | 10/13/2015 10/8/2015 | T. Fischer, Esq.; A. Friedman, Esq. | M. Schlicht; A. Friedman, Esq.; F. Nachtrab; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice regarding dispute over Sirius XM's lack of license rights. | AC, WP | |
| 5 | 3/3/2016 | R. Schloetter, Esq. | E. LeDonne, Esq.; T. Fischer, Esq.; M. Schlicht; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding patent infringement and dispute over Sirius XM's lack of license rights. | AC, WP | |
| 6 | 4/14/2016 4/12/2016 | R. Schloetter, Esq.; E. LeDonne, Esq.; C. Gosselin, Esq. | A. Friedman, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding WorldSpace bankruptcy and dispute over Sirius XM's lack of license rights, including attached legal memoranda and licenses. | AC, WP | |
| 7 | 3/22/1999 | S. Buchholz | F. Schoppe, Esq.; H. Schubert, Esq. | Attorney-client communication regarding legal advice and analysis directed to XM practicing Fraunhofer patents (includes attachments). | AC | |
| 8 | N/A | E. Eberlein | F. Schoppe, Esq.; F. Zinkler, Esq. | Attorney-client communication regarding legal advice directed to patents. | AC | |
| 9 | 4/7/2014 | | | WorldSpace and Fraunhofer Technology Licensing Agreement with handwritten notes made in anticipation of litigation. | AC, WP | F00004663-F00004666 |
| 10 | 1997/98 | Stefan Lipp | | Excerpts of inventor lab notebook, reflecting legal advice from Fraunhofer counsel. | AC | F00005075-F00005083 |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

- 1 -

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 11 | 9/23/2009 | | | Draft of Multilateral Nondisclosure Agreement between Marvell Semiconductor, Taiwan Semiconductor Manufacturing, TSMC North America, Sirius Satellite, XM Satellite, Fraunhofer reflecting legal advice from Fraunhofer counsel. | AC | |
| 12 | 3/17/1998 | E. Eberlein; S. Badri; S. Lipp; S. Buchholz | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34087). | AC | F00005392-F00005403 |
| 13 | 3/17/1998 | E. Eberlein; S. Badri; S. Lipp; S. Buchholz | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34087). | AC | F00005404-F00005418 |
| 14 | 3/17/1998 | E. Eberlein; S. Badri; S. Buchholz | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34089). | AC | F00005419-F00005434 |
| 15 | 12/2/1998 | E. Eberlein; M. Breiling; J. Stoessel | | Invention disclosure materials provided to Fraunhofer patent attorneys (ID No. 98/34833). | AC | F00005435-F00005444 |
| 16 | 07/28/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 17 | 07/31/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 18 | 03/22/2006 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #5 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 19 | 12/05/2006 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #7 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 20 | 08/23/2005 | T. Fischer, Esq. | M. Schlicht | Draft Change Request #1 to Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 21 | 08/23/2005 | T. Fischer, Esq. | M. Schlicht | Draft Change Request #1 to Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 22 | 03/15/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 23 | 03/03/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 10) with attorney comments incorporated. | AC | |
| 24 | 02/25/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 25 | 02/27/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 26 | 03/03/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 27 | 03/08/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 28 | 02/25/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 10) with attorney comments incorporated. | AC | |
| 29 | 02/25/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 10) with attorney comments incorporated. | AC | |
| 30 | 11/16/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 31 | 11/16/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 32 | 07/05/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 33 | 07/05/2012 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 34 | 06/25/2007 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #1 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated and diagrams attached | AC | |
| 35 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 36 | 10/15/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 37 | 10/16/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 38 | 06/03/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 39 | 03/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 40 | 04/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 41 | 04/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 42 | 05/05/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 43 | 05/05/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 44 | 01/21/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 45 | 02/10/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 46 | 02/10/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 47 | 02/17/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 48 | 02/16/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 49 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 50 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 51 | 02/20/2009 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 52 | 10/13/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment 1 to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 53 | 10/01/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment 1 to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 54 | 06/04/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement. | AC | |
| 55 | 06/04/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement. | AC | |
| 56 | 06/05/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement. | AC | |
| 57 | 01/27/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 58 | 01/27/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 59 | 01/29/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 60 | 01/29/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 61 | 01/29/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 62 | 02/01/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 63 | 02/01/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 64 | 02/02/2010 | T. Fischer, Esq. | M. Schlicht | Draft Addendum # 4 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 65 | N/A | E. Eberlein | H. Schubert, Esq. | Attorney-client communication regarding legal advice directed to patent applications. | AC | |
| 66 | 08/04/1999 | D. Lessman, Esq. | N/A | Draft proposed language for IZT contract drafted by attorney. | AC | |
| 67 | 08/04/1999 | D. Lessman, Esq. | N/A | Draft proposed language for IZT contract drafted by attorney. | AC | |
| 68 | 08/09/1999 | T. Fischer, Esq. | M. Schlicht | Attorney-client communication reflecting legal advice re: "Interim Service Contract" provisions. | AC | |
| 69 | 03/11/2008 | M. Gross, Esq. | M. Schlicht | Letter from attorney noting comments on software license with XM Radio. | AC | |
| 70 | 10/2/2006 | E. Eberlein | W. Liebler; B. Boersch; R. Gerbert; A. Heuberger | Communication regarding the WorldSpace license and project agreements reflecting and seeking legal advice. | AC, WP | |
| 71 | 12/23/2004 | R. Gerbert | A. Heuberger; H. Schubert, Esq.; W. Liebler; E. Eberlein | Attorney-client communication regarding the WorldSpace license reflecting and seeking legal advice. | AC | |
| 72 | 4/29/2004 | R. Gerbert | E. Eberlein; W. Liebler | Communication regarding the WorldSpace license and project agreements reflecting and seeking legal advice. | AC | |
| 73 | 2/18/2004 | A. Heuberger | R. Gerbert; M. Gross, Esq.; E. Eberlein; P. Dittrich | Attorney-client communication regarding the MLA and WorldSpace patent invoice fees reflecting and seeking legal advice. | AC | |
| 74 | 2/18/2004 | R. Gerbert | A. Heuberger; M. Gross, Esq. | Attorney-client communication regarding the WorldSpace license reflecting and seeking legal advice. | AC | |
| 75 | 9/28/1999 | E. Eberlein | | Memo created at direction of attorney reflecting legal advice and patent assessment. | AC | |
| 76 | 11/1/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 77 | 9/20/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 7 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 78 | 12/6/2001 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 79 | 12/6/2001 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 80 | 5/19/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 81 | 6/6/2003 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 82 | 6/13/2003 | T. Fischer, Esq. | M. Schlicht | Draft Fraunhofer Software License Agreement with attorney comments incorporated. | AC | |
| 83 | 5/20/2003 | T. Fischer, Esq. | M. Schlicht | Draft Fraunhofer Software License Agreement with attorney comments incorporated. | AC | |
| 84 | 6/13/2003 | T. Fischer, Esq. | M. Schlicht | Draft Fraunhofer Software License Agreement with attorney comments incorporated. | AC | |
| 85 | 6/13/2003 | T. Fischer, Esq. | M. Schlicht | Draft Fraunhofer Software License Agreement with attorney comments incorporated. | AC | |
| 86 | 6/10/2003 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 87 | 6/11/2003 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 88 | 6/12/2003 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 89 | 9/19/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 7 with attorney comments incorporated. | AC | |
| 90 | 9/20/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 7 with attorney comments incorporated. | AC | |
| 91 | 11/23/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 9 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 92 | 7/6/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 9 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 93 | 11/23/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 10 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 94 | 6/22/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 95 | 10/11/2005 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #5 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 96 | 7/31/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 97 | 7/31/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 98 | 9/2/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 99 | 9/9/2003 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 100 | 3/3/2004 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #3 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 101 | 8/10/2004 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #4 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 102 | 6/21/2004 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #4 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 103 | 6/21/2004 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #4 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 104 | 3/15/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 105 | 3/2/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 106 | 3/4/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 107 | 3/3/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 6 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 108 | 6/12/2003 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 109 | 10/15/2003 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 110 | 11/30/2003 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 111 | 12/2/2003 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 112 | 3/8/2004 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 7 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 113 | 1/30/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 114 | 2/1/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 115 | 2/6/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 116 | 2/17/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 117 | 2/19/2004 | T. Fischer, Esq. | M. Schlicht | Draft Statement of Work to Amendment to No. 6 with attorney comments incorporated. | AC | |
| 118 | 3/2/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 12) with attorney comments incorporated. | AC | |
| 119 | 3/3/2004 | T. Fischer, Esq. | M. Schlicht | Draft Exhibit A to Statement of Work for Repeater Baseband Transcoder Development (Revision 12) with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 120 | 6/22/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 121 | 4/11/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 122 | 4/11/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 123 | 5/3/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 124 | 5/24/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 125 | 6/7/2005 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 126 | 3/11/2008 | M. Gross, Esq. | M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 127 | 3/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 128 | 3/14/2008 | M. Gross, Esq. | M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 129 | 6/11/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 130 | 6/26/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 131 | 6/27/2008 | T. Fischer, Esq. | M. Schlicht | Draft Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 132 | 6/5/2008 | T. Fischer, Esq. | M. Schlicht | Draft Amendment to Turbo Code Interleaver Source Code Evaluation Agreement with attorney comments incorporated. | AC | |
| 133 | 6/3/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 134 | 3/11/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 135 | 3/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 136 | 3/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 137 | 3/13/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 138 | 3/14/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 139 | 3/13/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 140 | 3/11/2008 | M. Gross, Esq. | T. Fischer, Esq.; M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 141 | 3/13/2008 | M. Gross, Esq. | T. Fischer, Esq.; M. Schlicht | Draft Fraunhofer software license agreement with comments to attorney incorporated. | AC | |
| 142 | 3/13/2008 | M. Gross, Esq. | T. Fischer, Esq.; M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 143 | 11/17/2008 | M. Gross, Esq. | T. Fischer, Esq.; M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 144 | 11/21/2008 | M. Gross, Esq. | T. Fischer, Esq.; M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 145 | 11/25/2008 | M. Gross, Esq. | T. Fischer, Esq.; M. Schlicht | Draft Fraunhofer software license agreement with attorney comments incorporated. | AC | |
| 146 | 7/15/2008 | T. Fischer, Esq. | M. Schlicht; M. Speitel | Draft Turbo Code Interleaver patent application reflecting legal advice from Fraunhofer counsel. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 147 | 10/15/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #3 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 148 | 10/15/2008 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #3 to Amendment No. 8 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 149 | 1/10/2003 | T. Fischer, Esq. | M. Schlicht | Draft Design Acceptance for CDEC1.8 Chip Design for: Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 150 | 6/25/2002 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 151 | 6/26/2002 | T. Fischer, Esq. | M. Schlicht | Draft Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 152 | 6/26/2002 | T. Fischer, Esq. | M. Schlicht | Draft Proposal Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 153 | 2/3/2003 | T. Fischer, Esq. | M. Schlicht | Draft Proposal Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 154 | 6/26/2002 | T. Fischer, Esq. | M. Schlicht | Draft Proposal Addendum #2 to Amendment No. 5 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 155 | 8/20/1999 | T. Fischer, Esq. | M. Schlicht | Draft Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 156 | 8/19/1999 | T. Fischer, Esq. | M. Schlicht | Draft Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 157 | 1/17/2007 | T. Fischer, Esq. | M. Schlicht | Draft Amendment No. 11 to Firm Fixed Price Contract No. 1 with attorney comments incorporated. | AC | |
| 158 | 12/22/2015 | P. Rettinger | | Draft claim chart regarding asserted patent created at the direction of Fraunhofer attorneys | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 159 | 6/10/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; A. Friedman, Esq.; B. Niemann | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 160 | 6/12/2016 | T. Fischer, Esq. | M. Schlicht; A. Friedman, Esq.; B. Yorks, Esq. | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 161 | 6/13/2016 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; B. Yorks, Esq.; M. Leyh; B. Niemann | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 162 | 6/14/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; A. Friedman, Esq.; M. Leyh; B. Niemann | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 163 | 6/22/2016 | T. Fischer, Esq. | B. Yorks, Esq.; M. Schlicht; B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 164 | 6/22/2016 | M. Schlicht | B. Yorks, Esq.; A. Friedman, Esq.; B. Niemann; M. Leyh; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 165 | 7/31/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab | Attorney-client communication chain regarding legal advice directed to engagement of counsel. | AC, WP | |
| 166 | 8/10/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain regarding legal advice directed to engagement of counsel, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 167 | 8/10/2016 | T. Fischer, Esq. | M. Schlicht; B. Yorks, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain regarding legal advice directed to engagement of counsel. | AC, WP | |
| 168 | 9/13/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain regarding legal advice directed to engagement of counsel. | AC, WP | |
| 169 | 9/22/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain regarding legal advice directed to engagement of counsel. | AC, WP | |
| 170 | 9/27/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 171 | 9/29/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain regarding legal advice directed to engagement of counsel. | AC, WP | |
| 172 | 10/16/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain regarding legal advice directed to engagement of counsel. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 173 | 10/20/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 174 | 10/23/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 175 | 11/11/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 176 | 11/15/2016 | M. Schlicht | B. Yorks, Esq.; T. Fischer, Esq.; Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 177 | 11/23/2016 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; F. Nachtrab; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 178 | 11/23/2016 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; F. Nachtrab; B. Yorks, Esq.;  S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 179 | 11/23/2016 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; F. Nachtrab; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 180 | 11/23/2016 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; F. Nachtrab; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 181 | 12/14/2016 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 182 | 12/16/2016 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 183 | 12/18/2016 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 184 | 12/19/2016 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 185 | 1/9/2017 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 186 | 1/9/2017 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 187 | 1/9/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 188 | 1/10/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 189 | 1/11/2017 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 190 | 1/11/2017 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 191 | 1/11/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 192 | 1/18/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 193 | 1/19/2017 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 194 | 1/19/2017 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 195 | 1/24/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 196 | 2/3/2017 | A. Friedman, Esq. | B. Yorks, Esq.; T. Fischer, Esq.; M. Schlicht; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab; S. Wolf, Esq.; R. Paulik; F. Landry, Esq.; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 197 | 2/6/2017 | A. Friedman, Esq. | B. Yorks, Esq.; T. Fischer, Esq.; M. Schlicht; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab; S. Wolf, Esq.; R. Paulik; F. Landry, Esq.; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 198 | 2/9/2017 | T. Fischer, Esq. | B. Yorks, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 199 | 2/15/2017 | T. Fischer, Esq. | B. Yorks, Esq.; M. Schlicht, Esq.; A. Friedman, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab; S. Wolf, Esq.; R. Paulik; F. Landry, Esq.; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 200 | 2/21/2017 | B. Kreye, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; A. Friedman, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab; S. Wolf, Esq.; F. Landry, Esq.; P. Rastemborski, Esq.; R. Paulik | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 201 | 6/8/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 202 | 6/17/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 203 | 6/23/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; B. Niemann | Attorney-client communication chain regarding legal advice directed to engagement of counsel, including attachment. | AC, WP | |
| 204 | 6/24/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; B. Niemann | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel. | AC, WP | |
| 205 | 7/29/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; B. Niemann; F. Nachtrab | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM rights and engagement of counsel. | AC, WP | |
| 206 | 8/2/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel. | AC, WP | |
| 207 | 8/10/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication chain reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel, with attachments. | AC, WP | |
| 208 | 9/20/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XMs and engagement of counsel. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 209 | 10/17/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 210 | 10/20/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel. | AC, WP | |
| 211 | 10/20/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel, including attachment. | AC, WP | |
| 212 | 10/21/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel. | AC, WP | |
| 213 | 11/15/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; B. Niemann; F. Nachtrab; B. Herrmann; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM and engagement of counsel | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 214 | 11/23/2016 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 215 | 1/4/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 216 | 1/12/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 217 | 1/18/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 218 | 1/19/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 219 | 1/24/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 220 | 2/2/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood; S. Wolf, Esq.; R. Paulik; F. Landry; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 221 | 2/14/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood; S. Wolf, Esq.; R. Paulik; F. Landry; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 222 | 2/16/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood; S. Wolf, Esq.; R. Paulik; F. Landry; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 223 | 2/17/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood; S. Wolf, Esq.; R. Paulik; F. Landry; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 224 | 2/21/2017 | B. Yorks, Esq. | M. Schlicht; T. Fischer, Esq.; A. Freidman, Esq.; F. Nachtrab; S. O'Keefe, Esq.; N. Lockwood; R. Paulik | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 225 | 4/1/1998 | M. Troeltsch; A. Simon, Esq. | E. Eberlein; H. Gerhauser; S. Lipp; A. Heuberger; S. Buchholz; S. Badri | Attorney-client communication to/from Fraunhofer patent counsel regarding '3084 Patent. | AC | |
| 226 | 4/1/1998 | M. Troeltsch; A. Simon, Esq. | E. Eberlein; H. Gerhauser; S. Lipp; A. Heuberger; S. Buchholz; S. Badri | Attorney-client communication to/from Fraunhofer patent counsel regarding '997 Patent. | AC | |
| 227 | 4/1/1998 | M. Troeltsch; A. Simon, Esq.; H. Schubert, Esq. | E. Eberlein; H. Gerhauser; S. Lipp; A. Heuberger; S. Buchholz; S. Badri | Attorney-client communication to/from Fraunhofer patent counsel regarding '1084 Patent. | AC | |
| 228 | 12/3/1998 | H. Schubert, Esq. | E. Eberlein; J. Stoessel; H. Gerhauser | Attorney-client communication to/from Fraunhofer patent counsel regarding '289 Patent. | AC | |
| 229 | 5/13/1998 | A. Simon, Esq.; H. Schubert, Esq. | E. Eberlein; S. Lipp; S. Buchholz; A Heuberger; H. Gerhauser; S. Badri | Attorney-client communication to/from Fraunhofer patent counsel regarding '289 Patent. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 230 | 11/5/2008 | T. Fischer, Esq. | M. Schlicht; A. Friedman, Esq.; C. Wutz; E. Schaffer; G. Frischling, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 231 | 11/7/2008 | M. Schlicht | A. Friedman, Esq.; M. Neue, Esq.; S. Mielert, Esq.; T. Fischer, Esq.; C. Wutz | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 232 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 233 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 234 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |
| 235 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 236 | 11/19/2008 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 237 | 11/20/2008 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 238 | 11/20/2008 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 239 | 11/20/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 240 | 11/20/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 241 | 12/1/2008 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; T. Fischer, Esq.; C. Wutz | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 242 | 12/1/2008 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; T. Fischer, Esq.; C. Wutz | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 243 | 12/2/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 244 | 12/2/2008 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 245 | 12/2/2008 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 246 | 12/2/2008 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 247 | 7/7/2017 | | | Patent Profile regarding F34086 reflecting legal advice and information provided by Fraunhofer patent attorneys. | AC, WP | |
| 248 | 7/7/2017 | | | Patent Profile regarding F34088 reflecting legal advice and information provided by Fraunhofer patent attorneys. | AC, WP | |
| 249 | 7/7/2017 | | | Patent Profile regarding F34089 reflecting legal advice and information provided by Fraunhofer patent attorneys. | AC, WP | |
| 250 | 7/7/2017 | | | Patent Profile regarding F34833 reflecting legal advice and information provided by Fraunhofer patent attorneys. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 251 | 12/3/2008 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 252 | 12/3/2008 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 253 | 12/5/2008 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; C. Conrads, Esq.; R. Heym, Esq.; R. Schlotter, Esq.; S. Mielert, Esq.; K. Lyman, Esq.; M. Neue, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 254 | 12/5/2008 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; C. Conrads, Esq.; R. Heym, Esq.; R. Schlotter, Esq.; S. Mielert, Esq.; K. Lyman, Esq.; M. Neue, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 255 | 12/5/2008 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq.; C. Conrads, Esq.; R. Heym, Esq.; R. Schlotter, Esq.; S. Mielert, Esq.; K. Lyman, Esq.; M. Neue, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 256 | 12/5/2008 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; C. Conrads, Esq.; R. Heym, Esq.; R. Schlotter, Esq.; S. Mielert, Esq.; K. Lyman, Esq.; M. Neue, Esq.; K. Gwynne, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 257 | 12/10/2008 | T. Fischer, Esq. | A. Friedman, Esq.; R. Heym, Esq.; K. Gwynne, Esq.; M. Schlicht; S. Mielert, Esq.; K. Letzelter, Esq.; K. Lyman, Esq.; M. Neue, Esq.; R. Schlotter, Esq.; C. Wutz; S. Mielert, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 258 | 12/10/2008 | T. Fischer, Esq. | A. Friedman, Esq.; R. Heym, Esq.; K. Gwynne, Esq.; M. Schlicht; S. Mielert, Esq.; K. Letzelter, Esq.; K. Lyman, Esq.; M. Neue, Esq.; R. Schlotter, Esq.; C. Wutz; S. Mielert, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 259 | 12/15/2008 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 260 | 1/13/2009 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 261 | 1/16/2009 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 262 | 1/16/2009 | M. Schlicht | A. Friedman, Esq.; T. Adelhardt, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 263 | 1/16/2009 | T. Fischer, Esq. | A. Friedman, Esq.; T. Adelhardt, Esq.; M. Schlicht | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 264 | 1/19/2009 | M. Schlicht | A. Friedman, Esq.; T. Adelhardt, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights with attachment. | AC, WP | |
| 265 | 1/19/2009 | M. Schlicht | A. Friedman, Esq.; T. Adelhardt, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 266 | 1/19/2009 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; T. Adelhardt, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 267 | 1/19/2009 | A. Friedman, Esq. | R. Schlotter, Esq.; T. Fischer, Esq.; K. Gwynne, Esq.; C. Conrads, Esq.; K. Lyman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 268 | 1/20/2009 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; T. Adelhardt, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 269 | 1/20/2009 | T. Fischer, Esq. | A. Friedman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 270 | 1/20/2009 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; T. Adelhardt, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 271 | 1/21/2009 | T. Fischer, Esq. | A. Friedman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 272 | 1/22/2009 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; T. Adelhardt, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 273 | 1/22/2009 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 274 | 1/22/2009 | T. Fischer, Esq. | K. Lyman, Esq.; K. Gwynne, Esq.; C. Conrads, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC WP | |
| 275 | 1/22/2009 | M. Schlicht | K. Lyman, Esq.; T. Fischer, Esq.; K. Gwynne, Esq.; C. Conrads, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |
| 276 | 1/22/2009 | M. Schlicht | K. Lyman, Esq.; T. Fischer, Esq.; K. Gwynne, Esq.; C. Conrads, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |
| 277 | 1/27/2009 | M. Schlicht | A. Friedman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 278 | 1/29/2009 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 279 | 2/3/2009 | M. Schlicht | K. Lyman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 280 | 2/3/2009 | M. Schlicht | K. Lyman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 281 | 2/3/2009 | T. Fischer, Esq. | M. Schlicht; K. Lyman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 282 | 2/4/2009 | T. Fischer, Esq. | M. Schlicht; K. Lyman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 283 | 2/4/2009 | M. Schlicht | K. Lyman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 284 | 2/5/2009 | M. Schlicht | K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 285 | 2/22/2009 | M. Schlicht | L. Wolchuck; A. Friedman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 286 | 3/12/2009 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; K. Lyman, Esq.; L. Wolchuck; T. Fischer, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 287 | 3/12/2009 | T. Fischer, Esq. | A. Friedman, Esq.; K. Lyman, Esq.; M. Schlicht; K. Gwynne, Esq.; L. Wolchuck | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 288 | 3/20/2009 | M. Schlicht | A. Friedman, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 289 | 5/11/2009 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; K. Lyman, Esq.; K. Gwynne, Esq. | Attorney-client communication chain reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 290 | 5/12/2009 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment | AC, WP | |
| 291 | 5/14/2009 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 292 | 5/15/2009 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 293 | 5/15/2009 | M. Schlicht | A. Friedman, Esq.; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 294 | 5/15/2009 | A. Friedman, Esq. | M. Schlicht; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 295 | 5/18/2009 | A. Friedman, Esq. | M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 296 | 5/20/2009 | M. Schlicht | K. Lyman, Esq.; Friedman, Esq.; K. Gwynne, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |
| 297 | 5/27/2009 | T. Fisher, Esq. | M. Schlicht; K. Lyman, Esq.; A. Friedman, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 298 | 5/28/2009 | M. Schlicht | A. Friedman, Esq.; K. Lyman, Esq.; T. Fischer, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 299 | 5/28/2009 | A. Friedman, Esq. | M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 300 | 6/5/2009 | M. Schlicht | A. Friedman, Esq.; K. Lyman, Esq.; T. Fischer, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |
| 301 | 6/9/2009 | A. Friedman, Esq. | M. Schlicht; K. Lyman, Esq.; T. Fischer, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |
| 302 | 7/8/2009 | M. Schlicht | T. Fischer, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 303 | 8/21/2009 | T. Fischer, Esq. | K. Lyman, Esq.; K. Letzelter, Esq.; E. Eberlein | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 304 | 8/31/2009 | M. Schlicht | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 305 | 9/8/2009 | M. Schlicht | T. Adelhardt, Esq.; A. Friedman, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 306 | 2/25/2010 | A. Friedman, Esq. | K. Lyman, Esq.; T. Fischer, Esq.; M. Schlicht; L. Wolchuck; C. Moeller, Esq.; A. Lambrecht, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 307 | 5/30/2010 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; F. Mayer; K. Lyman, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC WP | |
| 308 | 11/9/2010 | T. Fischer, Esq. | K. Lyman, Esq.; A. Friedman, Esq.; M. Schlicht; W. Liebler | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 309 | 4/8/2014 | A. Friedman, Esq. | T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 310 | 9/24/2014 | A. Friedman, Esq. | T. Fischer, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 311 | 10/2/2014 | A. Friedman, Esq. | T. Fischer, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 312 | 11/7/2014 | A. Friedman, Esq. | T. Fischer, Esq.; K. Lyman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 313 | 11/11/2014 | M. Schlicht | A. Friedman, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 314 | 11/11/2014 | M. Schlicht | A. Friedman, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 315 | 11/17/2014 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 316 | 12/2/2014 | M. Schlicht | A. Friedman, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 317 | 3/3/2015 | M. Schlicht | A. Friedman, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC WP | |
| 318 | 3/19/2015 | A. Friedman, Esq. | T. Fischer, Esq.; K. Lyman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC WP | |
| 319 | 3/20/2015 | A. Friedman, Esq. | M. Schlicht; F. Ataergin, Esq.; K. Lyman, Esq.; R. Schloetter, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 320 | 3/25/2015 | T. Fischer, Esq. | A. Friedman, Esq.; R. Schloetter, Esq.; K. Lyman, Esq.; F. Ataergin, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 321 | 3/25/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; R. Schloetter, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 322 | 4/8/2015 | T. Fischer, Esq. | R. Schloetter, Esq.; K. Lyman, Esq.; F. Ataergin, Esq.; F. Wunderlin, Esq.; A. Friedman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 323 | 5/27/2010 | F. Mayer | M. Schlicht; T. Fischer, Esq.; S. Mielert, Esq.; S. Boegel; K. Letzelter; Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 324 | 5/10/2010 | M. Schlicht | E. Eberlein; P. Dittrich | Communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 325 | 6/1/2010 | M. Schlicht | E. Eberlein; P. Dittrich; H. Schubert, Esq.; M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 326 | 9/28/2010 | F.  Mayer | T. Fischer, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 327 | 8/22/2010 | T. Fischer, Esq. | H. Schubert, Esq.; M. Schlicht; E. Eberlein; P. Dittrich | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights with attachment. | AC, WP | |
| 328 | 6/11/2010 | M. Schlicht | E. Eberlein; A. Heuberger; H. Gerhauser | Email reflecting legal advice regarding WorldSpace bankruptcy. | AC, WP | |
| 329 | 2/1/2010 | M. Schlicht | S. Mielert, Esq.; T. Fischer, Esq.; T. Adelhardt, Esq.; F. Mayer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 330 | 6/1/2010 | M. Schlicht | E. Eberlein; P. Dittrich; H. Schubert, Esq.; M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 331 | 8/22/2010 | T. Fischer, Esq. | H. Schubert, Esq.; M. Schlicht; E. Eberlein; P. Dittrich | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights with attachment. | AC, WP | |
| 332 | 5/14/2010 | M. Schlicht | E. Eberlein; T. Fischer, Esq.; T. Adelhardt, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 333 | 7/26/2010 | M. Schlicht | E. Eberlein; P. Dittrich; H. Gerhauser; A. Heuberger; K. Ronge; T. Fischer, Esq.; T. Vondergruen | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 334 | 7/20/2010 | M. Schlicht | E. Eberlein; P. Dittrich; H. Gerhauser; A. Heuberger; K. Ronge; T. Fischer, Esq.; T. Vondergruen | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 335 | 7/27/2010 | M. Schlicht | E. Eberlein; A. Heuberger; H. Gerhauser; F. Mayer; T. Fischer, Esq.; H. Stadali; P. Dittrich | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 336 | 4/9/2015 | M. Schlicht | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 337 | 4/9/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 338 | 4/30/2015 | T. Fischer, Esq. | K. Lyman, Esq.; A. Friedman, Esq.; M. Schlicht; R. Schloetter, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 339 | 5/4/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 340 | 5/6/2015 | A. Friedman, Esq. | R. Schloetter, Esq.; T. Fischer, Esq.; M. Schlicht; K. Lyman, Esq.; F. Ataergin, Esq.; F. Wunderlin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC WP | |
| 341 | 5/12/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; B. Yorks, Esq.; S. Mielert, Esq. | Attorney-client communication reflecting strategy and legal advice directed to potential representation. | AC WP | |
| 342 | 5/19/2015 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; F. Wunderlin, Esq.; F. Ataergin, Esq.; K. Lyman, Esq.; T. Fischer, Esq.; H. Groger | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 343 | 5/28/2015 | T. Fischer, Esq. | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 344 | 6/16/2015 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; F. Wunderlin, Esq.; F. Ataergin, Esq.; K. Lyman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 345 | 6/22/2015 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 346 | 7/16/2015 | M. Schlicht | A. Friedman, Esq.; H. Groher; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 347 | 7/23/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; H. Groher | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 348 | 7/23/2015 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC WP | |
| 349 | 7/30/2015 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq.; A. Heuberger; B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC WP | |
| 350 | 7/30/2014 | K. Rubenstein, Esq. | C. Schamper.; A. Schwarzburg; W. von Lieres, Esq.; I. McClure, Esq.; B. Michalek, Esq. | Communication reflecting legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI | |
| 351 | 7/30/2014 | K. Rubenstein, Esq. | C. Schamper.; A. Schwarzburg; W. von Lieres, Esq.; I. McClure, Esq.; B. Michalek, Esq. | Communication reflecting legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI | |
| 352 | 9/12/2014 | E. Eberlein | | Memo created at direction of attorney reflecting legal advice and assessment regarding '289 patent. | AC, WP | |
| 353 | 11/25/2013 | S. Lipp | | Notes reflecting meeting with counsel re IPXI patent licensing, reflecting legal advice and information shared pursuant to a common legal interest. | AC, CI | |
| 354 | 1/27/2014 | S. Lipp | | Memo and comments reflecting strategy and legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI | |
| 355 | 1/27/2014 | S. Lipp | | Internal notes reflecting legal advice relating to IPXI licensing and information shared pursuant to a common legal interest. | AC, CI | |
| 356 | 11/12/2015 | M. Schlicht | R. Schloetter, Esq.; T. Fischer, Esq.; B. Niemann | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 357 | 9/23/2014 | T. Fischer, Esq. | | Attorney memo reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 358 | 12/13/2013 | R. Schlotter, Esq. | T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 359 | 12/11/2013 | A. Friedman, Esq. | R. Schloetter, Esq.; T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq.; B. Kramer; C. Schubert | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 360 | 5/13/2014 | R. Schlotter, Esq. | T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq.; M. Schlicht; H. Schubert, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 361 | 6/25/2014 | S. Holzer, Esq.; K. Scharli, Esq. | M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 362 | 8/14/2014 | T. Fischer, Esq. | S. Holzer, Esq.; R. Schloetter, Esq.; K. Scharli, Esq.; M. Schlicht; B. Kramer; C. Schamper; H. Schubert, Esq.; W. von Lieres, Esq.; C. Grieser; C. Gschwandner; C. Betreff | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 363 | 10/7/2014 | M. Schlicht | S. Lipp; A. Heuberger; B. Grill; H. Popp; S. Geyersberger; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 364 | 11/10/1997 | E. Eberlein | F. Schoppe, Esq. | Attorney-client communications to Fraunhofer patent counsel related to patent prosecution reflecting legal advice. | AC | |
| 365 | 5/30/2010 | A. Friedman, Esq. | K. Gwynne, Esq.; M. Schlicht; T. Fischer, Esq.; K. Lyman, Esq.; F. Mayer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 366 | 5/28/2010 | A. Friedman, Esq. | K. Gwynne, Esq.; M. Schlicht; T. Fischer, Esq.; K. Lyman, Esq.; F. Mayer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 367 | 5/27/2010 | A. Friedman, Esq. | | Attorney work product reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | WP | |
| 368 | 5/31/2010 | A. Friedman, Esq. | K. Gwynne, Esq.; M. Schlicht; T. Fischer, Esq.; K. Lyman, Esq.; F. Mayer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 369 | 11/3/1998 | E. Eberlein | F. Stockeler, Esq. | Attorney-client communication to Fraunhofer patent counsel seeking legal advice related to patent prosecution. | AC | |
| 370 | 12/16/2013 | C. Schamper | M. Schlicht; T. Fischer, Esq.; A. Schwarzburg; W. von Lieres, Esq. | Attorney-client communication reflecting strategy and legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI | |
| 371 | 1/30/2014 | C. Schamper | M. Schlicht; S. Lipp; A. Schwarzburg; W. von Lieres, Esq. | Attorney-client communication reflecting strategy and legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI, WP | |
| 372 | 8/3/2010 | M. Schlicht | T. Fischer, Esq.; M. Gross, Esq.; F. Mayer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, including attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 373 | 8/11/2010 | M. Schlicht | D. Zupan; F. Mayer; T. Fischer, Esq.; C. Holder; M. Gross, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, including attachments. | AC, WP | |
| 374 | 8/2/2010 | M. Schlicht | T. Fischer, Esq.; F. Mayer; M. Gross, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 375 | 7/30/2010 | M. Schlicht | E. Eberlein; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 376 | 3/27/1998 | S. Badri | P. Nagel | Email seeking legal advice and attaching draft patent application. | AC | |
| 377 | 3/30/1999 | R. Perthold | A Imbusch; P. Thurner; H. Gerhauser; A. Heuberger; S. Pein; | Email reflecting attorney-client and common interest communications regarding potential contract. | AC, CI | |
| 378 | 5/3/2000 | R. Perthold | A. Heuberger | Communication regarding potential contract, reflecting and seeking legal advice. | AC, CI | |
| 379 | 9/4/2000 | J. Campanella | E. Eberlein | Communication reflecting legal advice and common interest privilege regarding patent. | AC, CI | |
| 380 | 12/3/1998 | A. Heuberger | E. Eberlein; H. Gerhauser | Email relating to patent licensing reflecting attorney-client communication and legal advice regarding patent application. | AC | |
| 381 | 7/2/1999 | H. Schubert, Esq. | E. Eberlein; A. Heuberger | Attorney-client communication reflecting strategy and legal advice regarding WorldSpace license. | AC | |
| 382 | 9/28/1999 | E. Eberlein | A. Heuberger; S. Lipp; H. Gerhauser; J. Stoessel; S. Badri; M. Schlicht | Communication relating to draft document reflecting legal advice regarding license rights. | AC | |

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 383 | 5/13/1998 | A. Heuberger | H. Gerhauser; E. Eberlein; H. Schubert, Esq.; H. Popp; S. Meltzer; K. Brandenburg; R. Buchta | Email relating to patent licensing reflecting attorney-client communication and legal advice. | AC | |
| 384 | 5/28/2000 | A. Heuberger | E. Eberlein; S. Meltzer | Communication seeking legal advice regarding patent prosecution. | AC | |
| 385 | 10/30/2000 | E. Eberlein | A. Heuberger; W. Liebler | Communication reflecting legal advice regarding patent prosecution. | AC | |
| 386 | 8/24/1999 | H. Schubert, Esq. | E. Eberlein | Attorney-client communication relating to draft document reflecting legal advice regarding license rights. | AC | |
| 387 | 7/2/1999 | H. Schubert, Esq. | E. Eberlein; A. Heuberger | Attorney-client communication relating to draft document reflecting legal advice regarding license rights. | AC | |
| 388 | 10/17/2000 | A. Heuberger | R. Perthold; T. Fischer, Esq.; B. Homma | Communication reflecting legal advice regarding contract proposal. | AC, CI | |
| 389 | 7/30/1999 | A. Heuberger | R. Perthold | Email reflecting attorney-client communication regarding patent rights. | AC, CI | |
| 390 | 8/2/1999 | R. Perthold | A. Heuberger | Email reflecting attorney-client communication regarding patent rights. | AC, CI | |
| 391 | 2/4/2000 | R. Perthold | A. Heuberger; M. Stefan | Communication regarding potential contract, reflecting and seeking legal advice. | AC, CI | |
| 392 | 11/12/1997 | S. Buchholz | E. Eberlein; S. Lipp; C. Paul; S. Badri | Email seeking legal advice from patent attorney related to patents. | AC | |
| 393 | 9/28/1999 | E. Eberlein | A. Heuberger; S. Lipp; H. Gerhauser; J. Stoessel; S. Badri; C. Paul | Communication relating to draft document reflecting legal advice regarding license rights. | AC | |
| 394 | 6/29/1999 | E. Eberlein | | Analysis of patent claims directed by Fraunhofer attorneys. | AC | |
| 395 | 5/3/1999 | E. Eberlein | | Memo created at direction of attorney reflecting legal advice and assessment regarding '289 patent. | AC | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 396 | 10/2/2014 | A. Friedman, Esq. | T. Fischer, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment | AC, WP | |
| 397 | 10/22/2014 | A. Friedman, Esq. | T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 398 | 4/8/2014 | A. Friedman, Esq. | T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 399 | 12/10/2013 | A. Friedman, Esq. | R. Schloetter, Esq.; T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq.; B. Kramer; C. Schubert; M. Schlicht; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice relating to WorldSpace bankruptcy. | AC, WP | |
| 400 | 12/11/2013 | A. Friedman, Esq. | R. Schloetter, Esq.; T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq., Esq.; B. Kramer; C. Schubert; M. Schlicht, K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 401 | 11/18/2013 | A. Friedman, Esq. | T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq., Esq.; B. Kramer; C. Schubert; R. Schloetter, Esq.; M. Schlicht; A. Schwarzburg | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 402 | 11/20/2013 | A. Friedman, Esq. | T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq., Esq.; B. Kramer; C. Schubert; R. Schloetter, Esq.; M. Schlicht; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 403 | 11/22/2013 | A. Friedman, Esq. | T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq., Esq.; B. Kramer; C. Schubert; R. Schloetter, Esq.; M. Schlicht; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 404 | 9/1/2009 | M. Schlicht | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 405 | 9/18/2009 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 406 | 11/12/2009 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 407 | 8/31/2009 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 408 | 6/9/2009 | A. Friedman, Esq. | M. Schlicht; K. Gwynne, Esq.; K. Lyman, Esq.; T. Fischer, Esq.; T. Adelhardt, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege
- 47 -

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 409 | 5/11/2009 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Gwynne, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 410 | 5/15/2009 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Gwynne, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 411 | 5/18/2009 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments | AC, WP | |
| 412 | 5/18/2009 | A. Friedman, Esq. | K. Lyman, Esq.; K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments | AC, WP | |
| 413 | 5/27/2009 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Gwynne, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 414 | 1/19/2009 | A. Friedman, Esq. | R. Schlotter, Esq.; T. Fischer, Esq.; K. Gwynne, Esq.; C. Conrads, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 415 | 1/22/2009 | A. Friedman, Esq. | C. Falgowski, Esq.; K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 416 | 1/22/2009 | A. Friedman, Esq. | C. Falgowski, Esq.; K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 417 | 11/4/2014 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Gwynne, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 418 | 11/6/2014 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Gwynne, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 419 | 11/7/2014 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; K. Gwynne, Esq.; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 420 | 9/24/2014 | A. Friedman, Esq. | T. Fischer, Esq.; C. Schamper; W. von Lieres, Esq.; B. Kramer; C. Schubert; R. Schloetter, Esq.; M. Schlicht; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 421 | 9/24/2014 | A. Friedman, Esq. | T. Fischer, Esq.; K. Lyman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 422 | 11/4/2014 | T. Fischer, Esq. | A. Friedman, Esq.; K. Lyman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 423 | 11/4/2014 | C. Falgowski, Esq. | A. Friedman, Esq.; K. Lyman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 424 | 11/4/2014 | T. Fischer, Esq. | A. Friedman, Esq.; K. Lyman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 425 | 9/23/2014 | T. Fischer, Esq. | A. Friedman, Esq.; C. Schamper; W. von Lieres, Esq.; B. Kramer, Esq.; C. Schubert; R. Schloetter, Esq.; M. Schlicht; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 426 | 2/28/2014 | T. Fischer, Esq. | A. Friedman, Esq.; C. Schamper; W. von Lieres, Esq.; B. Kramer; C. Schubert; R. Schloetter, Esq.; M. Schlicht; K. Lyman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 427 | 11/18/2013 | T. Fischer, Esq. | A. Friedman, Esq.; M. Sugar; C. Schamper; W. von Lieres, Esq., Esq.; R.; M. Schlicht; K. Lyman, Esq.; A. Schwarzburg | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 428 | 11/20/2013 | T. Fischer, Esq. | A. Friedman, Esq.; C. Schamper; W. von Lieres, Esq.; R.; M. Schlicht; K. Lyman, Esq.; A. Schwarzburg | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 429 | 11/22/2013 | T. Fischer, Esq. | A. Friedman, Esq.; C. Schamper; W. von Lieres, Esq.; R.; M. Schlicht; K. Lyman, Esq.; A. Schwarzburg | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 430 | 11/25/2013 | T. Fischer, Esq. | A. Friedman, Esq.; C. Schamper; W. von Lieres, Esq.; R.; M. Schlicht; K. Lyman, Esq.; A. Schwarzburg | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 431 | 5/14/2009 | K. Gwynne, Esq. | A. Friedman, Esq.; K. Lyman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 432 | 5/19/2009 | K. Gwynne, Esq. | A. Friedman, Esq.; T. Fischer, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 433 | 5/27/2009 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; G. Gwynne, Esq.; K. Lyman, Esq.; K. Gwynne, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 434 | 1/19/2009 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; T. Adelhardt, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 435 | 1/21/2009 | T. Fischer, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 436 | 1/21/2009 | R. Schlotter, Esq. | A. Friedman, Esq.; T. Fischer, Esq.; K. Gwynne, Esq.; C. Conrads, Esq.; K. Lyman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 437 | 10/2/2014 | T. Fischer, Esq. | A. Friedman, Esq.; K. Lyman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 438 | 10/16/2014 | K. Gwynne, Esq. | K. Lyman, Esq.; C. Falgowski, Esq.; A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 439 | 10/22/2014 | T. Fischer, Esq. | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 440 | 10/27/2008 | S. Mielert, Esq. | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 441 | 10/27/2008 | S. Mielert, Esq. | G. Frischling, Esq.; A. Friedman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 442 | 10/28/2008 | K. Gwynne, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 443 | 10/29/2008 | K. Gwynne, Esq. | C. Falgowski, Esq.; A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 444 | 10/30/2008 | K. Gwynne, Esq. | S. Mielert, Esq.; E. Schaffer; G. Frischling, Esq.; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 445 | 12/2/2008 | C. Conrads, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; R. Heym, Esq.; E. Schaffer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 446 | 12/2/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; R. Heym, Esq.; S. Mielert, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 447 | 11/2/2008 | J. Lord | A. Friedman, Esq.; C. Falgowski, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachment. | AC, WP | |
| 448 | 11/5/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; M. Schlicht; C. Wutz; E. Shaffer, Esq.; G. Frischling, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 449 | 11/5/2008 | S. Mielert, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; M. Schlicht; C. Wutz; E. Shaffer, Esq.; G. Frischling, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 450 | 11/5/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; M. Schlicht; C. Wutz; E. Shaffer, Esq.; G. Frischling, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 451 | 11/6/2008 | S. Mielert, Esq. | A. Friedman, Esq.; M. Neue, Esq.; M. Schlicht; C. Wutz; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 452 | 11/6/2008 | T. Fischer, Esq. | M. Schlicht; M. Neue, Esq.; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 453 | 11/17/2008 | K. Gwynne, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 454 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; K. Gwynne, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 455 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; M. Neue, Esq.; K. Gwynne, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 456 | 11/17/2008 | T. Fischer, Esq. | A. Friedman, Esq.; M. Neue Esq.; K. Gwynne, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 457 | 11/19/2008 | T. Fischer, Esq. | A. Friedman, Esq.; M. Neue, Esq.; K. Gwynne, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 458 | 11/19/2008 | K. Gwynne, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 459 | 11/20/2008 | K. Gwynne, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 460 | 11/20/2008 | T. Fischer, Esq. | A. Friedman, Esq.; M. Neue, Esq.; K. Gwynne, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 461 | 11/20/2008 | T. Fischer, Esq. | M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 462 | 11/20/2008 | T. Fischer, Esq. | A. Friedman, Esq.; M. Neue, Esq.; K. Gwynne, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 463 | 10/30/2008 | A. Friedman, Esq. | S. Mielert, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 464 | 10/30/2008 | A. Friedman, Esq. | C. Falgowski, Esq.; E. Schaffer; K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 465 | 10/30/2008 | A. Friedman, Esq. | C. Falgowski, Esq.; E. Schaffer.; K. Gwynne, Esq.; J. Lord | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |
| 466 | 12/1/2008 | A. Friedman, Esq. | C. Conrads, Esq.; K. Gwynne, Esq.; M. Neue, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |
| 467 | 12/1/2008 | A. Friedman, Esq. | C. Conrads, Esq.; K. Gwynne, Esq.; M. Neue, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |
| 468 | 12/2/2008 | A. Friedman, Esq. | C. Conrads, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; R. Heym, Esq.; E. Schaffer | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |
| 469 | 11/3/2008 | A. Friedman, Esq. | J. Lord | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 470 | 11/4/2008 | A. Friedman, Esq. | S. Mielert, Esq.; M. Neue, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 471 | 11/6/2008 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |
| 472 | 11/6/2008 | A. Friedman, Esq. | S. Mielert, Esq.; M. Schlicht; T. Fischer, Esq.; M. Neue, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 473 | 11/10/2008 | A. Friedman, Esq. | C. Falgowski, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 474 | 11/14/2008 | A. Friedman, Esq. | S. Mielert, Esq.; M. Schlicht; T. Fischer, Esq.; M. Neue, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 475 | 11/18/2008 | A. Friedman, Esq. | T. Fischer, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 476 | 11/19/2008 | A. Friedman, Esq. | T. Fischer, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 477 | 11/19/2008 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights | AC, WP | |
| 478 | 11/19/2008 | A. Friedman, Esq. | T. Fischer, Esq.; K. Gwynne, Esq.; M. Neue, Esq.; S. Mielert, Esq.; C. Wutz; M. Schlicht | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 479 | 4/14/2016 | R. Schloetter, Esq. | A. Friedman, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq. F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 480 | 2/2/2017 | A. Friedman, Esq. | B. Yorks, Esq.; T. Fischer, Esq.; M. Schlicht; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab; S. Wolf, Esq.; R. Paulik; F. Landry, Esq.; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 481 | 4/20/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 482 | 5/5/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 483 | 5/12/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 484 | 5/19/2016 | A. Friedman, Esq. | F. Wunderlin, Esq.; R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 485 | 5/11/2016 | F. Wunderlin, Esq. | M. Schlicht; T. Fischer, Esq.; R. Schloetter, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 486 | 5/23/2016 | M. Krenz, Esq. | M. Leyh; S. Lipp; M. Schlicht; T. Fischer, Esq.; F. Nachtrab; B. Hermann; R. Schloetter, Esq.; F. Wunderlin, Esq.; F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 487 | 6/9/2016 | M. Krenz, Esq. | M. Leyh; S. Lipp; M. Schlicht; T. Fischer, Esq.; F. Nachtrab; B. Hermann; R. Schloetter, Esq.; F. Wunderlin, Esq.; F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 488 | 6/9/2016 | M. Krenz, Esq. | A. Friedman, Esq.; M. Leyh; S. Lipp; M. Schlicht; T. Fischer, Esq.; F. Nachtrab; B. Hermann; R. Schloetter, Esq.; F. Wunderlin, Esq.; F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 489 | 6/9/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; S. Lipp; M. Schlicht; T. Fischer, Esq.; F. Nachtrab; B. Hermann;; F. Wunderlin, Esq; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 490 | 4/27/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; S. Lipp; M. Schlicht; T. Fischer, Esq.; F. Nachtrab; B. Hermann;; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 491 | 4/28/2016 | A. Friedman, Esq. | T. Fischer, Esq.; R. Schloetter, Esq.; S. Lipp; M. Schlicht; F. Nachtrab; B. Hermann;; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 492 | 5/18/2016 | F. Wunderlin, Esq. | A. Friedman, Esq.; T. Fischer, Esq.; R. Schloetter, Esq.; S. Lipp; M. Schlicht; F. Nachtrab; B. Hermann;; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 493 | 5/31/2016 | F. Wunderlin, Esq. | M. Schlicht; T. Fischer, Esq.; R. Schloetter, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Ataergin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 494 | 1/11/2017 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 495 | 10/14/2015 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 496 | 10/22/2015 | T. Fischer, Esq. | A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 497 | 12/18/2016 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 498 | 1/11/2017 | T. Fischer, Esq. | B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 499 | 1/9/2017 | T. Fischer, Esq. | B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 500 | 1/9/2017 | T. Fischer, Esq. | B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 501 | 11/10/2015 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Ataergin, Esq.; F. Wunderlin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 502 | 4/28/2016 | T. Fischer, Esq. | A. Friedman, Esq.; S. Lipp; M. Schlicht;  F. Nachtrab; B. Hermann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq.; R. Schloetter, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 503 | 2/27/2016 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; R. Schloetter, Esq.; E. Greulich, Esq.; F. Wunderlin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 504 | 10/13/2015 | T. Fischer, Esq. | A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 505 | 10/13/2015 | T. Fischer, Esq. | A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 506 | 9/29/2015 | T. Fischer, Esq. | A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 507 | 12/16/2016 | T. Fischer, Esq. | A. Friedman, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding WorldSpace bankruptcy and potential unlicensed infringement by Sirius XM., with attachment. | AC, WP | |
| 508 | 11/19/2015 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; R. Schloetter, Esq.; E.; F. Wunderlin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 509 | 1/7/2016 | R. Schloetter, Esq. | T. Fischer, Esq.; M. Schlicht; A. Friedman, Esq. | Attorney-client draft memo reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 510 | 3/2/2016 | F. Wunderlin, Esq. | A. Friedman, Esq.; S. O'Keefe, Esq.; R. Schloetter, Esq.; T. Fischer, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 511 | 3/3/2016 | F. Wunderlin, Esq. | E. LaDonne, Esq.; T. Fischer, Esq.; M. Schlicht; F. Nachtrab; A. Friedman, Esq.; R. Schloetter, Esq.; E. Greulich, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 512 | 10/27/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 513 | 10/22/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 514 | 4/19/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 515 | 2/26/2016 | F. Wunderlin, Esq. | A. Friedman, Esq.; M. Schlicht; T. Fischer, Esq.; R. Schloetter, Esq.; E. Greulich, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 516 | 11/20/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 517 | 11/16/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 518 | 11/15/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 519 | 5/9/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 520 | 8/22/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 521 | 8/15/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 522 | 12/16/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 523 | 12/10/2015 | F. Wunderlin, Esq. | A. Friedman, Esq.; R. Schloetter, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 524 | 11/11/2015 | J. O'Keefe | M. Schlicht; T. Fischer, Esq.; R. Schloetter, Esq.; F. Wunderlin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 525 | 11/17/2016 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 526 | 1/19/2017 | D. Fournier, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 527 | 5/4/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 528 | 11/11/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 529 | 5/4/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 530 | 11/12/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 531 | 10/19/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 532 | 1/11/2017 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 533 | 12/14/2016 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 534 | 9/27/2016 | A. Friedman, Esq. | B. Yorks, Esq. | Attorney communication reflecting strategy and legal advice regarding WorldSpace bankruptcy and potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 535 | 11/17/2016 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 536 | 12/14/2016 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 537 | 2/29/2016 | A. Friedman, Esq. | S. O'Keefe, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 538 | 11/17/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Wunderlin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 539 | 8/15/2016 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 540 | 12/14/2016 | A. Friedman, Esq. | K. Gwynne, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 541 | 11/17/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Wunderlin, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 542 | 10/8/2015 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 543 | 11/24/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Wunderlin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 544 | 12/18/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 545 | 10/21/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 546 | 5/12/2016 | B. Yorks, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 547 | 9/22/2015 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 548 | 8/24/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 549 | 5/5/2016 | A. Friedman, Esq. | B. Yorks, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 550 | 10/26/2015 | M. Schlicht | A. Friedman, Esq.; F. Nachtrab; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 551 | 10/22/2015 | M. Schlicht | A. Friedman, Esq.; F. Nachtrab; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 552 | 10/23/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 553 | 10/23/2015 | A. Friedman, Esq. | M. Schlicht; F. Nachtrab; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 554 | 1/11/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 555 | 11/19/2015 | T. Fischer, Esq. | A. Friedman, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Wunderlin, Esq.; J. O'Keefe | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 556 | 1/9/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 557 | 1/18/2017 | B. Yorks, Esq. | T. Fischer, Esq.; S. O'Keefe, Esq.; N. Lockwood; A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 558 | 11/23/2016 | B. Yorks, Esq. | T. Fischer, Esq.; S. O'Keefe, Esq.; N. Lockwood; A. Friedman, Esq.; F. Nachtrab; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 559 | 1/10/2017 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; B. Yorks, Esq.; S. O'Keefe, Esq.; N. Lockwood; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 560 | 4/20/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 561 | 10/20/2016 | B. Yorks, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 562 | 1/9/2017 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 563 | 1/9/2017 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 564 | 1/11/2016 | F. Wunderlin, Esq. | A. Friedman, Esq.; R. Schloetter, Esq.; T. Fischer, Esq.; M. Schlicht | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 565 | 5/12/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 566 | 5/5/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 567 | 4/28/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 568 | 4/28/2016 | A. Friedman, Esq. | R. Schloetter, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 569 | 4/21/2016 | R. Schloetter, Esq. | A. Friedman, Esq.; M. Schlicht; T. Fischer, Esq.; S. Lipp; F. Nachtrab; B. Niemann; F. Wunderlin, Esq.; F. Ataergin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 570 | 5/9/2016 | B. Yorks, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 571 | 2/14/2017 | B. Yorks, Esq. | T. Fischer, Esq.; S. O'Keefe, Esq.; N. Lockwood; A. Friedman, Esq.; F. Nachtrab; M. Schlicht; S. Wolf, Esq.; F. Landry, Esq.; P. Rastemborski, Esq.; B. Kreye, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 572 | 2/7/2017 | B. Yorks, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 573 | 7/20/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 574 | 11/12/2015 | S. O'Keefe, Esq. | A. Friedman, Esq.; J. O'Keefe | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 575 | 10/27/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 576 | 5/9/2016 | B. Yorks, Esq. | A. Friedman, Esq.; S. O'Keefe, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, including attachment. | AC, WP | |
| 577 | 11/20/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 578 | 12/11/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 579 | 10/12/2015 | A. Friedman, Esq. | M. Schlicht, T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 580 | 10/8/2015 | A. Friedman, Esq. | M. Schlicht, T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 581 | 10/7/2015 | A. Friedman, Esq. | M. Schlicht, T. Fischer, Esq.; B. Niemann; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 582 | 10/13/2015 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 583 | 10/12/2015 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq.; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 584 | 10/9/2015 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 585 | 10/13/2015 | T. Fischer, Esq. | M. Schlicht; A. Friedman, Esq.; F. Nachtrab | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 586 | 10/8/2015 | T. Fischer, Esq. | M. Schlicht; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 587 | 10/7/2015 | T. Fischer, Esq. | M. Schlicht; B. Niemann; F. Nachtrab; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 588 | 10/6/2015 | T. Fischer, Esq. | M. Schlicht; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 589 | 10/7/2015 | T. Fischer, Esq. | M. Schlicht; B. Niemann; F. Nachtrab; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 590 | 10/7/2015 | M. Schlicht | T. Fischer, Esq.; B. Niemann; F. Nachtrab; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 591 | 7/23/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 592 | 5/5/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 593 | 9/30/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding WorldSpace bankruptcy and potential unlicensed infringement by Sirius XM. | AC, WP | |
| 594 | 9/29/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 595 | 9/29/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 596 | 10/1/2015 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 597 | 10/1/2015 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 598 | 9/30/2015 | M. Schlicht | A. Friedman, Esq.; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 599 | 10/1/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 600 | 5/19/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 601 | 12/14/2016 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; B. Yorks, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 602 | 8/23/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 603 | 11/4/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 604 | 3/31/2016 | K. Lyman, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 605 | 11/5/2015 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 606 | 5/11/2016 | A. Friedman, Esq. | B. Yorks, Esq.; S. O'Keefe, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 607 | 5/11/2016 | S. O'Keefe, Esq. | A. Friedman, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 608 | 10/28/2015 | A. Friedman, Esq. | M. Schlicht; T. Fischer, Esq.; F. Nachtrab; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 609 | 10/31/2016 | A. Friedman, Esq. | B. Yorks, Esq. | Attorney communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 610 | 11/24/2015 | A. Friedman, Esq. | T. Fischer, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Wunderlin, Esq.; S. O'Keefe, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachment. | AC, WP | |
| 611 | 9/23/2015 | M. Schlicht | T. Fischer, Esq.; A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|-----|------|-----------|--------------|-------------|----------------|----------------------|
| 612 | 10/29/2015 | T. Fischer, Esq. | A. Friedman, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM. | AC, WP | |
| 613 | 11/4/2015 | F. Wunderlin, Esq. | A. Friedman, Esq.; T. Fischer, Esq.; M. Schlicht; R. Schloetter, Esq.; F. Ataergin, Esq.; E. Greulich, Esq. | Attorney-client communication reflecting strategy and legal advice regarding potential unlicensed infringement by Sirius XM, with attachments. | AC, WP | |
| 614 | 7/22/2010 | E. Eberlein | A. Heuberger; H. Gerhauser; P. Dittrich; K. Ronge; T. Vondergruen; T. Fischer, Esq. | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 615 | 7/26/2010 | M. Schlicht | E. Eberlein; P. Dittrich; H. Gerhauser; A. Heuberger; K. Ronge; T. Fischer, Esq.; T. Vondergruen | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 616 | 7/1/2010 | F. Mayer | M. Speitel; M. Schlicht; R. Keoshkeryan, Esq.; M. Breiling | Communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 617 | 2/1/2010 | M. Schlicht | S. Mielert, Esq.; T. Fischer, Esq.; T. Adelhardt, Esq.; F. Mayer | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |
| 618 | 10/22/2009 | E. Eberlein | M. Schlicht; P. Dittrich; A. Heuberger; H. Gerhauser | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

*Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*
Case No. 17-cv-184-JFB-SRF

# Fraunhofer – 9/16/2020 Supplemental Privilege Log

| NO. | DATE | AUTHOR(S) | RECIPIENT(S) | DESCRIPTION | PRIVILEGE TYPE | BATES RANGE (IF ANY) |
|---|---|---|---|---|---|---|
| 619 | 7/26/2010 | M. Schlicht | E. Eberlein; P. Dittrich; H. Gerhauser; A. Heuberger; K. Ronge; F. Mayer; M. Schlicht; T. Fischer, Esq.; T. Gruen von der | Attorney-client communication reflecting strategy and legal advice directed to WorldSpace bankruptcy and license rights. | AC, WP | |

AC = Attorney-Client Privilege; WP = Work Product Protection; CI = Common Interest Privilege

# Exhibit C

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
CASE No. 17-00184-JFB-SRF
-----------------------------------x
FRAUNHOFER-GESELLSCHAFT ZUR
FORDERUNG DER ANGEWANDTEN
FORSCHUNG E.V.,

                    Plaintiff,

          -against-

SIRIUS XM RADIO, INC.,

                    Defendant.
-----------------------------------x


                HIGHLY CONFIDENTIAL

   VIDEOTAPED DEPOSITION OF HELMUT J. SCHUBERT

          THURSDAY, February 10, 2022

              7:08 A.M. (EST)

             12:08 P.M. (GMT)


Reported by:

Jennifer Ocampo-Guzman, CRR, CLR

JOB NO. SY004104

HIGHLY CONFIDENTIAL

Page 6

and we're going off the record.

(A brief recess was taken.)

THE VIDEOGRAPHER: It is 7:23 a.m. and we're back on the record.

BY MR. BAGHDASSARIAN:    07:23

Q. (Through The Main Interpreter) Mr. Schubert, I want to start today by going over some logistical issues. And can you tell me, where are you located right now?

A. I'm in Prague, in the Bird & Bird    07:24 law firm.

Q. Are you in an office by yourself right now?

A. I'm completely alone in an office.

Q. And do you have a computer in front    07:24 of you?

A. (In English) Yes, I have a computer with me, in front of me.

Q. (Through the Main Interpreter) And the computer in front of you has the Zoom    07:24 open so that you and I can see each other; is that right?

A. Unfortunately, it is not the case at the moment.

Q. I'm sorry, you don't have the Zoom    07:25

Page 7

open on your computer?

A. At the moment it is not the case. I will fetch somebody who can fix that.

MR. McPHIE: No, no, Mark, it's a Zoom setup in the conference room, so    07:25 his computer just has the eDepoze and the monitor is on the screen, so I think we're okay.

MR. BAGHDASSARIAN: Okay. Actually, that was going to be my next    07:25 question, David. Thank you for clarifying that.

Q. Mr. Schubert, just so I'm clear, on the computer is there any other program open on the computer or browser open on the    07:25 computer other than the eDepoze?

A. I only see here program visitor, and there is a password prompt.

Q. Mr. Schubert, do you have any health issue that would prevent you from    07:26 providing truthful testimony today?

MR. McPHIE: Objection, form.

A. Could you repeat that, please?

Q. Sure.

Do you have any health issue that    07:27

Page 8

would prevent you from providing truthful testimony today?

A. There are no health issues preventing me from testifying today, but I have to tell you that I had complicated    07:27 surgery last September, under full anesthesia; and since that surgery, my memory is reduced, my memory has suffered.

Q. Other than what you just identified to me regarding your surgery and the issue    07:28 with your memory, is there any other issue that you can think of that might impact your testimony today?

A. Not really. I'm just 71 years old. I'm not as young as you, so that's it.    07:28

Q. Okay. Understood.

And, sir, are you taking any medication that you believe might impact your ability to provide truthful testimony today?

A. I do not take any such medication.    07:29

MR. BAGHDASSARIAN: I'm sorry, David, did you have something you wanted to say?

MR. MCPHIE: No, I just wanted to let him know he didn't need to go into    07:29

Page 9

medical -- private details on medical things, but I think he answered the question.

MR. BAGHDASSARIAN: And just to be clear, I wasn't asking for that; but I    07:29 understand your point there.

Q. Mr. Schubert, could you just briefly describe for me your educational background, starting at the college or university level, please?    07:29

A. I went to the Technical University in Munich, I studied physics, I did my Ph.D. there. Then I was a historian of science for several years, and then I went to Fraunhofer and I spent around 30 years there.    07:30

Q. Mr. Schubert, are you a lawyer?

MR. McPHIE: Objection, form.

A. I'm not a lawyer.

Q. You didn't go to law school; is that correct?    07:31

A. I went to technical school.

Q. And what's your -- you mentioned that you worked at Fraunhofer for 30 years.

What's your current employment status?    07:31

3 (Pages 6 to 9)

HIGHLY CONFIDENTIAL

Page 30

A. Everything having to do with physics.

Q. Did that include satellite radio technology?

A. No, I would say that is part of the 08:32 electronics area, not the physics area.

Q. In connection with your work at Fraunhofer, were you ever involved in the electronics area?

A. I was not, just physics and then 08:33 later management.

Q. How long did you work as part of this three-person group that we're talking about?

A. I cannot remember exactly, but it 08:33 could be three to five years.

Q. The next thing you mentioned was a head of a specialized department. Did I understand that correctly?

A. It was not a department, it was 08:34 just a group. I led two other people in a group.

Q. We were talking about the three-person group, I understand that, but I thought there was a later position where you 08:34

Page 31

were head of another group or department separate from that three-person group we were talking about.

Did I understand that correctly?

A. Yes, so this patent office for the 08:36 German, for the German inventions, which I have worked at, it got dissolved, and we moved on to the Fraunhofer headquarters in Munich. So we were in Munich before, as well, but here we transferred to their 08:36 headquarters, to the department for patents and licenses. And first I led a larger group there, and then I headed the whole department there, the patent department of the Fraunhofer-Gesellschaft. And I think it was 08:37 for 10 or 15 years, and I trained as a patent lawyer and a European patent lawyer, and I headed this patent department.

Q. And what were your responsibilities as the head of the patent department? 08:37

A. The task was supervising the different departments within the patent department.

Q. And what did that involve, supervising the different departments within 08:37

Page 32

the patent department?

A. The task was there were different groups on various subject areas, such as chemistry, physics, technology, and so forth, and also one called law, which had a lawyer 08:39 and later two lawyers within this patent department.

Q. And was part of your responsibilities to negotiate license agreements with third parties that Fraunhofer 08:39 would work with?

A. The task of negotiating, setting up the contracts, was a task of the law group. They were to negotiate the contracts with the opposite sides. 08:40

Q. And were you involved in that negotiation process?

A. In the beginning I was involved, but then very quickly I moved to not being involved with this at all. We had two 08:41 lawyers for this, as I said, and I was not involved in that anymore.

Q. Did you review license agreements prior to Fraunhofer entering into them?

MR. McPHIE: Objection, form. 08:41

Page 33

A. I will follow the instructions of my lawyer and not answer the question.

MR. McPHIE: Again, so, and very quickly, Mark, I will just take a second here. 08:41

When I say objection, form, Mr. Schubert, you still should answer. If there's a privilege issue, I will make that clear; I will give an instruction or I will give a caution. But when I 08:42 say objection, form, that's just for the record, and you should proceed to answer the question, if you are able.

A. After we had an experienced contract lawyer, I did not do this as a rule. 08:43 However, I had the authority to sign contracts, so there were a lot of contracts signed by me, which I, however, have not reviewed in this way.

Q. Mr. Schubert, I think I heard a 08:43 little bit of this earlier, do you speak English?

A. I can communicate in English, but I wouldn't go so far as to claim that I really speak it. 08:43

9 (Pages 30 to 33)

HIGHLY CONFIDENTIAL

Page 46

A.  I'm sure I've signed hundreds, but I relied on my law subdepartment having negotiated that.

Q.  And just so I understand your testimony with respect to the Cross-License   09:18 Agreement here that we've marked as Schubert Exhibit 2, other than the words that are contained in this Cross-License Agreement itself, is it your testimony that you can provide no other information about this   09:18 Cross-License Agreement other than the words that are on the page?

A.  I'm sorry, that is the case.  I'm not a contract lawyer.  This has been drafted by a contract lawyer, and also, I cannot   09:19 recall.  I would have to go very in depth, and I just cannot recall.

Q.  Do you know, based on your experience as the head of the patent department at Fraunhofer, what the general   09:19 purpose is of a Cross-License Agreement that Fraunhofer would enter into with a third party for which it was providing technology-consulting services?

MR. McPHIE:  Objection, form.   09:20

Page 47

A.  I assume that contract lawyers, in particular the head of this small department, can interpret this correctly, but I am not a contract lawyer.

Q.  Mr. Schubert, do you know what a   09:21 cross-license is?

MR. McPHIE:  Objection, form.

A.  A cross-license would be a license that works both ways.  That's how a normal person would interpret the term.  You do not   09:22 need to be a lawyer for that.  But that would be a license going both ways.

Q.  And one of the purposes of a cross-license, in connection with two parties working together to develop a product or   09:22 service, is so that each party to that work can use the other, other party's intellectual property; is that fair?

MR. McPHIE:  Objection, form.

A.  I'm not a contract lawyer.  I   09:22 cannot say how far the mutual use of which patents is allowed.  I just can't say that.

MR. McPHIE:  Mark, we've been going for a little over an hour, so whenever is a good time for a break, that'll be   09:23

Page 48

good.

MR. BAGHDASSARIAN:  Let me just follow up on this, and we will certainly take a break.

Q.  Mr. Schubert, the question I asked   09:23 was a little different.

When two parties are working together to develop a product or service, such as Fraunhofer, for example, with a third party that they're providing technology   09:23 services to, those parties will enter into a cross-license so that each side can use the other side's intellectual property for purposes of that development effort.  Is that fair?   09:24

MR. McPHIE:  Same objections.

A.  The scope of such licenses can vary a lot, perhaps they're limited to something or they have exclude some things.  And I cannot say anything about this contract,   09:25 about the way it should be interpreted.

Q.  I'm asking you more generally, Mr. Schubert, not necessarily about this specific Cross-License Agreement.  So I'll restate the question, just understanding in that context. 09:25

Page 49

When two parties are working together to develop a product or service, such as Fraunhofer, for example, with a third party that they're providing technology services to, those parties will enter into a   09:26 cross-license agreement so that each side can use the other side's intellectual property, correct?

MR. McPHIE:  Same objection.

A.  A good contract has to give answers 09:26 exactly to the question you are asking, but I've only looked at this contract briefly.  I do not see the specific clauses, and I cannot tell you what rights it gives to what parties.   09:27

MR. BAGHDASSARIAN:  Let's take a break.

THE VIDEOGRAPHER:  It's 9:27 a.m., and we're going off the record.

(A brief recess was taken.)   09:27

THE VIDEOGRAPHER:  It is 9:44 a.m., and we are back on the record.

Q.  Mr. Schubert, during our break did you have an opportunity to talk with your lawyers?   09:44

13 (Pages 46 to 49)

HIGHLY CONFIDENTIAL

Page 50

THE WITNESS: (In English) Sorry.

A. (Through the Main Interpreter) We did not have an opportunity to talk. We encountered each other. We had some cookies together, but we have not talked.    09:44

Q. Mr. Schubert, in connection with your role as head of the patent department, you're aware, are you not, that Fraunhofer enters into license agreements with third parties for which they provide    09:45 technology-consulting services, correct?

A. Of course I knew that agreements were signed, yes.

Q. And one of the reasons for Fraunhofer entering into license agreements    09:46 with third parties for which they provide consulting work is so that the third party can use Fraunhofer technology in connection with their business, correct?

MR. McPHIE: Objection, form.    09:46

A. Of course technologies might be used literally, but the conditions for that have to be formulated.

Q. But it's not quite the answer to my question, so let me try it again. Let's take    09:47

Page 51

it piece by piece.

MR. BAGHDASSARIAN: You can translate that.

Q. And Mr. Schubert, you are aware Fraunhofer entering into technology    09:47 consulting agreements for Fraunhofer --

MR. BAGHDASSARIAN: Let me start that again.

Q. You are aware of agreements that Fraunhofer entered into with third parties to    09:47 provide technology-consulting services for purposes of developing a product or a service, correct?

MR. McPHIE: Objection, form.

A. That was too complex. I don't    09:48 think I understood the question.

Q. Well, let me try to simplify it. I didn't think it was that complex, but let me try to simplify it for you.

You are aware that Fraunhofer    09:48 provides technology-consulting services to third parties for development of a product or service for that third party, correct?

MR. McPHIE: Same objection.

A. That depends on the contract.    09:49

Page 52

There is no simple answer to that. You have to look into the content of the contract.

Q. Okay, but some of the contracts that you've been involved in, you've been involved with during your time at Fraunhofer    09:50 are those where Fraunhofer provides technology-consulting services to third parties for development of a product or service, correct?

A. Generally Fraunhofer Institutes do    09:51 not provide consulting, they develop something for the customer. So I do not understand the difference yet. I'm not sure what, what it is you're asking.

Q. So let's go with what you just    09:51 said. So Fraunhofer, is it fair to say that Fraunhofer develops something, a product, a service or a technology for third parties; is that correct?

A. Yes, Fraunhofer does that.    09:51

Q. And Fraunhofer gets paid for doing that; is that correct?

MR. McPHIE: Objection, form.

A. Of course, Fraunhofer expects remuneration.    09:52

Page 53

Q. So Fraunhofer is retained to develop a product or service by a third party and gets paid by that third party for that development; is that fair?

MR. McPHIE: Objection, form.    09:53

A. There must be additional provisions, of course, for example, in the case that inventions are made in the course that Fraunhofer receives revenues from the use of those inventions.    09:54

Q. Okay. So if -- so where we are right now is we agree, we can agree that Fraunhofer develops a product or service for third parties, receives remuneration from third parties for the development of that    09:54 product or service, and should also receive remuneration for any inventions that come out of that development; is that fair?

MR. McPHIE: Objection, form.

A. Roughly you could say so, but the    09:54 devil is always in the details of what actually is agreed and what is realized.

Q. And in the scenario where a third party retains Fraunhofer to develop a product or service, and pays for that development,    09:55

14 (Pages 50 to 53)

HIGHLY CONFIDENTIAL

Page 54

and pays Fraunhofer for any inventions or patent rights, should the third party have a right to use the product or service that was developed for it?

MR. McPHIE: Objection, form.    09:56

A. I have to stress again that I'm not a contract lawyer and that's not really my area of expertise.

Q. That doesn't answer my question, sir. I'm going to repeat the question and I'm going to ask you to please answer it.    09:56

In the scenario where a third party retains Fraunhofer to develop a product or service, it pays for that development and also pays Fraunhofer for any inventions or patent rights, should the third party have a right to use the product or service that was developed for it?    09:57

MR. McPHIE: Same objections.

A. The contract has to specify this, what is developed, what rights the customer has, what they can do, and it's not always individual. But again, I'm not a contract lawyer, and I have not special expertise in that.    09:57    09:58

Page 55

Q. Is it reasonable for a third party who pays Fraunhofer to develop a product or service to expect to have the license rights to use that product or service for as long as a third party wants to?    09:58

MR. McPHIE: Same objections.

A. That's depends on the details of the contract, and those include the duration and whatever else. And I'm not really a contract lawyer, so I'm not the right person to be able to confirm that.    09:59

Q. Do you know what the word "irrevocable" means?

MR. McPHIE: Objection, form.

A. I assume this is a legal term, and I also assume that it means something else than what normal people mean when they say it.    10:00

Q. What is your understanding of the term "irrevocable"?    10:00

MR. McPHIE: Objection, form.

A. That depends on the context. Irrevocable means irrevocable, but again, how to interpret it depends on the context, and I do not know about that; I'm not a contract    10:01

Page 56

lawyer.

Q. Mr. Schubert, if you put the term "irrevocable" into the contract, what would you intend for the word "irrevocable" to mean?    10:01

MR. McPHIE: Excuse me. Just let me put in my objection.

Objection, form.

A. That's exactly my problem, that depends on the wording of the contract, and I'm not the right person to assess it. I'm not a contract lawyer.    10:02

Q. But you have signed hundreds of contracts in connection with your role as the head of the patent department at Fraunhofer, correct?    10:02

A. I doubt that.

Q. And if you saw a term "irrevocable" in a contract, you would understand the term "irrevocable" to mean irrevocable, which means you can't take it away, correct?    10:03

MR. McPHIE: Objection, form.

A. If I had to give a reply to that, I would first question a lawyer, ask a lawyer in order to be able to give the correct    10:04

Page 57

answer. So the short version of the answer is I'm not a contract lawyer.

Q. So what you're telling me is that you can't answer my question, that if the term "irrevocable" is in a contract, you would understand the term to mean irrevocable, which means you can't take it away; is that right?    10:04

MR. McPHIE: Objection, form.

A. I don't like to repeat myself, but that depends on the context, and that has to be assessed by a contract lawyer.    10:05

Q. Just so I'm clear, you can't answer my question. You would need a contract lawyer to help you answer my question; is that correct?    10:05

MR. McPHIE: Objection, form.

A. Yes, that is the case, as a contract lawyer I cannot make a definite statement on that.    10:06

Q. Mr. Schubert, are you aware of Fraunhofer's policy for remuneration for named inventors of patents?

MR. McPHIE: Objection, form.

A. There is a statutory employee    10:07

15 (Pages 54 to 57)

HIGHLY CONFIDENTIAL

Page 86

A. I do not know who participated. I'm sure that Mr. Gerhäuser did.

Q. Why are you sure that Mr. Gerhäuser did?

MR. McPHIE: Objection, form.    11:47

A. He had signed it. I really can't recall how this process was taking place. Probably everyone just wrote down March 4th, because I cannot imagine all of us signing on the same day. But I really do not remember    11:48 what was happening there.

Q. Mr. Schubert, do you know what the purpose of this agreement was?

MR. McPHIE: Objection, form.

A. It seems to have been a License    11:48 Agreement.

Q. And do you know why this License Agreement was entered into?

MR. McPHIE: Objection, form.

A. I cannot recall why.    11:49

Q. Mr. Schubert, if you could turn to page 3 of this License Agreement, I'm going to direct your attention to Section 3.1 of the agreement. Just let me know when are there, please.    11:49

Page 87

A. I have 3.1 in front of me.

Q. And if you look at Section 3.1, it says, in part, Fraunhofer grants to WorldSpace and its affiliates, a worldwide, exclusive, irrevocable license with rights to    11:51 sublicense under the MCM Intellectual Property Rights.

Do you see that language?

A. I see it, yes.

Q. Do you have an understanding of    11:51 what an exclusive license is?

MR. McPHIE: Objection, form.

A. If you translate it literally, it's a license which excludes.

Q. An exclusive license means that the    11:51 person licenses the only one licensed, correct?

MR. McPHIE: Objection, form.

A. In order to evaluate the meaning of this word, in this position, we would have to    11:52 study all of the contract.

I'm sorry, and I'm not a contract lawyer.

Q. So even if you studied this contract, you wouldn't be able to provide me    11:52

Page 88

any answers about it; is that fair?

A. That may well be the case, yes.

Q. And separate from this agreement, and based on your 30 years of experience at Fraunhofer, isn't an exclusive license more    11:53 valuable than a nonexclusive license?

MR. McPHIE: Objection, form.

A. I cannot say that. Maybe an exclusive license is worth 500 euros and a nonexclusive license is worth 100 million    11:53 euros. It depends on the subject. So that's not something you could say, that's not a question that can be answered easily.

Q. Okay, but there are situations where an exclusive license is more valuable    11:54 than a nonexclusive license, correct?

MR. McPHIE: Objection, form.

A. That is correct, that also follows from my interpretation.

Q. And this provision Section 3.1 also    11:54 uses the word "irrevocable." Do you see that?

A. Yes.

Q. Do you have an understanding of what irrevocable means?    11:54

Page 89

MR. McPHIE: Objection.

A reminder to the witness to please allow a few moments for me just to make an objection.

Objection, form.    11:55

A. You cannot specify the meaning of the word in a contract without reading the whole contract. And once again, I have to remind you, I'm not a contract lawyer.

Q. So even if you read the whole    11:55 contract, you wouldn't be able to tell me what the meaning of irrevocable is in the context of this contract; is that correct?

A. I couldn't say, I haven't tried it yet, if I ever read it. It has been 30 years    11:56 or something.

Q. So Mr. Schubert, if I had you read this contract, you could tell me what the meaning of irrevocable is; is that your testimony?    11:57

MR. McPHIE: Objection, form.

A. I basically made two statements: One was about the specific meaning in this position; and the other was that I'm not a contract lawyer. So even if I skim through    11:58

23 (Pages 86 to 89)

HIGHLY CONFIDENTIAL

Page 90

all of the contract, that probably wouldn't help.

Q. Section 3.1 also grants the right to sublicense. Do you see that?

A. I see 3.1, yes.                11:58

Q. Do you know why Fraunhofer granted WorldSpace a right to sublicense under the MCM Intellectual Property Rights as reflected in Section 3.1?

A. Maybe it did. I was certainly not  11:58 the one drafting the contract. And I can only repeat it again and again, I'm not a contract lawyer.

Q. Are you aware of any discussions between Fraunhofer and WorldSpace in    11:59 connection with this License Agreement dated March 4, 1998, where a sublicense granted under this agreement would terminate if this License Agreement also terminated?

MR. McPHIE: Objection, form.    12:00 Objection, form.

A. I do not recall.

Q. Are you aware of any evidence indicating that if this License Agreement dated March 4, 1998 terminated, that would    12:00

Page 91

result in a termination of any Sublicense Agreement granted under this License Agreement?

MR. McPHIE: Objection, form.

A. I do not know.                12:01

Q. Are you aware of any discussions between yourself and anyone at XM Satellite Radio concerning the termination of any License Agreements that XM Satellite Radio may have under this License Agreement dated    12:01 March 4, 1998?

MR. McPHIE: Objection, form.

A. I cannot recall.

Q. Did you have any interaction with anyone at XM Satellite Radio during the    12:02 course of your career at Fraunhofer?

A. I cannot recall.

MR. BAGHDASSARIAN: Mr. Schubert, if you could, turn to the next page of this document, and turn to Section 4,    12:03 entitled, "Compensation For License."

THE WITNESS: (In English) Page 4?

THE MAIN INTERPRETER: I'm sorry, I think that's the document where the pages were not in the correct folder.    12:03

Page 92

MR. BAGHDASSARIAN: Yes. So please go to page 5 of 10. Sorry about that, Mr. Schubert.

THE WITNESS: (In English) Compensation for License.        12:04

MR. BAGHDASSARIAN: Yes, sir.

Q. (Through the Main Interpreter) Under this provision, WorldSpace was to pay Fraunhofer the sum of 1 million US dollars; is that correct?                12:04

A. I see that it says $1 million here.

Q. And was that a negotiated amount?

MR. McPHIE: Objection, form.

A. The question was whether it was a negotiated amount?                12:05

Q. Yes.

A. Why is it a question for me, how am I meant to answer it? I don't understand it yet.

Q. We can agree that there is, the    12:05 amount of this agreement as reflected in Section 4.1 is for WorldSpace to pay Fraunhofer 1 million US dollars, correct?

MR. McPHIE: Objection, form.

A. I see the number 1 million US    12:06

Page 93

dollars.

Q. And are you aware of whether that $1 million amount was the result of a negotiation between Fraunhofer and WorldSpace?                12:06

A. I cannot recall, but it is the case that such amounts are usually negotiated and arrived at together, but I do not know whether it was the case here.

MR. BAGHDASSARIAN: Mr. Schubert, I  12:07 am going to mark as Exhibit 7 for today's deposition a document produced by Fraunhofer with production number F0004592.

Please let me know when you have it  12:07 in front of you.

(Helmut Schubert Exhibit 7, Technology Licensing Agreement, Bates Nos. F00004592 through F00004612, marked for identification, this date.)    12:07

THE WITNESS: Technology License Agreement.

Q. This is a Technology Licensing Agreement effective as of January 1, 1998, between WorldSpace AMRC and AMRC Holdings; is  12:08

24 (Pages 90 to 93)

HIGHLY CONFIDENTIAL

Page 106

MR. BAGHDASSARIAN:  Objection to form.

A.  I cannot recall.  I do not recall.

Q.  Do you recall anyone at XM ever discussing any long-term reliance on the validity of the WorldSpace License Agreement or any sublicense based on that License Agreement?

MR. BAGHDASSARIAN:  Object to form.

A.  No.

Q.  Do you recall any discussions regarding what effect the termination of the WorldSpace License Agreement might have on a Sublicense Agreement?

MR. BAGHDASSARIAN:  Objection to the form.

A.  No.

Q.  Do you recall there being any commercial practices or customs at the time of the WorldSpace license that a sublicense would necessarily survive the termination of a Master License Agreement?

A.  No.

Q.  Do you recall anyone ever mentioning to Fraunhofer that it was

Page 107

important for sublicenses to survive any termination of the WorldSpace License Agreement?

A.  No.

Q.  Do you recall anyone ever mentioning to Fraunhofer that it was expected that sublicenses would survive any termination of the WorldSpace License Agreement?

A.  No.

MR. McPHIE:  All right, no further question, Mr. Schubert.

MR. BAGHDASSARIAN:  Mr. Schubert, couple of follow-up questions.

EXAMINATION BY
MR. BAGHDASSARIAN:

Q.  As the head of the patent department at Fraunhofer, would you have been involved in discussions with XM Satellite Radio concerning its sublicense to any Fraunhofer patents?

MR. McPHIE:  Objection, form.

A.  I do not recall that.

Q.  And I understand you do not recall anyone ever mentioning to Fraunhofer that it

Page 108

was expected that sublicenses would survive any termination of the WorldSpace Fraunhofer License Agreement, but it is possible that those discussions did happen, correct?

MR. McPHIE:  Objection, form.

A.  I do not recall.

Q.  And I understand in answering your counsel's questions that you don't recall anyone ever mentioning Fraunhofer that it was important for sublicenses to survive any termination of the WorldSpace License Agreement, but it is possible that it was important for sublicenses to survive, correct?

MR. McPHIE:  Objection, form.

A.  I said that I do not recall it, and I really cannot recall it.

Q.  But if a sublicense were granted to XM Satellite Radio, it would be important for the sublicense to survive any termination of the main license on which it's based, correct?

MR. McPHIE:  Objection, form.

A.  I'm not a contract lawyer.  I cannot tell you anything about this.

Page 109

Q.  If you didn't want to reflect an intent to ensure that a sublicense survives any termination of a main license, would one way to do that be to use the term "irrevocable"?

MR. McPHIE:  Objection, form.

A.  I couldn't say, because as I said, I'm not a contract lawyer.

Q.  I understand you told your counsel based on his questions that you don't recall anyone at XM ever discussing any long-term reliance on the validity of the WorldSpace License Agreement or any sublicense based on that License Agreement.  But it is possible that those discussions happened, correct?

MR. McPHIE:  Objection, form.

A.  As I said, I don't recall.  I cannot say whether they happened or not.

Q.  You also, in answering your counsel's questions, said you do not recall ever being aware of whether or not XM Radio had entered into a Sublicense Agreement with WorldSpace.  But it is possible Fraunhofer was aware of a Sublicense Agreement between WorldSpace and Fraunhofer, correct?

28 (Pages 106 to 109)

# Exhibit D

Case 1:17-cv-00184-JFB-SRF     Document 578-1     Filed 06/23/22     Page 95 of 223
PageID #: 23645

**Hedvat, Shannon H.**

| | |
|---|---|
| **From:** | Schuetz, Kelsey <kschuetz@irell.com> |
| **Sent:** | Friday, April 22, 2022 4:59 PM |
| **To:** | Hedvat, Shannon H.; Yorks, Ben; McPhie, David; Vakili, Kamran; Carson, Rebecca; bfarnan@farnanlaw.com; Michael J. Farnan |
| **Cc:** | Baghdassarian, Mark; provner@potteranderson.com; ~Choa, Jonathan |
| **Subject:** | [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert |

Shannon,

Thank you for finally confirming the specific privilege log entries relating to Mr. Schubert for which SXM is seeking additional information.   In light of this information, Fraunhofer will conduct an additional review and provide a written response.  Hopefully that will resolve the matter but if not, we can schedule a time to meet and confer further.  As for the rest of your email, we simply disagree for reasons we have already expressed.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Wednesday, April 20, 2022 6:19 AM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Kelsey:

We object to Fraunhofer's ongoing efforts to evade this issue.  With respect to the issue we have raised concerning Mr. Schubert's status, and based on our understanding of the facts, we do not intend to challenge any other entries on the privilege log beyond the ones we have listed.  Since it is clear you have refused, now repeatedly, to respond to our reasonable requests for your position, we ask that you promptly make someone available for a meet and confer as we have requested.  Otherwise, we will have no choice but to raise the issue with the Court.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

1

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

---

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Monday, April 18, 2022 9:42 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

The parties obviously disagree on many of the assertions in your email. But even setting that aside, it still is not clear whether SXM has provided a complete list of privilege log entries that it intends to challenge relating to Mr. Schubert. Can you please simply tell us whether SXM intends to challenge any other entries beyond Nos. 65, 71, 228, 325, 330, 381, 383, 386, and 387? We expect that should be the complete list as you haven't identified any others. However, we ask that you please confirm this straightforward issue so we can avoid any possible ambiguity based on the open-ended language in your email earlier today.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Monday, April 18, 2022 5:00 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Kelsey:

Your claim that we identified privilege log entries in question for the first time today is false. We have previously on multiple occasions described the entries and provided you with sufficient information to identify the relevant line items of the privilege log. Nonetheless, we enumerated below specifically the entries that are the subject of our inquiry. That is precisely what Fraunhofer needs to deal with.

Your suggestion that we failed to timely challenge these privilege log entries is similarly baseless and contrived. As we noted, Fraunhofer misleadingly designated Mr. Schubert as an "Esq." on its privilege log. That misnomer only came to light after Mr. Schubert's deposition when he testified (i) that he does not

have a law degree and is not a lawyer, and (ii) denied any ability to provide legal advice on licensing and contract issues. *See e.g.*, Schubert Tr. at 9:16-21; see also Schubert Tr. at 32:8-33:19, 47:13-22, 53:23-57:20, 88:24-89:9, 108:18-109:8.   And as the email thread below makes clear, we brought to your attention our concerns about the privilege log entries involving Mr. Schubert in a timely fashion once his deposition transcript was finalized.

You, in turn, have been transparently evasive in failing to respond to our repeated inquiries.  If you do not intend to provide us with additional information on this subject, just tell us.  Otherwise, as we indicated below, please let us know if you are available to meet and confer on Wednesday or Thursday of this week.

Shannon

Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Monday, April 18, 2022 3:47 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

As my prior emails on this topic make clear, Fraunhofer is willing to work with SXM to resolve its purported concerns regarding Mr. Schubert's testimony.  To that end, Fraunhofer has repeatedly requested that SXM provide "a written explanation of the relief you intend to seek with respect to Mr. Schubert and the basis for such relief, including a specific identification of the privilege assertions that you believe to be unjustified (if any), and any authority you have in support of your position that Fraunhofer is obligated to provide SXM with additional 'evidence' corroborating Mr. Schubert's sworn testimony."

Your email below identifies—***for the first time***—nine entries on Fraunhofer's supplemental privilege log that was served ***well over a year ago*** (on September 16, 2020).  However, your email offers no explanation for why SXM failed to timely challenge these entries during the fact discovery period.  Moreover, you claim that these nine entries have been identified "by way of example," apparently leaving open the possibility that SXM may attempt to challenge additional, unidentified entries in connection with this dispute.  Of course, for the parties to have a productive meet-and-confer on this issue, SXM needs to provide a complete list of privilege log entries that SXM believes to be unjustified.

3

We therefore ask that SXM: (1) explain in detail the basis (if any) for its failure to timely challenge these privilege log entries, and (2) confirm that its privilege challenge is limited to Entry Nos. 65, 71, 228, 325, 330, 381, 383, 386, and 387.  All of this is information that SXM should have provided some time ago.  Nevertheless, once SXM provides this information and we have the opportunity to review, we can then discuss next steps, including scheduling a meet-and-confer if necessary.

Finally, we disagree with the suggestion in your email that it is Fraunhofer who has delayed the prompt resolution of this dispute.  To the contrary, the record clearly reflects that Fraunhofer has asked SXM numerous times to specifically identify the nature and scope of its purported concerns with respect to Mr. Schubert.  Any delay in the resolution of this issue is a direct result of SXM's ongoing failure to timely provide this information.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Monday, April 18, 2022 8:38 AM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Dear Kelsey:

This is now at least the sixth time we are writing to you with respect to the items on Fraunhofer's privilege log relating to Mr. Schubert.  We do not believe there could be any confusion on your part as to the relief we seek and the issues presented.  But so that the record is clear, we reiterate the following.

There are a number of items on Fraunhofer's privilege log that assert privilege based on work product and/or legal advice allegedly provided by Mr. Schubert.  These include, by way of example, entries 65, 71, 228, 325, 330, 381, 383, 386, and 387 on Fraunhofer's supplemental privilege log.  We understood, based on your designation of Mr. Schubert as an "Esq." on the privilege log, that you were representing that he is an attorney at law in the United States or potentially elsewhere.  However, Mr. Schubert testified repeatedly at his deposition that he does not have a law degree and is not a lawyer.  *See e.g.*, Schubert Tr. at 9:16-21.  You refer to testimony in which Mr. Schubert asserts he "trained as a patent lawyer."  But "training" as a patent attorney is not the same thing as being admitted to the German patent attorney bar or any other bar as a lawyer  – which we think would at a minimum be required for a privilege assertion here.  Nor does it detract from Mr. Schubert's admission that he does not have a law degree.  And none of that testimony would justify Fraunhofer designating him as an "Esq." on the privilege log.

As we also have written, before any privilege could apply, the alleged communications would have to come within the scope of his legal duties as a patent attorney admitted to the German patent attorney bar.  In this case, Mr. Schubert made clear that he does not provide legal advice on licensing and contract questions, testifying at several junctures that he is not a contract attorney or a license attorney and refusing to answer questions on that basis.  *See*, *e.g.*, Schubert Tr. 44: 8-18 ("I'm not a contract lawyer.  I do not know enough about these matters.  I

4

can't say."); 46:13-17 ("I am not a contract lawyer"); 47:1-4 (same); 47:20-22 (same); 54:6-8 (same); 55:7-11 (same); 56:9-12 (same); 56:23-57:2-12 (same); 89:6-9 (same); 89:22-90:13 (same); 108-24-109:8 (same); *see also*, *e.g.*, 95:3-7 ("I am not a license lawyer").  However, as we have also indicated several times now, a number of the items on Fraunhofer's privilege log involving Mr. Schubert describe the communications' subject matter as relating to "patent licensing," "strategy and legal advice regarding WorldSpace license," or "license rights."

It is black letter law that the party asserting a legal privilege has the burden to justify that assertion.  We have therefore repeatedly asked you "to provide evidence that Mr. Schubert was admitted to the German patent attorney bar (and if so during what time period), or confirm that he was not admitted to the bar, and supply any justification that you may have as to why the listed communications fall within the scope of any privilege."  You have evaded and refused to substantively reply.  In an effort to avoid motion practice and productively meet and confer, we ask one last time that you supply that information.

To be clear, if Fraunhofer refuses to supply any additional information or refuses to meet and confer, we will approach the Court to move to compel the production of the documents that have been withheld on the basis of Fraunhofer's apparent mistaken view of Mr. Schubert as an attorney.  We also reserve the right to seek further discovery as may be warranted by virtue of the production of those materials or any other information improperly withheld based on an assertion of privilege of communications with Mr. Schubert.

Please let us know if you are available to meet and confer on Wednesday or Thursday of this week.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Tuesday, April 5, 2022 7:30 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

We're willing to work with you to try to resolve your purported concerns, but you still haven't answered any of our questions.  If SXM thinks there is an issue to tee up with the Court, you need to explain what is the issue,

5

what relief you intend to seek, and what is the basis for that relief.  For example, your email makes the vague claim that Fraunhofer is obligated to "substantiate its claim of privilege" with additional evidence. Which claims are you referring to? You have our privilege log. If there are entries in that log that you wish to challenge, please identify them.

We are willing to schedule a time to discuss these matters but that conversation is unlikely to be productive if SXM refuses to provide us with a basic articulation of the issues in play and SXM's position regarding the same.

We therefore reiterate our request for a written explanation of the relief you intend to seek with respect to Mr. Schubert and the basis for such relief, including a specific identification of the privilege assertions that you believe to be unjustified (if any), and any authority you have in support of your position that Fraunhofer is obligated to provide SXM with additional "evidence" corroborating Mr. Schubert's sworn testimony.

Once we have this information, we will duly consider it and, at that point, can discuss scheduling a meet-and-confer.

Sincerely,
Kelsey

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Thursday, March 31, 2022 5:49 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Dear Kelsey:

You have misunderstood our e-mails and continue to evade responding to our inquiries.

We have now written at least five times requesting Fraunhofer to substantiate its claim of privilege with respect to the communications with Mr. Schubert listed on Fraunhofer's privilege log.  It is Fraunhofer's burden to justify its privilege assertions.  We posed a simple and straightforward request, that we believe relevant to whether Fraunhofer has met its burden: "to provide evidence that Mr. Schubert was admitted to the German patent attorney bar (and if so during what time period), or confirm that he was not admitted to the bar, and supply any justification that you may have as to why the listed communications fall within the scope of any privilege."  You have refused any substantive reply.

When we said that "if it is your view that Mr. Schubert's testimony, standing alone, and notwithstanding the testimony we have cited, meets your burden, and you will not put forward any additional evidence and argument, including evidence showing whether he was admitted to the German patent attorney bar and when, we can consider leaving the issue where it is," we meant only we could leave the evidentiary record as to Fraunhofer's justification where it was and litigate Fraunhofer's assertion of privilege based on that record.  We plainly were not suggesting that we did not intend then to raise the issue.

6

In any event, as we previously wrote, Fraunhofer should tell us now if it intends to rely on any additional evidence or make any argument based on any admission by him to the German patent bar or confirm that it will not. That is part of Fraunhofer's affirmative burden to justify its assertion of privilege.

Please confirm your availability for a meet and confer.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Wednesday, March 30, 2022 7:14 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

SXM has not identified what specific relief it might seek from the Court with respect to Mr. Schubert, much less articulated the basis for any such request. Indeed, your last email suggested that SXM was "consider[ing] leaving the issue where it is." If SXM has now decided that it wishes to pursue this topic in the immediate term, you will need to answer our questions so we can understand and appropriately consider your position in advance of any meet-and-confer.

In any event, it is not reasonable to demand a meet-and-confer on less than 24 hours of notice, especially given that the parties are already busy preparing for the letter briefing and teleconference scheduled for next week.

We propose that you provide a written explanation of the relief you are seeking and the basis therefor by the end of this week, and then the parties can discuss next steps. If it appears necessary at that point, we could also discuss scheduling a meet-and-confer (likely sometime after next week's teleconference).

Sincerely,
Kelsey

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Tuesday, March 29, 2022 3:30 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Kelsey,

In light of your e-mail below, we ask that you provide your availability to meet and confer tomorrow or at the latest this week.  We are disappointed that Fraunhofer will not respond to our simply inquiry, but we hope Fraunhofer will answer our inquiry during the meet and confer.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Tuesday, March 29, 2022 2:23 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

We can confirm our view that Mr. Schubert's testimony under oath stands unrebutted.  It is not clear that we can accept the other statements in your email at this time.  One reason for this is that it appears your questions are directed to issues that SXM may or may not raise in the future and have not yet been identified or evaluated as part of a proper meet-and-confer process.  Accordingly, we think it makes the most sense to hold off on further discussion on the topic and we can revisit later if it becomes appropriate or necessary to do so.

Sincerely,
Kelsey

8

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Saturday, March 26, 2022 4:10 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Kelsey,

It is Fraunhofer's burden to justify its assertion of privilege (not to mention its misleading designation of Mr. Schubert as an Esq. on its privilege log). That is why we have now on multiple occasions asked Fraunhofer to substantiate its privilege claim. We posed a simple and straightforward request, that we believe relevant to whether Fraunhofer has met its burden: "to provide evidence that Mr. Schubert was admitted to the German patent attorney bar (and if so during what time period), or confirm that he was not admitted to the bar, and supply any justification that you may have as to why the listed communications fall within the scope of any privilege." You have evaded and refused to substantively reply.

If it is your view that Mr. Schubert's testimony, standing alone, and notwithstanding the testimony we have cited, meets your burden, and you will not put forward any additional evidence and argument, including evidence showing whether he was admitted to the German patent attorney bar and when, we can consider leaving the issue where it is and, if necessary, we can approach the Court. But if you intend to rely on any additional evidence or make any argument based on any admission by him to the German patent bar and are conferring in good faith, we are entitled to that information now. We ask that by 6 PM Eastern on Monday, you provide the requested information or confirm that you will not rely on any additional evidence, including what we have requested, so that the issue can, if necessary, be presented promptly to the Court.

Shannon

Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Friday, March 25, 2022 8:18 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>

**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

As stated in my earlier email, Mr. Schubert expressly confirmed in his deposition testimony under oath that he "trained as a patent lawyer and a European patent lawyer" and "headed [] the patent department of the Fraunhofer-Gesellschaft." Schubert Tr. at 31:12-18   If you have any basis to believe that this testimony was not accurate, please let us know.  In any event, we are not aware of any legal obligation to provide SXM with "evidence" corroborating Mr. Schubert's testimony.  If you have any authority on that point, please let us know and we will duly consider it.

Sincerely,
Kelsey

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Wednesday, March 23, 2022 6:08 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; Michael J. Farnan <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Kelsey,

We asked you by the close of business today "to provide evidence that Mr. Schubert was admitted to the German patent attorney bar (and if so during what time period), or confirm that he was not admitted to the bar, and supply any justification that you may have as to why the listed communications fall within the scope of any privilege."  We have not heard from you.  We ask that you provide the requested information or confirm that you will not so that the issue can, if necessary, be presented promptly to the Court.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**
shedvat@kramerlevin.com

Bio

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in**

10

**error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

---

**From:** Hedvat, Shannon H.
**Sent:** Monday, March 21, 2022 1:29 PM
**To:** 'Schuetz, Kelsey' <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - Mr. Schubert

Dear Kelsey:

Thank you for your March 18 email, finally providing some response to our March 9 inquiry.

We were aware of the testimony to which you cite, and it does not resolve the concerns we expressed.  As we previously pointed out, Mr. Schubert explicitly testified that he does not have a law degree and is not a lawyer.  *See e.g.*, Schubert Tr. at 9:16-21.  He also repeatedly denied any ability to provide legal advice on licensing and contract issues.  *See e.g.*, Schubert Tr. at 32:8-33:19, 47:13-22, 53:23-57:20, 88:24-89:9, 108:18-109:8.   While Mr. Schubert stated he "trained as a patent lawyer," that is not the same thing at all as being a lawyer with a law degree, nor would it justify Fraunhofer's designating him as an "Esq." on the privilege log.  Moreover, although Mr. Schubert refers to his training, he never testified that he was actually admitted to the German patent attorney bar.  Further, for any privilege to apply, the alleged communications would have to come within the scope of his legal duties as a patent attorney admitted to the German patent attorney bar.

In this case, Mr. Schubert made clear that he does not provide legal advice on licensing and contract questions, testifying at several junctures that he is not a contract attorney or a license attorney and refusing to answer questions on that basis. *See*, *e.g.*, Schubert Tr. 44: 8-18 ("I'm not a contract lawyer.  I do not know enough about these matters.  I can't say."); 46:13-17 ("I am not a contract lawyer"); 47:1-4 (same); 47:20-22 (same); 54:6-8 (same); 55:7-11 (same); 56:9-12 (same); 56:23-57:2-12 (same); 89:6-9 (same); 89:22-90:13 (same); 108-24-109:8 (same); *see also*, *e.g.*, 95:3-7 ("I am not a license lawyer").  But as we indicated in our original email, a number of the items on Fraunhofer's privilege log involving Mr. Schubert describe the communication's subject matter as relating to "patent licensing," "strategy and legal advice regarding WorldSpace license," or "license rights."

Accordingly, we request that by close of business on Wednesday, March 23, Fraunhofer provide evidence that Mr. Schubert was admitted to the German patent attorney bar (and if so during what time period), or confirm that he was not admitted to the bar and supply any justification that you may have as to why the listed communications fall within the scope of any privilege.

Shannon

---

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Friday, March 18, 2022 5:28 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa,

11

Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - Mr. Schubert

Shannon,

The purported issue that you raise in your email below appears to be based on the mistaken factual premise that "Mr. Schubert is not a lawyer." That is incorrect. Indeed, Mr. Schubert expressly confirmed during his deposition that he is a patent lawyer. *See, e.g.*, Schubert Tr. at 31:12-18 (testifying that he "trained as a patent lawyer and a European patent lawyer" and "headed the whole department there, the patent department of the Fraunhofer-Gesellschaft").

We trust this clarification resolves the alleged concerns in your email.

Sincerely,
Kelsey

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Wednesday, March 9, 2022 5:58 PM
**To:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; Schuetz, Kelsey <kschuetz@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** Fraunhofer v. Sirius XM - Mr. Schubert

Counsel,

We have been reviewing the recent deposition of Helmut Schubert and Fraunhofer's privilege log. Several of the assertions of privilege and work product on the log do not appear justified based on his testimony and related matters. In particular, Mr. Schubert testified that he does not have a law degree and is not a lawyer. *See e.g.*, Schubert Tr. at 9:16-21. He denied any ability to provide legal advice on licensing and contract issues. *See e.g.*, Schubert Tr. at 32:8-33:19, 47:13-22, 53:23-57:20, 88:24-89:9, 108:18-109:8. The privilege log also describes Mr. Schubert as an "Esq." even though that honorific is used to refer to lawyers throughout the log, but Mr. Schubert is not a lawyer. Despite this, there are a number of entries on Fraunhofer's privilege log asserting privilege based on work product and/or legal advice provided by Mr. Schubert, including advice relating to licenses and license rights. Against this background, these assertions appear unjustified. If you disagree, we request that you kindly provide an explanation of the basis for these privilege assertions. We ask that you provide a response by the end of this week so that we can determine appropriate next steps.

Regards,
Shannon

Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**
shedvat@kramerlevin.com

12

Bio

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

13

# Exhibit E

I RELL & M ANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

750 17TH STREET NW, SUITE 850
WASHINGTON, DC 20006
TELEPHONE (202) 831-6262

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CALIFORNIA 92660

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (949) 760-5144
FACSIMILE (949) 760-5200
kschuetz@irell.com

May 9, 2022

**VIA E-MAIL**

Shannon Hedvat
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York,
New York 10036

      Re:    *Fraunhofer v. Sirius XM*, Case No. 17-cv-00184-JFB-SRF (D. Del.)

Dear Shannon:

We are writing in response to SXM's requests for additional information regarding certain entries in Fraunhofer's privilege log that relate to Mr. Helmut Schubert. After repeated requests from Fraunhofer, you recently identified a handful of specific privilege log entries that SXM wishes to challenge, i.e., Entry Nos. 65, 71, 228, 325, 330, 381, 383, 386, and 387. As detailed below, we do not think your challenges have any merit.

As an initial matter, SXM contends that the identified documents cannot be privileged based solely on an assertion that Mr. Schubert allegedly "testified that he does not have a law degree and is not a lawyer." *See, e.g.*, 3/9/22 SXM Email (citing Schubert Tr. at 32:8-33:19, 47:13-22, 53:23-57:20, 88:24-89:9, 108:18-109:8). However, the cited testimony does not support SXM's privilege challenge. Indeed, the testimony you cite is inapposite as it was in response to SXM's repeated questions seeking improper legal conclusions and questions about contracts that Mr. Schubert had not seen or reviewed for over 20 years (if ever).

Given the objectionable nature of these questions, it was entirely appropriate for Mr. Schubert to respond as he did, including for reasons that were articulated on the record. *See, e.g.*, Schubert Tr. at 54:7-8 ("that's not really my area of expertise"), 55:7-8 (contractual interpretation "depends on the details of the contract"), 54:24-25 ("I have not special expertise in that."), 56:9-11 ("That's exactly my problem, that depends on the wording of the contact and I'm not the right person to assess it."), 57:19-20 ("I cannot make a definite statement on that."), 89:6-8 ("You cannot specify the meaning of the word in a contract without reading the whole contract."), 109:7-8 ("I couldn't say, because as I said, I'm not a contract lawyer.").

On the other hand, Mr. Schubert did specifically testify that he "trained as a patent lawyer and a European patent lawyer" and "headed the whole department there, the patent department of the Fraunhofer-Gesellschaft." *See, e.g.*, Schubert Tr. at 31:12–32:7 (confirming that Mr. Schubert supervised other attorneys within the Fraunhofer patent department). SXM

11070267

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 9, 2022
Page 2

essentially ignores this testimony and instead demands that Fraunhofer provide additional documentary evidence by way of corroboration. *See* 3/26/22 SXM Email.

As we previously explained to SXM, Fraunhofer does not believe it is under any obligation to search for and produce documents that SXM could have requested—but did not—during the fact discovery phase of this case. Nevertheless, in the interest of attempting to resolve this matter without troubling the Court (and solely by way of compromise), we are providing along with this letter additional documentary evidence regarding Mr. Schubert.

The first of these (Ex. 1) confirms that, in July 1991, Mr. Schubert passed the qualifying examination pursuant to Section 8 of the German Patent Attorney Regulations (Patentanwaltsordnung). The second document (Ex. 2) confirms that, in October 1993, Mr. Schubert passed the qualifying examination for professional representatives before the European Patent Office. These documents thus confirm Mr. Schubert's testimony that he "trained as a patent lawyer and a European patent lawyer." Schubert Tr. at 31:17-18.

Moreover, pursuant to Section 11 of the German Patent Attorney Regulations, Mr. Schubert is qualified as a *Patentassessor*—a term that is sometimes translated into English as "patent assessor" or "patent agent." Courts in the United States have recognized that, "[d]espite their title, German patent agents perform services ***similar to patent attorneys*** in the U.S., receive confidential legal communications from their clients and render legal advice." *Cadence Pharm., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1022-23 (S.D. Cal. 2014). We understand that German patent assessors are equivalent to what would be referred to in the U.S. as in-house patent counsel, insofar as they perform all the same functions of a patent attorney for an individual employer/client.

It is well-established that communications between German patent assessors and their employers/clients enjoy a broad privilege under German law, as U.S. courts have repeatedly recognized. *See, e.g.*, *id.* ("Under German law, written and oral communications between a patent attorney or agent and his clients are deemed confidential, and German courts may not compel disclosure or production of such communications.") (collecting cases); *cf. In re Queen's U. at Kingston*, 820 F.3d 1287, 1301 (Fed. Cir. 2016) (recognizing privilege for patent agents registered under U.S. law). The privilege claims at issue here are further supported by the fact that Mr. Schubert supervised other attorneys within the Fraunhofer patent department (Schubert Tr. at 31:19–32:7) and that the patent department itself reports to the Director of "R&D-Contracts IPR," which is also an attorney position. *See* F00147383; *see Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977).

Accordingly, SXM's privilege challenges are unfounded as a legal and factual matter for multiple independent reasons.

11070267

**I RELL & M ANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 9, 2022
Page 3

Finally, we note that SXM has failed to provide specific objections to any individual privilege log entries. Should SXM do so in the future, we reserve the right to respond.[1] In any event, a review of the particular entries identified by SXM reveals additional reasons that your challenges are without merit. For example, Entry Nos. 325 and 330 include Thomas Fischer, who is in-house counsel for Fraunhofer. Similarly, the document identified in Entry No. 383 includes legal communications between Fraunhofer and its counsel at the Schoppe law firm. These facts provide additional, independent bases for Fraunhofer's privilege claims.

We trust that this explanation and additional information resolves any remaining questions you may have regarding these issues. To the extent that you intend to maintain any of your privilege challenges, we ask that you identify which ones and why, at which point we would be happy to meet and confer further.

Sincerely,

/s/ *Kelsey Schuetz*

Kelsey Schuetz

---

[1] We incorporate by reference into Fraunhofer's privilege log the information and analysis set forth in our correspondence regarding privilege topics (including this letter).

11070267

# EXHIBIT 1



Herr

Dipl.-Phys. Dr.rer.nat.

# Helmut Schubert

geboren am 4. Oktober 1950 in Neumarkt

hat am 31. Juli 1991

die Prüfung gemäß § 8 der Patentanwaltsordnung vom 7. September 1966

mit der Prüfungsgesamtnote

## befriedigend

bestanden.

Er ist berechtigt, die Bezeichnung

# Patentassessor

zu führen.

München, den 31. Juli 1991

Deutsches Patentamt

Der Vorsitzende
der Prüfungskommission für Patentanwälte
In Vertretung

Kurbel

# EXHIBIT 2



**Prüfungskommission für die europäische Eignungsprüfung**

# U R K U N D E

**Helmut SCHUBERT**

hat die europäische Eignungsprüfung
für die beim Europäischen Patentamt zugelassenen Vertreter,

die vom 31. März bis 2. April 1993 stattgefunden hat,

**BESTANDEN**

und erfüllt damit die Voraussetzung des Artikels 134(2)c) des
Europäischen Patentübereinkommens für die Eintragung in die
Liste der beim Europäischen Patentamt zugelassenen Vertreter.

München, den 7. Oktober 1993

Die Prüfungskommission

N.W.P. Wallace
Vorsitzender

J.-F. Léger
Stellvertretender Vorsitzender

# Exhibit F

# Kramer Levin

| Shannon Hedvat | |
| --- | --- |
| Associate | 1177 Avenue of the Americas |
| **T** 212.715.9185 | New York, NY 10036 |
| **F** 212.715.8385 | T 212.715.9100 |
| shedvat@kramerlevin.com | F 212.715.8000 |

May 17, 2022

## VIA E-MAIL

Kelsey Schuetz, Esq.
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324

Re:  *Fraunhofer v. Sirius XM*: Case No. 17-cv-00184-JFB-SRF (D. Del.)

Dear Kelsey:

We have your May 9, 2022 letter.  You do not dispute that Fraunhofer bears the burden of demonstrating that its privilege assertions with respect to the privilege log entries addressed in your letter are proper.  However, your May 9 letter does not, for multiple reasons, carry your burden or alleviate our concerns that Fraunhofer has improperly withheld these documents.

First, we have asked you a number of times to provide evidence that Mr. Schubert was admitted to the German patent attorney bar (and if so during what time period), or confirm that he was not admitted to the bar.  *See*, *e.g.*, Email from S. Hedvat to K. Schuetz dated Apr. 18, 2022.  In your May 9 letter, you provided copies of two documents indicating that he passed two qualifying examinations, but none of that demonstrates that Mr. Schubert was admitted to the German patent attorney bar. We assume at this point that if Mr. Schubert had been admitted to the German patent bar, you would finally have told us.  We therefore understand that he was not and that you will not present any evidence of any such admission.

Second, you argue that Mr. Schubert's repeated statements under oath that he "is not a lawyer" are "inapposite" because those statements, in your view, were made in response to purportedly improper questions seeking legal conclusions.  Putting aside whether SXM's deposition questions were proper (they were), Mr. Schubert said what he said – under oath.  Your argument does not negate Mr. Schubert's sworn testimony.

Third, you assert for the first time that Mr. Schubert is a *Patentassessor* rather than a patent attorney and that communications seeking patent advice from him are thus protected by a special "patent agent" privilege.  But even assuming Mr. Schubert is a *Patentassessor*, and

Kelsey Schuetz, Esq.
May 17, 2022



that such a privilege for a foreign *Patentassessor* exists, which we do not concede, all of the challenged log entries (except for two of them) comprise communications concerning license rights and/or the WorldSpace bankruptcy.  *See* Fraunhofer Privilege Log Entry Nos. 71, 325, 330, 381, 383, 386 & 387.  Such communications regarding licenses and bankruptcy are not protected by any "patent agent" privilege because those communications do not concern the prosecution of a patent before any Patent Office.  The very authorities you cite make that point.  *See*, *e.g.*, *In re Queen's University at Kingston*, 820 F.3d 1287, 1301 (Fed. Cir. 2016) ("Communications that are not reasonably necessary and incident to the prosecution of patents before the Patent Office fall outside the scope of the patent-agent privilege.").  *See also Cadence Pharmaceuticals, Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1018, 1024 (S.D. Cal. 2014) (sustaining privilege assertion only over communications concerning patent application, results of patent search, and application of a German statute).  Indeed, Mr. Schubert made the same point himself:  He repeatedly testified that he is "not a contract lawyer," Schubert Tr. at 109:7-8, and that he "is not the right person to assess [license's] wording," *id.* at 57:19-20.  In short, Mr. Schubert is not qualified to give privileged advice concerning licenses or bankruptcy proceedings, even if he is a *Patentassessor* and thus your argument does not allow you to shield these communications as privileged. Nor would the claim that he is a *Patentassessor* excuse your designation of him as an "Esq."

Of the remaining two challenged log entries, Fraunhofer describes one of them as generally "regarding '289 patent," Fraunhofer Privilege Log Entry No. 228, and the other entry contains no date, *see* Fraunhofer Privilege Log Entry No. 65, and thus is untethered to a time when the communication would have been "reasonably necessary" to the prosecution of a patent application. Here too, Fraunhofer has not met its burden to demonstrate that these two – or any – of the challenged entries were protected by a foreign "patent agent" privilege – even assuming that specific privilege could apply here.

Finally, you claim that each of Entry Nos. 325, 330, and 383 include one other individual who is a lawyer among the recipients.  However, Fraunhofer's privilege log does not distinguish between recipients who appear in the "to" field of a listed communication, and recipients who were merely copied or blind-copied on a communication.  "Routine, non-privileged communications between corporate officers and employees do not attain privileged status solely because counsel is copied on the correspondence." *Pfizer Inc. v. Ranbaxy Laboratories Ltd.*, 2004 WL 2323135, at *2 (D. Del. Oct. 7, 2004).  Moreover, you claim that the communication listed in Entry No. 383 included "counsel at the Schoppe firm," but no one other than Mr. Schubert is identified in that entry with an "Esq." handle.  Without waiving any argument SXM may have with respect to the level of detail provided in your privilege log, we ask that you promptly identify the recipient field in which the additional counsel appeared on the underlying communications in these three entries, and if those individuals appeared only in the cc or bcc field of the listed communication, please explain Fraunhofer's basis for asserting privilege over those documents.  In addition, please identify all attorneys in Entry No. 383.

2

Kelsey Schuetz, Esq.
May 17, 2022



We ask that you provide answers to our questions concerning Entry Nos. 325, 330, and 383 promptly. In the meantime, it appears that we are generally at an impasse and we will move forward with raising this with the Court.

Sincerely,

*/s/ Shannon Hedvat*

Shannon Hedvat

3

# Exhibit G

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

FRAUNHOFER-GESELLSCHAFT ZUR       )
FORDERUNG DER ANGEWANDTEN         )
FORSCHUNG E.v.,                   )
                                  )
--------------------Plaintiff,    )
                                  )Case No.
          vs.                     )17-CV-0184-JFB-
                                  )SRF
SIRIUS XM RADIO INC.,             )
                                  )
--------------------Defendant.    )


TRANSCRIPT OF DISCOVERY CONFERENCE


     DISCOVERY CONFERENCE had before the
Honorable Sherry R. Fallon, U.S.M.J., via
teleconference on the 7th of April, 2022.


APPEARANCES

FARNAN LLP
     BY: MICHAEL FARNAN, ESQ.

          -and-

IRELL & MANELLA LLP
     BY: DAVID MCPHIE, ESQ.
         KELSEY SCHUETZ, ESQ.

                    Counsel for Plaintiff

---

POTTER ANDERSON & CORROON LLP
     BY: PHILIP A. ROVNER, ESQ.

          -and-

KRAMER LEVIN NAFTALIS & FRANKEL LLP
     BY: MARK BAGHDASSARIAN, ESQ.
         SHANNON HEDVAT, ESQ.

          Counsel for Defendant

---

3

THE COURT:  Good afternoon, everyone. This is Magistrate Judge Sherry Fallon again. This is the time set aside for a discovery dispute teleconference in Fraunhofer versus Sirius XM.  The docket number is 17-184.

Let me find out who is now on the call. Do we have Ms. Deanna Warner, our court stenographer, on the line?

THE REPORTER:  Yes.

THE COURT:  Thank you, Ms. Warner. I'll now start with appearances of counsel starting with Delaware counsel for the plaintiff.

MR. FARNAN:  Good afternoon, Your Honor.  It's Michael Farnan, and with me on the like are David McPhie and Kelsey Schuetz, and Mr. McPhie and Ms. Schuetz will be handling the argument.

THE COURT:  Thank you.

And for the defendants.

MR. ROVNER:  Good afternoon, Your Honor.  It's Phil Rovner from Potter Anderson, and with me on the line is my co-counsel from Kramer Levin, Mark Baghdassarian and Shannon Hedvat.

---

4

THE COURT:  Good afternoon, everyone. You know the ground rules.  Anyone who's not speaking, please put your phone on mute.  I apologize for a little bit of a late start.

There are a couple of preliminaries I want to address.  First off, Sirius XM presented five issues to the Court, notwithstanding the Court's limitation on two issues per party, so I am going to -- I'm going to address all five simply because it would be inefficient, in my view, to defer three of the five to another discovery dispute teleconference, but I'm going to do it in this fashion:  SXM is only permitted oral argument on two of the five issues it presented.  The remaining three issues that were beyond the limit I set in my order scheduling the teleconference will be decided -- I'll decide them on this record as a bench ruling, but I'll decide them on the papers without oral argument.  I'm going to start with Fraunhofer's issues first so it will give Sirius XM some time to pick the two of the five issues on which it desires to present oral argument, and then I'll address the remaining three on the

---

efficiently and be in the best interest of case management for this rather old case.

Is there anything further before we move on to the two issues that I will hear oral argument on from Sirius XM and on which I will decide the remaining three issues on the papers?

MR. MCPHIE:  Nothing else from the plaintiff at this time, Your Honor.

THE COURT:  All right.  Thank you.

MR. BAGHDASSARIAN:  Nothing from Sirius XM.  Thank you, Your Honor.

THE COURT:  All right.  Then I will turn it back over to Sirius XM for whichever counsel will take the first issue, and if you will identify it for me and give me an opportunity to go to your papers on that issue and the docket, we'll get started.

MS. HEDVAT:  Thank you, Your Honor. This is Shannon Hedvat again.  The first issue we would like to address today is on the documents pertaining to IPXI.

THE COURT:  All right.  Just give me a moment to pull the argument on that, and we'll get started.

I do have those in front of me.  You may continue, Ms. Hedvat

MS. HEDVAT:  Thank you, Your Honor.

During the deposition of certain of Fraunhofer's witnesses, it became clear that there is a significant amount of critical documents and information that Fraunhofer has not produced as it relates to efforts with an entity called IPXI.  And the efforts that they undertook with this entity related to the monetization or potential monetization and licensing efforts with respect to Fraunhofer's patents, including the asserted patents at issue in this litigation.

And in fact, several of Fraunhofer's witnesses also claimed that the work and correspondence that they had with IPXI is what reportedly prompted their inquiry into Sirius XM's sublicense with World Space.  So the relevance and the significance of this information is undisputed.

And when we were undergoing our meet-and-confer efforts with Fraunhofer, Fraunhofer identified that on their privilege log they have withheld certain information, and

Sirius XM inquired on multiple occasions as to the basis for Fraunhofer's privilege claim, and an example of that is a letter that we sent to them in January.  That's Exhibit D to our opening submission on page 7 where we specifically stated to them you have identified certain documents on your privilege log that pertain to IPXI and have failed to confirm whether Fraunhofer has conducted further searches based on its witnesses' testimony and on what basis Fraunhofer's witnesses confirm that any analysis that Fraunhofer conducted with its discussions with IPXI is privileged.

Their response was it's privileged without any explanation, and then as Sirius XM predicted, and we set forth this in our opening letter on pages 2 and 3, we now have a little bit of insight as to Fraunhofer's, quote/unquote, privilege claims in their responsive letter when they knew we would not have an opportunity to respond.

But what they actually rely on is the case Mobile Media v. Apple that demonstrates that Fraunhofer has not met its burden to demonstrate any probative with respect to these

communications and documents as they relate to IPXI.  And in that case in particular, the Court was clear that whether a common interest exists, which Fraunhofer claims here, whether the purpose for sharing the documents was for furthering a joint legal strategy.  Fraunhofer has made no claim about any purported joint legal strategy.

And in fact, the Court in Mobile Media laid out a test, and it's a three-part test where the burden rests on the party asserting the privilege to establish its existence.  That burden is on Fraunhofer here unequivocally. And those three inquiries are whether the communications were made in the course of a joint defense effort, whether the statements were designed to further that effort, and whether the privilege has not been waived.

Fraunhofer has not even attempted to meet its burden, and it's clear that these communications with IPXI were not made in the course of a joint defense effort.  They were made, as Fraunhofer's witnesses confirmed multiple times, in effort to monetize and license the patents.  So we respectfully

request that Fraunhofer complete a search and produce the critical and important information as it relates to its communication and analyses conducted with respect to the asserted patents in its work with IPXI.

THE COURT:  Help me out here because there's scant argument at pages -- I guess one to two -- or I'm sorry two to three in Sirius XM's opening submission.  Have you pointed out where on the privilege log the documents that you're claiming have -- are the subject of an improper assertion of privilege appear?  Does the Court have any way of knowing what this universe of documents is?

And secondly -- and I apologize.  I know I tend to do these compound questions.  I don't see any discussion in your moving submission of a common interest privilege, which is my understanding of the privilege that's being asserted, at least for Fraunhofer's resistance to production of these documents, and I have to say, quite frankly, if you haven't provided me the privilege log, I'm not sure how to go about resolving this.

MS. HEDVAT:  Yes, Your Honor.  I'll

address the second question first and then the first question because I think they tie into each other.

The common interest issue is something that was, frankly, first raised by Fraunhofer in its responsive letter.  In our communication up until today's dispute, they have simply just referenced a privilege, a privilege objection to producing these documents without any substantive discussion about why there's a privilege, why they're entitled to that privilege, and why, frankly, it's a common interest privilege.

And if I can direct Your Honor's attention to Exhibit 22 to Fraunhofer's letter, which is at DI -- one moment.  I apologize.

THE COURT:  I do have it in front of me, and I do have an excerpt of the privilege log, so go ahead.

MS. HEDVAT:  So there are several entries there as it relates to IPXI, and an example is -- is on the first log what's marked as page 41, is the notes by Mr. Lipp reflecting a meeting with counsel re: IPXI and they're saying it's pursuant to a common legal

interest.  And based on Mr. Lipp's testimony, there was an analysis shared, a claim chart with respect to the asserted '289 patent here with IPXI, but it's unclear here what that common interest is.  Fraunhofer has the burden to demonstrate that, and they haven't.

THE COURT:  Here's where I'm troubled as well because I'm looking at the supplemental privilege log, and it's dated 9/16/20, so it looks like Sirius XM had these documents properly identified on Fraunhofer's privilege log in September 2020 yet you didn't challenge the assertion of privilege with respect to these entries until now, and teeing it up, asking the Court to consider the elements of a common interest privilege and apply it to these documents in the absence of robust briefing on that is a bit of a big ask of the Court at this time.  I find it premature, don't you think?

MS. HEDVAT:  Your Honor, we have not -- we didn't understand the scope of the work or the interactions that Fraunhofer had with IPXI until we took the deposition of Mr. Lipp, and that was in the middle of November, and we raised this issue first with

Fraunhofer at the end of November, and so as soon as this became an issue and we were aware of it, we promptly raised it with Fraunhofer to see what we could do to resolve this.  Now, unfortunately, we're today before Your Honor, but prior to Mr. Lipp's deposition, we were unaware of the nature and extent of the communications and interactions that Fraunhofer had with IPXI because these entries on the privilege log are broad, and it wasn't until we had the opportunity to depose Mr. Lipp, where he described that he conducted an analysis, a claim chart, of the asserted '289 patent, and he shared that with a third party, IPXI, and that all of these discussions and efforts were in connection to a licensing and monetization effort, nothing relating to some sort of joint defense or common interest.

THE COURT:  But to the extent you've had this log since September of 2020, and, you know, I'm seeing one document that doesn't specifically refer to IPXI, but it is log entry 363, and it does have Mr. Lipp as one of the recipients on that communication, and there may be others.  I don't want to take the time to

73

look at every single entry here. There are, on the first page, entries 353 through 355 discussing IPXI and showing the author as Mr. Lipp. You had the privilege log. You had the ability to question him about the documents on the privilege log or question the assertion of privilege on these documents before taking Mr. Lipp's deposition. Was that ever done?

MS. HEDVAT: Your Honor, the privilege log was not specifically raised during Mr. Lipp's deposition, but when we started to inquire further into the interactions and the work and purported licensing efforts that Fraunhofer had undertaken with IPXI, Mr. Lipp was shut down from answering his questions because counsel had directed him not to on the basis of a privilege communication, and that is, ultimately, what precipitated our investigation into this issue and our, ultimately, having to raise it today after an inability to resolve it with Fraunhofer.

THE COURT: You're doing it backwards. You see Mr. Lipp is the author of certain documents on a privilege log, so you've

74

got to be going into this deposition with Mr. Lipp knowing that if you try to question him about those particular documents, there's going to be an assertion of privilege, and that ought to have been addressed on the front end before the deposition was even taken. What efforts were made to cut through this before Sirius XM took the deposition of Mr. Lipp? That's what I'm trying to get at.

MS. HEDVAT: We had issued multiple discovery requests, including an interrogatory or Interrogatory Number 24, regarding the purpose of Fraunhofer's efforts with IPXI, and all they did was cite a bunch of documents. But when you look at those documents, they are -- it's one agreement with IPXI, a termination agreement with IPXI, an agenda from a meeting, and a bunch of press releases. Nothing pertaining to the actual substance of the communication and the work.

There's no way to know. Nothing. There's seven entries on the privilege log pertaining to IPXI, and we couldn't understand or even know that it was an improper designation until we had deposed Mr. Lipp.

75

When he told us there was an analysis, none of this reflects an entry stating that an analysis and claim terms were prepared. He told us that, and it wasn't until we questioned him that we became aware of that that we then had to look back and say there's nothing here that identifies that, and Fraunhofer is saying it's encompassed within these seven entries.

THE COURT: Let me hear from Fraunhofer.

MS. SCHUETZ: Yes, Your Honor. This is Kelsey Schuetz on behalf of Fraunhofer.

First, as Your Honor noted, the claim that we never asserted the common interest privilege with respect to these documents is simply not true. It is on our privilege log. And the counsel's statement that they first heard or understood the import of these documents based on Mr. Lipp's testimony cannot be true either because the descriptions of these documents on the privilege log clearly set forth that Mr. Lipp was involved with the discussions with IPXI and that these documents are directed to the IPXI discussion, and, ultimately, this issue is just entirely

76

premature.

Counsel had never identified any specific documents that they were challenging our assertion of privilege either prior to or even during this hearing right now. We've never had a meet-and-confer on the privilege issue. The the common interest privilege that -- the case that is cited in our briefing, it makes clear that even if there is an intersection between the licensing and monetization efforts, that does not mean that there's not the also legal conversations that fall with the privilege.

And finally, the documents that counsel identified relating to IPXI that we did produce that were not privileged, one of those documents -- several of those documents, I should say, were agreements between Fraunhofer and IPXI that -- to include confidentiality provisions, and so combined with those documents and the descriptions of these documents on our privilege log, we have made a prima facie assertion of privilege over these documents, and it has been incumbent upon Sirius XM to then specifically assert a challenge to those privilege entries, which is

something they simply have not done.

THE COURT: All right. Ms. Hedvat, anything in rebuttal before I make a ruling on this issue?

MS. HEDVAT: Just one brief point, Your Honor. I heard from Fraunhofer's counsel about a purported prima facie showing of privilege. As I set out before, including the case law Fraunhofer cited, the burden rests on them, and there are three factors that they have to meet, and simply stating that they met it without any explanation is simply insufficient.

THE COURT: All right. On this issue, I deny Sirius XM's motion to compel the IPXI licensing documents for a number of reasons, and certainly this ruling is without prejudice.

I don't think there's been a very meaningful meet-and-confer with respect to the issue, particularly the assertion of the common interest privilege. I find that it is not fully briefed in a manner where the Court could apply the criteria to determine whether or not the common interest privilege has been properly

asserted.

I also find some delay on Sirius XM's part in that it had the privilege log since September of 2020. The privilege log clearly shows that documents involving Mr. Lipp, the deponent, had been subject to assertion of the common interest privilege. Sirius XM did not challenge the assertion of privilege with respect to these entries until now, and perhaps it wasn't on Sirius XM's radar until it took the deposition, but nonetheless, it had this privilege log and the ability to know what it needed to do or how to prepare for Mr. Lift's deposition itself if it wanted to question him about anything for which a common interest privilege had been asserted and to have that meaningful meet-and-confer ahead of Mr. Lipp's deposition so there would be an opportunity for the Court to determine whether or not these documents ought to be produced and whether he could be cross-examined on them.

And I'm not completely persuaded at this point that his deposition testimony affects the ruling in that it doesn't support the need to compel and abrogate the privilege with respect

to these documents because as I interpret his testimony -- and granted I read only in conjunction with this very limited briefing and this very limited discovery dispute, but it seems to me his deposition testimony only confirms that he assisted a lawyer in preparing a claim chart regarding one of the patents in suit to share with IPXI, and that doesn't convince me that it's suggestive of Fraunhofer improperly asserting a privilege.

But, again, it's premature for me to rule on this because it is not presented in a fashion nor has it been thoroughly vetted in a meet-and-confer and certainly not presented in a fashion on which the Court could make a reasonable ruling, so at this point, I'm denying it without prejudice.

I continue to encourage the parties to meet-and-confer if this is an issue that Sirius XM truly finds meritorious to pursue. That is my ruling on that issue.

What is the next issue on which Sirius XM wants to have oral argument?

MS. HEDVAT: Your Honor, that relates to the 30(b)(6) document with Fraunhofer's

deponent Ms. Eckert, and I believe my colleague Mr. Baghdassarian will address that.

MR. BAGHDASSARIAN: I will. Sorry about that, Your Honor. My mute button wasn't cooperating with me. I apologize.

THE COURT: That's all right, and we've been on the call a while. Let me see if I can streamline this, and it's not meant to prohibit you, Mr. Baghdassarian, from making any arguments that you want to make to the Court.

But when I read both sides, and I -- you know, Fraunhofer is going to hear my view as well when they step up to the microphone to argue. This is really one of those disputes that I fail to see should ever be brought. It should never have been brought to the attention of the Court.

And here's the way I look at it. You get a production, and I recognize, again, the unique facts of this case. You get a production, which I understand is in German, of some 10,000 or so documents ahead of the 30(b)(6) witness's deposition without much time to get them translated. I think you got them

# Exhibit H

**Hedvat, Shannon H.**

| | |
|---|---|
| **From:** | Schuetz, Kelsey <kschuetz@irell.com> |
| **Sent:** | Friday, April 22, 2022 5:07 PM |
| **To:** | Hedvat, Shannon H.; Yorks, Ben; McPhie, David; Vakili, Kamran; Carson, Rebecca; bfarnan@farnanlaw.com; 'Michael J. Farnan' |
| **Cc:** | Baghdassarian, Mark; provner@potteranderson.com; ~Choa, Jonathan |
| **Subject:** | [EXTERNAL] RE: Fraunhofer v. Sirius XM - IPXI |

Shannon,

Thank you for finally confirming the specific privilege log entries relating to IPXI for which SXM is seeking additional information.   In light of this information, Fraunhofer will conduct an additional review and provide a written response.  Hopefully that will resolve the matter but if not, we can schedule a time to meet and confer further.  As for the rest of your email, we simply disagree for reasons we have already expressed.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Wednesday, April 20, 2022 9:11 AM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** RE: Fraunhofer v. Sirius XM - IPXI

Kelsey:

Your continued delay tactics only serve to hamper any progress toward any attempt at resolution.  As was made clear during the hearing on April 7, the nature of the documents and communications FhG has withheld that relate to IPXI only came to light during the depositions of FhG's witnesses.  Moreover, MJ Fallon confirmed that FhG's reliance on a supposed common interest only became at issue through FhG's responsive briefing on April 5.  Therefore, SXM could not have reasonably raised these issues until recently.  Finally, as we have repeatedly made clear, we are focused on the privilege log entries pertaining to IPXI, as to which FhG claims a common interest.  We did list each of the entries that we are focused on in our April 18 email and understand those entries to be the only ones pertaining to IPXI.  If we are mistaken, we ask that you let us know.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP

1

1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Monday, April 18, 2022 4:52 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. Sirius XM - IPXI

Shannon,

Your email below purports to challenge seven entries on Fraunhofer's supplemental privilege log relating to Fraunhofer's communications with IPXI. As an initial matter, we note that each of these documents were properly identified on Fraunhofer's privilege log served **well over a year ago** (on September 16, 2020). Nevertheless, this is the first time that SXM has raised any issue with respect to these specific documents. As Judge Fallon recognized at the April 7 hearing, if SXM sought to challenge Fraunhofer's privilege claim over these documents, it had ample time to do so during the fact discovery period. *See* April 7 Hearing Tr. at 78:2-21. Moreover, you claim that the seven documents you have identified are merely "exemplary," apparently leaving open the possibility that SXM may attempt to challenge additional, unidentified entries in connection with this dispute. This is obviously unhelpful, and will only serve to hamper the parties' ability to reach a prompt resolution. Of course, for the parties to have a productive meet-and-confer on this issue, SXM needs to provide a complete list of privilege log entries that SXM believes to be unjustified.

We therefore ask that SXM: (1) explain in detail the basis (if any) for its failure to timely challenge these privilege log entries, and (2) confirm that its privilege challenge is limited to Entry Nos. 350, 351, 353, 354, 355, 370, and 371. Once SXM provides this information and we have the opportunity to review, we can then discuss next steps, including scheduling a meet-and-confer if necessary.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Monday, April 18, 2022 11:30 AM
**To:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; Schuetz, Kelsey <kschuetz@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Rovner, Phil

2

<provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Subject:** Fraunhofer v. Sirius XM - IPXI

Dear Kelsey:

We are writing to you following the conference before Magistrate Judge Fallon on April 7 to further meet and confer concerning Fraunhofer's failure to produce communications concerning IPXI.  SXM seeks the production of all such communications and analyses shared between Fraunhofer and IPXI, including but not limited to the claim chart that Mr. Lipp testified Fraunhofer shared with IPXI (Lipp Tr. 126:5-128:13) and the following exemplary documents identified on plaintiff's privilege log that Fraunhofer has asserted the common interest privilege over and withheld:

| 350 | 7/30/2014 | K. Rubenstein, Esq. | C. Schamper.; A. Schwarzburg; W. von Lieres, Esq.; I. McClure, Esq.; B. Michalek, Esq. | Communication reflecting legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI |
|---|---|---|---|---|---|
| 351 | 7/30/2014 | K. Rubenstein, Esq. | C. Schamper.; A. Schwarzburg; W. von Lieres, Esq.; I. McClure, Esq.; B. Michalek, Esq. | Communication reflecting legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI |
| 353 | 11/25/2013 | S. Lipp | | Notes reflecting meeting with counsel re IPXI patent licensing, reflecting legal advice and information shared pursuant to a common legal interest. | AC, CI |
| 354 | 1/27/2014 | S. Lipp | | Memo and comments reflecting strategy and legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI |
| 355 | 1/27/2014 | S. Lipp | | Internal notes reflecting legal advice relating to IPXI licensing and information shared pursuant to a common legal interest. | AC, CI |
| 370 | 12/16/2013 | C. Schamper | M. Schlicht; T. Fischer, Esq.; A. Schwarzburg; W. von Lieres, Esq. | Attorney-client communication reflecting strategy and legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI |
| 371 | 1/30/2014 | C. Schamper | M. Schlicht; S. Lipp; A. Schwarzburg; W. von Lieres, Esq. | Attorney-client communication reflecting strategy and legal advice related to IPXI license agreement and information shared pursuant to a common interest. | AC, CI, WP |

Fraunhofer has failed to meet its burden of demonstrating that the common interest privilege is applicable to communications between it and IPXI.  In that regard, Fraunhofer must show that the interests of it and IPXI were "identical, not similar, and [were] legal, not solely commercial," and that "the disclosures would not have

3

been made but for the sake of securing, advancing, or supplying legal representation." *Leader Technologies, Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010).  This is further confirmed by the case law Fraunhofer introduced for the first time in its responsive briefing in advance of the April 7 hearing.  Additionally, New York law, which governed the agreements between Fraunhofer and IPXI (*see* F00372168), limits the application of the common interest privilege to communications "in furtherance of a common legal interest in pending or reasonably anticipated litigation." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 628 (N.Y. 2016).

Fraunhofer has not identified any identical legal common interest that existed between it and IPXI, nor has it indicated that any of its communications related to litigation strategy.  Indeed, each of Fraunhofer's privilege log entries that refers to a common interest between it and IPXI pertains to the commercial interest of licensing, not a legal interest or actual or anticipated litigation.  Moreover, because no Fraunhofer patents were actually licensed to IPXI or its affiliates (*see* F00372220), Fraunhofer and IPXI never had identical legal interests.  Certainly, there could not have been a common interest between Fraunhofer and IPXI during the period prior to the execution of any agreements between them, when the majority of the communications identified above took place.

Fraunhofer has not provided any authority supporting the application of the common interest privilege to the circumstances at issue here.  While Fraunhofer has claimed that "it is well-established that a patent owner and licensee can share a legal interest sufficient to invoke the common interest privilege" (Dkt. 541 at 2), IPXI was not ultimately a licensee of Fraunhofer.  And unlike here, in *MobileMedia Ideas LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 511, 515, 518 (D. Del. 2012)—the sole authority cited by Fraunhofer—the party seeking production "d[id] not dispute the common interest doctrine applies" and the common interest "parties shared information regarding legal aspects of litigation strategy," demonstrating that their relationship "was 'sufficiently imbued with common legal interests' plainly related to future litigation."  In contrast, the District of Delaware rejects the application of the common interest privilege when parties "were not engaged in legal strategy sessions but instead were negotiating a commercial transaction from the opposite sides of a bargaining table." *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 338 (D. Del. 2020).

Please provide us with any additional support Fraunhofer intends to assert as to why it believes it has met its burden of establishing that there was a common interest privilege between it and IPXI in connection with these communications.  Please provide this information no later than Thursday this week and provide times to meet and confer on Friday so that we can determine if we need to raise this issue with the Court.

Shannon

Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T 212.715.9185 M 973.809.4768 F 212.715.8385**
shedvat@kramerlevin.com

Bio

**This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.**

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

# Exhibit I

## Hedvat, Shannon H.

| | |
|---|---|
| **From:** | Hedvat, Shannon H. |
| **Sent:** | Monday, May 9, 2022 3:28 PM |
| **To:** | byorks@irell.com; dmcphie@irell.com; Vakili, Kamran; Carson, Rebecca; Schuetz, Kelsey; bfarnan@farnanlaw.com; 'Michael J. Farnan' |
| **Cc:** | Baghdassarian, Mark; provner@potteranderson.com; jchoa@potteranderson.com |
| **Subject:** | RE: Fraunhofer v. Sirius XM - IPXI & Mr. Schubert |

Counsel,

It has been a week since we asked for you to provide a time to meet and confer regarding Fraunhofer's privilege assertions.  SXM has been raising these issues for months, but you still have not agreed to meet and confer.  We therefore ask again that you promptly provide a time to meet and confer or confirm that you are declining to do so, so that we may promptly raise these issues with the Court.

Shannon

**From:** Hedvat, Shannon H.
**Sent:** Tuesday, May 3, 2022 11:16 AM
**To:** byorks@irell.com; dmcphie@irell.com; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Schuetz, Kelsey' <kschuetz@irell.com>; bfarnan@farnanlaw.com; 'Michael J. Farnan' <mfarnan@farnanlaw.com>
**Cc:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; provner@potteranderson.com; jchoa@potteranderson.com
**Subject:** Fraunhofer v. Sirius XM - IPXI & Mr. Schubert

Counsel,

We are following up on our numerous prior emails on the issues Sirius XM identified regarding Fraunhofer's erroneous privilege assertions.  On April 22, after weeks of correspondence on these issues, you finally represented that "Fraunhofer will conduct an additional review and provide a written response."  We have still not heard back from you.  We therefore request that you promptly provide a time to meet and confer so that we may timely consider whether the Court's involvement is necessary.

Shannon

1

# Exhibit J

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CA 90067-4276
TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199

750 17TH STREET NW, SUITE 850
WASHINGTON, DC 20006
TELEPHONE (202) 831-6262

840 NEWPORT CENTER DRIVE, SUITE 400
**NEWPORT BEACH, CALIFORNIA 92660**

TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (949) 760-5144
FACSIMILE (949) 760-5200
kschuetz@irell.com

May 13, 2022

**VIA E-MAIL**

Shannon Hedvat
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York,
New York 10036

Re:     *Fraunhofer v. Sirius XM*, Case No. 17-cv-00184-JFB-SRF (D. Del.)

Dear Shannon:

We are writing in response to SXM's request that Fraunhofer provide additional support for certain entries in Fraunhofer's privilege log relating to IPXI (i.e., Entry Nos. 350, 351, 353, 354, 355, 370, and 371). Although we disagree that Fraunhofer is obligated to provide any additional information on these issues, we have agreed to perform a further investigation by way of compromise.

All of the specific issues raised in your email appear to be based on an allegation by SXM that Fraunhofer has "failed to meet its burden of demonstrating that the common interest privilege is applicable to communications between it and IPXI." *See* 4/18/2022 SXM Email. As detailed below, we disagree and stand by our claims of privilege.

As an initial matter, many of the entries that SXM has identified involve attorney-client privileged documents and/or attorney work-product for which the "common interest" doctrine only applies to part—but not all—of the document in question. *See, e.g.*, Entry Nos. 353, 354, 355, 370, and 371. Thus, the portions of these documents comprising internal Fraunhofer privileged material (which was not shared with IPXI) retain their privileged status regardless of the outcome of any "common interest" analysis. As far as we can tell, SXM has not raised any challenge to the non-common-interest aspects of these entries.

Moreover, the common interest privilege applies to the entries identified by SXM, as the evidentiary record clearly demonstrates that Fraunhofer and IPXI shared common legal interests with respect to the subject matter of these documents.[1] For example, the Master Agreement between Fraunhofer and IPXI (produced to SXM at F00372149) describes coordinated efforts to achieve the exclusive licensing, sublicensing, and/or enforcement of

---

[1] Fraunhofer broadly uses the term "common interest" to encompass related legal doctrines such as the "community-of-interest" privilege.

11099424

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 13, 2022
Page 2

rights pertaining to Fraunhofer's '289 patent. *See id.* at -154. *see also* F00372189 ("Exclusive License Agreement"). This Master Agreement also set forth specific provisions spelling out how income resulting from these efforts was to be shared between Fraunhofer and IPXI. *See, e.g.*, F00372149 at Section 9. Fraunhofer and IPXI also entered into a License Option Agreement describing the parties' cooperation for the purposes of "promoting the Optioned Patents" and "enabling certain rights under the Optioned Patents to be traded as marketable instruments on the exchange operated by IPXI." *See* F00147454.[2]

The Master Agreement between Fraunhofer and IPXI confirms that the parties intended any information or analysis relating to Fraunhofer's intellectual property was to be kept confidential and "subject to the joint party or common interest privilege":

> By submitting Intellectual Property and/or Essentiality Analyses to IPXI for inclusion in the Engagement, each Sponsor agrees that, subject to the foregoing, it and IPXI have a ***common interest in the licensing and enforcement of essential patents***, and that communications made in connection thereof, including communications between any Sponsor and the IPXI Essentiality Experts are ***presumed to be in furtherance of that common and joint interest, and subject to the*** joint party or ***common interest privilege*** and do not otherwise constitute a waiver of any attorney-client privilege or work product protection that may exist ….

F00372149 at -184 (emphasis added).

Application of the relevant case law to these facts squarely supports Fraunhofer's claim of a common interest with IPXI. For example, the Federal Circuit has expressly found that a qualifying common interest exists between an "inventor/patentee" and a non-party "optionee and potential licensee," as both entities have the "same interest" in "strong and enforceable patents" that would support "royalty income" and other "commercial activity." *In re Regents of University of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996).[3] That is exactly the case here as well.

---

[2] These common interests were further confirmed in deposition testimony provided by Stephan Lipp. *See e.g.*, Lipp Tr. at 124:9-126:8 (providing technical assistance to parties' counsel comparing Fraunhofer IP to WiFi standard); 126:9-127:23; *see also* 4/7/2022 Hearing Tr. at 79:4-10 (noting claim of common interest was supported by testimony "confirm[ing] that Mr. Lipp assisted a lawyer in preparing a claim chart regarding one of the patents in suit to share with IPXI").

[3] *See also Immunex Corp. v. Sandoz Inc.*, 2017 WL 2466507, at *4 (D. N.J. June 7, 2017) ("[A]s a general matter, any document that is protected by an underlying privilege, and was made to further the legal interest associated with the licensing arrangement, would qualify

11099424

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 13, 2022
Page 3

Your email raises a variety of counterarguments, all of which are unavailing.

***First,*** you mistakenly contend that legal interests between entities must be exactly "identical" to give rise to a common interest. But as noted above, the Federal Circuit has found that interests that are only "substantially identical" (such as those implicated by a potential patent license) are sufficient to support the common interest privilege. *See id.*[4]

Similarly, the Third Circuit has found that "substantially ***similar*** legal interest[s]" are adequate to support a claim of privilege in situations such as the one presented here. *In re Teleglobe Commun. Corp.,* 493 F.3d 345, 365 (3d Cir. 2007) (where entities are represented by separate attorneys, "courts can afford to relax the degree to which clients' interests must converge without worrying that their attorneys' ability to represent them zealously and single-mindedly will suffer"); *see also MobileMedia Ideas LLC v. Apple Inc.,* 890 F. Supp. 2d 508, 515 (D. Del. 2012) ("legal interests between or among the clients need not be identical").

In any event, regardless of how the legal standard is characterized, it is clear that Fraunhofer and IPXI have sufficiently "identical" legal interests to support a common interest, as demonstrated above.

***Second,*** you argue that the presence of "commercial interests" involving Fraunhofer and IPXI necessarily means that no qualifying common interest exists here. But again, the case law makes clear that "[t]he fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest." *In re Teleglobe,* 493 F.3d at 365 (quotation and citation omitted); *see also MobileMedia*, 890 F. Supp. 2d at 515 (rejecting argument that legal analysis and communications "regarding coverage under the patents being considered, including mapping

_____

for the common-interest doctrine between and amongst the parties involved."); *INVISTA N.A. S.à.r.l. v. M&G USA Corp.*, 2013 WL 12171721, at *8 (D. Del. June 25, 2013) ("licensors and exclusive licensees of patents share a common, identical legal interest sufficient to invoke the doctrine.") (collecting cases).

[4] Your citation to *Leader Technologies, Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373 (D. Del. 2010) does not support the proposition that interests must be strictly identical. Indeed, *Leader Tech.* relies upon the Federal Circuit's decision *In re Regents*, which found that a district court "erred" in finding no common interest under a "stringent standard" that required an "identical" interest. *In re Regents*, 101 F.3d at 1390. By contrast, the Federal Circuit found a common interest where the entities had only a "substantially identical" interest (i.e., an interest in "obtaining strong and enforceable patents"). *Id.*

11099424

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 13, 2022
Page 4

the extent of each patent's coverage to help determine its value" related solely to shared commercial interests).[5]

*Third,* you assert that Fraunhofer and IPXI could not have shared a common legal interest "because no Fraunhofer patents were actually licensed to IPXI or its affiliates." But you cite no authority in support of this argument, and Fraunhofer is aware of none. To the contrary, the Federal Circuit has confirmed that a common interest may arise with respect to an entity that is merely a "*potential* licensee." *In re Regents*, 101 F.3d at 1390.

*Fourth,* you argue that "there could not have been a common interest between Fraunhofer and IPXI during the period prior to the execution of any agreements between them." Again, you cite no authority in support of this proposition. And in fact, courts routinely apply the common interest privilege to documents exchanged prior to execution of a licensing or common interest agreement. *See, e.g., Mobile Media,* 890 F. Supp. 2d at 518 ("[a] confidentiality agreement underlying a common interest claim need not be in writing; an 'oral agreement ... can provide the platform upon which the common interest can rest") (collecting cases); *Hilsinger Co. v. Eyeego, LLC*, 2015 WL 11120842, at *2 (D. Mass. Aug. 13, 2015) ("[T]he absence of an exclusive licensing agreement at the time the e-mails were sent does not necessitate a finding that the parties to the communication shared no common legal interest."); *AgroFresh Inc. v. Essentiv LLC*, 2019 WL 4917894, *3 (D. Del. Oct. 4, 2019) (overruling finding of no common interest based on allegedly informal agreement).

In any event, Fraunhofer and IPXI started entering into formal agreements reflecting a common interest at least by April 2013, when they executed a Mutual Nondisclosure Agreement. *See* Ex. A.[6]

*Fifth,* you contend that there can be no common interest privilege because none of the identified entries are allegedly "related to litigation strategy." That is incorrect as both a legal and factual matter. The Federal Circuit has made clear that the common interest privilege is not limited to communications made "in anticipation of litigation." *In re Regents*, 101 F.3d at 1390-91. And in any event, the evidence produced in this case (as well as the documents withheld as privileged) all confirm that the common interest between Fraunhofer and IPXI contemplated potential litigation, among other things. For example, the Master Agreement

---

[5] Your citation to *10x Genomics, Inc. v. Celsee, Inc.,* 505 F. Supp. 3d 334, 338 (D. Del. 2020) is inapposite, as that case involved communications exchanged as part of negotiations of a merger and acquisition, not potential patent licensing.

[6] Fraunhofer is providing a copy of this Mutual Nondisclosure Agreement solely in response to SXM's request that Fraunhofer identify evidence supporting its IPXI-related privilege claims. The agreement itself is not responsive to any of SXM's previously served requests for production.

11099424

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 13, 2022
Page 5

refers to "Enforcement Action[s]" relating to "any suit or other proceeding" for enforcement of Fraunhofer's intellectual property, and expressly sets forth how "Litigation Proceeds" are to be shared between Fraunhofer and IPXI. *See, e.g.*, F00372149 at -151, -152.

Moreover, because each of the entries identified by SXM includes subject matter reflecting anticipation of litigation (including part of the common interest between Fraunhofer and IPXI), they are all independently privileged as attorney work product as well.

***Sixth,*** you are mistaken in contending that the common interest privilege in this case is governed by New York state law. The express language of Rule 501 of the Federal Rules of Evidence provides that the federal common law governs a claim of privilege unless the U.S. Constitution, a federal statute, or the Supreme Court provides otherwise. *See also INVISTA*, 2013 WL 12171721, at *4 n.4 & n.6 (rejecting application of state law; "federal common law applies to the asserted privileges").

We further note that you have not provided specific objections to any individual privilege log entries. To the extent that SXM provides any entry-specific objections in the future, we reserve the right to respond in kind.[7] That said, we have observed the following as part of our further review of the entries that SXM has identified:

- There was a typographical error for Entry No. 350, which should not list IPXI representatives I. McClure and B. Michalek as recipients.

- Entry No. 353 comprises notes from S. Lipp relating to legal discussions that included Fraunhofer counsel W. von Lieres. A portion of these notes relate to discussions held when IPXI representatives were not present.

- The memorandum described in Entry No. 354 comprises strategy and legal advice provided by Fraunhofer counsel and IPXI counsel, including comments by S. Lipp.

- Entry No. 355 comprises notes from S. Lipp relating to legal discussions including a portion when IPXI representatives were not present.

- Entry Nos. 370 and 371 comprise email chains including portions that were internal to Fraunhofer and Fraunhofer's counsel only. Certain portions of these email chains also include the following names, which were inadvertently omitted from Fraunhofer's earlier disclosure: I. McClure, Esq.; B. Sarna; A. Schwarzburg;

---

[7] We incorporate by reference into Fraunhofer's privilege log the information and analysis set forth in our correspondence regarding privilege topics (including this letter) and any exhibits and/or documents cited therein.

11099424

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Shannon Hedvat
May 13, 2022
Page 6

D. Kochelek; J. Charbeneau; G. Pannekoek; R. Moore; T. Le; C. Schamper; S. Heffner; N. Weronika Lukaszewicz.

In summary, we think it is clear on this record that there is ample support for Fraunhofer's invocation of the common interest privilege. We have provided this detailed analysis in a good-faith effort to resolve the matter so that we might avoid troubling the Court with unnecessary disputes. Nevertheless, to the extent that SXM disagrees with any of the analysis and authority set forth above, we ask that you please explain your position in detail including citation to any case law that you believe supports a contrary view. Once we have a fulsome written response from SXM, we can meet and confer further as needed.

Finally, we expressly reserve our objection to all of SXM's privilege challenges (both those relating to IPXI as well as those relating to Mr. Schubert) on the basis that they are untimely. All of the documents sought by SXM were duly identified on Fraunhofer's Supplemental Privilege Log, which was served long ago on September 16, 2020. SXM did not dispute any of these particular privilege claims until April 18, 2022—more than *nineteen months later* and well after the close of fact discovery.

At the most recent discovery conference, SXM sought to excuse its delay by claiming that it needed deposition discovery to identify the supposed deficiencies in Fraunhofer's privilege log. *See* 4/7/2022 Hearing Tr. at 71:20-25; 72:4-18. However, the Court did not accept SXM's argument but rather noted that SXM was in possession of the privilege log "since September of 2020" and that it could have (and should have) raised these supposed issues much earlier. *Id*. at 78:2-21. Moreover, SXM failed to ask any questions about the log entries at the depositions of Mr. Lipp or Mr. Schubert (or any other Fraunhofer witness). Thus, we believe it is far too late for SXM to attempt to raise such issues with the Court now.

We trust that this explanation and additional information resolve any remaining questions you may have regarding these issues. To the extent that you intend to maintain any of your privilege challenges, we ask that you identify which ones and why, at which point we would be happy to meet and confer further.

Sincerely,

/s/ *Kelsey Schuetz*

Kelsey Schuetz

11099424

# EXHIBIT A



*Trading Innovation*®

## MUTUAL NONDISCLOSURE AGREEMENT

This Mutual Nondisclosure Agreement is made and entered into as of April 17TH, 2013, by and between IPXI Holdings, LLC, and Fraunhofer Gesellschaft zur Förderung angewandter Forschung e. V.

1.    Purpose. The parties wish to explore a business opportunity of mutual interest and in connection with such potential opportunity, a party may disclose to another certain confidential technical and business information which the disclosing party desires the receiving party to treat as confidential.

2.    "Confidential Information" means any information disclosed by a party to another party, either directly or indirectly, in writing, orally or by inspection of tangible objects (including, without limitation, documents, prototypes, samples and equipment), which is designated as "Confidential," "Proprietary" or some similar designation. Information communicated orally shall be considered Confidential Information unless such information is confirmed in writing as being public information within a reasonable time after the initial disclosure. Confidential Information may also include information disclosed to a disclosing party by third parties. Confidential Information shall not, however, include any information which: (a) was publicly known and made generally available in the public domain prior to the time of disclosure by the disclosing party; (b) becomes publicly known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party; (c) is already in the possession of the receiving party at the time of disclosure by the disclosing party as shown by the receiving party's files and records immediately prior to the time of disclosure; (d) is obtained by the receiving party from a third party without a breach of such third party's obligations of confidentiality; (e) is independently developed by the receiving party without use of, or reference to, the disclosing party's Confidential Information, as shown by documents and other competent evidence in the receiving party's possession; or (f) is required by law to be disclosed by the receiving party, provided that the receiving party gives the disclosing party prompt written notice of such requirement prior to such disclosure and assistance in obtaining an order protecting the information from public disclosure.

3.    Non-use and Non-disclosure. Each party agrees not to use any Confidential Information of another party for any purpose except to evaluate and engage in discussions concerning a potential business relationship among the parties. Each party agrees not to disclose any Confidential Information of another party to third parties or to such party's employees or agents, except to those employees or agents of the receiving party who are required to have the information in order to evaluate or engage in discussions concerning the potential transaction. No party shall reverse engineer, disassemble or decompile any prototypes, software (save to the extent permitted by law), reports or other tangible objects which embody another party's Confidential Information and which are provided to a party hereunder. Each party, for itself and its successors and assigns, agrees that it will not use the Confidential Information disclosed hereunder, or the fact of such disclosure, as evidence in any current, ongoing or future legal or administrative proceeding, including, without limitation, to establish (i) the existence of a justiciable controversy, (ii) knowledge, (iii) intent or (iv) willfulness.



***Trading Innovation*®**

4.  Maintenance of Confidentiality.  Each party agrees that it shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of each other party.  Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly-confidential information and shall ensure that its employees who have access to Confidential Information of another party have signed a non-use and non-disclosure agreement similar in content to the provisions hereof, prior to any disclosure of Confidential Information to such employees.  No party shall make any copies of the Confidential Information of another party unless the same are previously approved in writing by such other party.  Each party shall reproduce each disclosing party's proprietary rights notices on any such approved copies, in the same manner in which such notices were set forth in or on the original.

5.  No Obligation.  Nothing herein shall obligate any party to proceed with any transaction among them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity.

6.  No Warranty.  ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS".  EACH PARTY MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, QUALITY COMPLETENESS OR PERFORMANCE.

7.  Return of Materials.  All documents and other tangible objects containing or representing Confidential Information which have been disclosed by a party to another party, and all copies thereof which are in the possession of such other party, shall be and remain the property of the disclosing party and shall be promptly returned to the disclosing party upon the disclosing party's written request.

8.  No License.  Nothing in this Agreement is intended to grant any rights to either party under any trademark, trade secret, patent, mask work right or copyright of the other party, nor shall this Agreement grant any party any rights in or to the Confidential Information of the other party except as expressly set forth herein.

9.  Term.  The obligations of each receiving party hereunder shall survive until such time as all Confidential Information of the other party disclosed hereunder becomes publicly known and made generally available through no action or inaction of the receiving party.

10.  Remedies.  Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief in addition to any other legal remedies.

11.  General.  This Agreement shall bind and inure to the benefit of the parties hereto and their successors and assigns.  This Agreement shall be governed by the laws of the England and Wales, without reference to conflict of laws principles.  This document contains the entire agreement between the parties with respect to the subject matter hereof, and no party shall have any obligation, express or implied by law, with respect to trade secret or proprietary information of another party except as set forth herein.  Each of the parties acknowledges and agrees that in entering into this Agreement, it does not rely on, and shall have no remedy in respect of, any statement, representation, warranty or undertaking (whether negligently or innocently made) other than as expressly set out in this Agreement.  Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision.  This Agreement may not be amended, nor any obligation waived, except by a writing signed by each of the parties hereto and stating as its purpose the amendment of this agreement.



EXECUTION VERSION

**Trading Innovation**®

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date(s) written below:

Address:  IPXI Holdings, LLC
          10 S LaSalle Street, Suite 2130
          Chicago, IL 60603

By: _____
Printed Name: IPXI Holdings, LLC
Title: Managing Director and General **Counsel**
Date:    4 - 17 - 2013

Address:  Fraunhofer Gesellschaft zur Förderung
          Angewandter Forschung e.V.
          Hansastraße 27C, 80686 Munich, Germany

By: _____
Printed Name: DR. HELMUT SCHUBERT
Title: HEAD OF PATENT & LICENSING DEPT.
Date:    22.04.2013

# Exhibit K

# Kramer Levin



**Shannon H. Hedvat**
Associate
**T** 212.715.9185
**F** 212.715.8000
SHedvat@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

**May 19, 2022**

**Via E-mail (kschuetz@irell.com)**

Kelsey Schuetz
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660

Re:    *Fraunhofer v. Sirius XM*, Case No. 17-cv-0018-JFB-SRF (D. Del.)

Dear Kelsey:

We write in response to your May 13, 2022 letter and the documents Fraunhofer has improperly withheld on the basis of a purported common interest privilege between it and IPXI, including Entry Nos. 350, 351, 354, 355, 370, and 371 (the "Log Entries"). We dispute your characterization of the legal standard and your interpretation of the decisions cited in your letter. Regardless, the common interest privilege does not apply to any of the documents that Fraunhofer has withheld.

Fraunhofer claims that the common legal interest between the parties to a communication need not be "identical" but can be "substantially identical." That is not consistent with the weight of authority in the District of Delaware. *See 10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020) (the "party asserting the privilege" must prove that "the interests it claims to hold in common" are "identical, not similar, and [are] legal") (citing *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010)); *Del. Display Grp. LLC v. Lenovo Grp. Ltd.,* No. 13-2108-RGA, 2016 WL 720977, at *4 (D. Del. Feb. 23, 2016) (same). But whether the standard requires that the shared legal interests be "identical" or "substantially identical" or even "substantially similar," Fraunhofer nevertheless must show that the interest existed at "the time when the communications-at-issue were actually made." *Astellas US LLC v. Apotex, Inc.*, No. 18-1675-CFC-CJB, 2021 WL 1518716, at *1 (D. Del. Apr. 8, 2021); *see also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004) (relevant period is "at the time of" the communications).

Here, Fraunhofer has failed to identify anything close to a common legal interest between it and IPXI that existed at the time the documents identified in the Log Entries were created. Fraunhofer argues that a common interest relationship is created based on

Kelsey Schuetz
May 19, 2022



rights and obligations under the License Option Agreement and Master Agreement between Fraunhofer and IPXI (F00372204, F00372149), but *none* of the Log Entries postdate the License Option Agreement, and only two Log Entries (350 and 351) postdate the Master Agreement.[1]  Even assuming arguendo that a patent optionee shares a common legal interest with a patent holder,[2] Fraunhofer was *not* an optionee when it engaged in these communications.

With respect to Log Entries 350 and 351, the Master Agreement did not create a substantially identical legal interest between Fraunhofer and IPXI.  The Master Agreement did not provide IPXI a license or option to license any patents, but merely "describe[d] each of the applicable phases and the corresponding agreements that each Party is required to execute as part of the Engagement."  (F00372149 at -154).  Fraunhofer cites Section 9 of the Master Agreement as describing how income between the parties would be shared, but that provision expressly states that *future agreements* "shall include at least the following terms"—the Master Agreement itself did not provide IPXI any right to income related to Fraunhofer's patents.  (*Id.* at -163).  And while the Master Agreement discusses an intent that "communications between [Fraunhofer] and IPXI Essentiality Experts" be common interest privileged, Fraunhofer has not identified 350 and 351 as communications with IPXI Essentiality Experts (*Id.* at -184), and the parties' desire to protect their confidentiality does not alone create a common legal interest.

For the remaining Log Entries (353, 354, 355, 370, and 371), there is no basis for Fraunhofer to assert a common interest privilege.  At the time, IPXI unequivocally had no legal rights or obligations with respect to Fraunhofer's patents.  The communications and documents "were made not in an effort to formulate a joint defense but rather to persuade" IPXI to license patents from Fraunhofer.  *Corning Inc.*, 223 F.R.D. at 190.  A non-

---

[1] The Termination Agreement between Fraunhofer and IPXI states that the License Option Agreement is dated September 2, 2014 and the Master Agreement is dated July 25, 2014. (F00372220).

[2] Even if the law of the Federal Circuit applied to this issue, *In re Regents of Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996) is inapposite and does not stand for the proposition that all patent optionees share a common interest.  There, the same "attorneys represented both UC and [Eli] Lilly in a shared effort to obtain these United States and foreign patent rights," and Lilly "ultimately did become [an] exclusive" licensee."  *Id.* at 1389-90.  The Court applied the principle that "[w]hen the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege."  *Id.* at 1389 (citation omitted).  That is not the case here—Fraunhofer has never claimed that it shared counsel with IPXI and IPXI never exclusively licensed patents from Fraunhofer.

**Kelsey Schuetz**
May 19, 2022



disclosure agreement[3]—standard in negotiating an arm's length transaction—does not create a common legal interest. *See Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*, 481 F. Supp. 3d 276, 279 (S.D.N.Y. 2020) (no common interest in communications between potential patent licensor and licensee despite NDA, because unlike *Regents*, only the owner of patents "had a legal interest in the scope, validity, and enforceability of its patents" whereas the counterparty "<u>contemplated purchasing</u> such an interest … [and the counterparty] was interested to know whether [patent holder] had viable intellectual property, but if its attorneys had concluded otherwise, it could either have used that as leverage in negotiations … or could have simply walked away." (emphasis in original)). None of the cases you cite stand for the proposition that an identical or substantially identical legal interest could exist in a commercial negotiation when the parties have done nothing more than sign a non-disclosure agreement. *See MobileMedia Ideas LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012) (parties did "not dispute that a common legal interest exists"); *Hilsinger Co. v. Eyeego, LLC*, No. 13-cv-10594-IT, 2015 WL 11120842, at *2 (D. Mass. Aug. 13, 2015) (communications with exclusive distributor in process of becoming exclusive licensee concerning infringement were common interest privileged); *AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2019 WL 4917894, at * (D. Del. Oct. 4, 2019) (specific language in letter of intent created legal obligations between the parties).[4]

Additionally, you do not identify how any of the Log Entries are communications Fraunhofer "would not have been made but for the sake of securing, advancing, or supplying legal representation." *Leader Techs., Inc.*, 719 F. Supp. 2d at 376 (citation omitted).

Furthermore, you have not responded to SXM's request for the claim chart that Mr. Lipp testified Fraunhofer shared with IPXI (Lipp Tr. 126:5-128:13), which is not identified on Fraunhofer's privilege log.

Finally, SXM's privilege challenges are not untimely. Only after long-delayed testimony of Fraunhofer witnesses has SXM received sufficient information concerning Fraunhofer's relationship with IPXI, demonstrating their lack of a common legal interest. Moreover, during the April discovery teleconference with the Court, the Court confirmed that the issue pertaining to Fraunhofer's newly raised argument regarding common interest

---

[3] We are also troubled by Fraunhofer providing its purported non-disclosure agreement, for the first time, with your May 13 letter despite this issue being discussed between the parties for several months and discovery having commenced in this litigation nearly five years ago. We reserve all rights as we continue to review and investigate this newly provided document.

[4] The *10x Genomics, Inc.* court rejected *AgroFresh*. 505 F. Supp. 3d at 338 n.1 (agreeing with overruled Magistrate Judge in *AgroFresh* "that when 'two parties are *negotiating* a joint venture[,] [t]hey are still competitors ... and do not share an interest sufficiently common to extend the attorney-client privilege to their discussions'" (emphasis in original)).

**Kelsey Schuetz**
May 19, 2022



was not yet ripe, at that time, for the Court's resolution including because Fraunhofer did not raise it until briefing for the hearing.

If Fraunhofer does not produce the documents identified by the Log Entries, we are prepared to seek the Court's intervention as necessary.

Sincerely,

*/s/ Shannon H. Hedvat*

Shannon H. Hedvat

# Exhibit L

# License Option Agreement

This License Option Agreement is entered into as of the latest date of execution as provided for in the signature blocks (the "Effective Date") by and between Fraunhofer-Gesellschaft zur Föderung der angewandten Forschung e.V., having offices at Hansastrasse 27c, 80686 Munich, Germany ("Sponsor" or "Fraunhofer"), and IPXI Holdings, LLC a Delaware limited liability company having offices at 10 South LaSalle Street, Suite 2130, Chicago, Illinois 60603 ("IPXI Holdings") (collectively, the "Parties"). This License Option Agreement includes schedules (each a "Schedule" and collectively "Schedules") and an exhibit; this License Option Agreement, the Schedules and the exhibit are together referred to as this "Option Agreement". Unless otherwise defined herein, all capitalized terms used in this Agreement shall have the meanings assigned to them in the IPXI 802.11n Master Agreement (the "**Master Agreement**").

## RECITALS

WHEREAS, Sponsor desires to license certain patents (the "Optioned Patents") as marketable instruments that may be traded on the exchange operated by Intellectual Property Exchange International, Inc. ("IPXI"), a wholly owned subsidiary of IPXI Holdings, as unit sublicense agreements called Unit License Rights or ULR contracts ("ULR Contracts").

WHEREAS, Sponsor desires for IPXI Holdings to evaluate the Optioned Patents to determine their suitability for license as a ULR Contract.

WHEREAS, Sponsor has executed a Master Agreement and has included in Exhibit A thereto a list of Patents which it desires to submit for evaluation and acceptance by IPXI;

WHEREAS, Sponsor and IPXI Holdings desire that Sponsor refrain from conveying, attempting to convey or encumbering the Optioned Patents for a finite duration while IPXI Holdings evaluates the Optioned Patents.

WHEREAS, Sponsor intends to grant, and to cause its Affiliates to grant, to IPXI Holdings an Option to enter into an License Agreement, and IPXI Holdings has agreed to accept such Option, subject to the terms and conditions set forth in this Agreement for the purposes of (a) promoting the Optioned Patents (as defined below), and (b) enabling certain rights under the Optioned Patents to be traded as marketable instruments on the exchange operated by IPXI, specifically as ULR Contracts.

NOW THEREFORE, in consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree and covenant as follows:

1.    Definitions

the definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Option Agreement, and any amendments or supplements hereto.

1.1    "Attributable Proceeds" shall have the meaning specified in Schedule II.

1.2    "ELA" shall mean the Exclusive License Agreement attached at Exhibit A.

1.3    "Option" shall have the meaning specified in Article 2.

1.4    "Option Period" shall mean the periods specified as "Option Period One" and "Option Period Two" in Schedule I.

1.5    "Option Period One" shall have the meaning specified in Article 2.

Copyright © 2014 by IPXI Holdings, LLC          1 of 9          7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          F00147454

License Option Agreement by and Between Fraunhofer and IPXI Holdings

1.6     "Option Period Two" shall have the meaning specified in Article 2.

 1.7     "Optioned Patents" shall mean the patents identified in Schedule I.

1.8     "Party" shall mean to IPXI Holdings or Sponsor, as context requires. "Parties" shall mean IPXI Holdings and Sponsor collectively.

1.9     "Person" shall mean any natural person, corporation, company, partnership, limited partnership, Limited Liability Company, firm, association, trust, government, governmental agency, or any other entity, whether acting in an individual, fiduciary or other capacity.

1.10    "Proceeds" shall have the meaning specified in Schedule II.

1.11    "Transaction" shall have the meaning specified in Schedule II.

1.12    "Withdrawal Fee" shall have the meaning specified in Schedule II.

2.     **Option Grant**

2.1     Option. Sponsor hereby grants, or shall cause its Affiliates to grant, as applicable, to IPXI Holdings an assignable (in accordance with Section 2.5 below) and irrevocable option (the "Option"), to be exercised at IPXI Holdings' sole discretion, to enter into the ELA attached at Exhibit A.

2.2     Option Period. The Option Period shall consist of two sub-periods, described below, which shall proceed in accordance with Section 4.2 of the Master Agreement. The duration of each sub-period of the Option Period is set forth in Schedule II of this Agreement:

    2.2.1    Option Period One- Option Period One shall begin upon the Effective Date of this Option Agreement. IPXI Holdings shall continue to evaluate the Essentiality Analys(es) with the assistance of third parties, consistent with the provisions of Article 6 of the Master Agreement and Section 3.2 of this Agreement. In collaboration with Sponsor, IPXI Holdings shall prepare a final offering summary document that describes the suggested proposed terms of a proposed ULR offering (the "Offering") that includes the Optioned Patents. The Selection Committee may then make a recommendation as to whether to proceed with the Offering to the Executive Committee, who may then make a recommendation as to whether to proceed with the Offering to the Board of Directors of Intellectual Property Exchange International, Inc. Option Period One will be complete upon approval from the Board.

    2.2.2    Option Period Two- Option Period Two shall begin upon the completion of Option Period One. IPXI Holdings will market ULR Contracts related to the Optioned Patents. Option Period Two will be complete upon the exercise of the Option.

2.3     Exercise. IPXI Holdings may exercise the Option only during Option Period Two. Exercise of the Option shall be by written notice to Sponsor.

2.4     Extension by Mutual Written Agreement. The Parties may extend either or both of Option Periods One and Two by mutual written agreement, with such agreement not to be unreasonably withheld.

2.5     Assignability. IPXI Holdings may assign this Option and all rights under this Article 2 to a wholly-owned subsidiary of IPXI Holdings at any time during the Option Period. IPXI

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY      F00147455

License Option Agreement by and Between Fraunhofer and IPXI Holdings

Holdings shall provide notice to Sponsor identifying any wholly-owned subsidiary to which IPXI Holdings makes an assignment pursuant to this Section 2.5.

2.6    Encumbrances. Subject to the rights expressly set forth in Sections 5.1 (**Reservation to Sponsor**) and 5.6 (**Cross-License**) of the Master Agreement, from and after the Effective Date of this Option Agreement and for the duration of the Option Period, Sponsor and its Affiliates shall not, and shall not attempt to, sell, assign, alienate, transfer, barter, divest, divide, dispose, option, license, sublicense, mortgage, collateralize, or otherwise encumber any of the Optioned Patents, or attempt to perform such acts through direct or indirect solicitation or otherwise.

2.7    Exclusive License Agreement Held in Escrow. Upon executing this Option Agreement, Sponsor also shall execute the ELA in the form attached as Exhibit A. Such ELA shall be held in escrow, and shall subsequently be released from escrow and fully executed upon IPXI Holdings' exercise of the Option.

3.    **Services of IPXI Holdings**

3.1    Services. From the Effective Date until the termination of this Agreement, IPXI Holdings shall use commercially reasonable efforts to consummate a Successful Offering pursuant to Section 7.2.k (**Identification of Potential ULR Contract Purchasers**) of the Master Agreement.

3.2    Evaluation of Essentiality Analyses. Any Essentiality Analyses that have been commissioned by Sponsor, pursuant to Article 6 of the Master Agreement, shall be administered and may be evaluated by IPXI's Essentiality Expert pursuant to such article.

3.3    Limited Admissibility. From the Effective Date and for the duration of the Option Period, Sponsor agrees, and authorizes IPXI Holdings to agree on behalf of Sponsor and Sponsor's successors-in-interest, that: (a) any negotiations related to a sublicense, release or covenant not to sue pursuant to a ULR Contract shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of such agreement, (b) any offer, acceptance, rejection, purchase, sale, transfer, bid, ask, price or quote for a ULR Contract shall not be admissible to prove infringement, notice or willfulness of infringement before any court, agency, arbitrator, or other tribunal, and (c) to the extent permissible under applicable law, any and all of the foregoing in subsections (a) and (b) shall be subject to Federal Rule of Evidence Rule 408.

4.    **Maintenance, Prosecution and Enforcement**

4.1    Duty to Maintain. During the Option Period, the duty to maintain Sponsor's Optioned Patents shall be governed by Section 5.3 (**Duty to Maintain**) of the Master Agreement.

4.2    Duty to Prosecute. During the Option Period, the duty to prosecute Sponsor's Optioned Patents shall be governed by Section 5.4 (**Duty to Prosecute**) of the Master Agreement.

4.3    Enforcement. Enforcement of Sponsor's Optioned Patents shall be governed by Sections 5.5 (**Sponsor Agreement Not to Enforce**) and 5.6 (**Cross-License**) of the Master Agreement.

5.    **Representations, Warranties and Covenants**

5.1    Mutual Representations and Warranties. As to this Option Agreement, each Party hereby makes the representations and warranties to the other Party, as of the Effective Date, set forth in the Master Agreement at Section 11.1 (**Mutual Representations and Warranties**).

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    F00147456

License Option Agreement by and Between Fraunhofer and IPXI Holdings

5.2 Representations and Warranties of Sponsor. As to this Option Agreement, Sponsor, on behalf of itself and its Affiliates, makes the representations and warranties to the other Party, as of the Effective Date, set forth in the Master Agreement at Section 11.2 (**Sponsor Representations and Warranties**). Sponsor, on behalf of itself and its Affiliates, further represents and warrants to IPXI Holdings that, as of the Effective Date:

Sponsor has the right to grant all rights and licenses specified in this Option Agreement and the ELA.

5.3 Covenant. Sponsor, on behalf of itself and its Affiliates, hereby covenants to IPXI Holdings that neither Sponsor nor any Affiliate of Sponsor will enter into any agreement with a non-Party after the Effective Date that would prevent Sponsor from fulfilling its obligations under this Agreement and the ELA.

5.4 No Other Warranty. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER PARTY NOR ITS AFFILIATES OR PARENT COMPANIES MAKES ANY REPRESENTATION OR EXTENDS ANY WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY WARRANTY THAT ANY PATENT RIGHTS OPTIONED BY THE SPONSOR OR ITS AFFILIATES TO IPXI HOLDINGS HEREUNDER ARE VALID OR ENFORCEABLE OR THAT THEIR EXERCISE DOES NOT INFRINGE OR MISAPPROPRIATE ANY PATENT RIGHTS OR OTHER INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES.

6. Indemnification

6.1 Mutual Indemnity from Third Party Claims Resulting from Breach. Indemnification pursuant to this section shall be made, as to this Option Agreement, under the same terms and conditions as set forth in the Fraunhofer Addendum to IPXI 802.11n Master Agreement pursuant to Sections 12.1 (Indemnity by Sponsor from Third-Party Claims) and 12.2 (Indemnity by IPXI from Third-Party Claims).

6.2 Notice of Indemnity. A Party seeking indemnification pursuant to this article shall provide written notice to the other Party pursuant to Section 12.3 (**Notice of Indemnity**) of the Master Agreement.

6.3 Limitation on Consequential Damages. EXCEPT FOR CLAIMS OF A THIRD PARTY WHICH ARE SUBJECT TO INDEMNIFICATION UNDER THIS ARTICLE 6 OR AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT, NEITHER IPXI HOLDINGS NOR SPONSOR, NOR ANY OF THEIR AFFILIATES WILL BE LIABLE TO THE OTHER PARTY TO THIS AGREEMENT, ITS AFFILIATES FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR OTHER INDIRECT DAMAGES OR LOST OR IMPUTED PROFITS OR ROYALTIES, LOST DATA OR COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, WHETHER LIABILITY IS ASSERTED IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT PRODUCT LIABILITY), INDEMNITY OR CONTRIBUTION, AND IRRESPECTIVE OF WHETHER THAT PARTY OR ANY REPRESENTATIVE OF THAT PARTY HAS BEEN ADVISED OF OR OTHERWISE MIGHT HAVE ANTICIPATED THE POSSIBILITY OF ANY SUCH LOSS OR DAMAGE.

7. Assignment and Transfer

Except as set forth in Article 2 of this Option Agreement and Sections 16.2 (**Assignment**) and 16.5 (**Acquisition of Sponsor**) of the Master Agreement, no Party may assign any of its rights or

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00147457

delegate any of its obligations under this Option Agreement, by operation of law or otherwise. Any purported assignment or delegation in contravention of this Article 7 shall be null and void.

8. **Term and Termination**

8.1 Termination. Subject to the conditions set forth in this Article 8, this Option Agreement shall terminate upon the first to occur of the following events:

(i) The exercise of the Option;

(ii) The expiration of the period specified in Schedule II for Option Period One, without the completion of Option Period One as described in Section 2.2.1 above;

(iii) The expiration of the period specified in Schedule II for Option Period Two, and IPXI Holdings has not exercised the Option;

(iv) Written notice to Sponsor by IPXI Holdings, or by its assignee pursuant to Article 2, before the expiration of the Option Period, that IPXI Holdings, or its assignee, does not intend to exercise the Option pursuant to Article 2; or

(v) Written notice by Sponsor to IPXI Holdings before the expiration of the Option Period that Sponsor desires to terminate this Agreement pursuant to this sub clause ("Early Termination Notice").

8.2 Early Termination by Sponsor. If Sponsor provides Early Termination Notice to IPXI Holdings, then Sponsor shall immediately pay the Withdrawal Fee to IPXI Holdings. So long as a Withdrawal Fee is due and has not been paid, this Agreement shall not terminate under any provision of Section 8.1 and the Option Period shall continue until such fee is paid to IPXI Holdings.

8.3 Survival. The obligations under Articles 5, 6, and 9, and Section 8.2 and this Section 8.3 shall survive the termination of this Option Agreement.

9. **Confidentiality**

9.1 Confidentiality. Schedule II of this Option Agreement shall not be disclosed by any Party to any Person that has not agreed to be bound by this Article 9, except that a Party may disclose Schedule II.

(i) to perform its obligations pursuant to this Option Agreement;

(ii) with the prior written consent of the other Party;

(iii) to any tax authority in any jurisdiction to the extent necessary to comply with legal requirements;

(iv) as may be required by law or legal process, but only if the disclosing Party informs the other Party in writing in advance of the disclosure so as to permit the other Party an opportunity to seek appropriate relief limiting or barring disclosure;

(v) to its legal counsel, financial advisors, insurers, accountants, auditors, banks, and financing sources and their advisors, if reasonably required in connection with complying with applicable law or undertaking financial transactions, provided that it is disclosed pursuant to an obligation of confidentiality; or

(vi) as required to enforce the terms of this Option Agreement in a legal proceeding.

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00147458

License Option Agreement by and Between Fraunhofer and IPXI Holdings

10.   **Miscellaneous**

10.1   <u>No Agency</u>. This Option Agreement shall not be construed to create a partnership, principal-agent relationship, employment, fiduciary, trust or joint venture relationship. Neither Party is an agent of the other Party, and a Party shall not hold itself out as an agent of the other Party.

10.2   <u>Choice of Law</u>. This Agreement shall be governed by the laws of the State of New York without regard to the conflict of law principles thereof.

10.3   <u>Jurisdiction and Venue</u>. If any dispute arises out of or in connection with this Agreement, except as expressly contemplated by another provision of this Agreement, the Parties irrevocably consent and submit to the exclusive jurisdiction of the federal and state courts located in New York City, New York, and waive any objection to the laying of venue of any such proceeding brought in such courts and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum, provided, however, that a suit may be brought in any court having requisite jurisdiction in the event that the aforementioned New York courts determine they do not have jurisdiction over the dispute.

10.4   <u>No Other Rights</u>. Except as expressly set forth in the Option Agreement, this Option Agreement shall not be deemed to confer any rights or remedies upon any Person not a Party hereto.

10.5   <u>Notice</u>. Any notice or other communication under this Option Agreement must be in writing and will be deemed given only when sent by first class mail (return receipt requested), hand-delivered, a nationally recognized overnight delivery service, or email, to the address set forth for such Party below:

If to IPXI Holdings, addressed to:

> IPXI Holdings, LLC
> Attn: General Counsel
> 10 South LaSalle Street
> Suite 2130
> Chicago, Illinois 60603

With a copy to:

> notice@ipxi.com

6 of 9

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    F00147459

License Option Agreement by and Between Fraunhofer and IPXI Holdings

If to Sponsor, addressed to:

10.6    Waiver. A waiver of any right arising from a breach of this Option Agreement shall be in writing and signed by the Party granting the waiver. The failure of a Party to assert a right hereunder or to insist upon compliance with any term or condition of this Agreement shall not constitute a waiver of that right or excuse a similar subsequent failure to perform any such term or condition. No waiver in a particular instance shall be construed to be a continuing waiver with respect to any subsequent instances. This Section may not itself be waived except in writing.

10.7    Amendment. This Option Agreement may not be amended except in writing signed by a duly authorized officer or representative of each of the Parties and stating as its purpose the amendment of this Agreement.

10.8    Entire Agreement. This Option Agreement, the Schedules, and Exhibit A attached hereto constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede all prior negotiations, agreements and understandings with respect thereto. No modification of or addition to this Option Agreement shall be effective unless it is in writing and signed by an authorized representative of each Party.

10.9    Severability. Any provision of, or the application of any provision of, this Option Agreement or any power which is prohibited in any jurisdiction is, in that jurisdiction, ineffective only to the extent of that prohibition. Moreover, if one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad or unreasonable as to the scope, duration, area, activity or subject so as to be unenforceable at law, such provision or provisions shall be modified or substituted by the appropriate judicial body so as to cover the maximum scope, duration, area, activity or subject permitted by applicable law. Any provision of, or the application of any provision of, this Agreement which is void, illegal or unenforceable in any jurisdiction does not affect the validity, legality or enforceability of that provision in any other jurisdiction or of the remaining provisions in that or any other jurisdiction. If any article, section or clause is void, illegal or unenforceable, it may be severed without affecting the enforceability of the other provisions in this Option Agreement.

10.10   Mandatory Language. Where this Option Agreement states that a Party "will" or "shall" perform in some manner or otherwise act or omit to act, it means the Party is contractually obligated to do so in accordance with this Agreement.

10.11   Drafting Presumption. No provision of this Option Agreement shall be construed against a Party solely on the ground that the Party was responsible for the preparation of this Option Agreement or that provision.

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00147460

10.12    Headings. The captions, titles and headings used in this Option Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Option Agreement.

10.13    Execution in Multiple Counterparts. This Option Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.14    Further Assurances. Each Party agrees to execute, acknowledge and deliver such further documents, and to do all such other acts as may be necessary or appropriate in order to carry out the purposes and intent of this Option Agreement.

10.15    Rights in Bankruptcy. All rights and licenses granted to IPXI Holdings pursuant to this Option Agreement are, and will otherwise be deemed to be, for purposes of the Title 11 of the United States Code, as amended from time to time (the "Bankruptcy Code"), licenses of rights to "intellectual property" as defined under Section 101 of the Bankruptcy Code. The Parties agree that IPXI Holdings will retain and may fully exercise all of its rights and elections as a licensee of intellectual property under the Bankruptcy Code. The Parties further agree and acknowledge that enforcement by IPXI Holdings of any rights under Section 365(n) of the Bankruptcy Code in connection with this Agreement shall not violate the automatic stay of Section 362 of the Bankruptcy Code and waive any right to object on such basis.

(Remainder of this page intentionally left blank)

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    F00147461

License Option Agreement by and Between Fraunhofer and IPXI Holdings

IN WITNESS WHEREOF, each of the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

IPXI Holdings LLC

By: _____

Name: Gerard J. Pannekoek
Title: President and CEO
Date: September 2, 2014

Fraunhofer-Gesellschaft zur Föderung der angewandten Forschung e.V.

By: _____

Name:
Title:              July 29 2014
Date:

Dr. Helmut Schubert
Head of Patents and Licensing
Fraunhofer-Gesellschaft zur Förderung
der angewandten Forschung e.V.

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    F00147462

Schedule I to the License Option Agreement by and Between Sponsor and IPXI Holdings
Dated as of [DATE]

## Schedule I to the License Option Agreement

1. Optioned Patents

The "Optioned Patents" under this Agreement shall mean:

| Patent Number | Title | Jurisdiction | Filing Date |
|---|---|---|---|
| US 6b/4/89 | | USA | 03.11.1998 |
| DE 69808809 | | DE | 03.12.1998 |
| ES 2185244 | | ES | 03.12.1998 |
| FR- EP1125597 | | FR | 03.12.1998 |
| GB- EP1125597 | | GB | 03.12.1998 |
| IT -EP1125597 | | IT | 03.12.1998 |
| PL 192020 | | PL | 03.12.1998 |
| JP3464986 | | JP | 03.12.1998 |

1 of 1

7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00147463

Schedule II to the License Option Agreement by and Between [SPONSOR] and IPXI Holdings
Dated as of [DATE]

## Schedule II to the License Option Agreement



1 of 1                                           7/24/2014

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    F00147464

Exhibit A: Form of Exclusive License Agreement

Exhibit A

Form of Exclusive License Agreement

[Attached]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00147465

# Exhibit M

Page 1

<u>IPXI 802.11n MASTER AGREEMENT</u>



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY     F00372149

Page 2

## IPXI 802.11n MASTER AGREEMENT

This Master Agreement (together with the **attached exhibits**, this "**Agreement**" or "**Master Agreement**") is made as of _____, 2014 (the "**Effective Date**") and is entered into collectively by IPXI Holdings, LLC a Delaware Limited Liability Company, having its principal place of business located at 10 South LaSalle Street, Suite 2130, Chicago, Illinois 60603 ("**IPXI**"), and the parties who have executed the agreement pursuant to the signature blocks below and in the attached pages (collectively "**Sponsors**", individually herein "**Sponsor**").

Sponsors and IPXI, by signing in the signature blanks below, agree to the terms set forth in this Agreement.

**IPXI Holdings, LLC**

By: ...................................................................

Name: ...................................................................

Title: ...................................................................

[SPONSOR NAME]: Fraunhofer-Gesellschaft zur Föderung der angewandten Forschung e.V.

By: _____

Name: Dr. Helmut Schubert

Title: Head of Patents and Licensing

802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## 1.　DEFINITIONS

The definitions set forth in this Article shall apply to the following terms when used with initial capital letters in this Agreement, and any amendments or supplements hereto.

1.1　"802.11n Standard" shall mean (i) IEEE Std. 802.11n-2009 as published by IEEE on October 29, 2009, or (ii) IEEE Std. 802.11-2012, as published by IEEE on March 29, 2012, to the extent that any provisions of IEEE St. 802.11-2012 supersede corresponding provisions in IEEE Std. 802.11n-2009.

1.2　"A la Carte Offering" or "A la Carte Offering ULR Contract" shall mean a ULR Contract or ULR Contracts (as defined in Section 4.2), in accordance with context, that includes only a single Sponsor's Licensed Patents.

1.3　"Affiliate" shall mean, with respect to a Party, any Person or entity that directly or indirectly Controls, is under common Control with, or that is Controlled by such Party.

1.4　"Amnesty Discount" shall have the meaning provided in Section 9.3 of this Agreement.

1.5　"Appendix" shall have the meaning provided in Section 6.1 of this Agreement.

1.6　"Asset Contribution Weight" shall have the meaning set forth in Exhibit B, Section A.

1.7　"Challenging Sponsor" shall have the meaning set forth in Exhibit B, Section A.6.

1.8　"Combined Offering" or "Combined Offering ULR Contract" shall mean a ULR Contract or ULR Contracts (as defined in Section 4.2), in accordance with context, that includes every Sponsor's Licensed Patents.

1.9　"Confidential Information" shall have the meaning set forth in Article 8.

1.10　"Continuous Compliance" means a purchaser is continuously purchasing a sufficient quantity of ULR Contracts so as not to infringe any Licensed Patent and is submitting reports in accordance with the ULR Contract.

1.11　"Control" and the correlative term "Controlled", with respect to a Person or an entity, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of another Person or entity, whether through the ability to exercise voting power, by contract, or otherwise. Without limiting the generality of the foregoing, a Person or entity shall be deemed to be Controlled by another Person or entity if such other Person or entity possesses, directly or indirectly, power to vote more than 50% of the securities having voting power for the election of directors, managing general partners or the equivalent.

1.12　"Disclosing Party" shall have the meaning set forth in Article 8.

1.13　"Enforcement Action" means any suit or other proceeding relating to (a) the enforcement within the Licensed Field, of any Licensed Patent underlying ULR Contracts against third parties and (b) the defending, within the Licensed Field, of any Licensed Patent underlying ULR Contracts against third-party challenges to the validity and enforceability of such Licensed Patent.

1.14　"Enforcement Fund" shall have the meaning provided in Section 7.2.f of this Agreement.

1.15　"Engagement" shall have the meaning provided in Paragraph 2 of this Agreement.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372151

Page 4

1.16    "Essentiality Analysis" shall mean a written analysis performed by an Essentiality Expert that demonstrates, with respect to Intellectual Property, that a prospective Sponsor wishes to offer on the Exchange, that one or more patent claims of each of the Intellectual Property are essential to a mandatory or optional provision of the 802.11n Standard.

1.17    "Essentiality Expert" shall mean a Person commissioned to perform an Essentiality Analysis.

1.18    "Exchange" shall have the meaning provided in Article 2 of this Agreement.

1.19    "Exchange Agreements" refers collectively to the Option Agreement, Exclusive License Agreement, Income Sharing Agreement, Operating Agreement and ULR Contracts.

1.20    "Exclusive License Agreement" shall have the meaning provided in Section 4.1 of this Agreement.

1.21    "Including," "includes," or "include" shall be read as listing non-exclusive examples of the matters referred to, whether or not words such as "without limitation" or "but not limited to" are used in each instance.

1.22    "Income Sharing Agreement" shall have the meaning provided in Section 4.1 of this Agreement.

1.23    "Intellectual Property" shall mean the Patents identified in Exhibit A of this Agreement.

1.24    "IPXI Essentiality Expert" or "IPXI's Essentiality Expert," as context requires, shall have the meaning provided in Section 6.2 of this Agreement.

1.25    "Jurisdiction Asset Contribution Weight" shall have the meaning provided in Section 5.7 of this Agreement.

1.26    "Licensed Field" shall mean, within each Licensed Territory, any practice of any essential claim of a Licensed Patent solely for the purpose of and limited to practicing the 802.11n Standard.

1.27    "Licensed Patents" shall mean the Intellectual Property that is the subject of an Exclusive License Agreement that references this Master Agreement.

1.28    "Licensed Product" shall mean up to 1,000 (one thousand) chipsets implementing the 802.11n Standard in the Licensed Field for which it would be an act of infringement to make, have made, use, sell, or offer for sale in a Licensed Territory or import into or export out of a Licensed Territory absent a license to practice any Licensed Patent.

1.29    "Licensed Territory" shall mean, for each Licensed Patent, any country where such Licensed Patent would be infringed absent a license thereunder at the time of such infringement.

1.30    "Litigation Proceeds" shall mean the monetary proceeds resulting from a lawsuit involving the infringement of a Licensed Patent, whether awarded by a jury, Court, through settlement, or otherwise.

1.31    "Manufacturing Country" shall have the meaning provided in Section 9.1.c of this Agreement.

1.32    "Net Cash Receipts" shall have the meaning provided in Section 9.1.b of this Agreement.

802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372152



Page 5

1.33    "Net Combined ULR Proceeds" shall have the meaning provided in Section 9.1.b of this Agreement.

1.34    "Offering" shall have the meaning provided in Section 4.2 of this Agreement.

1.35    "Operating Agreement" shall have the meaning provided in Section 4.1 of this Agreement.

1.36    "Option Agreement" shall have the meaning provided in Section 4.1 of this Agreement.

1.37    "Optional Patent" shall have the meaning provided in Exhibit B, Section A.3.

1.38    "Parent Patent" shall have the meaning provided in Exhibit B, Section A.1.

1.39    "Parent Optional Patent" shall have the meaning provided in Exhibit B, Section A.3.

1.40    "Party" shall mean either IPXI or Sponsor as the context requires. "Parties" shall mean IPXI, Sponsor, and/or Sponsors, individually and collectively, as the context requires.

1.41    "Patent" shall mean any issued patent or issued utility model of any country or jurisdiction, or any allowed patent application or allowed utility model application in any country or jurisdiction.

1.42    "Person" shall mean any natural person, corporation, company, partnership, limited partnership, Limited Liability Company, firm, association, trust, government, governmental agency, or any other entity, whether acting in an individual, fiduciary or other capacity.

1.43    "Receiving Party" shall have the meaning set forth in Article 8.

1.44    "Related Patents" or "Related Patent," depending on context, shall mean one or more Patents related to a Licensed Patent by a common claim of priority.

1.45    "Rulebook" shall mean the IPXI Market Rulebook, published by IPXI, as may be supplemented or amended from time to time.

1.46    "Sales Country" shall have the meaning provided in Section 9.1.c of this Agreement.

1.47    "Series" shall have the meaning set forth in Section 10.1.

1.48    "Technically Distinct" shall have the meaning provided in Exhibit B, Section A.5

1.49    "Total Asset Contribution Weight" shall have the meaning provided in Section 5.7 of this Agreement.

1.50    "Tranche" shall have the meaning provided in Section 10.1 of this Agreement.

1.51    "ULR Offering" shall have the meaning provided in Section 4.2 of this Agreement.

1.52    "Unit License Right Contract" or "ULR Contract" shall have the meaning provided in Section 4.2 of this Agreement.

Terms used herein with initial capital letters that are not defined in this Agreement, but are expressly defined in an Exchange Agreement, shall have the meaning defined in the relevant Exchange Agreement.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372153

2.    AGREEMENT STRUCTURE

Each Sponsor intends to submit certain Intellectual Property, as an offering on a proprietary exchange (the "Exchange") operated by Intellectual Property Exchange International, Inc., wholly owned by IPXI ("**Engagement**"). In order to facilitate the Engagement, the Parties hereto have entered into this Agreement which describes each of the applicable phases and the corresponding agreements that each Party is required to execute as part of the Engagement. The terms set forth in **Article 5 (Terms and Conditions)**, and **Sections 16.2 (Assignment)** and **16.11 (Audit)** shall apply to each Engagement phase.

3.    **COMMUNICATIONS**

3.1    Notices

All notices must be in writing and will be deemed given only when sent by first class mail (return receipt requested), hand-delivered, sent by a nationally recognized overnight delivery service, or email, to the Party to whom the notice is directed, at its address as indicated in Exhibit E.

3.2    Publicity

IPXI may identify a Sponsor as a Sponsor to this Offering, including in any IPXI Offering Memorandums, and may also identify Sponsors or their Affiliates, as applicable, as the owner of record as stated in the publically available USPTO assignment database, or the publically available database of a foreign patent office, of any Intellectual Property being marketed or offered as ULR Contracts pursuant to this Agreement. Notwithstanding the foregoing, utilization by IPXI of a Sponsor's name in any press releases must be with that Sponsor's permission.

4.    **THE EXCHANGE AGREEMENTS**

The following is a brief description of the three separate phases ("Phases" or "Phase," depending on context) of the Engagement and the applicable Agreements:

4.1    Phase One of the Engagement ("Phase One") During Phase One, each Sponsor shall execute the following documents:

a)    An agreement with IPXI providing IPXI with an option to an exclusive license to issue sublicense rights to the Intellectual Property ("**Option Agreement**"), which license shall include at least the terms and conditions as set forth in Article 7 (**Agreement to Grant Exclusive License**) at clause ;

b)    An Exclusive License Agreement ("ELA"). The ELA will provide a Special Purpose Vehicle, created by IPXI and governed by an Operating Agreement ("**Operating Agreement**"), with the right to grant non-exclusive sublicenses to the Intellectual Property. Each ELA shall be a stand-alone document between a Sponsor and SPV. However, the Parties agree, warrant, and covenant that each ELA shall include at least the terms and conditions as set forth in Article 7 (**Agreement to Grant Exclusive License**) of this Agreement as between SPV and each Sponsor; and

c)    An agreement to share in the proceeds from issuance of ULR contracts and Litigation Proceeds ("**Income Sharing Agreement**"). Each Income Sharing Agreement shall be a stand-alone document between a Sponsor and SPV. However, the Parties agree, warrant, and covenant that each Income Sharing Agreement shall include at least the terms and conditions set forth in Article 9 (**Income Sharing Agreement Terms**) of this Agreement and shall not conflict with the terms and conditions set forth in Section 7.2(j) of this Agreement.

Upon execution of this Master Agreement by all Sponsors, IPXI shall prepare a preliminary offering summary document for submission to IPXI's Selection Committee. Sponsors shall have the opportunity to review the preliminary offering summary document before submission. Also during Phase One, each Sponsor, at its own expense, shall have an Essentiality Analysis commissioned for each

802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Patent of its Intellectual Property as set forth in Article 6 of this Agreement. Phase One shall be completed upon the receipt by IPXI of all Essentiality Analyses from Sponsors and accepted by IPXI. However, and for the avoidance of doubt, no Sponsor's Essentiality Analysis shall be accepted by IPXI, until such Sponsor executes the Option Agreement, ELA, and Income Sharing Agreement, which ELA and Income Sharing Agreement shall be held in escrow until counter-executed as set forth below.

Sponsor and IPXI agree to negotiate the specific provisions of the Exchange Agreements in good faith and commit commercially reasonable efforts to execute the Exchange Agreements within ninety (90) days of the Effective Date. If Sponsor and IPXI cannot agree on the specific provisions of all of the Exchange Agreements, other than the provisions to be included in the Exchange Agreements provided in this Master Agreement, within ninety (90) days of the Effective Date, Sponsor and IPXI may each terminate their rights and obligations under this Agreement, each in their sole discretion.

4.2    Phase Two of the Engagement ("Phase Two") During Phase Two, IPXI shall counter-execute the Option Agreement of each Sponsor, and may undertake further evaluation of the Intellectual Property and Essentiality Analyses. IPXI shall accept the certain Intellectual Property submitted to it, that shall become Licensed Patents, for inclusion in an A la Carte Offering or Combined Offering. IPXI shall prepare a final offering summary document that describes the suggested terms of a proposed ULR offering ("**ULR Offering**" or the "**Offering**") that includes the Intellectual Property. Sponsors shall approve the final offering summary document before its submission to the Selection Committee for approval. The Selection Committee may then make a recommendation as to whether to proceed with the Offering to the Executive Committee, who may then make a recommendation as to whether to proceed with the Offering to the Board of Directors of Intellectual Property Exchange International, Inc. If approved by the Board, IPXI will market non-exclusive sublicense contracts ("**Unit License Right Contracts**" or "**ULR Contracts**") related to the Intellectual Property in accordance with this Agreement in order to identify interested purchasers. Phase Two will be complete when IPXI has found sufficient interest to purchase ULR Contracts so as to close "Tranche A", (defined in and pursuant to Section 10.1), for Sponsors' Intellectual Property in accordance with the Option Agreements. Phase Two shall be completed upon the exercise of the Option.

4.3    Phase Three of the Engagement ("Phase Three") Once Phase Two is complete, IPXI will assign all Option Agreements to the SPV created by IPXI. SPV shall then counter-execute each ELA and the Income Sharing Agreement. The SPV shall sell ULR Contracts to purchasers through IPXI's Exchange.

4.4    Rulebook In the event of any conflict between a provision of this Agreement and a binding provision of the Rulebook, such provision of this Agreement shall supersede such provision of the Rulebook.

5.    TERMS AND CONDITIONS

The following provisions shall apply to all Sponsors for each Phase of the Engagement:

5.1    Reservation to Sponsor

Each Sponsor and its respective Affiliates reserve the rights, as to its Intellectual Property that is a part of this Master agreement, set forth in Section 7.1.b.

5.2    IPXI's Rights

For purposes of clarity, IPXI has no rights to the Intellectual Property other than those set forth in this Master Agreement and, upon their execution, the underlying Exchange Agreements.

5.3    Duty to Maintain

Each Sponsor shall have the sole right and responsibility, at its own expense, to pay all maintenance fees or other fees that are required to maintain its Intellectual Property in full force and effect throughout the term of this Agreement. If at any point in time a Patent is excluded from all ULR Contracts
802.11n, Confidential Information



Page 8

then available for purchase, Sponsor shall be relieved of such responsibility for such Patent. Upon execution of the ELA, the provisions of the ELA as to the duty to maintain a Sponsor's Licensed Patents shall apply.

### 5.4    Duty to Prosecute

Subject to Paragraph 5.5, each Sponsor shall have the sole right and responsibility, at its own expense, to prosecute any proceedings pertaining to the Intellectual Property that take place before a patent office or judicial authority having jurisdiction over such Intellectual Property, including any interference, reissue, reexamination, supplemental or post-grant proceeding, and further including any appeals from such proceedings. Upon execution of the ELA, the provisions of the ELA as to the duty to prosecute a Sponsor's Licensed Patents shall apply.

### 5.5    Sponsor Agreement Not to Enforce

Except as expressly provided for in this Agreement and the Exchange Agreements, each Sponsor, whether directly or indirectly, shall not file or amend any case, action, complaint, claim or counterclaim to allege infringement within the Licensed Field of any claim of any Intellectual Property identified in Schedule 1 to the Option Agreement, except that upon full execution of the ELA by the Parties, this provision shall then apply solely to any Licensed Patent(s). Each Sponsor, whether directly or indirectly, shall not issue cease-and-desist letters, license, make offers to license or otherwise make allegations of infringement to third parties of any such claim within the Licensed Field, except as expressly provided for in this Agreement or the Exchange Agreements.

### 5.6    Cross-License

Notwithstanding Paragraph 5.5 above, a Sponsor may enter into a cross-license that includes its Intellectual Property if either:  a) a third party has asserted or otherwise used its Patents such that standing would be conferred upon Sponsor to file a declaratory judgment action against said third party concerning such third-party's Patent(s) or b) a third party has filed suit accusing Sponsor of patent infringement, provided that such event in the foregoing subsection (a) and/or (b) did not occur at the instigation of/or with the cooperation of Sponsor.

### 5.7    Determination of Voting Rights and Revenue Allocation

After the execution of the Option Agreement, Sponsors shall receive a Total Asset Contribution Weight, calculated in the manner set forth in Exhibit B.  The Total Asset Contribution Weight shall be used to weight the vote of each Sponsor.  Each Sponsor shall also receive a Jurisdiction Asset Contribution Weight, which shall be based upon a Sponsor's Licensed Patents in a given jurisdiction or country, which also shall be calculated in the manner set forth in Exhibit B.  The Jurisdiction Asset Contribution Weight of each Sponsor shall be used to allocate Net Combined ULR Proceeds, as set forth in Article 9.  When a vote is taken based upon the Total Asset Contribution Weight, the following provisions shall apply:  i) "majority rule" will be determinative, ii) where indicated in this Agreement that such a vote shall be by "Sponsors and IPXI", "the Parties," or similar verbiage, IPXI shall also cast a vote, wherein IPXI's Total Asset Contribution Weight shall be the mean of all Sponsors' Total Asset Contribution Weights for a given Series, but in no event shall IPXI's Total Asset Contribution Weight exceed 15% of the voting Total Asset Contribution Weights, and iii) any majority vote taken pursuant to this section 5.7 shall not be effective if it contradicts or is otherwise inconsistent with the Rulebook.  Any vote taken pursuant to this section shall be facilitated by IPXI.

### 5.8    Additions of Intellectual Property and Sponsors to This Agreement

At IPXI's discretion, additional Intellectual Property and/or Sponsors may be added to this Agreement.  Any newly added Sponsor shall duly execute this Agreement, and additional Intellectual Property and/or the addition of any new Sponsor shall be subject to all terms and conditions of this Agreement, and any future amendments or supplements.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372156

5.9     Removal of Intellectual Property from the Master Agreement

To remain a part of this Engagement, a Sponsor's Intellectual Property must be essential to the 802.11n Standard, as set forth in Article 6.

5.10    No Grants or Covenants Not to Sue Amongst Sponsors

Each Sponsor agrees that no rights, covenants, or other grants are bestowed upon it as to any other Sponsor's Intellectual Property by virtue of its participation in the Engagement or execution of this Agreement.

6.     **ESSENTIALITY ANALYSIS**

6.1     Commission of the Essentiality Analysis

Each Sponsor, at its own expense and for each Patent it wishes to offer as part of this Engagement, shall commission an Essentiality Analysis, which shall be performed by an independent Essentiality Expert. The burden shall be on Sponsor's expert to show, in the Essentiality Analysis, that a claim of a Patent is essential to a mandatory or optional provision of the 802.11n Standard. Any Essentiality Analysis commissioned pursuant to this section shall conform to the criteria, terms and conditions set forth in the Appendix entitled Sponsor's Terms and Conditions for Essentiality Analysis attached at Exhibit F ("**Appendix**"). For purposes of clarity, the Appendix provides the criteria and submission process for any Essentiality Analysis commissioned by Sponsor.

6.2     Selection of the Essentiality Expert

A Sponsor may recommend a proposed Essentiality Expert, who is subject to the approval of IPXI, by submitting a petition to IPXI. The petition shall establish the following minimum criteria:

a)     such proposed expert shall have legal and technical expertise with the 802.11n Standard to opine credibly and competently, and shall not have an explicit or implicit ownership or other financial interest in the Intellectual Property it is evaluating or the outcome of the essentiality determination; and

b)     such proposed expert shall not otherwise present a conflict of interest or partiality and shall not perform any substantial intellectual property services for Sponsor.

6.3     Any Essentiality Analysis may be evaluated by an independent Essentiality Expert selected by IPXI ("**IPXI Essentiality Expert**" or "**IPXI's Essentiality Expert**", as context requires) at its sole discretion, pursuant to the provisions of the Appendix attached at Exhibit F. A Sponsor is not required to utilize the IPXI Essentiality Expert identified in the Appendix as its own Essentiality Expert, though it may elect to do so as set forth therein. As between IPXI's Essentiality Expert and a Sponsor's Essentiality Expert, IPXI's Essentiality Expert's evaluation shall be determinative.

6.4     Each Sponsor, at its own expense and for a Related Patent that has not been identified in the ELA as a Licensed Patent, may commission a written analysis performed by an Essentiality Expert that demonstrates none of the patent claims of the Related Patent are essential to a mandatory or optional provision of the 802.11n Standard. The burden shall be on Sponsor's Essentiality Expert to show that such Related Patent is not essential. Such written analysis may be evaluated by IPXI's Essentiality Expert pursuant to Section 6.3.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

7.    AGREEMENT TO GRANT EXCLUSIVE LICENSE

The Parties to this Agreement agree that the following terms below shall be included in each ELA entered into by Sponsor and SPV and shall apply to each Sponsor to this Master Agreement:

7.1    Grant of Exclusive License

a)    Scope of Grant



b)    Reservation to Sponsor

Sponsor reserves the right for itself and its Affiliates under the Sponsor's Licensed Patents i) to make, to have made, to use, to sell, to offer to sell, import, export, and otherwise dispose of products worldwide including, by way of example, the right to sell products in the Licensed Field in the Licensed Territory without owing compensation to any Person pursuant to this Agreement or the Exchange Agreements, and ii) to extend (including retroactively, such as by way of release) such right to any Person if and to the extent such Person directly or indirectly provides or receives products or services to or from Sponsor or its Affiliates, iii) to grant any license, release, or covenant not to sue under the Licensed Patents with respect to activity occurring 1) wholly outside of the Licensed Territory or 2) inside the Licensed Territory but wholly outside the Licensed Field, and iv) to grant Wi-Fi Neutral licenses, covenants not to sue, and/or releases, and v) enter into a cross-license pursuant to the provisions of Section 5.6 of the Master Agreement. A "Wi-Fi Neutral" license, covenant not to sue, and/or release (collectively for the purpose of this sentence, a "license") is a license whose (a) licensed patents do not expressly identify any of the Sponsor's Intellectual Property by patent number or similarly-specific indicia, (b) licensed patents are not expressly defined by reference to the 802.11n Standard and (c) licensed products do not expressly identify any products whose primary purpose is communicating information in compliance with the 802.11n Standard. Sponsor warrants and represents that it shall act under this Section 7.1(b)(iv) in good faith and will not use the rights granted herein to grant licenses, covenants not to sue and/or releases for the purpose of circumventing the Offering.

c)    Patents Not Identified but Deemed Essential

If a Patent of Sponsor that has not been identified in the ELA as a Licensed Patent is later represented to be essential to the practice of the 802.11n Standard either: i) by Sponsor's representation to a standards setting committee or organization including, but not limited to, the Institute of Electrical and Electronic Engineers (IEEE), ii) by a court of competent jurisdiction or other tribunal, whether domestic or in a foreign territory, without regard to any issues of preclusion or collateral estoppel, or iii) if a Sponsor asserts or admits in a legal pleading or under oath that a Patent is essential to the practice of the 802.11n Standard, the following provision shall apply:

x)    Sponsor shall not enforce such Patent in the Licensed Field against any ULR Contract purchaser who purchased a ULR Contract and remains in Continuous Compliance, until

802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

such time such Patent is added to a subsequent Series, so long as such subsequent Series is issued within 12 months following the date such Patent is identified as essential to the practice of the 802.11n Standard by an Essentiality Analysis as set forth in this section below or pursuant to clause (ii) of this section. If a Patent is determined to be essential to the practice of the 802.11n Standard pursuant to clause (ii) of this section, it shall be added to the next issued Series without the need to obtain an Essentiality Analysis. If a Patent is represented as essential to the practice of the 802.11n Standard pursuant to clause (i) or (iii) of this section, such Patent shall not be added to any subsequent Series unless Sponsor has an Essentiality Analysis commissioned pursuant to Article 6 (**Essentiality Analysis**). Upon the addition of such Patent to a Series, such Patent shall be subject to the terms and conditions of this Master Agreement and the underlying Exchange Agreements, and any enforcement of such Patent shall be made in accordance with Section 7.2 (**Enforcement**). For the avoidance of doubt, if any analysis commissioned pursuant to Article 6 fails to demonstrate that a Patent is essential to the 802.11n Standard, such Patent shall not receive an Asset Contribution Weight and shall no longer be a part of this Agreement. If a Sponsor fails to commission an Essentiality Analysis as provided for in this Section 7.1.c.x, such Patent shall remain subject to this Section 7.1.c such that a Sponsor shall not enforce such Patent against any ULR Contract Purchaser who remains in Continuous Compliance, and such Patent shall not receive an Asset Contribution Weight; and

y)       Upon the addition of a Patent to a subsequent Series pursuant to this Section (c), Sponsor shall continue to refrain from seeking to enforce such Patent against a ULR Contract purchaser, who remained in Continuous Compliance, for any acts that fall within the scope of the license of Section 7.1.a (**Grant of Exclusive License**) that occurred prior to the addition of such Patent to such Series.

d)       Related Patents Not Identified

Related Patents that have not been identified in the ELA as a Licensed Patent shall be subject to the provisions of Section 7.1.c, clauses (x) and (y), provided, however, that a Related Patent shall not be subject to the provisions of Section 7.1.c.x or 7.1.c.y if such Patent has been determined to be not essential to the practice of the 802.11n Standard by i) a court of competent jurisdiction or other tribunal, whether domestic or in a foreign territory, without regard to any issues of preclusion or collateral estoppel or ii) an Essentiality Expert as set forth in and subject to the conditions of Section 6.4.

e)       Previously Encumbered Patents

If Sponsor is unable to grant a license pursuant to Section 7.1.a (**Grant of Exclusive License**) to a Related Patent or a Patent deemed essential pursuant to clause (c) or (d) of this section, Sponsor in any event shall, to the extent it retains the right to do so and for the duration of this Agreement, refrain from enforcing such Patent against a ULR Contract purchaser, for acts that fall within the scope of the license, who remains in Continuous Compliance.

f)   FRAND Obligations

IPXI acknowledges that some to all of the Licensed Patents to be exclusively licensed pursuant to an ELA may be subject to the obligation to be licensed on fair, reasonable and non-discriminatory terms. IPXI agrees to take all actions that may be reasonably required and permitted by this Agreement to satisfy such obligations.

7.2    Enforcement



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 12

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372160

Page 13

Clauses (x) and (y) of this paragraph shall not be mutually exclusive, and prior to the distribution of any Litigation Proceeds otherwise payable to Sponsor pursuant to these clauses, such Litigation

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372161

Proceeds shall be used to satisfy any Retroactive Compliance defined and set forth in Rule 708 of the Rulebook.

k)    Identification of Potential ULR Contract purchasers.

IPXI shall use commercially reasonable efforts in marketing ULR Contracts in accordance with Phase Two. In the course of its marketing activities, IPXI shall, where feasible, identify potential ULR Contract purchasers and shall inform Sponsors to this Agreement periodically of any such identifications.

7.3    Removal of Licensed Patents from ULR Contracts

a)    If a Licensed Patent is held invalid and/or unenforceable in a court of competent jurisdiction or other tribunal in a final, non-appealable judgment, and the time for any appeals have been exhausted, such Licensed Patent shall be removed from any future ULR Contract and Sponsor shall not be entitled to receive any Litigation Proceeds under such Patent. Such Patent shall remain a part of any previously purchased ULR Contract. Notwithstanding the foregoing, a ULR Contract purchaser may delete any such Licensed Patent from its previously purchased ULR Contract. As to any ULR Contracts purchased after the date such Patent is found invalid and/or unenforceable, the ULR Contract purchaser shall be issued a rebate for such Patent, within the time limit of and calculated as set forth in Section 9.4 (**Credits**), which shall be deducted from the ULR Contract proceeds otherwise payable to IPXI and Sponsor of such invalid and/or unenforceable Licensed Patent.

b)    If a Licensed Patent expires:

i)    such Patent shall remain a part of any currently offered Series and shall remain subject to the terms and conditions of this Agreement;

ii)    as set forth in the reporting requirements of Article 3 of the ULR Contract, if the date of the First Act, defined in the ULR Contract, as reported occurs after the date of expiration of such Patent, the ULR Contract purchaser shall be issued a rebate for such Patent, within the time limit of and calculated as set forth in Section 9.4 (**Credits**), which shall be deducted from the ULR Contract proceeds otherwise payable to SPV and Sponsor of such expired Licensed Patent; and

iii)    such expired Licensed Patent shall be removed from any future Series issued and shall no longer be a part of this Master Agreement as to any new Series.

c)    If a Licensed Patent is found to no longer be essential to the 802.11n Standard by either: i) IPXI's Essentiality Expert, or ii) a court of a court of competent jurisdiction or other tribunal in a final judgment, and the time for any appeals have been exhausted, such Patent shall be treated in accordance with clauses (b)(i) – (iii) of this Section 7.3, except that, pursuant to Section 9.4, any rebate shall only be issued upon the request of a ULR Contract purchaser.

7.4    Declaratory Relief Against SPV

If at any time a claim for declaratory relief is made against SPV relating to any Licensed Patent, including any action related to the infringement, validity or enforceability of such Licensed Patent, SPV shall notify Sponsor of such claim as soon as practicable. Sponsor shall provide commercially reasonable cooperation and assistance to SPV.

7.5    Declaratory Relief Against Sponsor

If at any time a claim for declaratory relief is made against Sponsor relating to any of its Licensed Patents, including any action related to the infringement, validity or enforceability of any Licensed Patent, Sponsor shall notify SPV of such claim as soon as practicable. SPV shall provide commercially reasonable cooperation and assistance to Sponsor.

802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    F00372162

Page 15

## 8.    CONFIDENTIALITY

All information which is identified as "Confidential" ("**Confidential Information**") by a Party to this Agreement disclosing such information ("**Disclosing Party**") will be treated with the same care and discretion to avoid disclosure, publication or dissemination as the party receiving the information ("**Receiving Party**") uses with its own similar information that it does not wish to disclose, publish or disseminate.  Confidential Information will either be marked as confidential or, if disclosed orally, identified as confidential at the time of disclosure.  Confidential Information may be a third party's information.

The Receiving Party will only disclose such Confidential Information to its employees and employees of its Affiliates that have a need-to-know, and any other party with prior written consent of the Disclosing Party, and the Receiving Party will have a written agreement with such party sufficient to require that party to treat Confidential Information in accordance with this Agreement. The Receiving Party may also disclose Confidential Information to its (a) counsel, accountants, potential investors or financial advisors on a need-to-know basis, provided that any such party agrees to maintain the confidentiality of any Confidential Information in accordance with this Agreement; (b) as required under applicable securities regulations or listing agency requirements, provided that the Disclosing Party uses all commercially reasonable efforts to have any sensitive information redacted, subject to applicable regulations or requirements; (c) in its financial statements as required under applicable generally accepted accounting principles while acting in reliance on its auditors; and (d) as required by law, provided that the Receiving Party gives the Disclosing Party prompt written notice of such requirement prior to such disclosure and assistance in obtaining an order protecting the information from public disclosure.

No obligation of confidentiality applies to any Confidential Information that the Receiving Party (x) already possess without obligation of confidentiality; (y) develops independently; or (z) rightfully receives without obligation of confidentiality from a third party, unless the Receiving Party knows or should reasonably have known that the disclosure from the third party was in breach of the third party's confidentiality obligations;  No obligation of confidentiality applies to any Confidential Information that is, or becomes, publicly available without breach of this Agreement.

## 9.    INCOME SHARING AGREEMENT TERMS



802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372163



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 17



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372165

Page 18

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## 11.    REPRESENTATIONS AND WARRANTIES

### 11.1    Mutual Representations and Warranties

Each Sponsor represent and warrants to IPXI and IPXI represents and warrants to each Sponsor as follows:

a)    Each Party is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation or organization and has full corporate power and authority to enter into this Agreement and to carry out the provisions hereof;

b)    Each Party has taken all necessary action on its part to authorize the execution and delivery of this Agreement and the performance of its obligations hereunder;

c)    This Agreement has been duly executed and delivered on behalf of each Party, and constitutes a legal, valid, binding obligation, enforceable against it in accordance with the terms hereof; and

d)    The execution, delivery and performance of this Agreement by each Party will not constitute a default under nor conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it is bound, nor violate any law or regulation of any court, governmental body or administrative or other agency having jurisdiction over such Party.

### 11.2    Sponsor's Representations and Warranties

Each Sponsor hereby represents and warrants to IPXI that, as of the Effective Date:

a)    Sponsor is not knowingly withholding any Patent from this Offering that it otherwise believes is essential to the 802.11n Standard;

b)    In anticipation of entering this Master Agreement, Sponsor did not knowingly and will not knowingly divest itself of any Patent, of which it is the owner of record, that it believes to be essential to the 802.11n Standard in order to prevent such Patent from becoming part of the Offering; and

c)    Sponsor has no knowledge of any actions, suits, investigations, cases, claims or proceedings pending or threatened relating to the Intellectual Property, except those which it has disclosed to IPXI.

### 11.3    NO OTHER WARRANTY

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER PARTY NOR ITS AFFILIATES OR PARENT COMPANIES MAKES ANY REPRESENTATION OR EXTENDS ANY WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY WARRANTY THAT ANY PATENT RIGHTS LICENSED HEREUNDER ARE VALID OR ENFORCEABLE OR THAT THEIR EXERCISE DOES NOT INFRINGE OR MISAPPROPRIATE ANY PATENT RIGHTS OR OTHER INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES.



802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## 14.    GOVERNING LAW

The Agreement is deemed to be made under and shall be construed according to the laws of the State of New York, without regard to the conflict of law principles thereof, except that no Sponsor is required to waive any aspect of sovereign immunity in defenses available to it under applicable law or choice of forum. With regard to any dispute arising out of or in connection with this Agreement, except as expressly contemplated by another provision of this Agreement, the Parties irrevocably consent and submit to the exclusive jurisdiction of the federal and state courts located in New York City, New York, and waive any objection to the laying of venue of any such proceeding brought in such courts and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 22



## 16.    GENERAL

### 16.1    Interpretation

Each Party acknowledges that this Master Agreement has been the subject of active and complete negotiations, and that this Agreement should not be construed in favor of or against any Party by reason of the extent to which any Party or its professional advisors participated in the preparation of this Agreement. If a term in an agreement conflicts with a term in this Agreement, Master, or any riders, addendums or supplements thereto, the provisions of this Master Agreement will prevail unless such agreement specifically states that the subject term in such agreement will prevail.

### 16.2    Assignment

Except as provided in Section 16.5, this Agreement may not be sold, assigned, or otherwise transferred without the prior written consent of the IPXI, which shall not be unreasonably withheld. Any purported assignment or delegation of this Agreement in contravention of this Paragraph shall be null and void. However, and notwithstanding the foregoing, any sale, assignment or other transfer by Sponsor of any of its Intellectual Property a) must be made subject to the terms and conditions of this Agreement, and b) any such recipient by sale, assignment or other transfer of the Intellectual Property must assume in writing all the responsibilities and obligations of Sponsor under this Agreement within 14 days.

### 16.3    Independent Contractors

IPXI and each Sponsor will at all times be independent contractors. No Party will have any right, power or authority to enter into any agreement for or on behalf of, or to assume or incur any obligation or liabilities, express or implied, on behalf of or in the name of, any other Party. This Agreement will not be interpreted or construed to create an association, joint venture agency or partnership between the Parties or to impose any partnership obligation or liability upon either Party.

### 16.4    No Modification; Waiver

Except as expressly provided in this Agreement, no amendment, modification or change of this Agreement will be valid unless in writing and signed by an authorized representative of the Part(ies) to be
802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                F00372170

Page 23

affected and bound. No pre-printed information on invoices, purchase orders, order acknowledgements, quotations or the like will have any force or effect between the Parties. Payment of an invoice does not constitute an agreement to the content of the invoice. No waiver of any right or remedy under this Agreement shall be effective unless it is in writing (and not in electronic form) and such writing is signed by an authorized representative of the Party to be charged therewith.

16.5    Acquisition of Sponsor

Should Sponsor, or a unit or part of Sponsor under which activities to Sponsor's Intellectual Property relates, be sold, purchased, merged, or otherwise acquired such that it ceases to exist, the terms and conditions of this Agreement shall survive.   The new or surviving entity shall assume the obligations of and shall be subject to the terms and conditions of this Agreement and the underlying Exchange Agreements.

16.6    Breach and Remedies

The failure of any Party to a) act in accordance with the terms of this Agreement, or b) fulfill its duties and obligations under this Agreement shall constitute a breach.   The Parties acknowledge and agree that any breach of the terms of this Agreement could give rise to irreparable harm for which money damages may not be an adequate remedy.   Accordingly, if such failure is not substantially remedied within 45 days after written notice of such failure, the Parties agree that, in addition to any other remedies, any Party shall be entitled to seek preliminary or injunctive relief to enforce the terms of this Agreement by a decree of specific performance.

16.7    Rights and Remedies Cumulative

Unless expressly stated otherwise in this Agreement, all rights and remedies provided for in this Agreement will be cumulative and in addition to, and not in lieu of, any other remedies available to either Party at law, in equity or otherwise. If either Party has a choice of one action "or" another action, that Party may take both of those actions.

16.8    Severability

If any provision of this Agreement conflicts with the law under which this Agreement is to be construed or if any provision of this Agreement is held invalid or unenforceable by a court of competent jurisdiction, (including, by way of example, due to obligations set forth in 7.1.e) that provision will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law. The remaining provisions of this Agreement and the application of the challenged provision to persons or circumstances other than those as to which it is invalid or unenforceable will not be affected thereby, and each of those provisions will be valid and enforceable to the full extent permitted by law.

16.9    Subcontractors

IPXI and each Sponsor may use subcontractor(s) of each respective Party's choosing for any analyses and administration required to satisfy the terms of this Agreement.   All subcontractors hired pursuant to this Agreement shall be bound by a duty of confidentiality no less strict than the duties required of a Party pursuant to Article 8.  IPXI shall reveal the identities of all subcontractors upon a Sponsor's request.  This paragraph shall not be construed to limit IPXI's ability to retain or engage legal counsel of its own choice, or otherwise waive any privileges, including, but not limited to, the attorney-client privilege.

16.10    No Income Guarantee

IPXI makes no warranty, representation, or guarantee of any kind that a Sponsor will receive any particular amount of income, or any income, by virtue of its participation in this Offering and by executing this Agreement.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    F00372171

Page 24

16.11    Entire Agreement

This Agreement, its attached Schedules and Exhibits, and the underlying Exchange Agreements, upon their execution, hereto constitute the entire agreement between the Parties with respect to the subject matter hereof and supersede all prior negotiations, agreements and understandings with respect thereto. No modification of or addition to this Agreement shall be effective unless it is in writing and signed by an authorized representative of the affected Part(ies).

16.12    Audit

During the term of this Agreement and for a period of two years thereafter, IPXI will permit technical, financial and operational audits of its service locations and systems (including the information maintained by such systems) by the auditors, personnel of Sponsors, consultants on behalf of Sponsors, and any regulatory agency with supervisory responsibility for a Sponsor ("**Auditors**"). IPXI shall keep records of all information necessary to confirm that payments to Sponsors complied with this Agreement and the Exchange Agreements for a period of 3 years after each payment was due or paid, whichever is later. Auditors shall not have access to the confidential information of other Sponsors or third parties, including IPXI's members, or confidential information regarding ULR offerings that do not include Sponsor's Intellectual Property, or materials protected by the attorney-client privilege, provided, however, that each Sponsor shall have the right to have an independent certified accountant selected by the Sponsor to inspect any systems and copy information reasonably necessary to confirm IPXI's compliance with this Agreement and the Exchange Agreements, excluding materials protected by the attorney-client privilege. IPXI employees may be interviewed during any such audits. IPXI will, in a timely manner, fully cooperate with the Auditors and provide the Auditors all assistance and access to all systems, service locations and materials as required, including IPXI (or its auditors) audit reports. IPXI may, at its sole discretion, require the Auditors to sign a confidentiality agreement before providing confidential information. IPXI shall promptly fix all problems discovered during the audit. The cost of the audit shall be paid by the Sponsor requesting the audit unless the Sponsors approved the audit by majority vote by Total Asset Contribution Weight in advance, in which case the cost of the audit will be invoiced to Sponsors by IPXI in proportion to each Sponsor's Total Asset Contribution Weight. If the difference between the amount IPXI underpaid (if any) and the amount IPXI owed exceeds five percent (5%) of the amount owed, IPXI shall pay the cost of the audit.

16.13    Mandatory Language

Where this Agreement states that a Party "will" or "shall" perform in some manner or otherwise act or omit to act, it means the Party is contractually obligated to do so in accordance with this Agreement.

16.14    Drafting Presumption

No provision of this Agreement shall be construed against a Party solely on the ground that the Party was responsible for the preparation of this Agreement or that provision.

16.15    Headings

The captions, titles and headings used in this Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Agreement.

16.16    Execution in Multiple Counterparts

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    F00372172

16.17    Further Assurances

Each Party to this Agreement agrees to execute, acknowledge and deliver such further instructions, and to do all such other acts as may be necessary or appropriate in order to carry out the purposes and intent of this Agreement.

16.18    Other Offerings

At its discretion, IPXI may elect to offer other Engagements under other provisions of IEEE 802.11, and such Engagements may be offered as an additional Series which is convertible to or from a Series of the Offering. Should IPXI do so, Sponsor may elect to adopt and incorporate by addendum the terms and conditions of this Master Agreement in order to participate in any other such Engagement, wherein such terms and conditions shall govern any other such Engagements. Notwithstanding the Amnesty Discounts provided in Section 9.3 and Exhibit D, new Amnesty Discounts may be offered for and only applicable to any such additional Series offered pursuant to this section, as determined by IPXI in cooperation with the Sponsors participating in such Series.

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372173

EXHIBIT A

INTELLECTUAL PROPERTY SCHEDULE

DE69808809T2
Vorrichtung und verfahren zur Datenübermittlung und zum datenempfang

EP1123597B1
Apparatus and method for transmitting information and apparatus and method for receiving information

ES2185244T3
Aparato y procedimiento para transmitir informacion y aparato y procedimiento para recibir informacion.

FR – EP1123597
Apparatus and method for transmitting information and apparatus and method for receiving information

GB - EP1123597
Apparatus and method for transmitting information and apparatus and method for receiving information

IT - EP1123597
Apparatus and method for transmitting information and apparatus and method for receiving information

JP3464981B2
Information transmitting device and its method and information receiving device and its method

PL192020B1
Apparatus and method for transmitting information and apparatus and method for receiving information

US6314289B1
Apparatus and method for transmitting information and apparatus and method for receiving information

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          F00372174

EXHIBIT B

TOTAL AND JURISDICTION ASSET CONTRIBUTION WEIGHT CALCULATIONS



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372175



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372176

EXHIBIT C

ULR CONTRACT CONVERSION CALCULATIONS



802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372177

## EXHIBIT D

### AMNESTY DISCOUNT CALCULATIONS



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372178

EXHIBIT E

NOTICE

Notice in accordance with Article 3 of this Master Agreement shall be provided as follows on this page and the attached pages:

If to IPXI:

IPXI Holdings, LLC
10 South LaSalle Street, Suite 2130
Chicago, Illinois, 60603
Attention: General Counsel

With a copy to:

notice@ipxi.com

If to _____ Dr. Helmut Schubert
Head of Patents and Licensing
Fraunhofer-Gesellschaft zur Förderung
der angewandten Forschung e.V.

Fraunhofer-Gesellschaft
zur Förderung der angewandten Forschung e.V.
Hansastraße 27a · 80686 München

802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372179

EXHIBIT F

APPENDIX: SPONSOR'S TERMS AND CONDITIONS FOR ESSENTIALITY ANALYSIS



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372180





802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372181

802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                            F00372182



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372183



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F00372184



802.11n, Confidential Information

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    F00372185





802.11n, Confidential Information



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    F00372186

# Exhibit N

## Hedvat, Shannon H.

| | |
|---|---|
| **From:** | Hedvat, Shannon H. |
| **Sent:** | Tuesday, May 31, 2022 3:49 PM |
| **To:** | 'McPhie, David'; Schuetz, Kelsey; Baghdassarian, Mark; Caplan, Jonathan S.; provner@potteranderson.com; ~Choa, Jonathan |
| **Cc:** | Yorks, Ben; Vakili, Kamran; Carson, Rebecca; 'Michael J. Farnan'; 'Brian Farnan' |
| **Subject:** | RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly |
| **Attachments:** | 2022-05-31 Request for Teleconference -- SXM Edits.docx |

David,

Your e-mail is inappropriate as the correspondence is clear that it is Fraunhofer that is delaying things, not SXM.  We have made simple requests (now multiple times) to narrow the issues, particularly where there are no disputes.  Your ongoing refusal to engage in a good faith meet and confer is unfortunate and we will be forced to highlight such failures to comply with the rules and Judge Fallon's repeated directives to the parties.  Despite our best efforts to narrow the issues, you continue to burden the Court unnecessarily.

Attached you will find our edits to the joint discovery dispute submission.

Shannon

**From:** McPhie, David <DMcPhie@irell.com>
**Sent:** Tuesday, May 31, 2022 12:13 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Schuetz, Kelsey <kschuetz@irell.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Hi Shannon,

We ask for the last time that you provide SXM's edits to the joint request for teleconference and give us your approval to file today. The parties have clearly satisfied the meet-and-confer requirement on these issues. It is not proper for SXM to unilaterally refuse to present these disputes to the Court or to apply a more stringent standard to Fraunhofer's issues than SXM has applied to its own. Indeed, it is clear from your email that you believe that the Schubert and IPXI issues are ripe for submission to the Court despite Fraunhofer's requests for additional information.

These are time-sensitive issues and we are concerned that SXM's refusal to cooperate may negatively impact the case schedule. In particular, although we'd like to have the remaining depositions completed before the opening expert report deadline, we can't guarantee that will be possible if SXM continues to drag its feet rather than participate in the scheduling process in good faith. This includes (for example) our request that you identify earlier dates in June and July to the extent that you claim that the entire SXM legal team is unavailable from July 5 through July 14. You have refused that request and instead demand that we engage in a sort of guessing game where we repeatedly ask the non-party witnesses for dates and then cross our fingers that SXM counsel may be available. That is not a helpful approach.

If we don't get your revisions and filing approval today, we will inform the Court that SXM refused to submit a joint request for teleconference even after the parties had fulfilled the meet-and-confer requirement. Our preference is for a joint filing, of course.

1

Sincerely,
David


========================
David McPhie
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA  92660
Direct: (949) 760-5216

---

**From:** Hedvat, Shannon H. [mailto:SHedvat@KRAMERLEVIN.com]
**Sent:** Tuesday, May 31, 2022 6:57 AM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Kelsey,

We write in response to your e-mail sent at the beginning of the holiday weekend and your threat, on Friday evening, to unilaterally proceed to file a request for a discovery teleconference with the Court.  As we explained during the meet and confer on Thursday, we were concerned that you would send an e-mail like the one below that misrepresents the parties' discussion to simply fit the narrative FhG has sought to create.  We have provided herein a summary of the parties' discussion that accurately and thoroughly sets forth what was raised during the meet and confer, what issues remain open, and what issues require the Court's resolution.

At the outset of our meet and confer, you insisted that the parties first discuss the new proposal FhG sent less than two days prior and the new information that David set forth in a letter that was e-mailed minutes before the start of the meet and confer.  While we only had only a few minutes to consider the latest information David provided, we nonetheless, in good faith, discussed the inventor depositions.  Specifically, based on our discussion, there should be no dispute to present to the Court about the inventor depositions' scheduling.  After completely stonewalling the taking of these depositions for 19 months, claiming no control over the witnesses and representing repeatedly that you had done everything you could to induce them to appear (short of suing them, which you declined to even raise as an option), you now contend they are now somehow willing to testify in London for US style depositions, but only over a limited 17 day time period (July 5 to 22, which immediately follows a holiday weekend and includes weekends).  We have told you repeatedly that we are not available at the beginning of that period, but could take the depositions between July 14 to 31.

Apparently 3 of the 4 witnesses are available during the time period we outline.  As we requested during our call, we ask that you give us specific dates when they can attend and we will get them scheduled.  That we need to hear from you as to their availability is only underscored by your most recent representations concerning Ms. Badri.  We are prepared to take her deposition in late June or August depending on the dates when she may be available.  Again, give us some range of dates that she can attend, and we will work it out.

We further note that we remain troubled by your insistence during the meet and confer that scheduling of these depositions should only accommodate Irell's "having to travel back and forth" and your claim that "the entire country of Germany shuts down in August" but not accommodate our schedules.  As you are aware, the Ulm Court provided various dates in August for the examination of Robert Fischer via the Hague Convention demonstrating that activities do

take place in Germany in August and we would suspect that if travel were a consideration, that your team would prefer that the depositions take place during the latter half of July and-August given the now scheduled examination of Mr. Fischer.

With respect to FhG's improper privilege assertions pertaining to IPXI and Mr. Schubert, you agreed that the parties are at an impasse.  Regarding IPXI, you stated that because IPXI and FhG shared a purported "common interest in having strong and enforceable patents and making money off of a joint venture into patent licensing," all communications and documents were privileged notwithstanding that several of the privilege log entries pre-date any agreements between the parties let alone the governing case law contradicting this position that we explained in our most recent May 19 correspondence.  Moreover, with respect to Mr. Schubert, you confirmed that he is not a German attorney nor admitted to the German patent bar but that FhG's position remains that his status as a "patent assessor" affords him all attorney privilege protections under German law.  While you cited to purported German statutes for your position, you noted that they do not specifically state that communications regarding licensing and contract issues are privileged as they relate to patent assessors.  You have also failed, to date, to explain the basis for your designation of Mr. Schubert as an "Esq." on your privilege logs.  We will proceed to raise both of these issues for resolution with the Court.

Finally, as we suspected, your recent email misrepresents our discussion regarding Mr. Donnelly's deposition.  Indeed, during Thursday's call, we confirmed that we will make him available but noted that, to date, FhG has not complied with Judge Fallon's instructions from the governing January 2021 hearing that "[i]f Fraunhofer hasn't gotten a deposition notice over on topics on which it wants to take testimony from Mr. Donnolly [*sic*], I would instruct them to do that."  1/15/21 Tr. at 64:1-4.  You first stated that "FhG has satisfied this" by providing a deposition notice months before the January 2021 hearing but then changed course and stated that you "disagreed with SXM's 'interpretation' of Judge Fallon's order" but would nonetheless let us know if FhG would supply the topics.  Your e-mail fails to indicate whether FhG will do so.  Because SXM has agreed to make Mr. Donnelly available, the only issue remaining for the Court's resolution is FhG's compliance with the January 2021 order to provide the specific topics on which it seeks to depose Mr. Donnelly.

We remain willing to work with FhG on the scheduling of the inventor depositions and Mr. Donnelly's deposition but continue to have concerns with FhG's unwillingness to engage in any meaningful dialogue and instead its preference to simply proceed to burden the Court with unnecessary and, at a minimum, premature motion practice.

Shannon

Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9185 **M** 973.809.4768 **F** 212.715.8385

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Friday, May 27, 2022 2:20 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan'

3

<bfarnan@farnanlaw.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Shannon,

This email is to confirm and follow up on yesterday's meet-and-confer. Because we did not reach resolution on any of Fraunhofer's issues, we will need to proceed to file the joint request for teleconference. Please confirm we have your approval to file the version that we circulated earlier or immediately let us know any proposed additions from SXM so we can get this on file today.

During the meet-and-confer, we first discussed our compromise proposal to schedule the depositions of remaining inventor witnesses to take place remotely from a location outside Germany (e.g., London) between July 5 and July 22. SXM has thus far refused to accept these dates (despite ample advance notice) based on your alleged unavailability between July 5-14. As stated in our prior correspondence on this issue, we find it difficult to believe that SXM's entire legal team is unavailable during this period, including all four Kramer Levin attorneys who have previously taken and/or defended deposition in this case.  During our call, I asked you to identify what specific conflicts SXM supposedly has that would prevent scheduling one or more of the inventor depositions prior to July 14.  You refused to do so.  I also reiterated that at least one of the inventor witnesses (Sabah Badri) is not available to be deposed during the second half of the month, and August is not a viable option as things traditionally shut down in Germany for that entire month.

Despite our repeated requests for SXM to provide its availability during June or early July, you did not have any such alternative dates to offer during our call. You said that you would confer with your team about dates in June but did not indicate when you would provide any such dates. Given the time-sensitive nature of this dispute and the impasse caused by SXM's inexplicable delay, we must plan to raise the matter with the Court at the next discovery teleconference. Of course, the parties can and should continue to discuss these issues, and we remain hopeful that SXM may have a change of heart that will allow us to resolve or narrow the disputes that ultimately need to be presented to the Court.

We next discussed the purported privilege issues that SXM has raised regarding documents identified on Fraunhofer's privilege log relating to Mr. Schubert. We understand it is SXM's position that U.S. law narrowly circumscribes the privilege afforded to German patent assessors, taking the position that this privilege applies only to communications specifically relating to patent prosecution. However, as we have previously explained, your analysis based on the U.S. "patent agent" privilege is both incorrect and inapposite here. As I reiterated during our call, patent assessors in Germany may broadly provide legal advice to an employer/client and are not limited to the area of patent prosecution. That said, if you believe there is authority suggesting the contrary, please let us know and we are happy to review further.

We also discussed SXM's second set of issues regarding Fraunhofer's privilege claims relating to IPXI. For example, I responded to the claim in your May 19 letter that Fraunhofer "has not identified [Entry Nos.] 350 and 351 as communications with IPXI Essentiality Experts." I directed you to the Master Agreement between Fraunhofer and IPXI (F00372149 at -180), which expressly identifies "Kenneth Rubenstein of Proskauer Rose LLP and his team of patent experts as the IPXI Essentiality Expert." Fraunhofer's privilege log identifies Mr. Rubenstein as the author of Entry Nos. 350 and 351. I asked whether this clarification resolved SXM's concerns with respect to at least these two documents, given the admission in your May 19 letter that "the Master Agreement discusses an intent that 'communications between [Fraunhofer] and IPXI Essentiality Experts' be common interest privileged[.]" You stated that it did not, but failed to explain why. I also sought clarification on whether it is SXM's position that the common interest privilege does not apply here because IPXI ultimately did not exclusively license patents from Fraunhofer. You confirmed this was not SXM's position. Again, to the extent that SXM is aware of any authority in support of SXM's positions on these issues, we ask that you disclose such authority immediately, and we are willing to review further.

Finally, we discussed SXM's refusal to produce Mr. Donnelly for deposition in violation of Judge Fallon's January 15, 2021 order, and Judge Bataillon's order yesterday overruling SXM's objections and holding that "under the Federal Rules of Civil Procedure, Fraunhofer has the right to take the deposition of Sirius's corporate officer in connection with the fact

4

discovery phase of this case." D.I. 563 at 6. Despite these orders, you told me that SXM will not produce Mr. Donnelly for deposition. You initially claimed that this was because you were waiting for Fraunhofer to serve an amended deposition notice identifying the topics on which he will be deposed—despite the fact that Mr. Donnelly is not a Rule 30(b)(6) witness and SXM provided no such list of topics for its depositions of Fraunhofer's counsel and executives. In any event, you refused to commit to produce Mr. Donnelly for deposition even if such an amended deposition notice were provided. Because you could not (or would not) explain any valid rationale for SXM's position, it is apparent that the parties are at an impasse and we will need to present this issue to Judge Fallon for prompt resolution.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Schuetz, Kelsey
**Sent:** Wednesday, May 25, 2022 10:12 PM
**To:** ~Hedvat, Shannon <shedvat@kramerlevin.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Shannon,

Thank you for accepting the offer from David's letter yesterday to meet-and-confer regarding the deposition scheduling issues. It sounds like both parties are available tomorrow at 11am ET. We can use the following dial-in information:

**Dial In:** (866) 349-7797 / **Conference ID**: Enter 9497605144 and press #

During tomorrow's call, we can also plan to discuss the outstanding dispute regarding the deposition of Mr. Donnelly (although the parties have already met and conferred multiple times on this subject) and the privilege issues that SXM has purportedly raised relating to IPXI and Mr. Schubert.

We disagree with the arguments you have made in your email below relating to Mr. Donnelly, at least some of which have been newly (and untimely) raised by SXM. Judge Fallon unambiguously granted Fraunhofer's request to take Mr. Donnelly's deposition, and ordered SXM to make him available for pursuant to the Federal Rules of Civil Procedure.  1/15/21 Tr. at 62:9-21; 63:6-7. Under the Federal Rules, Fraunhofer is under no obligation to provide SXM with a list of topics in advance of this deposition, as his deposition is being sought in his individual capacity, and not as a Rule 30(b)(6) witness designated by SXM.

Notably, it was SXM that decided not to timely raise any objection to deposition length or scope when the issue was presented to the Court in January 2021. The entirety of SXM's argument on that issue (as presented in its letter brief) was just three sentences and nowhere suggested that such limits should be imposed. D.I. 391 at 3. The Court later confirmed that "[t]here's no objection to a particular area of questioning or topic that the Court's been presented with." 1/15/21 Tr. at 64:5-7. It is therefore wholly improper for SXM to now demand, more than a year later, that Fraunhofer limit its questioning of Mr. Donnelly to certain topics or any particular length of time.

Moreover, by your own admission, the deposition that Judge Fallon ordered on January 15 is "unbounded in subject matter and time." D.I. 397 at 5. Indeed, the improper objections that SXM presented to Judge Bataillon in response to

that order directly confirm that SXM could have raised any supposed substantive arguments under the apex doctrine with Judge Fallon in the first instance, but simply failed to do so.  *Id.* at 5-7.

In any event, SXM has had ample notice of numerous exemplary topics that may properly be addressed at Mr. Donnelly's deposition. *See, e.g.,* D.I. 390 at 2 (potential topics for questioning include Mr. Donnelly's 2015 conversation with Alan Friedman "about SXM's lack of sublicense rights—a conversation with potential relevance to the issues of willfulness and SXM's purported license defense, among others."). As SXM is well aware, Mr. Donnelly is also referred extensively referred to in other discovery provided by SXM in this case, including SXM's documents and deposition testimony provided by other SXM witnesses. And of course, other issues such as those relating to credibility and bias are fair game as in any deposition. These are merely examples and Fraunhofer disagrees that there are any limitations on the topics that may be properly presented in Mr. Donnelly's deposition.

We remain hopeful that the parties will be able to resolve the open issues in whole or part during the meet-and-confer tomorrow. To the extent that we do not, we have updated the draft request for teleconference so it can be filed immediately after the meet-and-confer if necessary. If you anticipate any edits or additions to the joint request, please let us know before our call tomorrow so we can have a proper discussion. (For example, if you intend to move for relief on either of the two privilege issues, we ask that you let us know and identify the specific log entries that you actually intend to present to the Court.)

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Wednesday, May 25, 2022 4:57 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Kelsey,

We remain troubled by Fraunhofer's constant changes in position with respect to its demand for Mr. Donnelly's deposition.  Indeed, you cite to D.I. 338, but that notice was served months before Judge Fallon's instruction to Fraunhofer to provide "a deposition notice over on topics on which it wants to take testimony."  Moreover, you state that you have "have identified certain subjects that *may be included* in our questioning" but again you leave it open as to the topics on which you may question Mr. Donnelly.  This is not only inconsistent with your prior representations to the Court but also contrary to the governing law on deposing high level executives.  *See e.g.,* May 19, 2022 e-mail.  We also disagree that any of Fraunhofer's witnesses hold any comparable position to that which Mr. Donnelly holds at Sirius XM and moreover, the witnesses you purportedly refer to were identified by Fraunhofer on its Initial Disclosures.  As we have stated in our correspondence below, we remain willing to work with Fraunhofer but are concerned that you are unwilling to do so simply in an effort to burden the Court.

In addition, you have once again ignored our ongoing request to discuss Fraunhofer's improper privilege assertions.  Sirius XM remains willing to meet and confer provided that the parties agree to address these privilege

6

issues (not just the issues Fraunhofer wishes to discuss).  We are available at 11am ET tomorrow for a meet and confer, but expect that Fraunhofer will be prepared to discuss its privilege assertions regarding IPXI and Mr. Schubert at that time as well.

Shannon

## Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9185 **M** 973.809.4768 **F** 212.715.8385

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Wednesday, May 25, 2022 12:42 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Shannon,

You have not identified any conflicts with the dates identified in our draft joint request for teleconference despite multiple requests.  We will therefore proceed to file the request as is.

Contrary to your email below, Fraunhofer's position on Mr. Donnelly has not changed. We explicitly requested his deposition long ago. D.I. 338. In an effort to compromise, we also offered a stipulation that we would withdraw our deposition request if SXM would confirm that it would not call Mr. Donnelly at trial or otherwise rely on testimony from him in this case. SXM did not agree to this, nor has it produced Mr. Donnelly for deposition—even after the Court expressly ordered you to do so.

The revisionist history and false statements in your email below only confirm the willful nature of SXM's contempt of the Court's order. There is no basis for further delay on this issue. It is undisputed that the parties have already met and conferred multiple times regarding Mr. Donnelly's deposition, including most recently on January 6, 2022. D.I. 517. You never previously raised any issue about having not received a deposition notice, and in any event, we duly served such a notice over a year and a half ago. D.I. 338. As with other deposition notices in this case, the notice to Mr. Donnelly is open-ended as to the topics on which he may be examined. That is our right and is the same approach SXM has taken for the depositions of Fraunhofer's counsel and executives. Although we have identified certain subjects that may be included in our questioning (see D.I. 390 at 2-3), there is no basis to limit the scope or timing of the deposition in advance, before we have even heard what testimony Mr. Donnelly may offer.

Despite the fact that the parties have already met and conferred many times on this issue, we are always willing to discuss further. Indeed, just yesterday we offered another set of specific times for a call on open issues, which SXM has again ignored. We ask one last time that you let us know if you are willing to meet and confer at any of the times we

7

have offered. Otherwise, we will proceed to file the request for teleconference and inform the Court that SXM has refused to comply with the local rules.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Tuesday, May 24, 2022 1:59 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Kelsey,

We are disappointed with Fraunhofer's refusal to engage in any meaningful dialogue let alone the required meet and confer under the Local Rules.  As you know, Judge Fallon has repeatedly instructed the parties to try to reach agreement where possible and our proposal was a reasonable one that you did not seriously consider.

That aside, we are troubled by your sudden change in position with respect to Mr. Donnelly's deposition.  You previously represented that you would seek to depose Mr. Donnelly only if Sirius XM were to bring him to trial and on a narrowed set of topics.  *See e.g.*, D.I. 390 at 2-3; A. Federico 1/21/21 e-mail; A. Federico 1/19/21 e-mail.  Indeed, you told Judge Fallon that you "don't expect it's going to be a particularly long deposition."  1/15/21 Tr. at 57:4-6.  Consistent with those representations, Judge Fallon specifically instructed that "[i]f Fraunhofer hasn't gotten a deposition notice over on topics on which it wants to take testimony from Mr. Donnolly [*sic*], I would instruct them to do that."  *Id.* at 64:1-4.  Without this information, and based on Fraunhofer's constant changing of positions, it is nearly impossible for Sirius XM to understand Fraunhofer's request.  Thus, we ask that you provide a list of topics for our consideration as soon as possible and let us know your availability for a meet and confer after providing such list.

In addition, your e-mail response below ignores the pointed questions posed in our May 19 e-mail.  If that was merely an oversight, we ask that you let us know and provide responses to our inquiries.

Finally, the issues relating to Fraunhofer's inappropriate privilege assertions pertaining to Mr. Schubert and IPXI have been pending for months.  The parties have exchanged multiple correspondence on these issues and you have evaded our repeated suggestions to meet and confer.  We ask again that Fraunhofer provide times to meet and confer on all pending issues so that, if necessary, the parties can collaboratively seek the Court's guidance on any unresolved issues rather than present them in piecemeal fashion.

Shannon


Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036

8

**T** 212.715.9185 **M** 973.809.4768 **F** 212.715.8385

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Monday, May 23, 2022 12:03 PM
**To:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Counsel,

The parties remain at an impasse on Mr. Donnelly and so we will need to proceed to file the joint request for teleconference.  Please let us know whether you are available on the proposed dates in the draft that we sent last week so we can get this issue resolved without further delay.

Your email makes clear that SXM is still willfully refusing to comply with the Court's order on this issue.  That order was not in any way contingent on whether Fraunhofer would call any particular witness to testify at trial.  Nor did the Court's order impose any particular limits on deposition scope or time.  SXM has no right to impose its own arbitrary limitations on how Fraunhofer conducts this deposition, and of course SXM did not agree to any such limits in its depositions of high-ranking individuals at Fraunhofer.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>
**Sent:** Thursday, May 19, 2022 4:02 PM
**To:** Schuetz, Kelsey <kschuetz@irell.com>; Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Counsel,

As you know, Sirius XM has objected to the Court's January 2021 Order and that objection remains pending before Judge Bataillon (similar to FhG's objection to the Court's November 2020 Order).  In an effort to reach agreement and move this issue forward, we suggest the following proposal regarding any deposition of Mr. Donnelly.

9

As you know, Mr. Donnelly is the Executive Vice President and General Counsel, as well as the corporate Secretary for Sirius XM.  Based on his position, he is someone not generally subject to deposition in the context of a civil litigation.  *See, e.g., U.S. ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2015 WL 4973626, at *1 (E.D. Pa Aug. 20, 2015); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.,* 310 F.R.D. 523, 528 (S.D. Fla. 2015).  Nevertheless, should Sirius XM seek to present Mr. Donnelly at any trial in this matter, we understand that FhG seeks to depose him.

In view of the foregoing, we ask that FhG let us know if FhG intends to present Alan Friedman at trial regarding his conversation with Mr. Donnelly in 2015 and the facts and circumstances that led to this discussion (the "Subject Matter").  In the event FhG intends to do so, Sirius XM intends to call Mr. Donnelly as a witness at trial.  His trial testimony in that case will be limited to the Subject Matter.  If so agreeable, Sirius XM would make Mr. Donnelly available for deposition limited to the Subject Matter to last no longer than a specific time period we can discuss and agree upon.  Under this approach, FhG will be able to understand the scope of testimony Mr. Donnelly would provide at any trial without having to burden a high level executive to more than is needed for purposes of this matter.

We are of course willing to meet and confer on this issue and consider any thoughts or proposals you may have in mind.  We can add this to a meet and confer regarding the privilege issues we have raised.

Shannon

Shannon H. Hedvat
Associate

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, New York, New York 10036
**T** 212.715.9185 **M** 973.809.4768 **F** 212.715.8385

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

**From:** Schuetz, Kelsey <kschuetz@irell.com>
**Sent:** Tuesday, May 17, 2022 5:04 PM
**To:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; Hedvat, Shannon H. <SHedvat@KRAMERLEVIN.com>; Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; provner@potteranderson.com; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** [EXTERNAL] RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Counsel,

I am writing again to follow up on the scheduling of Mr. Donnelly's deposition.   We have repeatedly requested that SXM comply with the Court's January 15, 2021 order by immediately providing either: (1) available dates for Mr. Donnelly's deposition; or (2) a draft stipulation for our review reflecting SXM's agreement that it will not call Mr. Donnelly as a trial

witness or rely on his testimony for any purpose in this case.  Based on SXM's continued refusal to do this—or even provide the courtesy of a response to our emails below—it is clear that you have no intention of complying with the Court's order.  We will therefore need to raise this issue with Judge Fallon.

To that end, attached please find a draft request for teleconference.  As you know, the parties have already discussed this issue extensively, including during our telephonic meet-and-confers on December 15 and January 6.  We have also offered to schedule a further discussion to the extent SXM believes it could be helpful.  To date, you have refused to respond to these offers.

As we see no reason to further delay the resolution of this matter, we ask that you please confirm your availability for a teleconference on the dates listed in the draft request by close of business on Thursday, May 18.  We intend to file the request for teleconference by this Friday at the latest.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

---

**From:** Schuetz, Kelsey
**Sent:** Tuesday, April 12, 2022 11:00 AM
**To:** 'Baghdassarian, Mark' <MBaghdassarian@KRAMERLEVIN.com>; ~Hedvat, Shannon <shedvat@kramerlevin.com>; 'Caplan, Jonathan S.' <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; 'Michael J. Farnan' <mfarnan@farnanlaw.com>; 'Brian Farnan' <bfarnan@farnanlaw.com>
**Subject:** RE: Fraunhofer v. SXM - Deposition of Patrick Donnelly

Counsel,

I write to follow up on my email below regarding the scheduling of Mr. Donnelly's deposition, which I sent weeks ago but have not yet received a response.  As previously requested, please immediately provide either: (1) available dates for Mr. Donnelly's deposition; or (2) a draft stipulation for our review reflecting SXM's agreement not to call Mr. Donnelly as a trial witness or rely on his testimony for any purpose in this case.

If SXM is not willing to either immediately provide Mr. Donnelly's availability for deposition or to enter into a mutually agreeable stipulation, we will need to raise this issue with the Court.  As you know, the parties have already satisfied the meet-and-confer requirement on this issue. Indeed, the matter was expressly teed up for resolution at a discovery teleconference and was deferred only because of a Court order requiring the parties to narrow the number of issues to be presented.

That said, to the extent you believe it could be helpful to discuss further, we are available on Friday, April 15 between 9am and 12pm, Monday, April 18 between 10am and 1pm, or Tuesday, April 19 at 11am (all times Pacific).  Feel free to let us know which of those dates/times works on your end, or propose some alternatives for our consideration.

Sincerely,
Kelsey

---

**From:** Schuetz, Kelsey
**Sent:** Wednesday, March 23, 2022 12:59 PM
**To:** Baghdassarian, Mark <MBaghdassarian@KRAMERLEVIN.com>; ~Hedvat, Shannon <shedvat@kramerlevin.com>;

11

Caplan, Jonathan S. <JCaplan@KRAMERLEVIN.com>; ~Rovner, Phil <provner@potteranderson.com>; ~Choa, Jonathan <jchoa@potteranderson.com>
**Cc:** Yorks, Ben <BYorks@irell.com>; McPhie, David <DMcPhie@irell.com>; Vakili, Kamran <KVakili@irell.com>; Carson, Rebecca <RCarson@irell.com>; Michael J. Farnan <mfarnan@farnanlaw.com>; Brian Farnan <bfarnan@farnanlaw.com>
**Subject:** Fraunhofer v. SXM - Deposition of Patrick Donnelly

Counsel,

We write to follow up regarding the deposition of Patrick Donnelly.  As the expert phase of this case is soon approaching, we think it makes sense to resolve this open issue, which has now been pending for quite some time.

As you know, SXM was ordered to produce Mr. Donnelly for deposition over a year ago.  *See* 1/15/2021 Hearing Tr. at 62:9-21.  Specifically, Judge Fallon's order required either that Mr. Donnelly's deposition "occur within one month" of the January 15 hearing or, in the alternative, the parties were to "reach a resolution by stipulated agreement or other writing to resolve this dispute."  *Id*.  Despite this clear directive, SXM has refused to make Mr. Donnelly available, and has refused Fraunhofer's offer in the alternative to forego Mr. Donnelly's deposition in exchange for an agreement that SXM will not call Mr. Donnelly as a trial witness and will not rely on his testimony for any purpose in this case.  *See, e.g.*, D.I. 390, Ex. C at 1.  We believe Fraunhofer's position on this issue has been fully and repeatedly set forth in the parties' extensive prior correspondence and briefing before Judge Fallon, and thus we will not repeat it again here.  *See, e.g.,* D.I. 390, 399, 472, 520, 521.

In one final attempt to resolve this dispute without involving the Court, we write to reiterate our request that SXM immediately provide available dates for Mr. Donnelly's deposition.  Alternatively, if SXM is now willing to enter into an agreement under which Fraunhofer will forego his deposition, we remain willing to consider this approach and ask that you promptly send a draft stipulation for our review.  If SXM continues to refuse to either produce Mr. Donnelly for deposition or enter into a mutually agreeable stipulation with Fraunhofer, then we will need to proceed to raise this issue with the Court.  As you know, the parties have already satisfied the meet-and-confer requirement, as this issue was ripe for resolution prior to the January 27 hearing.  *See* D.I. 517.

Sincerely,
Kelsey

**Kelsey Schuetz** | Irell & Manella LLP | (949) 760-5144 | kschuetz@irell.com

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

# Exhibit O



STATE OF NEW YORK              )
                                             )

                                           )

COUNTY OF NEW YORK       )       ss

## CERTIFICATION

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate

translation from German into English of the document identified as PAO_§_155.

Edward J. Jacob
Divergent Language Solutions, LLC

State of New York

County of New York

Subscribed to and sworn before me this 14th day of June , 2022,

by Edward J. Jacob.

Notary Public

MATTHEW C. ZELAK
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ZE6350239
Qualified in Kings County
Commission Expires    November 7, 2024

183 Madison Avenue, Suite 416 | New York, NY 10016 | p 917.979.4513 | f 415.525.4313
600 California Street, 11th Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com

Copy of SZA SCHILLIING, ZUTT ANSCHÜTZ, retrieved June 14, 2022 09:29 - Source: beck-online - DIE DATENBANK

| PAO [Patent Attorney Regulation] | Section 155: Text in force since May 18, 2017 | Federal |
|---|---|---|

## § Section 155[1] Advising and representation of third parties

(1) A patent assessor who, within the scope of application of this Act, performs an activity in the field of intellectual property on the basis of a permanent employment relationship may, within the scope of this employment within the framework of this employment relationship, advise and represent a third party in accordance with Section 3, para. 2 and 3, if

> 1. the third party and the employer of the patent agent are group companies in relation to each other (Sec. 18 of the German Stock Corporation Act) or contracting parties to an inter-company agreement (Sections 291, 292 of the German Stock Corporation Act);

> 2. the third party has neither a domicile nor a place of business in Germany and has contractually authorized the employer of the patent assessor to represent its interests in the field of intellectual property protection.

(2) The patent assessor may, in the case of para. 1, No. 2, be appointed by the third party as agent within the meaning of Section 25 of the Patent Act, Section 28 of the Utility Model Act, Section 11, para. 2 of the Semiconductor Protection Act, Section 58 of the Design Act and Section 96 of the Trademark Act.

(3) Para. 1 No. 2 and Para. 2 shall not apply to in-house patent attorneys (Sec. 41a, para. 2).

---

[1] Section 155, para. 3, inserted by Act dated September 2, 1994 (BGBl. I, p. 2278); para. 2 amended with effect as of January 1, 2002, by Act dated December 13, 2001 (BGBl. I, p. 3656); para. 2, amended with effect as of June 1, 2004, by Act of March 12, 2004 (BGBl. I, p. 390); para. 2 amended with effect as of January 1, 2014, by Act dated October 10, 2013 (BGBl. I, p. 3799); para. 3 revised with effect as of January 1, 2016, by Act dated December 21, 2015 (BGBl. I, p. 2517); paras. 1, 2 and 3 amended with effect as of May 18, 2017, by Act of May 12, 2017 (BGBl. I, p. 1121).

Section 155: Text in force since May 18, 2017

Kopie von SZA SCHILLING, ZUTT ANSCHÜTZ , abgerufen am 14.06.2022 09:29 - Quelle: beck-online DIE DATENBANK

| PAO | [Patentanwaltsordnung] | § 155: Text gilt seit 18.05.2017 | Bund |

## § 155[1] Beratung und Vertretung von Dritten

(1) Ein Patentassessor, der im Geltungsbereich dieses Gesetzes eine Tätigkeit auf dem Gebiet des gewerblichen Rechtsschutzes auf Grund eines ständigen Dienstverhältnisses ausübt, kann im Rahmen dieses Dienstverhältnisses einen Dritten gemäß § 3 Abs. 2 und 3 beraten und vertreten, wenn

1.der Dritte und der Dienstherr des Patentassessors im Verhältnis zueinander Konzernunternehmen (§ 18 des Aktiengesetzes) oder Vertragsteile eines Unternehmensvertrags (§§ 291, 292 des Aktiengesetzes) sind;

2.der Dritte im Inland weder Wohnsitz noch Niederlassung hat und er dem Dienstherrn des Patentassessors vertraglich die Wahrnehmung seiner Interessen auf dem Gebiet des gewerblichen Rechtsschutzes übertragen hat.

(2) Der Patentassessor kann im Fall des Absatzes 1 Nr. 2 von dem Dritten als Vertreter im Sinne des § 25 des Patentgesetzes, des § 28 des Gebrauchsmustergesetzes, des § 11 Abs. 2 des Halbleiterschutzgesetzes, des § 58 des Designgesetzes und des § 96 des Markengesetzes bestellt werden.

(3) Absatz 1 Nummer 2 und Absatz 2 gelten nicht für Syndikuspatentanwälte (§ 41a Absatz 2).

---

[1] § 155 Abs. 3 eingef. durch G v. 2.9.1994 (BGBl. I S. 2278); Abs. 2 geänd. mWv 1.1.2002 durch G v. 13.12.2001 (BGBl. I S. 3656); Abs. 2 geänd. mWv 1.6.2004 durch G v. 12.3.2004 (BGBl. I S. 390); Abs. 2 geänd. mWv 1.1.2014 durch G v. 10.10.2013 (BGBl. I S. 3799); Abs. 3 neu gef. mWv 1.1.2016 durch G v. 21.12.2015 (BGBl. I S. 2517); Abs. 1, 2 und 3 geänd. mWv 18.5.2017 durch G v. 12.5.2017 (BGBl. I S. 1121).

§ 155: Text gilt seit 18.05.2017

# Exhibit P



STATE OF NEW YORK

                             )
                             )
                             )

COUNTY OF NEW YORK       )      ss

## CERTIFICATION

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate

translation from German into English of the document identified as PAO_§_156.


_____

Edward J. Jacob

Divergent Language Solutions, LLC


State of New York

County of New York

Subscribed to and sworn before me this 14th day of June , 2022

by Edward J. Jacob.

_____

Notary Public

MATTHEW C. ZELAK
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ZE6350239
Qualified in Kings County
Commission Expires   November 7, 2024

183 Madison Avenue, Suite 416 | New York, NY 10016 | p 917.979.4513 | f 415.525.4313
600 California Street, 11th Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com

Copy of SZA SCHILLIING, ZUTT ANSCHÜTZ, retrieved June 14, 2022 09:30 - Source: beck-online - DIE DATENBANK

| | | |
|---|---|---|
| PAO [Patent Attorney Regulation] | Section 156: Text in force since May 18, 2017 | Federal |

## § Section 156[1] Appearance before courts

A patent assessor who performs an activity in the field of intellectual property protection within the scope of this Act on the basis of a permanent employment relationship shall be allowed to speak in the legal disputes of his or her employer referred to in Sec. 4 or of the third party referred to in Sec. 155 (1) paras. 1 or 2 at the request of the party.

---

[1] Section 156, para. 2, with effect as of December 18, 2007, by Act dated December 12, 2007 (BGBl. I, p. 2840); amended with effect as of May 18, 2017, by Act dated May 12, 2017 (BGBl. I, p. 1121).

Section 156: Text in force since May 18, 2017

Kopie von SZA SCHILLING, ZUTT ANSCHÜTZ , abgerufen am 14.06.2022 09:30 - Quelle: beck-online DIE DATENBANK

| PAO | [Patentanwaltsordnung] | § 156: Text gilt seit 18.05.2017 | Bund |

### § 156[1] Auftreten vor den Gerichten

Einem Patentassessor, der im Geltungsbereich dieses Gesetzes eine Tätigkeit auf dem Gebiet des gewerblichen Rechtsschutzes auf Grund eines ständigen Dienstverhältnisses ausübt, ist in den in § 4 bezeichneten Rechtsstreitigkeiten seines Dienstherrn oder des in § 155 Abs. 1 Nr. 1 oder Nr. 2 genannten Dritten auf Antrag der Partei das Wort zu gestatten.

---

[1] § 156 Satz 2 aufgeh. mWv 18.12.2007 durch G v. 12.12.2007 (BGBl. I S. 2840); geänd. mWv 18.5.2017 durch G v. 12.5.2017 (BGBl. I S. 1121).

§ 156: Text gilt seit 18.05.2017