IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., )<br><br>Plaintiff, )<br><br>v. )<br><br>SIRUS XM RADIO INC., )<br><br>Defendant. ) | Civil Action No. 17-184-JFB-SRF |

## MEMORANDUM ORDER

At Wilmington this **28th** day of **June, 2022**, the court having considered defendant Sirius XM Radio Inc.'s ("SXM") motion to compel plaintiff Fraunhofer-Gesellschaft Zur Förderung der angewandten Forschung e.V. ("Fraunhofer") to produce certain documents involving Helmut Schubert that were identified on Fraunhofer's privilege log (D.I. 571 at 1-2), SXM's motion to compel Fraunhofer to produce IPXI documents allegedly subject to the common interest privilege (*id.* at 3-4), Fraunhofer's responses thereto (D.I. 573), and the arguments presented during the June 21, 2022 discovery dispute teleconference, IT IS HEREBY ORDERED THAT SXM's motions to compel are GRANTED-IN-PART for the reasons set forth below.

1.      **Background.** Fraunhofer filed this case on February 22, 2017, alleging causes of action against SXM for infringement of U.S. Patent Nos. 6,314,289 ("the '289 patent"), 6,931,084 ("the '1084 patent"), 6,993,084 ("the '3084 patent"), and 7,061,997 ("the '997 patent;" collectively, the "patents-in-suit"). (D.I. 1 at ¶¶ 37-72) The patents-in-suit allegedly cover various aspects of SXM's satellite radio technology. Additional factual background relevant to the particular issues in dispute is addressed in conjunction with the court's analysis.

2. **Application of privilege to non-attorney.** The attorney-client privilege applies to: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (internal quotations omitted). With a focus on the second element, SXM challenges Fraunhofer's assertion of privilege over certain communications on the privilege log identifying "H. Schubert, Esq." as an author or recipient. (D.I. 571 at 1-2) Specifically, SXM seeks disclosure of Entry Nos. 65, 71, 228, 325, 330, 381, 383, 386, and 387 based on its position that Mr. Schubert is not an attorney. (*Id.*, Ex. B at 7, 25, 38, 44-45) The court divides these privilege log entries into three categories for purposes of its analysis: Category 1 includes Entry Nos. 325, 330, and 383; Category 2 includes Entry Nos. 65 and 228; and Category 3 includes Entry Nos. 71, 381, 386, and 387.

3. As the party asserting the privilege, Fraunhofer bears the burden to show that each challenged category of documents is properly designated as privileged. *See Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 477-78 (D. Del. 2012) (party asserting attorney-client privilege has burden of demonstrating that privilege applies). For the reasons set forth below, SXM's motion to compel the production of improperly designated privilege log entries is DENIED with respect to log entries in Categories 1 and 2 and GRANTED with respect to log entries in Category 3.

4. *Category 1.* The court need not reach the issue of Mr. Schubert's status to determine that Fraunhofer has met its burden to show that Entry Nos. 325, 330, and 383 are privileged communications. Entry Nos. 325 and 330 identify Thomas Fischer as a recipient, and there is no dispute that Mr. Fischer is Fraunhofer's in-house counsel. (D.I. 571, Ex. E at 3) Fraunhofer concedes that Entry No. 383 was not sent or received by an attorney, but it notes that

2

the contents of the communication contained legal advice provided by Fraunhofer's counsel at the Schoppe law firm. (*Id.*) These representations are sufficient to establish the privileged nature of the communications. Therefore, SXM's motion to compel is DENIED with respect to the Category 1 log entries.

5. *Category 2.* The log entries in Category 2 describe communications to or from Mr. Schubert regarding patents and patent applications. (D.I. 571, Ex. B at 7, 25) SXM argues that these documents should be produced because Mr. Schubert is neither an attorney nor equivalent, and there has been no showing that the communications were "reasonably necessary" to prosecuting a patent application. (D.I. 571 at 2) In response, Fraunhofer contends that Mr. Schubert is a "Patentassessor" under German law whose role is equivalent to that of an in-house patent attorney. (D.I. 573 at 2) Accordingly, Fraunhofer alleges that Mr. Schubert was authorized to provide legal advice and his communications should remain privileged. (*Id.*)

6. Courts have drawn comparisons between a German "Patentassessor" and a patent agent or in-house patent counsel. *See Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, 1996 WL 732522, at *10 (N.D. Ill. Dec. 18, 1996); *see also Cadence Pharm., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1022-23 (S.D. Cal. 2014) (explaining that communications with German patent agents are confidential under German law). Accordingly, communications to or from a patent assessor are deemed privileged when those communications reflect "legal advice to clients on such issues as patentability, patent infringement and validity." *See Heidelberg Harris*, 1996 WL 732522, at *10.

7. The privilege log describes Entry Nos. 65 and 228 as communications regarding legal advice about patent applications and the '289 patent, respectively. (D.I. 571, Ex. B at 7, 25) These topics fall within the ambit of Mr. Schubert's qualifications as a German patent

3

assessor. (D.I. 573, Ex. 8 at 4) Because these documents reflect confidential information communicated by or to Mr. Schubert for purposes of obtaining patent rights, they are protected under the privilege. *See Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 351411, at *11 (S.D.N.Y. Mar. 31, 2000) (extending attorney-client privilege to communications of a foreign patent agent about a patent application). Consequently, SXM's motion is DENIED with respect to the Category 2 log entries.

8. *Category 3.* Fraunhofer argues that the privilege afforded to Mr. Schubert's communications should extend to the Category 3 log entries involving licensing negotiations. (D.I. 573 at 2-3) However, Fraunhofer has not met its burden to show that the full scope of protection under the attorney-client privilege should be extended to a non-attorney's communications on matters outside of the individual's technical patent expertise. "Because the privilege 'obstructs the truth-finding process, it is construed narrowly[.]'" *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991)). Fraunhofer argues for an overly broad interpretation of the privilege protection that is not supported by the case law or the evidentiary record in this case.

9. The documents in Category 3 include communications regarding patent licensing negotiations and strategy. (D.I. 571, Ex. B at 7, 44-45) During his deposition in February of 2022, Mr. Schubert confirmed that he is not an attorney. (*Id.*, Ex. C at 9:16-21) Mr. Schubert further testified that "[t]he task of negotiating, setting up the contracts, was a task of the law group[,]" and he was not involved in that process. (*Id.*, Ex. C at 32:12-22) Although Mr. Schubert had the authority to sign the license agreements, he did not draft or review them, and he lacked the expertise to interpret them. (*Id.*, Ex. C at 33:14-19, 46:1-48:21) Under these

circumstances, Mr. Schubert cannot be said to have provided legal advice regarding the patent license agreements, as required to establish that those communications are privileged. *See In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012).

10. The cases cited by Fraunhofer do not support a broader application of the privilege. In *Cadence*, the court expressly recognized that "German law does not offer a blanket confidentiality protection for all communications between patent agents and their clients, and requires that communications relate to the rendition of legal services." 996 F. Supp. 2d at 1023; *see also Softview*, 2000 WL 351411, at *11 (declining to extend privilege to communications that did not reflect client confidences). Mr. Schubert's deposition testimony establishes that he was not in a position to provide legal advice regarding the license agreements. (D.I. 571, Ex. C at 33:14-19, 46:1-48:21) Moreover, a German patent professional's ability to provide legal advice is confined to guidance on efforts to obtain and defend patents. *See Heidelberg Harris*, 1996 WL 732522, at *10 (communications to or from a patent assessor are deemed privileged when those communications reflect "legal advice to clients on such issues as patentability, patent infringement and validity."); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 524 (S.D.N.Y. 1992) ("Since I conclude . . . that the communications concern solely a foreign non-party client's prosecution of a foreign patent, I conclude that the documents should be protected."). None of the cases cited by Fraunhofer expressly suggests that the confidentiality protections afforded to German patent assessors may extend to communications regarding contractual matters.

11. The record establishes that Mr. Schubert is not an attorney, and he does not possess qualifications or expertise in contract law in his role as a German patent assessor. (D.I. 571, Ex. C at 9:16-21; 32:12-22; 33:14-19, 46:1-48:21) Mr. Schubert's communications

regarding licensing negotiations are not protected from disclosure because they were not made between privileged persons for the purpose of providing legal assistance. *See In re Grand Jury*, 705 F.3d at 160. SXM's motion is therefore GRANTED with respect to the Category 3 log entries.

12. **Common interest privilege.** SXM also seeks the production of Entry Nos. 350, 351, 353, 354, 355, 370, and 371 on the privilege log, which are described as relating to Fraunhofer's patent licensing efforts with IPXI. (D.I. 571 at 3-4) In response, Fraunhofer contends that these documents are privileged because Fraunhofer and IPXI shared a common legal interest in the strength of the subject patent rights at the time the documents were created. (D.I. 573 at 3-4)

13. The common interest privilege is an extension of the attorney-client privilege, protecting from discovery communications among clients and attorneys "allied in a common legal cause." *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020) (quoting *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (citation omitted)). The privilege "is an exception to the general rule that an applicable privilege will be deemed waived if the relevant materials are disclosed to a third party." *Astellas US LLC v. Apotex Inc.*, C.A. No. 18-1675-CFC-CJB, 2021 WL 1518716, at *1 (D. Del. Apr. 8, 2021).

14. As the party asserting the privilege, Fraunhofer bears the burden of establishing that the privilege applies. *10x Genomics*, 505 F. Supp. 3d at 337 (citing *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012)). To meet this burden, Fraunhofer must show that the interests it claims to hold in common are "identical, not similar," and the communications it seeks to protect "would not have been made but for the sake of securing, advancing, or supplying legal representation." *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010).

The privilege may extend to communications including discussions of business interests as long as those communications are "infused with legal concerns." *MobileMedia Ideas LLC v. Apple Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012). "[T]he key time period . . . is the time when the communications-at-issue were actually made." *Astellas*, 2021 WL 1518716, at *1.

15. Fraunhofer has not met its burden to show that it shared a common legal interest with IPXI between November 2013 and January 2014, during the time the communications identified at Entry Nos. 353, 354, 355, 370, and 371 were made. (D.I. 571, Ex. B at 41, 43) There is no dispute that these documents predate the License Option Agreement and Master Agreement executed between Fraunhofer and IPXI. (D.I. 571, Exs. L & M) Before the License Option Agreement and Master Agreement were executed, the prospect of Fraunhofer and IPXI sharing a common legal interest "was too remote, contingent and uncertain to allow for invocation of the common interest doctrine[.]" *Astellas*, 2021 WL 1518716, at *3.

16. Fraunhofer contends that it shared a common legal interest with IPXI before November 2013 because it executed the Nondisclosure Agreement ("NDA") with IPXI on April 17, 2013. (D.I. 573 at 3; Ex. 10) However, a review of the NDA shows that the parties viewed their relationship as commercial in nature, and IPXI was not given any legal rights or obligations regarding the patents at the time: "Nothing herein shall obligate any party to proceed with any transaction among them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning this business opportunity." (*Id.*, Ex. 10 at ¶ 5) The NDA was executed solely to allow the exchange of information between Fraunhofer and IPXI with the goal of later entering into a licensing agreement, and it imposed no duty on IPXI beyond the duty not to disclose confidential information. This is insufficient to create an identical legal interest. *See Carnegie Inst. of Washington v. Pure Grown Diamonds, Inc.*, 481 F.

Supp. 3d 276, 279 (S.D.N.Y. 2020) (sharing confidential information for contemplated purchase of license is not sufficient to create common legal interest); *Astellas*, 2021 WL 1518716, at *3 (finding that communications "accompanied by various legal buzzwords, such as notations that the content is 'privileged' or 'protected from discovery' or 'confidential[,]'" were insufficient to establish a common legal interest).

17. Fraunhofer also refers to a January 2013 Private Sponsor Confidential Information Memorandum from IPXI, containing a blank form which mirrors the terms of the Master Agreement, along with a blank form of Exhibit A without any patents listed. (D.I. 573, Ex. 11 at F00382616) A review of this document shows that it does not specifically identify or target Fraunhofer. (*Id.*) It includes a request that "each participating party return to IPXI the Form of Commitment Letter found herein no later than February 15, 2014," but the record before the court is devoid of any such Commitment Letter executed by Fraunhofer. (*Id.* at F00382536) Moreover, the materials were provided for informational purposes and fail to demonstrate a common legal interest. (*Id.* at F00382534, F00382536) The NDA executed by Fraunhofer and IPXI does not incorporate by reference or otherwise refer to this document. (*Id.*, Ex. 10) Consequently, neither the Private Sponsor Confidential Information Memorandum nor the NDA are sufficient to demonstrate the existence of a common legal interest between Fraunhofer and IPXI.

18. Although the common interest privilege does not apply to Entry Nos. 353, 354, 355, 370, and 371 for the reasons set forth above, Fraunhofer has met its burden to show that select portions of Entry Nos. 353, 355, 370, and 371 remain protected by the attorney-client privilege because they were never shared with IPXI. (D.I. 571, Ex. J at 5) Similarly, Entry No. 350 is protected by the attorney-client privilege in its entirety because Fraunhofer has confirmed

that the document was not shared with IPXI, and IPXI representatives I. McClure and B. Michalek were erroneously listed as recipients on the privilege log. (*Id.*) SXM challenges only Fraunhofer's assertion of the common interest privilege regarding these documents, and it has raised no objection to the applicability of the attorney-client privilege for the portions of the documents that were not shared with IPXI.

19. Fraunhofer has met its burden to establish the applicability of the common interest privilege with respect to Entry No. 351. This log entry is dated July 30, 2014, following the execution of the Master Agreement by Fraunhofer and IPXI, but before their September 2014 execution of the License Option Agreement. (D.I. 571, Ex. B at 41; Ex. L; Ex. M) A review of the Master Agreement establishes that Fraunhofer and IPXI were committed to an exclusive license agreement and had agreed to mutual obligations, for example, IPXI's right to seek a "Commercially Essential" Evaluation of the patents by an expert. As parties to the Master Agreement, they shared a common legal interest in strong and enforceable patents. (*Id.*, Ex. M at F00372183-84) Entry No. 351 is a communication allegedly made to obtain legal advice regarding IPXI's licensing of the patents. (D.I. 571, Ex. B at 41) Fraunhofer and IPXI were in the final stages of completing the licensing deal, and their common interest in the strength of the patents was established. *See TC Tech. LLC v. Sprint Corp.*, C.A. No. 16-153-RGA, 2018 WL 6584122, at *4-5 (D. Del. Dec. 13, 2018) (finding a shared legal interest in acquiring and enforcing patent-in-suit prior to formal agreement transferring rights in the patent based on the stage of the parties' negotiations to purchase the patent-in-suit and formation of an LLC to achieve that end). Therefore, SXM's motion to compel is DENIED with respect to Entry No. 351.

20.  **Conclusion.** For the foregoing reasons, SXM's motions to compel (D.I. 571) are GRANTED-IN-PART as follows:

- SXM's motion to compel the production of Entry Nos. 71, 354, 381, 386, and 387 is GRANTED. Fraunhofer shall produce these documents within fourteen (14) days of the date of this Memorandum Order. *See* Standing Order for Objections Filed under Fed. R. Civ. P. 72, at ¶ 8 (D. Del. Mar. 7, 2022); *In re Fraunhofer-Gesellschaft zur Forderung der angewandten Forschung E.V.*, 2022 WL 843420, at *1 (Fed. Cir. Mar. 22, 2022).

- SXM's motion to compel the production of Entry Nos. 65, 228, 325, 330, 350, 351, and 383 is DENIED.

- SXM's motion to compel the production of Entry Nos. 353, 355, 370, and 371 is GRANTED-IN-PART. Fraunhofer shall produce these documents, with the exception of portions not shared with IPXI which remained internal to Fraunhofer and Fraunhofer's counsel, within fourteen (14) days of the date of this Memorandum Order. *See* Standing Order for Objections Filed under Fed. R. Civ. P. 72, at ¶ 8 (D. Del. Mar. 7, 2022); *In re Fraunhofer*, 2022 WL 843420, at *1.

21.  Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Opinion should be redacted, the parties shall jointly submit a proposed redacted version by no later than **July 5, 2022,** for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re*

*Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Order issued.

22. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to five (5) pages each.

23. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge