IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FORDERUNG DER ANGEWANDTEN FORSCHUNG E.V.,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | 1:17CV184<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on plaintiff Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung E.V.'s ("Fraunhofer") objections (D.I. 587) to an order of the magistrate judge dated June 28, 2022 regarding privileged documents (D.I. 579).

I.   BACKGROUND

The background facts are set out in *Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 940 F.3d 1372 (Fed. Cir. 2019) *der angewandten Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 940 F.3d 1372, 1374–77 (Fed. Cir. 2019) and need not be repeated here. Briefly, Fraunhofer sued defendant Sirius XM Radio, Inc. ("Sirius") for alleged infringement of four patents.[1] This Court dismissed the action for failure to state a claim and denied leave to amend. D.I. 175. The United States Court of Appeals for the Federal Circuit vacated that judgment, reversed the denial of leave to amend, and

---

[1] Those are U.S. Patent Nos. 6,314,289 ("the '289 patent"), 6,931,084 ("the '1084 patent"), 6,993,084 ("the '3084 patent"), and 7,061,997 ("the '997 patent") (collectively, the "patents-in-suit"), that relate to the method, known as MCM, used to transmit data which splits components and sends them over separate carrier signals.

1

remanded for further proceedings. *Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V.*, 940 F.3d at 1383.

The present discovery dispute involves two disputed categories of allegedly privileges documents: (1) documents having to do with a patent licensing entity named "IPXI" that communicated extensively with Fraunhofer regarding a potential joint licensing arrangement for Fraunhofer's '289 patent, culminating in a formal "Master Agreement" and "License Option Agreement" executed in July and September 2014; and (2) communications of Fraunhofer's patentassessor Helmut Schubert on log entries involving licensing negotiations.

The Magistrate Judge found Fraunhofer had not met its burden to show that it shared a common legal interest with IPXI between November 2013 and January 2014 when the challenged communications (identified at D.I. 571, Ex. B at 41, 43, Entry Nos. 353, 354, 355, 370, and 371) were made. D.I. 579, Magistrate Judge Order at 7. She found the documents predated the License Option Agreement and Master Agreement executed between Fraunhofer and IPXI and at that time "the prospect of Fraunhofer and IPXI sharing a common legal interest 'was too remote, contingent and uncertain to allow for invocation of the common interest doctrine[.]'" *Id.* (quoting *Astellas US LLC v. Apotex Inc.*, No. CV 18-1675-CFC-CJB, 2021 WL 1518716, at *3 (D. Del. Apr. 8, 2021)). She also found that Fraunhofer had not met its burden to show that a non-attorney's communications on matters outside of the individual's technical patent expertise (Category 3 documents) should be afforded the full scope of protection under the attorney-client privilege. *Id.* at 4.

Fraunhofer contends the Magistrate Judge erred on two critical legal issues: (1) the extent to which confidential discussions between parties pursuing an exclusive patent license deal are protected by the common interest privilege even before a final agreement is reached, and (2) the scope of privilege available to a unique type of German legal professional known as a "patentassessor" (analogous to in-house patent counsel). Fraunhofer argues that defendant SXM's challenges to Fraunhofer's privilege claims should be rejected in their entirety.

In response, Sirius argues that the Magistrate Judge correctly applied the governing law in concluding that Fraunhofer had not met its burden to establish any common interest privilege existed between Fraunhofer and IPXI prior to their execution of the Master Agreement and License Option Agreement. Further, it argues the Magistrate Judge did not err in failing to apply a wholesale privilege to patentassessor Helmut Schubert's communications because the communications at issue did not concern the prosecution of a patent.

II.   LAW

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b). The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A). *Gomez v. United States*, 490 U.S. 858, 873–74, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989); *see also* Fed. R. Civ. P. 72(a). Under 28 U.S.C. § 636(b)(1)(A), a district court may reconsider any pretrial matter under subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. *See Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d

Cir. 2017). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id.* Rule 72(b)(3) requires de novo review of any recommendation that is dispositive of a claim or defense of a party.

A finding of fact can be set aside as clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007). The district court must accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). "District courts have broad discretion to manage discovery." *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1558 (Fed. Cir. 1983)). The applicability of a privilege is a factual question and the determination of the scope of the privilege is a question of law. *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986).

It is clear "that a party who asserts a privilege has the burden of proving its existence and applicability." *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). "The common interest privilege is an extension of the attorney-client privilege, protecting from discovery communications among clients and attorneys 'allied in a common legal cause.'" *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020) (quoting *In re Regents of Univ. of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (citation omitted)). The privilege "is an exception to the general rule that an applicable privilege will be deemed waived if the relevant materials are disclosed to a third party." *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del.

4

2010). To meet the burden of showing that the privilege applies, the party asserting the privilege must demonstrate "that 'the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation.'" *Id.* (quoting *In re Regents of University of California*, 101 F.3d at 1389). Further, for a communication to be protected, the interests must be "identical, not similar, and be legal, not solely commercial." *Id.* (quoting *In re Regents of University of California*, 101 F.3d at 1390); *see Katz v. AT & T Corp.*, 191 F.R.D. 433, 438 (E.D. Pa. 2000) (affirming finding that the plaintiffs failed to meet their burden of showing the requisite identity of interests required under the doctrine because the parties had not reached an agreement, final or otherwise, as to the licensing issues prior to the signing of the agreement).

"American law typically applies to communications concerning 'legal proceedings in the United States' or 'advice regarding American law,' whereas foreign privilege law typically governs communications relating to 'foreign legal proceeding[s] or foreign law.'" *Cadence Pharms., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014) (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010)). "In the context of patent law, courts often look to the law of the country where legal advice was rendered or where the patent application is pending." *Id.* "Communications between a foreign client and a foreign patent agent 'relating to assistance in prosecuting patent applications in the United States' are governed by the U.S. privilege law." *Id.* (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992)). "Communications 'relating to assistance in prosecuting' foreign patent applications or 'rendering legal advice . . . on the patent law' of foreign country are, as a matter of comity, governed by the privilege 'law of the foreign country in which the patent application is

5

filed,' even if the client is a party to a suit in the U.S." *Id.* (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1170–71 (D.S.C. 1974)). "Privilege for foreign patent agent communications should be 'strictly construed,' and all 'doubts should be resolved in favor of disclosure.'" *Cadence Pharmaceuticals, Inc.*, 996 F. Supp. 2d at 1019–20 (quoting *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000)).

Under German law, "[a] 'Patentassessor' is an in-house patent attorney who is qualified to practice before the German Patent Office, but who is not able to represent a client before the German District Court." *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 WL 732522, at *8–9 (N.D. Ill. Dec. 9, 1996). "Patentassessors are qualified to conduct any activities which take place before the German Patent Office, including the appealing of decisions of examiners on applications, and the filing and litigating of opposition proceedings" and "may also provide legal advice to clients on such issues as patentability, patent infringement and validity." *Id.* However, there is a distinction made between Patentassessors and a Rechtsanwalt, or an attorney-at-law, who appears before the civil and criminal courts. *Id.*; *see also Cadence Pharmaceuticals, Inc.*, 996 F. Supp. 2d at 1022–23 (recognizing that "German law does not offer a blanket confidentiality protection for all communications between patent agents and their clients, and requires that communications relate to the rendition of legal services). A German patent professional's ability to provide legal advice is confined to guidance on efforts to obtain and defend patents. *See Heidelberg Harris, Inc.*, 1996 WL 732522, at *10 (communications to or from a patent assessor are deemed privileged when those communications reflect "legal advice to clients on such issues as patentability, patent infringement and validity.")

III.     DISCUSSION

The Court finds the Magistrate Judge committed no clear error in finding that Fraunhofer had not shown it shared a common legal interest with IPXI before the Master Agreement was executed.  The Court agrees that Fraunhofer had not shown any identical legal interest with IPXI between November 2013 and January 2014 when the challenged communications were made.  Fraunhofer's reliance on *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2019 WL 4917894, at *3 (D. Del. Oct. 4, 2019) for its proposition that the Magistrate Judge failed to follow established law is unavailing.  That case involved a letter of intent, and not a nondisclosure agreement ("NDA") such as that involved here.  An NDA does not create legal obligations beyond nondisclosure.  The evidence supports the conclusion that Fraunhofer and IPXI were in discussions about a potential agreement without any obligations and thus no common interest privilege applies to the communications that predated the Master Agreement.

Further, the Court finds no error in the Magistrate Judge's refusal to apply a wholesale privilege to Helmut Schubert's communications.  The Magistrate Judge properly held that the privilege applied to Schubert's communication concerning patent prosecution, but did not extend to is advice on licensing topics.  The Court agrees that the confidentiality protections afforded to German patent assessors does not extend to communications regarding contractual matters.  The Court is satisfied no mistake has been made and, accordingly, the Court will not set aside the Magistrate Judge's factual findings.

The Court has reviewed the parties' submissions and finds no error of fact or law in the Magistrate Judge's rulings.  Therefore,

7

IT IS ORDERED THAT:

1. Plaintiff's objections (D.I. 587) to the order of the Magistrate Judge (D.I. 579) are overruled.

2. The order of the Magistrate Judge (D.I. 579) is affirmed in all respects.

3. The stay (D.I. 586) imposed on that portion of the Magistrate Judge's order that required production of documents by July 12, 2022, is lifted.

4. Sirius XM's motion to compel is granted with respect to the Category 3 log entries.

4. Sirius XM's motion to compel the production of D.I. Nos. 353, 355, 370, and 371 is granted in part. Fraunhofer shall produce those documents, with the exception of portions not shared with IPXI which remained internal to Fraunhofer and Fraunhofer's counsel, within fourteen (14) days of the date of this Order.

Dated this 2nd day of September, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge