# Exhibit A

# SXM Section 112 Arguments Narrowing Worksheet

***Instructions:*** *Select no more than **six** boxes below to identify SXM's elected Section 112 arguments.*
*(page numbers refer to the Expert Report of David Lyon, Ph.D. served on October 18, 2022)*

## '289 Patent

☐ The Limitation of "the Receiver" Renders '289 Patent Claims 2-5 and 19-22 Indefinite (page 196)

☐ The Limitation of "The First Channel Being Defined by the First Transmitter and the Receiver; and the Second Channel Being Defined by the Second Transmitter and the Receiver" Renders '289 Patent Claims 19-22 Indefinite (page 198)

☐ The Limitation of "The Step of Transmitting Being Carried Out by a First Transmitter and a Second Transmitter Spaced Apart From the First Transmitter" Renders '289 Patent Claims 19-22 Indefinite (page 199)

☐ The Limitation of "Means for Transmitting the Output Bits of the First Portion Via a First Channel and the Output Bits of the Second Portion Via a Second Channel, the Second Channel Being Spatially Different from the First Channel" Renders '289 Patent Claims 2-5 Indefinite (page 199)

☐ The Limitation of "a Transmitter for Transmitting the Output Bits of the First Portion Via a First Channel and the Output Bits of the Second Portion Via a Second Channel, the Second Channel Being Spatially Different From the First Channel" Renders '289 Patent Claims 6-8 Indefinite (page 200)

☐ The Limitation of "Delay Means for Delaying the Second Portion of Output Bits Transmitted Via the Second Channel Such That Time Diversity is Obtained" and "Delay Means" Renders '289 Patent Claims 5 and 11 Indefinite (page 202)

☐ The Limitation of "Delay Means" Renders '289 Patent Claims 5 and 11 Invalid (page 203)

☐ The Limitation of "Depuncturing Means for Compensating for a Puncturing Operation in a Transmitter is Provided and Attributes to a Bit to Be Depunctured Equal Probabilities for the High and Low States" Renders '289 Patent Claim 13 Indefinite (page 205)

☐ The Limitation of "Being Coded Based on the Bitstream in a Different Way with Respect to the Second Portion of Output Bits" Renders '289 Patent Claims 2-8 and 13 Indefinite (page 207)

☐ The Limitation of "Being Encoded in a Different Way With Respect to the Second Portion of Bits" Renders '289 Patent Claims 10, 11 and 13 Indefinite (page 208)

☐ The Limitation of "The First and Second Transmitters Include Two Satellites in Different Orbital Positions, Such that the First Channel is Defined by an Uplink Connection from Earth to the First Satellite and a Downlink Connection From The First Satellite to a Receiver On Earth, And Such that the Second Channel is Defined by a Uplink Connection from Earth to the Second Satellite and a Downlink Connection from the Second Satellite to the Receiver on Earth" Renders '289 Patent Claim 20 Indefinite (page 208)

☐ The Limitation of "One Transmitter Includes a Satellite; and the Other Transmitter Includes a Terrestrial Sender Such that Terrestrial Diversity is Obtained" Renders '289 Patent Claim 21 Indefinite (page 210)

☐ The Limitation of "Terrestrial Diversity" Renders '289 Patent Claim 21 Indefinite (page 211)

☐ The Limitation of "the Stored Bits" Renders '289 Patent Claim 26 Indefinite (page 211)

☐ The Limitation of "The Decoder Comprising a Soft Decision Decoder Processing Probabilities in that a Received Bit Represents a High or Low State Rather than an Actual Wave Form

Characteristic of the Received Bit Stream" Renders '289 Patent Claims 13 and 31 Indefinite (page 212)

☐ The Limitation of "Producing a Serial Stream of the Stored Bits to be Partitioned Into the First and Second Portion of Output Bits by the Step of Parallel-To-Serial Converting" Renders '289 Patent Claim 26 Indefinite (page 214)

☐ The Limitation of "To be Encoded With at Least One of a Certain Number of Preceding Input Bits" Renders '289 Patent Claims 23-25 Invalid (page 214)

☐ '289 Patent Claims 20 and 21 Are Invalid as Indefinite Because the Scope of the Claims Are Not Reasonably Ascertainable (page 215)

**'1084 Patent**

☐ The "Pre-Rotating" Limitation Renders '1084 Patent Claim 4 Indefinite (page 237)

☐ The Limitation of "Determining Parameters a, b of a Straight Line Approximating the Location of Said Pre-Rotated Signal Points in Said Complex Plane" Renders '1084 Patent Claim 4 Indefinite (page 240)

☐ The Determination of a Phase Offset Based on Said "a, b" Parameters Renders '1084 Patent Claim 4 Indefinite (page 241)

☐ The Limitation of "Means for Comparing An Absolute Value of a Symbol Associated With a Respective Decoded Phase Shift With a Threshold" Renders '1084 Patent Claim 9 Indefinite (page 242)

☐ The Limitation of "Means for Determining an Echo Phase Offset for Each Decoded Phase Shift Comprising Means for Eliminating Phase Shift Uncertainties Related to the Transmitted Information from Said Decoded Phase Shift" (and related term in Claim 1) Renders '1084 Patent Claims 1 and 9 Indefinite (page 243)

☐ The Limitation of "Averaging Said Echo Phase Offsets in Order to Generate an Averaged Offset" Renders '1084 Patent Claims 1 and 9 Indefinite (page 244)

☐ The Limitation of Correcting Each Decoded Phase Shift Based on Said "Averaged Offset" Renders '1084 Patent Claims 1, 4 and 9 Indefinite (page 245)

**'3084 Patent**

☐ The Limitation of "Means for Extracting Said Reference Symbol and Said At Least One Guard Interval from Said Down-Converted Received Multi-Carrier Modulated Signal Based on Said Frame Synchronization in Order to Generate Said at Least One Useful Symbol" Renders '3084 Patent Claim 41 Indefinite (page 276)

☐ The Limitation of "Performing an Amplitude Modulation of a Bit Sequence" Renders '3084 Patent Claims 1, 6, 7, and 24 Indefinite (page 277)

☐ The Limitation of "Wherein Said Reference Symbol Comprises a Real Part and an Imaginary Part, Said Real Part and Said Imaginary Part Being Equal and Being Formed by Said Amplitude Modulated Bit Sequence" Renders '3084 Patent Claims 1 and 24 Indefinite (page 278)

☐ The Limitation Reciting Means for "Performing Said Frame Synchronization Based on the Detection of Said Signal Reference Pattern" Renders '1084 Patent Claim 9 Indefinite (page 279)

☐ The Asserted Claims of the ''3084 Patent Are Invalid As Not Enabled (page 280)

**'997 Patent**

☐ The Limitation of "Means for Determining Respective Phases of the Same Carrier in Different Symbols Which are Adjacent in the Time Axis Direction" Renders '997 Patent Claim 4 Indefinite (page 305)

☐ The Limitation of "Means for Determining a Frequency Offset by Determining a Phase Difference Between Said Phase Deviations" Renders '997 Patent Claim 2 Indefinite (page 306)

☐ The Limitation of "Means for Determining Respective Phases of the Same Carrier in Symbols Which Are Adjacent in the Time Axis Direction" Renders '997 Patent Claim 4 Indefinite (page 308)

☐ The Limitation of an M-PSK decision device for "Eliminating Phase Shift Uncertainties Related to the Transmitted Information From Said Phases to Determine Respective Phase Deviations" Renders '997 Patent Claims 1, 4 and 6 Indefinite (page 309)

☐ The Limitation of "An Averaged Frequency Offset is Determined by Averaging Said Determined Frequency Offsets of Said Plurality of Carriers" Renders '997 Patent Claims 1, 4 and 6 Indefinite (page 310)

☐ The Limitation of "The Same Carrier in Different Symbols" Renders '997 Patent Claims 1, 4 and 6 Indefinite (page 311)

# Exhibit B

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4
        FRAUNHOFER-GESELLSCHAFT ZUR  :   CIVIL ACTION
 5      FÖRDERUNG DER ANGEWANDTEN     :
        FORSCHUNG E.V.,               :
 6                                    :
                     Plaintiff,      :
 7                                    :
            vs.                       :
 8                                    :
        SIRIUS XM RADIO INC.,         :
 9                                    :
                     Defendant.   :   NO. 17-184-JFB-SRF
10

11                        - - -

12                        Wilmington, Delaware
                          Tuesday, February 6, 2018
13                        2:00 o'clock, p.m.
                          ***Telephone conference
14

15                        - - -

16      BEFORE:  HONORABLE SHERRY F. FALLON, U.S. MAGISTRATE JUDGE

17                        - - -

18      APPEARANCES:

19              FARNAN LLP
                BY:  BRIAN E. FARNAN, ESQ.
20

21                   -and-

22

23

24                           Valerie J. Gunning
                             Official Court Reporter
25
```

18

1  least a week. We'd propose that we get a list of claim
2  terms by this Friday and then at least we've got a week to
3  drill down on the particular terms that Sirius XM has
4  identified as the highest priority at this stage.
5          THE COURT: All right. Mr. Baghdassarian?
6          MR. BAGHDASSARIAN: Thank you, Your Honor.
7          Your Honor, this is the issue about Fraunhofer's
8  counsel ignoring one side of the equation here on the
9  asserted claims. He says, well, we know Sirius XM is
10  supposed to know the claim limitations that are most
11  important. Your Honor, Fraunhofer is the plaintiff here.
12  It knows its infringement case. It knows the best claims
13  that it has to assert against Sirius XM.
14          Fraunhofer is the one position that's driving
15  everything here. What I just heard was, well, let Sirius XM
16  tell us what we think, what Sirius XM thinks are the most
17  important claim terms, and Fraunhofer will respond.
18  That's not how the process works here, Your Honor. This
19  is the same issue it was with their failure to provide
20  any proposed constructions as required by the scheduling
21  order. It doesn't go, defendant tells the plaintiff,
22  here's what's important in the case, here's how everything
23  works, here are the claim limitations that are at issue in
24  the case.
25          These things are done concurrently and together

19

1  with simultaneous exchanges, and the problem, what I just
2  heard was, well, it's an issue about the number of
3  claim limitations that require construction or claim terms
4  that require construction. That issue cannot be divorced
5  from the number of asserted claims here. They go hand in
6  hand, Your Honor. There's no way to divorce those two
7  things.
8          And what we're submitting is we have a reduction
9  in the number of asserted claims or we use representative
10  claims here to make this case manageable, because
11  Fraunhofer's approach is, well, let's just do ten claim
12  terms.
13          Ten claim terms doesn't even scratch the surface
14  for the number of asserted claims here, and particularly
15  here when you have as many means-plus-function claims as you
16  do, 39 limitations that the parties now agree have to be
17  construed.
18          There's only -- there's really only one
19  practical way to reduce the starting point, to reduce that
20  is, well, which of those means-plus-function claims do they
21  not need anymore? They have more than enough determination
22  to at a minimum to find representative claims from these
23  patents. When we have that list, let's go ahead and focus
24  on a narrow set of claim limitations.
25          We have a problem doing that, but, you know,

20

1  that chicken-and-egg problem I was talking about before.
2  Let's do the first thing first, the number of asserted
3  claims, and that will help drive down the number of claim
4  limitations at issue.
5          MR. McPHIE: Your Honor, if I could just, two
6  additional points in response.
7          THE COURT: Go ahead.
8          MR. McPHIE: Under Sirius XM's approach, I don't
9  see how a plaintiff could ever bring means-plus-function
10  claims. We don't agree that you have to construe all
11  means-plus-function terms at this stage. We've never agreed
12  to that. Certainly, in our initial proposal, we didn't
13  agree to that, although we provided responsive proposals.
14          They are the ones that are the masters of their
15  defenses, and that's what these terms are about. They're
16  about setting up defenses or alleged defenses that Sirius XM
17  thinks they have. They can control that.
18          The second point I kept hearing, we can't
19  divorce these issues, they always go hand in hand. I just
20  think we've shown over and over again, not only can you
21  separate those issues, but courts regularly separate out
22  those issues. In fact, I think most commonly you see them
23  treated separately.
24          This attempt to use this excess of claim terms
25  as a lever to get an early summary judgment motion on a

21

1  whole bunch of means-plus-function claims and have them
2  dismissed from the case at a premature stage is not
3  improper, it's unprecedented, and it's extremely prejudicial
4  to Fraunhofer.
5          THE COURT: All right. Anything further,
6  Mr. Baghdassarian?
7          MR. BAGHDASSARIAN: Your Honor, I will be very
8  short.
9          THE COURT: Go ahead.
10          MR. BAGHDASSARIAN: I disagree with what
11  Mr. McPHIE said. We are not asking to prejudice them in a
12  summary judgment motion. We are asking for a manageable way
13  to get to a reasonable number of claims.
14          If they want to raise a claim in the future,
15  that's fine. Let's go with representative claims. We're
16  not saying because you choose that to preclude it, just like
17  they're saying if we limit it to ten limitations, we're not
18  precluded. But from the point of view of efficiency, our
19  approach is much more efficient than theirs, okay, because
20  it reduces the chances of the Court doing work that will end
21  up not being needed later in the case because we shed claims
22  at a much later stage in the case and now the claim
23  construction that we ended up doing, because -- ended not
24  mattering because they dropped that claim.
25          There are enough claims, and now we're back to

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HUBER ENGINEERED WOODS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 19-342-VAC-SRF |
| | ) |
| LOUISIANA-PACIFIC CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Presently before the court in this patent infringement action are the following motions:

(1) a motion to dismiss defendant Louisiana-Pacific Corporation's ("LP") new inequitable

conduct counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),

filed by plaintiff Huber Engineered Woods LLC ("HEW"), (D.I. 301);[1] (2) HEW's motion to

strike certain defenses and counterclaims pursuant to Federal Rule of Civil Procedure 12(f), (D.I.

303);[2] (3) HEW's motion to strike certain new initial invalidity contentions and prior art

references, (D.I. 328);[3] (4) HEW's motion to strike certain new final invalidity contentions and

prior art references, (D.I. 448);[4] (5) LP's motion to strike untimely infringement contentions,

(D.I. 399);[5] and (6) HEW's cross-motion for leave to file a second amended complaint, (D.I.

---

[1] The briefing associated with the pending motion to dismiss is found at D.I. 302, D.I. 314, and D.I. 317.

[2] The briefing associated with the pending motion to strike certain defenses and counterclaims is found at D.I. 304, D.I. 311, and D.I. 312.

[3] The briefing associated with the pending motion to strike certain invalidity contentions and prior art references is found at D.I. 329, D.I. 341, and D.I. 349.

[4] The briefing associated with the pending second motion to strike certain invalidity contentions and prior art references is found at D.I. 449, D.I. 457, and D.I. 459.

[5] The briefing associated with the pending motion to strike untimely infringement contentions is found at D.I. 400, D.I. 418, and D.I. 437.

418).[6]  For the following reasons, I recommend that the court GRANT HEW's motion to supplement the amended complaint and DENY the pending motions in all other respects.

## I.   BACKGROUND

HEW filed this case on February 18, 2019, alleging causes of action against LP for infringement of eight patents: U.S. Patent Nos. 8,474,197 ("the '197 patent"), 9,010,044 ("the '044 patent"), 9,382,713 ("the '713 patent"), 9,546,479 ("the '479 patent"); 9,689,159 ("the '159 patent"); 9,695,588 ("the '588 patent"); 9,702,140 ("the '140 patent"); and 10,072,415 ("the '415 patent;" collectively, the "patents-in-suit").  (D.I. 1 at ¶¶ 26-174)  The patents-in-suit allegedly cover HEW's commercial structural sheathing systems used in the construction of buildings under the ZIP System® trademark.  (*Id.* at ¶ 7; D.I. 284 at ¶ 7)  The pleading states that LP's WeatherLogic™ Air & Water Barrier panels and WeatherLogic™ Seam & Flashing Tape infringe HEW's ZIP System® products.  (D.I. 1 at ¶¶ 20-25; D.I. 284 at ¶¶ 23-29)  LP responded with its answer and counterclaims on April 11, 2019.  (D.I. 8)  Thereafter, the case proceeded through the conclusion of fact discovery and the beginning of expert discovery.  (D.I. 199; D.I. 200; D.I. 297 at ¶ 232)

In November of 2020, LP served its supplemental invalidity contentions which notified HEW of priority defects in the '044 and '588 patents and other members of the ZIP patent family that allegedly rendered those patents invalid.  (D.I. 297 at ¶¶ 212-13)  On November 19, 2020, HEW's prosecution counsel attempted to address the alleged defects by filing a petition under 37 C.F.R. § 1.78 ("Section 1.78 Petition") for a pending application to accept an unintentionally

---

[6] The briefing associated with the pending cross-motion for leave to file a second amended complaint is found at D.I. 418, D.I. 437, and D.I. 446.

delayed priority claim. (*Id.* at ¶ 213)  HEW did not file corresponding Section 1.78 Petitions for the '044 and '588 patents at that time.

In January of 2021, HEW filed Requests for Certificates of Correction ("CoCs") to change the priority claims in the '588 and '044 patents based on two provisional applications filed on February 23, 2004.  (D.I. 297 at ¶¶ 214, 218, 222, 234)  HEW's Requests for CoCs were not accompanied by Section 1.78 Petitions.  (D.I. 297 at ¶¶ 214, 218)  The U.S. Patent and Trademark Office ("USPTO") initially denied the Requests for CoCs and indicated that HEW was required to submit Section 1.78 Petitions.  (*Id.*)

After further evaluation, HEW submitted Requests for CoCs and corresponding Section 1.78 Petitions for the '588 and '044 patents in May of 2021.  (D.I. 297 at ¶¶ 222, 224; D.I. 443, Ex. 3 at 37-38)  The USPTO granted the Section 1.78 Petitions in June of 2021 and issued CoCs changing the priority of the '588 and '044 patents the following month.  (D.I. 297 at ¶¶ 223, 225; D.I. 443, Ex. 3 at 38)  The CoC for the '588 patent issued on July 13, 2021, setting forth a priority claim dating back to the 2004 provisional applications.  (D.I. 284, Ex. P; D.I. 297 at ¶ 233, 241; D.I. 341, Ex. A at ¶ 36)  No changes were made to the specification or claims of the corrected '588 patent.

Two months after the CoC issued for the '588 patent, HEW indicated it was no longer asserting a priority date of February 23, 2004, for purposes of this litigation.  (D.I. 297 at ¶ 241)  Instead, HEW represented that the earliest possible priority dates for the patents-in-suit was January 4, 2005.  (*Id.*)  HEW confirmed that its position regarding the applicable priority date applied to both the uncorrected and corrected '588 patent.  (*Id.*)

In August of 2021, HEW moved to supplement its complaint to add a cause of action for infringement of the corrected '588 patent.  (D.I. 208, Ex. B at ¶ 141; D.I. 209)  The court denied

3

HEW's motion to supplement in an order dated September 9, 2021, concluding that HEW was required to file a new lawsuit or seek leave to amend the complaint to add a cause of action for infringement of the corrected '588 patent.  (D.I. 215)

In accordance with the court's order, HEW moved to amend its complaint in October of 2021.  (D.I. 220, Ex. A at ¶¶ 179-94)  The court granted HEW's motion to amend on December 29, 2021, explaining that the amended complaint would reopen the door to discovery and would enable LP to assert additional affirmative defenses and counterclaims regarding the corrected '588 patent.  (D.I. 280 at 15:20-17:1; D.I. 281)  HEW filed the amended complaint on January 4, 2022.  (D.I. 284)

On January 19, 2022, LP filed its answer, affirmative defenses, and counterclaims in response to the amended complaint.  (D.I. 297)  On the same date, the court entered a revised case schedule to accommodate additional discovery occasioned by the filing of the amended complaint.  (D.I. 285 at 1-3; D.I. 296)  Under this schedule, the parties were permitted to take fact discovery between January 18 and June 2, 2022, and additional expert discovery was to occur between June 24 and August 12, 2022.  (D.I. 285 at 1-2)  New rounds of initial infringement and invalidity contentions were to be exchanged on January 28 and February 22, 2022, respectively, with final infringement and invalidity contentions due on April 13 and May 12, 2022, respectively.  (*Id.*)  The court also addressed the parties' disagreement regarding the proper scope of the additional discovery, denying HEW's request to limit supplemental discovery to issues arising from the addition of the CoC.  (D.I. 296)

The court entered a second amended scheduling order on October 25, 2022.  (D.I. 489)  Under the revised scheduling order, dispositive motions are due on February 10, 2023, and a five-day jury trial is scheduled to begin on August 21, 2023.  (*Id.*)

4

## II.   DISCUSSION

### A. HEW's Motion to Dismiss for Failure to State a Claim

HEW seeks dismissal of four new inequitable conduct theories raised by LP in its answer to HEW's amended complaint.  (D.I. 302)  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the pleading and view them in the light most favorable to the nonmovant.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).  "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint."  *Goddard Sys., Inc. v. Gondal*, C.A. No. 17-1003-CJB, 2018 WL 1513018, at *4 (D. Del. Mar. 27, 2018).

An individual associated with the filing and prosecution of a patent application engages in inequitable conduct when he or she makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information to the USPTO, with a specific intent to deceive the USPTO.  *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).  Allegations for these requirements must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b), although proof by clear and convincing evidence is not required at the pleading stage.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 & n.5 (Fed. Cir. 2009).

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328-29.

In the following analysis, the court separately addresses the sufficiency of each of the four challenged bases for LP's third counterclaim for inequitable conduct. To the extent that HEW also seeks a dismissal of LP's twelfth affirmative defense for inequitable conduct under Rule 12(b)(6), (D.I. 302 at 20), the requested relief is addressed at § II.B.4, *infra*, pursuant to the Rule 12(f) standard, *see Diebold Nixdorf, Inc. v. Hyonssung Tns. Inc.*, C.A. No. 19-1695-LPS, 2021 WL 861734, at *2 (D. Del. Mar. 4, 2021) ("Rule 12(b)(6) does not offer a mechanism for dismissing an affirmative defense."). Moreover, I recommend that the court reject HEW's arguments regarding the alleged untimeliness of LP's inequitable conduct counterclaims for the reasons set forth at § II.B.4, *infra*.

### 1. HEW's alleged failure to disclose One Step Roofing to the USPTO during prosecution of the patents-in-suit

HEW first challenges LP's assertion that HEW committed inequitable conduct by deliberately concealing information regarding its One Step System from the patent examiner during prosecution of the '588 patent and other associated patents. (D.I. 302 at 6) LP's pleading represents that the One Step System was an earlier name for HEW's current ZIP product line that was publicly sold at least as early as 2001. (D.I. 297 at ¶ 48) LP maintains that individuals at HEW committed inequitable conduct by "conceal[ing] the fact that HEW had previously developed, disclosed, marketed, used, offered-for-sale and sold its One Step system for years before the earliest patent applications to which the Patents In Suit claim priority were filed." (*Id.* at ¶ 68) According to HEW, LP's inequitable conduct allegations on the One Step System do not adequately plead but-for materiality or specific intent. (D.I. 302 at 6-10)

With respect to materiality, HEW contends that the documents cited in LP's counterclaim do not actually demonstrate that the One Step System was in public use or offered for sale during the prior art period. (D.I. 302 at 6-7) But LP's counterclaim describes in detail a number of

6

public disclosures, uses, and sales of the One Step System as early as 2001 and 2002.  (D.I. 297 at ¶¶ 75-112)  At this stage, the court must accept LP's allegations as true.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  The parties' factual disputes regarding the contents of the supporting documents are not ripe for resolution on a motion to dismiss.  *See Diebold*, 2021 WL 861734, at *4 ("[A]t the pleading stage, the Court does not decide the merits of the claim, focusing instead on whether materiality was properly alleged with sufficient particularity.").

HEW also alleges that LP's pleading does not identify particular claim limitations that are allegedly absent from the information of record, thereby failing to establish how and why the withheld information about the One Step System is not cumulative of other information that was already before the examiner.  (D.I. 302 at 7-9)  But LP's counterclaim maintains that the prior art considered by the examiner did not disclose water characteristics falling within the claimed ranges of the '588 patent, and the examiner specifically referenced these water protection properties in the Reasons for Allowance during the prosecution of earlier patent applications.  (D.I. 297 at ¶¶ 135-36)  LP's pleading further alleges that the undisclosed One Step System includes these same water protection characteristics, and the examiner would not have allowed the claims of the '588 patent if the One Step System had been disclosed.  (*Id.* at ¶¶ 137-38)

The court must accept as true LP's factual allegations that the One Step System disclosed the claimed water characteristics of the '588 patent but was withheld from the examiner during prosecution, leading to the issuance of the '588 patent.  Factual disputes regarding the scope of disclosed prior art, such as the '569 patent, cannot properly be resolved on a Rule 12(b)(6) motion to dismiss.  (*Compare* D.I. 302 at 8 *with* D.I. 314 at 11 n.5)  HEW's argument that the water characteristics of the undisclosed One Step System are cumulative of the disclosed Williams reference also raises a factual dispute.  HEW cites LP's alternative position that the

7

'588 patent is invalid as anticipated by the Williams reference, which requires a showing that Williams meets every claim limitation of the '588 patent. (D.I. 302 at 9) But LP's position that the '588 patent is anticipated by the Williams reference does not preclude LP from alternatively pleading that the '588 patent is unenforceable due to inequitable conduct. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

HEW further contends that LP's inequitable conduct counterclaim fails to identify underlying facts demonstrating specific intent by any particular individual. (D.I. 302 at 9-10) HEW's position is not persuasive. LP's counterclaim adequately identifies the specific individuals alleged to have deceived the USPTO because the terms "Named Inventors" and "Duty-Bound HEW Employees" are defined in the counterclaims to encompass a specific group of named individuals engaged in particular alleged conduct. (D.I. 297 at ¶ 65; *see also* ¶¶ 75-125)

LP's inequitable conduct counterclaim sufficiently alleges that these individuals developed, marketed, disclosed, offered for sale, and sold the One Step System knowing that it was the same as the ZIP system, yet they failed to disclose it to the USPTO during prosecution of the '588 patent with the intention of extending the patent protection for the One Step System and obtaining a second patent family for the ZIP system. (*Id.* at ¶¶ 140-53) These allegations give rise to a reasonable inference of inequitable conduct by the Named Inventors and Duty-Bound HEW Employees. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."). In this regard, LP's specific intent allegations regarding the One Step System are distinguishable from the circumstances in *Pacific Biosciences*

8

*of California, Inc. v. Oxford Nanopore Technologies, Inc.*, C.A. No. 17-275-LPS *et al.*, 2019 WL 668843, at *3 (D. Del. Feb. 19, 2019), where there was no factual dispute that the relevant prior art patent was disclosed during prosecution.  For these reasons, I recommend that the court deny HEW's first motion to dismiss LP's inequitable conduct counterclaim based on the failure to disclose the One Step System during prosecution of the '588 patent.

### 2. Misrepresentations to the USPTO that the delay in changing the priority claim of the patents-in-suit was unintentional

LP's second theory of inequitable conduct alleges that specific HEW representatives misrepresented to the USPTO that HEW's six-year delay in filing its Section 1.78 Petitions for the patents-in-suit was "unintentional." (D.I. 297 at ¶¶ 71-72, 202-32)  The pleading recites facts supporting a conclusion that Prosecution Counsel and the Duty-Bound Employees were aware of errors in the priority dates at least as of 2015 and 2016. (*Id.* at ¶¶ 203-11)  HEW contends that LP does not establish the requisite materiality of this alleged misrepresentation because the USPTO already had the universe of information necessary to determine whether to issue the CoCs, and the alleged misrepresentations were nothing more than attorney argument. (D.I. 302 at 11-12)

Contrary to HEW's arguments, LP's counterclaim alleges that the USPTO requested "additional facts and evidence to support HEW's statements of unintentional delay" from Prosecution Counsel and the Duty-Bound Employees. (D.I. 297 at ¶ 228)  The counterclaim states that, in response to this request, HEW submitted the Section 1.78 petitions which misrepresented that the entire delay in changing the patents' priority dates was unintentional. (*Id.* at ¶ 230)  The counterclaim pleads that this misrepresentation was material because, without it, the USPTO would not have issued the CoCs, the priority dates would not have been changed, and the '588 and '044 patents would have been invalidated as a result of the errors in their

9

priority dates.  (*Id.* at ¶ 231)  Taken as true, these allegations are sufficient to establish the materiality of the alleged misrepresentations.

HEW also challenges the sufficiency of the specific intent allegations in LP's second theory of inequitable conduct, stating that the allegation lacks any corresponding evidence that would support an inference of intent. (D.I. 302 at 12-13)  But "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290.  Here, LP's counterclaim plausibly alleges that, despite knowing about the priority defects in the '588 patent and being on notice that the Section 1.78 Petitions and a corresponding statement of unintentional delay were required to change the priority date of the '588 patent, HEW's Prosecution Counsel and Duty-Bound Employees nonetheless delayed in filing the Section 1.78 Petitions.  (D.I. 297 at ¶¶ 71-72, 226-30)  These allegations are sufficient to give rise to a reasonable inference of intent to deceive. *See Diebold*, 2021 WL 861734, at *3 (explaining that a party may plead facts on information and belief if the specific facts on which the belief is reasonably based are also included).  Consequently, I recommend that the court deny HEW's second motion to dismiss LP's inequitable conduct counterclaim.

### 3. HEW's omission of LP's invalidity contentions during the process of obtaining the CoC

LP's third theory of inequitable conduct maintains that HEW made material omissions to the USPTO by failing to disclose LP's supplements to its invalidity contentions during the process of seeking the CoCs. (D.I. 297 at ¶¶ 73, 233-43)  According to HEW, this theory includes no facts regarding why LP's invalidity contentions would have been material and not cumulative of other evidence before the USPTO.  (D.I. 302 at 14)

LP's third theory of inequitable conduct adequately alleges how and why LP's invalidity contentions and supporting evidence would have been material to the issuance of the CoCs because it shows the corrected patents were not entitled to priority back to February 23, 2004. (D.I. 297 at ¶¶ 235-36)  The pleading explains that specific individuals at HEW withheld the invalidity contentions and supporting evidence from the USPTO while continuing to pursue a priority date of February 23, 2004 in the CoCs.  (*Id.* at ¶¶ 237-40)  Then, after obtaining the CoCs with the February 2004 priority date, HEW allegedly agreed that the earliest possible priority date for the corrected patents was January 4, 2005.  (*Id.* at ¶ 241)  According to the pleaded allegations, the USPTO would not have issued the CoCs if HEW had sought a priority date of January 4, 2005, consistent with the representations in LP's invalidity contentions.  (*Id.* at ¶¶ 242-43)  These allegations, taken as true, are sufficient to plead the but-for materiality of the undisclosed evidence and contentions regarding the correct priority date of the patents.

LP's third inequitable conduct theory also gives rise to a reasonable inference of specific intent.  The counterclaim establishes that HEW's Prosecution Counsel and Duty-Bound Employees were aware of LP's invalidity contentions and supporting evidence throughout the proceedings before the USPTO to obtain the CoCs, but they did not disclose that information and continued to pursue the CoCs based on a priority date of February 23, 2004.  (D.I. 297 at ¶¶ 236-40)  Once the CoCs issued, however, these individuals changed course and agreed that the earliest priority date was January 4, 2005 in an effort to protect the '588 patent from being invalidated.  (*Id.* at ¶ 241)  It is reasonable to infer from the timing of their actions that HEW's Prosecution Counsel and Duty-Bound Employees concealed the content of LP's invalidity contentions and associated evidence from the USPTO with the specific intent of obtaining CoCs with an inaccurate priority date.  To the extent that HEW argues LP's pleading mischaracterizes

11

the record, this position raises factual disputes not appropriately resolved on a motion to dismiss. (D.I. 317 at 7-9)  HEW's position that other, more reasonable inferences can be drawn from these circumstances is misplaced.  (D.I. 302 at 16)  To state a claim for inequitable conduct, LP must plead facts giving rise to a reasonable inference of specific intent—not the only or the most persuasive inference.  *See Diebold*, 2021 WL 861734, at *4 (explaining that a party asserting inequitable conduct is "not required at the pleading stage to prove (or even plead) that a specific deceptive intent is the single most reasonable inference to be drawn from the facts alleged."). For these reasons, I recommend that the court deny HEW's motion to dismiss LP's third theory of inequitable conduct.

### 4.  HEW's allegedly false Substitute Statements to the USPTO and misrepresentations of patent applications as continuations

HEW's motion to dismiss LP's fourth theory of inequitable conduct challenges the sufficiency of LP's allegations regarding the submission of allegedly false Substitute Statements to the USPTO, as well as LP's alleged misrepresentation of certain patent applications as continuations despite the fact that those applications disclosed new matter.  (D.I. 302 at 16) HEW does not dispute the materiality of these alleged misrepresentations.  Instead, HEW focuses on supposed deficiencies in LP's allegations of specific intent.  (*Id.* at 17-20)

LP adequately pleads inequitable conduct based on the submission of allegedly false Substitute Statements.  The counterclaim states that, during prosecution of the '588, '044, and '713 patents, HEW employee Dave Willis and prosecution counsel John Greenwald submitted Substitute Statements to the USPTO representing that the named inventors were unable or refused to execute the Inventor's Oath or Declaration that was required to obtain issuance of the patents.  (D.I. 297 at ¶¶ 182-85)  However, Mr. Willis subsequently testified under oath that he had not tried to contact the named inventors and had seen no evidence that the named inventors

12

refused to execute the Inventor's Oath or Declaration.  (*Id.* at ¶¶ 188-92)  Two of the named

inventors also testified that they were not contacted by anyone about executing an Inventor's

Oath or Declaration.  (*Id.* at ¶¶ 188-89)  These facts support a reasonable inference that Mr.

Willis and Mr. Greenwald submitted the Substitute Statements to the USPTO despite knowing

they were false, with the intention of preventing the '588, '044, and '713 patents from becoming

abandoned.  (*Id.* at ¶ 193); *see Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB,

2012 WL 600715, at *9 (D. Del. Feb. 3, 2012) (explaining that, on a motion to dismiss, the court

must "assess whether the facts as pled give rise to a reasonable inference that material

information was misrepresented with the specific intent . . . to deceive the PTO.").

HEW's position that the pleaded allegations lack specific evidence of intent to deceive is

belied by LP's reliance on the deposition testimony of Mr. Willis and two of the Named

Inventors.  (D.I. 302 at 17; D.I. 297 at ¶¶ 188-92)  HEW's suggestion that there are other, more

reasonable inferences to be drawn from the pleaded facts is unpersuasive because LP is "not

required at the pleading stage to prove (or even plead) that a specific deceptive intent is the

single most reasonable inference to be drawn from the facts alleged." *Diebold*, 2021 WL

861734, at *4.

LP's inequitable conduct counterclaim also sufficiently alleges that HEW made false

statements to the USPTO that the '197, '044, '713, and '588 patent applications were

continuations of earlier applications in the ZIP patent family that did not introduce new matter.

(D.I. 297 at ¶¶ 194-201)  LP's counterclaim states that HEW's prosecution counsel, two

employees, and inventor Nian Ou substantively participated in the preparation and prosecution of

the patent applications, making material changes to the disclosures to introduce new matter.  (*Id.*

at ¶ 194)  These individuals nonetheless failed to disclose the addition of new matter in the

patent applications and affirmatively represented that those applications were continuations. (*Id.* at ¶¶ 195-99)

HEW contends that these pleaded allegations do not support a reasonable inference of specific intent, but this position suffers from the same deficiencies as its position on the Substitute Statements. (D.I. 302 at 19-20)  The fact that more than one reasonable inference may be drawn from the allegations and evidence presented by LP is not dispositive at this stage, when the court must draw all reasonable inferences in favor of LP as the nonmovant. *See Diebold*, 2021 WL 861734, at \*4; *Wyeth*, 2012 WL 600715, at \*9.  Moreover, HEW's position is inconsistent with precedent establishing that circumstantial evidence of intent is acceptable at this stage of the proceedings. *See Therasense*, 649 F.3d at 1290.  Therefore, I recommend that the court deny HEW's motion to dismiss LP's fourth theory of inequitable conduct.

### B. HEW's Motion to Strike Certain Defenses and Counterclaims

HEW also moves to strike portions of LP's three counterclaims and corresponding affirmative defenses pursuant to Rule 12(f), the court's inherent authority and, alternatively, Rule 12(b)(6).  HEW maintains that the challenged affirmative defenses should be stricken pursuant to Rule 12(f) and the court's inherent authority to manage its docket.  Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) motions are generally disfavored and should not be granted "unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (internal quotation marks and citation omitted); *see also Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010).  Moreover, district courts have inherent, discretionary authority to manage their dockets and limit the number of asserted claims in the interests of

14

economy for the court, counsel, and the litigants. *See VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2020 WL 4437401, at *1 (D. Del. Aug. 3, 2020).

HEW takes issue with three aspects of LP's pleading in asking the court to strike: (1) enablement and written description positions that were previously stricken by the court; (2) changes made to certain factual admissions made in the original answer; and (3) new legal theories raised in the counterclaims and affirmative defenses. (D.I. 304) Before addressing each of HEW's requests for relief in turn, the court notes that HEW's motion to strike, and LP's responses thereto, closely track the arguments presented in the parties' joint status report regarding the proper scope of supplemental discovery, which was filed on January 6, 2022. (*Compare* D.I. 304 and D.I. 311 *with* D.I. 285) In sum, the parties disagree on whether HEW's amendment to add a cause of action for infringement of the corrected '588 patent opened the door for LP to assert new claims and defenses against the corrected '588 patent that could have been raised earlier in the case. (*Id.*) The court's prior rulings on how to incorporate the corrected '588 patent into this litigation guide the present analysis. (D.I. 215; D.I. 280; D.I. 296)

### 1. Procedural propriety of HEW's motion to strike

As a preliminary matter, the court addresses LP's procedural arguments. First, LP argues that HEW's motion to strike is procedurally improper under Rule 12(g), which prohibits a party from filing a second Rule 12 motion that raises a defense or objection which was available to the movant but omitted from an earlier Rule 12 motion. Fed. R. Civ. P. 12(g)(2). Here, HEW filed the instant motion pursuant to Rule 12(f) the day after filing a Rule 12(b)(6) motion, in technical violation of Rule 12(g)(2). (D.I. 301; D.I. 303) But the scheduling order governing this case sets forth a procedure requiring the separate filing of Rule 12(f) motions to strike: "Any motion to strike any pleading or other document shall NOT be accompanied by an opening brief but shall,

instead, be accompanied by a letter, not to exceed three (3) pages[.]"  (D.I. 17 at ¶ 10(a))

Because HEW complied with the procedures set forth in the scheduling order, I recommend that

the court consider HEW's motion to strike on the merits.

LP also argues that HEW's motion to strike should be denied as untimely because it was

filed the day after the stipulated deadline to respond to LP's pleading.  (D.I. 311 at 1-2)  Rule

12(f) states that the court may strike a pleading: "(1) on its own; or (2) on motion made by a

party either before responding to the pleading or . . . within 21 days after being served with the

pleading." Fed. R. Civ. P. 12(f).  In the Third Circuit, courts have declined to strictly apply the

time limits of Rule 12(f). *See Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 299 F.R.D. 90, 95

(D.N.J. 2014) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice &*

*Procedure*, § 1380 (3d ed. 2004)).  Instead, a district court may consider an untimely motion to

strike on the merits because Rule 12(f) permits the court to act "on its own" without a time

restriction. *Id.* at 96 (citing *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 2012 WL 2326001, at

*2 (N.D. Cal. June 19, 2012)).  Consistent with this authority, I recommend that the court

consider HEW's motion to strike on the merits.

### 2.  Lack of enablement or proper written description in LP's Second Counterclaim

HEW moves the court to strike LP's Second Counterclaim to the extent that it includes

written description and enablement arguments which were previously stricken from the case.

(D.I. 304 at 1)  LP responds that, because the previous motion to strike applied only to limited

portions of an expert report on the uncorrected '588 patent, LP should be free to assert its

enablement and written description defenses against the corrected '588 patent in its pleading.

(D.I. 311 at 3)

16

The record of this case does not support a finding in favor of HEW on its motion to strike the enablement and written description defenses. On December 29, 2021, the court granted HEW's motion to strike portions of Dr. Tonyan's expert report, finding that HEW did not have fair notice of certain written description and enablement defenses which were disclosed for the first time in the expert report. (D.I. 280 at 31:10-32:1, 49:7-22) At the same time, the court permitted HEW to file an amended complaint asserting infringement of the post-CoC '588 patent. (*Id.* at 15:20-16:12) The court expressly recognized that the filing of the amended complaint would give LP "a right to a full and fair opportunity to take necessary discovery, assert defenses, perhaps counterclaim. I think that that is a right given to them as triggered by the filing of the amended complaint and also fully warranted under the circumstances here." (*Id.* at 16:21-17:1) The court's reasoning is consistent with case law from this district stating that "in answering an amended complaint the defendant is free to answer not simply the amendments, but the new complaint, as if answering an original complaint." *Genentech, Inc. v. Amgen Inc.*, C.A. No. 18-924-CFC, 2020 WL 707243, at *1 (D. Del. Feb. 12, 2020) (quoting *Standard Chlorine of Del., Inc. v. Sinibaldi*, 1995 WL 562285, at *2 (D. Del. Aug. 4, 1995)).

HEW maintains that the written description and enablement positions in LP's Second Counterclaim should be stricken because they are substantively the same as those positions previously stricken by the court. (D.I. 304 at 1-2, D.I. 312 at 2) But HEW fails to account for the difference in the procedural posture of the earlier motion to strike. The court previously struck written description and enablement theories disclosed in Dr. Tonyan's expert report. (D.I. 280 at 31:10-32:1) HEW does not explain how that ruling should bind the court in the context of a motion to strike an amended pleading that was expressly permitted by the court, with the understanding that the amended pleading gave LP "a right to a full and fair opportunity to take

17

necessary discovery, assert defenses, perhaps counterclaim." (D.I. 280 at 16:21-17:1); *see also Genentech*, 2020 WL 707243, at *1. HEW's concern about prejudice caused by the increased litigation cost of addressing new defenses was forecast during the hearing on December 29, 2021, and yet HEW maintained its preference to proceed with an amended complaint despite the associated discovery burden. (D.I. 280 at 5:16-6:2) I recommend that the court deny HEW's motion to strike the enablement and written description arguments in LP's Second Counterclaim.

### 3. LP's use of WeatherLogic at the 2019 International Builders Show

HEW also moves to strike LP's pleading as it relates to LP's use of WeatherLogic at the 2019 International Builders' Show ("IBS") because LP's answer to the amended complaint contradicts its prior admission in the original answer on this subject. (D.I. 304 at 2) LP responds that it properly answered HEW's amended complaint as a matter of course, and its operative answer is consistent with disclosures made in interrogatory responses and fact depositions. (D.I. 311 at 4)

There is no dispute that LP changed its pleaded position on whether the WeatherLogic System was displayed at the 2019 IBS in Las Vegas, Nevada. In the original answer filed on April 11, 2019, LP admitted that "it has made, used, offered for sale, or sold the WeatherLogic System in the United States and displayed the WeatherLogic System at the 2019 International Builders' Show in Las Vegas, Nevada." (D.I. 8 at ¶ 25) In contrast, LP's answer to the amended complaint "denies that the booth at the 2019 International Builders' Show in Las Vegas, Nevada displayed the commercial WeatherLogic System." (D.I. 297 at ¶ 28)

I recommend that the court deny HEW's motion to strike LP's factual allegations about its use of WeatherLogic at the 2019 IBS. "It has long been the rule in this district that in answering an amended complaint the defendant is free to answer not simply the amendments, but

18

the new complaint, as if answering an original complaint." *Genentech*, 2020 WL 707243, at *1 (quoting *Standard Chlorine of Del.*, 1995 WL 562285, at *2); *see also Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D. Del. 1980).  Accordingly, LP was not required to seek leave to amend before changing its position in the answer to the amended complaint.

HEW's reliance on *Sirona Dental Systems, Inc. v. Dental Imaging Technologies Corp.* is not persuasive.  C.A. No. 10-288-GMS, 2012 WL 3929949 (D. Del. Sept. 10, 2012).  There, the court considered the amended complaint to be a supplemental pleading under Rule 15(d) and concluded that the defendant was not permitted to respond as a matter of course on that basis.  *Id.* at *3.  In contrast, this court expressly denied HEW's motion to supplement its complaint under Rule 15(d), instead requiring HEW to either seek leave to amend the complaint or file a new lawsuit based on the conclusion that "[c]ertificates of correction apply only prospectively, so infringement of the corrected '588 patent is a separate cause of action from infringement of the uncorrected '588 patent[.]"  (D.I. 215)  Moreover, the dispute here is about a changed factual allegation as opposed to the assertion of a new defense.  (D.I. 8 at ¶ 25; D.I. 297 at ¶ 28)  The record confirms that LP disclosed this factual change in an interrogatory response served nearly a year before the amended complaint was filed, undercutting allegations of surprise or prejudice. (D.I. 311, Ex. B at 6)  Because LP's new allegation about the use of the WeatherLogic System at the 2019 IBS is permitted under *Genentech* and conforms to the evidence developed through fact discovery, I recommend that the court deny HEW's motion to strike this portion of LP's answer.

HEW's reliance on *Teva Pharmaceuticals USA, Inc. v. Forest Laboratories, Inc.* is similarly unpersuasive.  C.A. No. 13-2002-GMS, 2016 WL 7325511, at *1 n.1 (D. Del. June 16, 2016).  There, the addition of new counterclaims and affirmative defenses occurred close to trial,

after fact discovery was closed.  *Id.*  The court determined that leave to amend was therefore

required under Rule 15(a)(3), and it dismissed the counterclaims as untimely under Rule 16(b)(4)

based on the conclusion that the plaintiffs would be prejudiced and the litigation would be

unduly delayed by the belated inclusion of the new counterclaims.  *Id.*  In contrast, the decision

granting leave to amend the complaint in this case expressly stated that "[t]here is no concern . . .

of futility or delay or unfair prejudice.  And so we're going to go forward on the amended

complaint." (D.I. 280 at 16:10-12)  As part of that ruling, the court represented that LP "has a

right to a full and fair opportunity to take necessary discovery, assert defenses, perhaps

counterclaim" in response to the amended complaint.  (*Id.* at 16:21-17:1)  Thereafter, the court

provided for a full round of supplemental discovery to accommodate the anticipated new

counterclaims and affirmative defenses. (D.I. 296)  The concerns of prejudice and delay

expressed by the *Teva* court never materialized in this case because the court structured a case

schedule to accommodate both HEW's amended complaint and the answer and counterclaims

filed by LP.

### 4. New legal theories unrelated to the CoC in LP's Third, Eleventh, and Twelfth Affirmative Defenses and portions of Second and Third Counterclaims

HEW asks the court to strike LP's Third, Eleventh, and Twelfth Affirmative Defenses

and corresponding portions of its Second and Third Counterclaims because they are based on

new, untimely legal theories unrelated to the CoC. (D.I. 304 at 2-3)  These affirmative defenses

and counterclaims are directed to issues of inventorship, standing, and inequitable conduct. (D.I.

297 at 43, 45)

LP does not dispute HEW's position that the corrected '588 patent has the same claims

and specification as the uncorrected '588 patent.  Instead, LP reiterates its position that HEW's

amended complaint asserts a new cause of action for infringement of the corrected '588 patent, and the amended complaint opened the door to a responsive pleading by LP that includes new counterclaims and affirmative defenses.  (D.I. 311 at 5)

I recommend that the court deny HEW's motion to strike the new legal theories set forth in LP's Third, Eleventh, and Twelfth Affirmative Defenses and portions of the Second and Third Counterclaims.  LP previewed its counterclaims and defenses during the hearing on December 29, 2021, seeking "a full and fair opportunity to defend against the new corrected patent" and suggesting "there might be inequitable conduct claims." (D.I. 280 at 9:24-10:4)  The court acknowledged that LP "ha[d] in mind a lot more discovery" and "may want to pursue an inequitable conduct claim." (*Id.* at 5:16-18)  Based on this understanding, the court granted leave for HEW to file its amended complaint to add the corrected '588 patent, triggering LP's "right to a full and fair opportunity to take necessary discovery, assert defenses, perhaps counterclaim." (*Id.* at 16:21-17:1)  The court's recognition of LP's right to assert new counterclaims and defenses during the hearing on December 29, 2021, is consistent with the holding in *Genentech*.  2020 WL 707243, at *1 ("It has long been the rule in this district that in answering an amended complaint the defendant is free to answer not simply the amendments, but the new complaint, as if answering the original complaint.").  The court reiterated its intention to allow LP to broadly pursue defenses and counterclaims against the corrected '588 patent on January 19, 2022, when it declined to restrict supplemental discovery based on any narrower criteria. (D.I. 296)

HEW again asks the court to follow the reasoning in *Sirona Dental* instead of *Genentech* to strike LP's new affirmative defenses and counterclaims.  *Compare Sirona Dental*, 2012 WL 3929949, at *2-3, *with Genentech*, 2020 WL 707243, at *1.  Both *Sirona Dental* and *Genentech*

21

addressed circumstances in which an amended complaint was filed, and the defendant responded

with an answer, affirmative defenses, and/or counterclaims.  *Id.*  In *Sirona Dental*, the court

granted the plaintiff's motion to strike because the scope of the defendant's affirmative defenses

exceeded the bounds of the amendments made to the complaint.  *Sirona Dental*, 2012 WL

3929949, at *4.  To achieve this result, the court construed the amended complaint as a

supplemental complaint under Rule 15(d).  *Id.* at *3-4.  In contrast, the court in *Genentech*

denied the motion to strike the defendant's new counterclaims and affirmative defenses,

explaining that the plaintiff "has only itself to blame for enabling [the defendant] to assert the

defenses and counterclaims to which [the plaintiff] now objects."  *Genentech*, 2020 WL 707243,

at *1.

The record of this case aligns more closely with *Genentech*.  HEW sought leave to

supplement its complaint under Rule 15(d) instead of amending it, and the court denied HEW's

motion.  (D.I. 209; D.I. 215)  In doing so, the court reasoned that "[c]ertificates of correction

apply only prospectively, so infringement of the corrected '588 patent is a separate cause of

action from infringement of the uncorrected '588 patent (which is currently pleaded in Huber's

complaint)."  (D.I. 215)  When the court granted HEW's subsequent motion for leave to amend

the complaint, it addressed issues regarding the potentially broad scope of LP's answer, and

HEW nonetheless chose to proceed with the amended complaint.  (D.I. 280 at 5:16-6:2)  This

sequence of events departs from the court's decision in *Sirona Dental* to construe the amended

complaint as a Rule 15(d) supplement, and it fits squarely within the court's admonition in

*Genentech* that the plaintiff "has only itself to blame for enabling [LP] to assert the defenses and

counterclaims to which [HEW] now objects."  *Sirona Dental*, 2012 WL 3929949, at *2-3;

*Genentech*, 2020 WL 707243, at *1.

**C.   HEW's Motion to Strike Certain New Initial Invalidity Contentions and Prior Art References**

HEW moves to strike certain invalidity contentions and prior art references raised by LP in its new initial invalidity contentions, arguing that these contentions and prior art references do not relate to the CoC and could have been raised earlier. (D.I. 329)  Specifically, HEW moves to strike the following content from LP's new invalidity contentions: (1) new prior art references not included in LP's prior final invalidity contentions; (2) claim charts relating to the new prior art references included at Exhibits T to W of the new invalidity contentions; (3) new claim charts based on the previously-identified Ou and Bennett '569 prior art references; and (4) new arguments raised in the invalidity contentions that could have been raised before, including arguments on double-patenting, inventorship, enablement, estoppel, and incorporation by reference. (*Id.* at 2-3)  HEW's motion seeks relief pursuant to the court's inherent authority to manage its docket. (D.I. 349 at 1)

In response, LP argues its new invalidity contentions were timely made in response to HEW's amended complaint asserting infringement of the post-CoC '588 patent. (D.I. 341 at 2-5)  LP also characterizes HEW's motion to strike as a motion brought under Rule 12(f) and argues that it should be denied as untimely under Rule 12(g). (*Id.* at 1-2)  However, LP's untimeliness argument ignores the fact that Rule 12(f) applies only to motions to strike a pleading—it does not extend to a party's invalidity contentions. *See* Fed. R. Civ. P. 12(f).

I recommend that the court deny HEW's motion to strike portions of LP's new invalidity contentions and prior art references. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) ("[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.").  For the reasons previously discussed at § II.B.4, *supra*, HEW's

23

filing of the amended complaint opened the door for LP to assert new defenses and counterclaims regarding the corrected '588 patent.  Corresponding evidence and arguments must therefore be permitted in the invalidity contentions.  Moreover, the CoC affected the priority date, which in turn impacts the scope of the prior art.  *See Janssen Prods., L.P. v. Lupin Ltd.*, 109 F. Supp. 3d 650, 665 (D.N.J. 2014) ("[T]he Court must define the scope and content of the prior art as of . . . the priority date" of the asserted patent); *Judkins v. HT Window Fashions Corp.*, 624 F. Supp. 2d 427, 438 (W.D. Pa. 2009) ("The priority date affects the scope of the prior art.").  Accordingly, LP's assertion of new prior art references and arguments in its invalidity contentions on the corrected '588 patent are not untimely in the context of the present record.

### D. HEW's Motion to Strike Certain New Final Invalidity Contentions and Prior Art References

HEW also moves to strike portions of LP's final invalidity contentions directed to the corrected '588 patent, based on arguments that "are essentially identical" to the arguments raised in support of its motion to strike portions of LP's initial invalidity contentions.  (D.I. 449 at 1)  Here, HEW specifically moves to strike ten new prior art references raised for the first time in LP's new final invalidity contentions, as well as new arguments that could have allegedly been asserted against the uncorrected '588 patent.  (*Id.* at 2-3)  HEW again asks the court to strike these portions of LP's new final invalidity contentions pursuant to its inherent authority.  (*Id.* at 1)

For the reasons previously discussed at § II.C, *supra*, HEW's filing of the amended complaint opened the door for LP to assert new invalidity arguments, and HEW's position that LP's final infringement contentions should be stricken because they were not disclosed in LP's 2021 final invalidity contentions is not persuasive.  HEW's allegations of prejudice are focused on the continued expansion of the litigation, a concern which will be addressed through the case

24

narrowing process now that supplemental discovery has concluded. (D.I. 449 at 2) HEW does not address any more specific prejudice arising from the introduction of ten named prior art references or the assertion of new arguments in LP's new final invalidity contentions. LP, on the other hand, explains that the new prior art references mostly come from applications owned by HEW and are directed to adhesives similar to those previously disclosed. (D.I. 457 at 4) LP further confirms that the "new" invalidity arguments identified by HEW were either previously disclosed in LP's new initial invalidity contentions, or they were responsive to allegations raised in HEW's final infringement contentions. (*Id.* at 5) Consequently, I recommend that the court deny HEW's motion to strike portions of LP's new final invalidity contentions.

### E. Case Narrowing

In the briefing on motions to strike invalidity contentions and in the oral argument held on November 16, 2022, the parties expressed openness to case narrowing, which would address many of HEW's concerns about the continued expansion of this case. However, the parties indicated that their discussions on this subject have hit some roadblocks. (D.I. 329 at 2; D.I. 341 at 4) Of particular concern is how the parties should define and limit an invalidity "ground." (D.I. 341, Ex. B)

In previous cases, the court has adopted a tiered approach to the reduction of asserted claims, prior art references, and prior art arguments, with specific definitions for what constitutes a "prior art argument." *See, e.g., TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, C.A. No. 21-1126-GBW-SRF, (D.I. 137) (D. Del. Oct. 18, 2022); *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, C.A. No. 19-1031-RGA, 11/13/2019 Oral Order (D. Del. Nov. 13, 2019); *Cox Commc'ns Inc. v. Sprint Commc'ns Co. L.P.*, C.A. No. 12-487-JFB-CJB, 2017 WL 4400781 (D. Del. Oct. 2, 2017); *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, (D.I. 368) (D. Del. July

25

28, 2015); *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, C.A. No. 04-1371-JJF, 2006 WL 2724879, at *6 (D. Del. Sept. 20, 2006). HEW's concerns about the number of § 112 invalidity arguments asserted by LP are likely to be addressed by HEW's own reduction in the number of asserted claims. With these examples in mind, the parties shall file a stipulated case narrowing proposal on or before December 14, 2022. Should disagreements remain, the joint submission on case narrowing shall set forth a brief summary of each side's position.

### F. LP's Motion to Strike Untimely Infringement Contentions

LP moves to strike HEW's theory of direct infringement pertaining to the corrected '588 patent, which was not raised in HEW's amended complaint and was instead raised for the first time in HEW's new final infringement contentions served on April 13, 2022. (D.I. 400) According to LP, HEW should not be permitted to pursue this new cause of action without following the process for seeking leave to amend under Rule 15. (*Id.* at 3) The requested relief is sought in accordance with the court's inherent authority to manage its docket. (*Id.*)

In response, HEW argues that it could not have raised its new direct infringement theory earlier because the facts underlying the theory did not arise until after the amended complaint was filed and HEW's new initial infringement contentions were served. (D.I. 418 at 1-2) HEW explains that its new direct infringement theory is based on LP's allegedly infringing activity at the 2022 IBS in February 2022, more than a month after HEW's amended complaint was filed and more than a week after HEW served its initial contentions. (*Id.* at 2)

I recommend that the court deny LP's motion to strike HEW's theory of direct infringement of the corrected '588 patent in HEW's final infringement contentions. As set forth in more detail at § II.F, *infra*, the record shows that the facts giving rise to HEW's new direct infringement theory did not arise until after the amended complaint was filed and initial

infringement contentions were served.  (D.I. 400, Ex. A at 1-2)  HEW has established that its

allegations regarding the 2022 IBS track its earlier-disclosed direct infringement theories

regarding the uncorrected '588 patent based on events occurring at the 2019 IBS and 2020 IBS.

(*See, e.g.*, D.I. 1 at ¶¶ 119-24)  Because LP's own activities at the 2022 IBS form the basis of

HEW's new direct infringement theory, LP is not prejudiced by a lack of discovery on the

factual underpinnings of HEW's theory.  And to the extent that LP was denied the opportunity to

bring a Rule 12 motion against HEW's new direct infringement theory, LP can obtain

comparable relief through the case narrowing process or case dispositive motions.  (D.I. 400 at 3)

In sum, LP has not shown that the circumstances here warrant the "extreme" sanction of

excluding HEW's direct infringement allegations regarding the corrected '588 patent.  *See*

*Konstantopoulos*, 112 F.3d at 719; *TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954-RGA,

2021 WL 3728919, at *4 (D. Del. Aug. 23, 2021).

### G.  HEW's Cross-Motion for Leave to File a Second Amended Complaint

In response to LP's motion to strike HEW's new direct infringement theory, HEW cross-

moves for leave to supplement or amend its amended complaint after the scheduling order

deadline for amended pleadings under Rules 15(a) or (d) and Rule 16(b)(4).  (D.I. 418 at 4-5)

HEW stresses that its direct infringement theory regarding the corrected '588 patent is highly

relevant to its claims for indirect infringement and associated damages.  (D.I. 446 at 2)  LP

argues that HEW's cross-motion should be denied because permitting the requested relief would

result in substantial, incurable prejudice to LP.  (D.I. 437 at 1)  The focus of LP's argument is on

HEW's request to amend the complaint under Rule 15(a), and LP does not separately address the

merits of HEW's motion to supplement under Rule 15(d).  (*Id.*)

The Third Circuit has explained that an amendment to a pleading under Rule 15(a) "covers matters that occurred before the filing of the original pleading but were overlooked at the time," whereas a supplemental pleading under Rule 15(d) "refers to events that occurred after the original pleading was filed." *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185, 1188 (3d Cir. 1979).  Leave to supplement a pleading under Rule 15(d) should be freely given unless there is a compelling reason not to do so.  *See ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*, C.A. No. , 2022 WL 611249, at * n.5 (D. Del. Feb. 7, 2022) (citing *Sunless, Inc. v. Selby Holdings, LLC*, 2021 WL 3513871, at *2-3, *5-6 (M.D. Tenn. Aug. 10, 2021)).

Supplementation of the amended complaint under Rule 15(d) is appropriate in this instance.  HEW's theory of direct infringement of the corrected '588 patent is based on events that occurred at the 2022 IBS, which was held between February 8 and 10, 2022.  (D.I. 418 at 1)  The record establishes that the 2022 IBS was held more than a month after the amended complaint was filed on January 4, 2022.  (D.I. 284)  Thus, the proposed supplementation falls squarely within the purview of Rule 15(d), which applies to an "event that happened after the date of the pleading to be supplemented[.]" Fed. R. Civ. P. 15(d).  Unlike HEW's previous amendment to the complaint, this modification of the pleading under Rule 15(d) does not open the door to further claims or defenses.  *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *see also Owens-Illinois*, 610 F.2d at 1189 ("Under Fed. R. Civ. P. 15(d), the trial court determines whether a responsive pleading is advisable[.]").

LP focuses on an interrogatory response served by HEW on February 9, 2022, which states that "HEW does not assert direct infringement of the post-CoC '588 Patent by LP." (D.I.

28

400, Ex. F at 16, 29)  But the record confirms that HEW served this interrogatory response before it had seen pictures on LP's Instagram account allegedly showing direct infringement of the corrected '588 patent at the 2022 IBS.  (*Id.*, Ex. A at 1-2)

LP has not shown that it will be unduly prejudiced by the proposed supplementation of the amended complaint.  HEW's direct infringement theory regarding the corrected '588 patent is substantively the same as its direct infringement theory regarding the uncorrected '588 patent, negating any surprise to LP.  (*Compare* D.I. 1 at ¶¶ 25, 119-24, *with* D.I. 418, Ex. 1 at ¶¶ 192-96)  Moreover, there is no dispute that HEW disclosed its new direct infringement theory on April 13, 2022, and supplemental fact discovery did not close until June 2, 2022.  (D.I. 400, Ex. A at 22; D.I. 285)  LP claims it "would have sought different discovery parameters" if it had anticipated HEW's new theory of direct infringement, including third-party discovery and damages discovery.  (D.I. 437 at 1)  But LP does not address how this alleged discovery might diverge from the discovery already taken regarding the 2019 IBS or the 2020 IBS, or why LP would lack information pertaining to its own activities at the 2022 IBS.  In fact, LP's rebuttal expert report confirms that LP was able to describe its own activities and the activities of third parties Derse, Inc. and/or GS&F in designing LP's display at the 2019 IBS and 2020 IBS to rebut HEW's theory of direct infringement of the uncorrected '588 patent.  (D.I. 418, Ex. 4 at ¶¶ 1218-1358)

HEW's proposed supplementation is also appropriate under the good cause standard of Rule 16(b)(4).  HEW added its direct infringement theory for the corrected '588 patent to its final infringement contentions promptly after it learned of LP's activities at the 2022 IBS show in February.  (D.I. 400, Ex. A at 1-2)  For the reasons previously stated, the events underlying HEW's new theory occurred after the amended complaint was filed and after HEW served its

29

initial infringement contentions, and LP has not shown that HEW lacked diligence. *See Dasso Int'l, Inc. v. MOSON. Am., Inc.*, C.A. No. 17-1574-RGA, 2020 WL 6287673, at *2 (D. Del. Oct. 27, 2020). LP's position that HEW was not diligent in pursuing its new direct infringement theory is at odds with LP's own conduct in failing to update its discovery responses with information about the 2022 IBS, which is also relevant to HEW's pleaded indirect infringement and damages theories regarding the corrected '588 patent. (D.I. 437, Ex. 1) The record does not support LP's claims of undue prejudice for the reasons discussed in the preceding paragraph.

Having determined that HEW has satisfied the requisite standards under Rules 15(d) and 16(b)(4), I recommend that the court grant HEW's motion to supplement the amended complaint.

### III.   CONCLUSION

For the foregoing reasons, I recommend that the court:

1.   DENY HEW's Rule 12(b)(6) motion to dismiss, (D.I. 301);

2.   DENY HEW's motion to strike certain defenses and counterclaims, (D.I. 303);

3.   DENY HEW's motion to strike certain initial invalidity contentions and prior art references, (D.I. 328);

4.   DENY HEW's motion to strike certain final invalidity contentions and prior art references, (D.I. 448);

5.   DENY LP's motion to strike untimely infringement contentions, (D.I. 399); and

6.   GRANT HEW's cross-motion to supplement its amended complaint pursuant to Rule 15(d), (D.I. 418).

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In

the unlikely event that the parties believe that certain material in this Report and

Recommendation should be redacted, the parties shall jointly submit a proposed redacted version

by no later than **November 28, 2022**, for review by the court, along with a motion supported by

a declaration that includes a clear, factually detailed explanation as to why disclosure of any

proposed redacted material would "work a clearly defined and serious injury to the party seeking

closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d

Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation

marks omitted)).  If the parties do not file a proposed redacted version and corresponding

motion, or if the court determines the motion lacks a meritorious basis, the documents will be

unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10)

pages each.  The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: November 17, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

31

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


TQ DELTA LLC,                          :
                                       :
                    Plaintiff,         :
                                       :
            v.                         :        Civil Action No. 13-1835-RGA
                                       :
2WIRE, INC.,                           :
                                       :
                    Defendant.         :


**ORDER**

For the Family 4 trial, scheduled for February 22, 2021, Plaintiff asserts three claims. Plaintiff states that Defendant asserts one section 112, four anticipation, and six obviousness defenses against one claim, and three anticipation and seven obviousness defenses against each of the other two.  (D.I. 1408).  Plaintiff requests that Defendant be required to reduce the number of asserted invalidity defenses to a "more reasonable number," suggesting that that number is six.

Defendant states it will only reduce the number of defenses in response to an order to do so.  (D.I. 1412).  Defendant makes no argument that it will be prejudiced by a reduction.  It states that it wants to make sure it does not waive anything.  And it suggests the reduction be to eight defenses, not six.

I think under the circumstances that six invalidity defenses per claim is neither premature nor prejudicial.  Thus, I direct Defendant to reduce its invalidity defenses to six per claim.  I am not going to put a date in this order, as Plaintiff did not suggest one in its letter (although I saw November 5 in the email chain) and the parties have since altered the summary judgment

briefing schedule.  I suggest November 7 as the date to do so, but I would consider a different

date upon request.

IT IS SO ORDERED this 30th day of October 2020.


/s/ Richard G. Andrews
United States District Judge