IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FÖRDERUNG DER ANGEWANDTEN FORSCHUNG E.V., | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-184-JFB-SRF |
| v. | ) ) | **PUBLIC VERSION** |
| SIRIUS XM RADIO INC., | ) ) | |
| Defendant. | ) ) | |

**LETTER TO THE HONORABLE SHERRY R. FALLON
FROM PHILIP A. ROVNER REGARDING DISCOVERY DISPUTE**

OF COUNSEL:

Mark A. Baghdassarian
Shannon H. Hedvat
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: February 9, 2023
Public version dated: February 17, 2023

Philip A. Rovner (# 3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE  19899-0951
Tel: (302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant
Sirius XM Radio Inc.*



1313 North Market Street
Wilmington, DE 19899-0951
302 984 6000

Philip A. Rovner
Partner
provner@potteranderson.com
302 984-6140 Direct Phone

**BY CM/ECF AND HAND DELIVERY**

The Honorable Sherry R. Fallon  
U.S. District Court for the District of Delaware  
U.S. Courthouse  
844 North King Street  
Wilmington, DE 19801

PUBLIC VERSION

February 17, 2023

      Re:    *Fraunhofer-Gesellschaft Zur Forderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.* (C.A. No. 17-00184-JFB-SRF)

Dear Judge Fallon:

For nearly three months, Sirius XM Radio Inc. ("SXM") has requested that Fraunhofer ("FhG") comply with Federal Rule of Civil Procedure 26(a)(2) by identifying and making available for inspection the vehicles and equipment used by its proposed expert, Bruce Elbert, who submitted an opening report on October 18, 2022. Ex. 1[1]; Ex. 2 at 1-7; *see also* Fed. R. Civ. P. 26(a)(2)(B)(ii) (expert written report "must contain . . . the facts or data considered by the witness in forming them"). FhG steadfastly refused. Ex. 1 at 1, 3; Ex. 2 at 2, 6. Now, months later, after SXM's expert has submitted his responsive expert report, SXM learned for the first time during Mr. Elbert's February 3, 2023 deposition that (1) Mr. Elbert sold equipment he used for the testing, (2) he conducted, and was informed by, additional tests not disclosed in his report but may have recorded those tests in his engineering notes, and (3) he used additional undisclosed equipment for his testing. As explained below, SXM respectfully requests, as it has from FhG for nearly three months, that FhG identify all equipment used by Mr. Elbert and permit SXM an inspection of such test equipment.[2] While SXM's present request relates to a discovery dispute, SXM reserves the right to seek relief through motions to strike and/or exclude the Elbert Report under *Daubert* at the appropriate time.

I.     **Background**

The Elbert Report purports to identify the supposed benefits of the accused High Band System based on Mr. Elbert driving his personal vehicle around a portion of his neighborhood in Texas. In particular, Mr. Elbert explains he created a "shark-fin shaped plastic cover called a RADOME"

---

[1] References to numbered Exhibits ("Ex. __") are to those submitted herewith.

[2] During his deposition, Mr. Elbert disclosed for the first time that he has engineering notes, not reflected in his report, that relate to testing that he considered and that informed his opinions. Ex. 5 at 126:13-127:5. SXM has requested that FhG provide these undisclosed engineering notes to SXM. Ex. 3 at 1; *see also generally Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 (9th Cir. 2014) ("'[t]he disclosure obligation [under Rule 26(a)(2)(B)] extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert'") (citations omitted)). To the extent FhG fails to do so and the parties are unable to reach resolution on SXM's request, SXM may raise the issue with the Court.

(Ex. 4 at ¶ 58, the "Dome") to place over his vehicle's satellite antenna. Doing so would, in Mr. Elbert's opinion, eliminate the purported benefits otherwise conferred by any supposed use of the asserted '289 Patent because the Dome would impact reception of the satellite signals to the vehicle's antenna.[3] The Elbert Report explains that he drove "one loop" around his neighborhood with one vehicle, with and without use of the Dome over the satellite antenna, and recorded the times when his in-vehicle satellite would play audio and when it would not. Ex. 4 at ¶¶ 69, 70.

The Elbert Report, however, does not identify the specific vehicle he used and specifically fails to identify the vehicle VIN or Electronic Serial Number for the radio in the vehicle used in his testing. Ex. 1 at 4. This information would have at least informed SXM as to the chipset generation installed in the vehicle's satellite radio receiver and confirmed that the receiver was, in fact, a High Band receiver (as opposed to a Low Band receiver which is not accused of infringement in the litigation). Upon receipt of the Elbert Report, SXM promptly requested that FhG provide this information and an opportunity to inspect the Dome identified in the report so that SXM's expert would have the opportunity to fully consider all of Mr. Elbert's opinions before his responsive expert report. Ex. 1 at 1, 4. FhG, however, refused, insisting instead that SXM was seeking "unilateral expert discovery." Ex. 1 at 1; Ex. 2 at 2, 6. In response (Ex. 1 at 2; Ex. 2 at 7), SXM explained that Rule 26(a)(2)(B)(ii) requires an expert report to identify "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii); *see also ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1304 (Fed. Cir. 2009) ("The district court did not err in finding that ClearValue, Haase, and Waggett failed to make a disclosure required by Rule 26(a); they withheld test results reviewed by a testifying expert. . . . there [was] more than ample support for the finding that Appellants engaged in unjustified and sanctionable conduct.").

Then, on the heels of submitting this dispute to the Court, and just two days before Mr. Elbert's deposition, FhG stated that "SXM will have the opportunity to depose Mr. Elbert, and can seek to obtain such information from him directly at that time. Mr. Elbert has even indicated that he will bring the experimental dome to his deposition on Friday, so SXM will have the opportunity to inspect it at that time." Ex. 2 at 2. FhG's "offer" failed significantly to address the issue. In addition to being too late for consideration in SXM's responsive expert report, Mr. Elbert having the Dome available at his deposition – which the parties had previously agreed would take place remotely – would obviously not provide SXM with a meaningful "opportunity to inspect it." Ex. 2 at 1.

Unfortunately, Mr. Elbert's deposition revealed new information not previously disclosed that further demonstrates why FhG should be compelled to comply with SXM's prior information requests.

---

[3] While SXM disagrees with the opinions set forth in Mr. Elbert's report, including for the reasons set forth in its expert Dr. David Lyon's rebuttal report, SXM summarizes but does not rebut Mr. Elbert's opinions here as that is not relevant for purposes of the instant discovery dispute.

The Honorable Sherry R. Fallon
Page 3

## II. FhG Should be Compelled to Identify and Allow Inspection of All Test Equipment Elbert Used in His Testing and Disclose All Information Pertaining to All Testing he Conducted

Despite months of correspondence regarding SXM's request that FhG identify, and provide for inspection, the equipment Mr. Elbert used in his testing, SXM learned for the first time at Mr. Elbert's deposition that (1) the test equipment, including the vehicle used in the testing identified in the Elbert Report, was sold in October 2022; and (2) the antenna and Dome shown in the Elbert Report are not the antenna and Dome used in the testing. Ex. 3 at 1.

In particular, Mr. Elbert explained that he "no longer ha[s] the car" used in his testing because he "sold the car and replaced it" in October 2022 – the same month in which FhG served the Elbert Report. Ex. 5 at 114:20-22, 266:11-14; *see also id.* at 125:5-10. He further acknowledged that at the time of testing he "didn't know that model number [of the receiver in his vehicle] then, and I don't know it now" (although he then provided it later in his deposition) and that he never confirmed that "it was, in fact, a high band receiver contained within it" stating that only the "manufacturer would have records of that." Ex. 5 at 113:9-114:19. Although this information was previously known to FhG, and the testing reported in the report was conducted in May 2021, FhG never disclosed the vehicle, or the fact that it had been sold in October 2022. *See generally* Exs. 1-3. SXM also learned during Mr. Elbert's deposition that he ran additional tests that informed his opinions and that he intends to present at trial, both with the vehicle that is no longer available and subsequently with a second vehicle that was not identified in his report.[4] FhG should have disclosed this information, regarding both vehicles, months ago. Because it did not, SXM's expert was precluded from assessing the full scope of the purported testing Mr. Elbert ran and neither SXM nor its expert can now inspect the vehicle used in the testing which Mr. Elbert included in his report.

Even more concerning was Mr. Elbert's additional admission that the images of the antenna and Dome in his report *were not the ones used in his testing*. Mr. Elbert confirmed that the "image of the internals" of an antenna in his report was "not on [his vehicle]" but rather from "a result of an Internet search" and that it was *not* actually from the same make or model of vehicle used in his testing but rather "some other foreign car." Ex. 5 at 106:176-107:9, 108:7-14. Additionally, when Mr. Elbert "presented" the Dome "for inspection" during his remote deposition, he stated that the Dome depicted throughout various images in his report was in fact not the same Dome ultimately used in the testing or with him at the deposition. Ex. 5 at 294:10-23 ("[T]his was an earlier picture, and it would have been more appropriate to have a picture of this. But this is what got in the report."); *see also id.* at 298:10-15. These representations again precluded SXM's expert from being able to fully consider and respond to all of Mr. Elbert's opinions.

In light of the foregoing, SXM respectfully requests that FhG be compelled to identify all equipment used in Mr. Elbert's testing and make available for inspection the vehicle Mr. Elbert still has in his possession and all Domes used in connection with Mr. Elbert's testing.

---

[4] This additional undisclosed testing included (1) testing in other neighborhoods and routes with the vehicle that he sold in October 2022 (*see e.g.*, Ex. 5 at 132:1-22) and (2) testing with a different vehicle after he submitted his initial report on October 18, 2022 (*see e.g.*, Ex. 5 at 266:15-24).

                Respectfully,

                */s/ Philip A. Rovner*

                Philip A. Rovner (#3215)

PAR/mas/10595583
Attachments
cc: Counsel of Record – by CM/ECF and E-mail