IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRAUNHOFER-GESELLSCHAFT ZUR FORDERUNG DER ANGEWANDTEN FORSCHUNG E.V.,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | 1:17CV184<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on remand from the Federal Circuit. This is a patent dispute involving several patents covering satellite radio technology.[1] The Court previously entered summary judgment in favor of Defendant, Sirius XM Radio Inc. ("SXM"), because Plaintiff's, Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V. ("Fraunhofer"), infringement claims were barred by equitable estoppel. See D.I. 816. Specifically, Fraunhofer sat on its hands for years while SXM used its patented technology. On appeal, the Federal Circuit agreed summary judgment was appropriate on two elements of the equitable estoppel defense: (1) Fraunhofer's conduct was misleading and (2) SXM was prejudiced by Fraunhofer's misleading conduct. *Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1378–80, 1382–83 (Fed. Cir. 2025). But the panel concluded there was a dispute of material fact concerning SXM's reliance. Id. at 1380–82. On remand, the Court takes the Federal Circuit's roadmap, bifurcates the issue of equitable estoppel, and schedules a bench trial on the reliance element. If there is anything left of

---

[1] U.S. Patents 6,314,289, 6,931,084, 6,993,084, and 7,061,997.

1

this case after the Court issues its findings of fact and conclusions of law, the Court will address those issues at that time.

## BACKGROUND

This is a patent dispute in the world of satellite radio. Fraunhofer, a German company, developed various inventions related to multicarrier modulation technology. *Fraunhofer*, 138 F.4th 1373, 1376. SXM used this technology in its commercial satellite radio product. *Id.*

SXM—through its predecessor in interest XM—began using Fraunhofer's technology in the late 1990s. *Id.* Through a series of mergers, bankruptcies, and licensing agreements, SXM continues to use that technology today. *Id.* at 1376–77.

SXM's use of Fraunhofer's technology was not preordained. Back in 2008, SXM faced a branching path between two radio systems that required different hardware: a high band system that used Fraunhofer's technology and a low band system that did not. *Id.* at 1377. In part, believing it had a license to use the patented technology, SXM opted for the high band system and abandoned the low band system over the next few years. *Id.*

According to Fraunhofer, SXM got it wrong. Without getting into unnecessary detail, Fraunhofer believes SXM's sublicense was terminated in 2010 bankruptcy proceedings. *Id.* Basically, Fraunhofer believes SXM has been infringing its patents since at least 2010. *Id.*

Fraunhofer did not raise this issue with SXM in 2010. *Id.* Instead, it waited five years to spring its infringement theory on SXM. *Id.* After negotiations failed, it sued in federal court. After some procedural twists and turns, the parties moved for summary judgment. The Court entered summary judgment in favor of SXM on its equitable

2

estoppel theory. *Id.* Specifically, it concluded there was no dispute of material fact that: "(1) [Fraunhofer] engage[d] in misleading conduct that" led SXM "to reasonably infer that [Fraunhofer] [did] not intend to assert its patent against" SXM; (2) SXM "relie[d] on that conduct; and (3) as a result of that reliance, [SXM] would be materially prejudiced if [Fraunhofer] [was] allowed to proceed with its infringement action." See *Id.* (quoting *Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841, 853 (Fed. Cir. 2020)) (elements of equitable estoppel).

On appeal, the Federal Circuit reversed but did not disclaim the Court's analysis wholesale. It "agree[d] with the district court's conclusion that Fraunhofer's more-than-five-year silence in asserting infringement, in light of its clear knowledge of that infringement, rose to the level misleading conduct." *Fraunhofer*, 138 F.4th 1373, 1380. And, "should SXM be able to establish at trial that it relied on Fraunhofer's misleading conduct in connection with its decision to migrate to the accused high-band system as opposed to the non-infringing low-band alternative, then it has adequately established that it was prejudiced by that silence." *Id.* at 1382–83. But, citing other business reasons for migrating to high band, the panel concluded there was a fact dispute about whether SXM relied on Fraunhofer's misleading conduct—precluding summary judgment. *Id.* at 1381. Basically, "[t]here may have been sufficient circumstantial evidence to permit a factfinder to find reliance but the existing record does not compel such a finding." *Id.* at 1381–82.

The Federal Circuit denied the parties' en banc petitions, issued its mandate, and now this case is back with the Court. The Court has exclusive jurisdiction over this dispute under 28 U.S.C. § 1338.

## LEGAL STANDARD

This Court has inherent authority to manage the progression of litigation on its docket. See *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016). The ultimate goal is to achieve a "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. One of the tools in its case management toolkit is Fed. R. Civ. P. 42(b), which permits the court to bifurcate issues for separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." The Court has "broad discretion in separating issues as claims for trial." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987). In deciding whether bifurcation is appropriate, the court considers "whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002). The Court's broad discretion in case management is bound by constitutional constraints, including the Seventh Amendment's right to a jury trial. See Fed. R. Civ. P. 38; U.S. Const. amend. VII.

## DISCUSSION

The Federal Circuit resolved two of the elements of the equitable estoppel defense and gave the parties and the Court a roadmap for resolving the remaining element. Under these circumstances, it makes sense to hold a bench trial under Fed. R. Civ. P. 52 on the issue of reliance.

Bifurcating the issue of equitable estoppel and proceeding to a bench trial is the best way to achieve a "just, speedy, and fair resolution" of this controversy. Fed. R. Civ. P. 1. As a reminder, bifurcation is appropriate if it "will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Ciena Corp.*, 210 F.R.D. at 521. Here, the bench trial will take one day and address a single

element of a claim that has been mostly decided by the Federal Circuit. Going down Fraunhofer's preferred path requires addressing over a dozen summary judgment and *Daubert* motions, addressing legally and factually complex questions, and scheduling a jury trial. All this time and effort would be wasted if equitable estoppel turns out to be case dispositive—an outcome that would prejudice everyone. This prejudice is especially acute because this litigation has been pending for almost a decade. Moreover, quick resolution of a case dispositive or narrowing issue that has been teed up by the Federal Circuit is a much better use of judicial resources than waiting for the parties to litigate the rest of the case and only then revisiting the issue of equitable estoppel. And, as stated above, a decision from the Court on equitable estoppel will make the hypothetical jury's job easier by disposing of or narrowing the case. So, all the Fed. R. Civ. P. 42 considerations—"convenience, . . . avoid[ing] prejudice, or . . . expedit[ing] and economiz[ing]" point in the same direction: bifurcating and deciding equitable estoppel before proceeding with the rest of the litigation.

Proceeding in this manner does not implicate Fraunhofer's Seventh Amendment jury trial right. The Seventh Amendment jury trial right applies to "suits at common law" and does not extend to equitable claims or defenses. U.S. Const. amend. VII; *Perttu v. Richards*, 605 U.S. 460, 471 (2025) ("Ordinarily, judges resolve equitable claims and juries resolve legal claims."). Here, equitable estoppel is an equitable defense "committed to the sound discretion of the trial judge." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 920 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc); *Ill. Tool Works, Inc. v. MOC Prods. Co.*, 946 F. Supp. 2d 1042, 1043 (S.D. Cal. 2012) (Equitable defenses, such as . . . equitable estoppel, are ultimately to be decided by the Court, not the jury."). That is why equitable estoppel is often bifurcated from the main infringement case and tried to the

bench. 2 Annotated Patent Digest § 11:180 (collecting cases). And the narrow fact question of whether SXM relied on Fraunhofer's silence is irrelevant to the issues of infringement and validity that would go to the jury. *C.f. Perttu*, 605 U.S. at 472 (collecting cases indicating the jury claims should be tried first when they involve "common factual issues"). Fraunhofer's attempts to manufacture overlap are not persuasive. It asserts that "questions of SXM's intent and willfulness are necessarily relevant to SXM's equitable estoppel defense." D.I. 831 at 10. But the fact issue teed up by the Federal Circuit is different: whether SXM "*considered* Fraunhofer's silence or inaction and that such consideration influenced its decision to migrate to the accused high-band system." The Court can resolve that question without delving into and binding a future jury on questions of intent or willfulness. So, the Seventh Amendment poses no obstacle to resolving SXM's equitable estoppel defense expeditiously at a bench trial.

Resisting this commonsense path forward, Fraunhofer frames it as a "shortcut" that will not resolve all the issues in this litigation and further delay a very old case. Specifically, Fraunhofer believes equitable estoppel is not case dispositive because it will not preclude all its infringement theories. The Court is skeptical. See *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018) ("Equitable estoppel serves as an *absolute* bar to a patentee's infringement action.") (emphasis added). But it need not resolve this specific dispute in this posture. Suffice to say, a ruling from the Court on equitable estoppel will, at the very least, narrow the issues for trial and streamline an unwieldy case. The parties are directed to address whether this defense is case dispositive in their post-trial briefing, so the Court can make an informed judgment on this issue.

## CONCLUSION

The Federal Circuit has done most of the work. Only a narrow issue of fact remains. The Court's resolution of this narrow issue will resolve or streamline this action—saving the parties, the Court, and the jury time and resources. Under these circumstances, bifurcation of SXM's equitable estoppel defense and holding a one-day bench trial on the issue of reliance is the best path forward.

THEREFORE, IT IS ORDERED:

1. SXM's Motion for a One Day Bench Trial (D.I. 828) is granted. The trial will be in Wilmington, Delaware on November 4, 2025. The parties shall inform the Court if this trial date is agreeable by September 18, 2025. Once a trial date is set, the Court will enter an order for briefing and disclosure deadlines. If necessary, the Court will set further progression deadlines after issuing its findings of fact and conclusions of law.

2. The parties' post-trial briefing should address what issues, if any, remain if the Court finds in SXM's favor on reliance.

3. Fraunhofer's Motion for Jury trial (D.I. 830) is denied as moot. If the Court finds against SXM on reliance, or if it finds for SXM but concludes equitable estoppel is not case dispositive, the balance of the litigation will be resolved via summary judgment, followed by a jury trial.

Dated this 15th day of September 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge